**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X

EDWARD CARTER, FRANK FIORILLO,  KEVIN      :
LAMM, JOSEPH NOFI, and THOMAS SNYDER,     :
       :
       Plaintiffs,        :
       :
       v.        :     Case No. 07-Civ-1215 (SJF)(ETB)
       :
INCORPORATED VILLAGE OF OCEAN BEACH;    :
MAYOR JOSEPH C. LOEFFLER, JR., individually   :
and in his official capacity; former mayor NATALIE K.   :
ROGERS, individually and in her official capacity,    :
OCEAN BEACH POLICE DEPARTMENT; ACTING    :
DEPUTY POLICE CHIEF GEORGE B. HESSE,     :
individually and in his official capacity; SUFFOLK    :
COUNTY; SUFFOLK COUNTY POLICE      :
DEPARTMENT; SUFFOLK COUNTY DEPARTMENT   :
OF CIVIL SERVICE; and ALISON SANCHEZ,     :
individually and in her official capacity,      :
       :
       Defendants.      :

------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THOMPSON WIGDOR & GILLY LLP

85 Fifth Avenue
New York, NY 10003
Tel: (212) 257-6800
Fax: (212) 257-6845

*Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 1

ARGUMENT ........................................................................................................................ 1

   I.   DEFENDANT HESSE HAS FAILED TO SATISFY THE STANDARDS FOR SUMMARY
       JUDGMENT AND HIS MOTION SHOULD BE DENIED .................................................... 1

  II.  DEFENDANT HESSE IS NOT ENTITLED TO SUMMARY JUDGMENT ON
      PLAINTIFFS' FIRST AMENDMENT RETALIATION CLAIMS ......................................... 2

         A.  Plaintiffs' Protected Complaints .......................................................... 2

         B.  Plaintiffs' Complaints Were Made "As Citizens" ................................. 3

         C.  Plaintiffs' Complaints Addressed Matters of "Public Concern" ............ 5

         D.  Plaintiffs Were Terminated Because of Their Protected Complaints ........ 7

 III.  DEFENDANT HESSE'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS'
      CLAIMS FOR DEPRIVATION OF PROPERTY INTEREST IN CONTINUE
      EMPLOYMENT WITHOUT DUE PROCESS MUST BE DENIED ....................................... 10

         A.  Plaintiffs Were Employed as OBPD Officers Until Defendant Hesse
            Unlawfully terminated Their Employment on April 2, 2006 ................. 10

 IV.  DEFENDANT HESSE'S MOTION TO DISMISS PLAINTIFFS' "STIGMA PLUS" CLAIMS
      FOR DEPRIVATION OF THEIR LIBERTY INTEREST IN CONTINUED LAW
      ENFORCEMENT CAREERS WITHOUT DUE PROCESS MUST BE DENIED ...................... 12

         A.  Defendant Hesse Made Numerous, Public Stigmatizing Statements About
            Plaintiffs ........................................................................................... 13

         B.  Defendant Hesse's Stigmatizing Statements Were Made Public .......... 14

         C.  A Proper Nexus Exists to Demonstrate that Hesse's Stigmatizing
            Statements Constituted a Deprivation of Plaintiffs' Protected Liberty
            Interest Under the Due Process Clause of the Constitution ................... 15

  V.  WHISTLEBLOWERS CLAIMS UNDER CIVIL SERVICE LAW § 75-B ................................ 16

VI.  DEFENDANT HESSE IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS OF DEFAMATION *PER SE* ........................................................18

    A.  Plaintiffs' Defamation Claims Are Properly Pled ........................................18

    B.  Defendant Hesse Defamed Plaintiffs on Numerous Occasions ............................19

        1.  Stigmatizing and Defamatory Statements and Conduct at Time of Plaintiffs' Termination ................................................................20

        2.  Stigmatizing and Defamatory Statements to Plaintiffs' Potential Employers Regarding Plaintiffs' Terminations and Fitness as Police Officers ................................................................21

        3.  Stigmatizing and Defamatory Statements Posted on Publicly Accessible Internet Message Boards ................................................24

VII.  PLAINTIFFS HAVE SATISFIED THEIR BURDENS TO DEMONSTRATE DEFENDANT HESSE'S TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS AND THAT SUMMARY JUDGMENT SHOULD BE DENIED .................25

VIII.  DEFENDANT HESSE'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' SUBSTANTIVE DUE PROCESS AND TERMINATION IN VIOLATION OF PUBLIC POLICY CLAIMS MUST BE DENIED ........................................................27

IX.  DEFENDANT HESSE IS LIABLE FOR PLAINTIFFS' CLAIMS OF NEGLIGENT HIRING AND SUPERVISION OF UNFIT EMPLOYEES ................................................28

CONCLUSION ................................................................................................30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abrahams v. Inc. Village of Hempstead,*
No. 08 Civ. 02584 (SJF)(WDW), 2009 U.S. Dist. LEXIS 46725 (E.D.N.Y. June 2, 2009) .......................................................................................................... 12,13

*Albert v. Loksen,*
239 F.3d 256 (2d Cir. 2001) ....................................................................................20

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................................ 2

*Anderson v. New York,*
614 F. Supp. 2d 404 (S.D.N.Y. Apr. 27, 2009) ........................................................ 9

*Baez v. Jetblue Airways Corp.,*
No. 09 Civ. 596 (CPS)(SMG), 2009 U.S. Dist. LEXIS 67020 (E.D.N.Y. Aug. 3, 2009) ...........19

*Benedict v. Town of Newburgh,*
125 F. Supp. 2d 675 (S.D.N.Y. 2000) ...................................................................... 8

*Brandt v. Bd. of Coop.  Educ. Servs.,*
820 F.2d 41 (2d Cir. 1987)......................................................................................15

*Brink's, Inc. v. New York,*
717 F.2d 700 (2d Cir. 1983) ....................................................................................29

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ................................................................................................ 2

*Chertkova v. Connecticut General Life Insurance Co.,*
92 F.3d 81 (2d Cir. 1996)........................................................................................ 8

*City of San Diego v. Roe,*
125 S. Ct. 521 (2004) .............................................................................................. 5

*Clark v. Mercado,*
No. 98 Civ. 7934, 1999 U.S. App. LEXIS 11845 (2d Cir. May 28, 1999) ..................10

*Connick v. Myers,*
461 U.S. 138 (U.S. 1983)......................................................................................... 7

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998) ...............................................................................................27

*Curto v. Medical World Communs., Inc.*,
    388 F. Supp. 2d 101 (E.D.N.Y. 2005) ................................................................22

*DiBlasio v. Novello*,
    344 F.3d 292 (2d Cir. 2003) ...............................................................................13

*Drolett v. Demarco*,
    No. 05 Civ. 1335 (JCH), 2007 U.S. Dist. LEXIS 46044 (D. Conn. June 22, 2007) ..................... 4

*Engquist v. Oregon Department of Agriculture*,
    128 S. Ct. 2146 (2008) ........................................................................................30

*Ezekwo v. NYC Health & Hospitals Corp.*,
    940 F.2d 775 (2d Cir. 1991) ...............................................................................10

*Furlong v. Shalala*,
    156 F.3d 384 (2d Cir. N.Y. 1998) .......................................................................11

*Gangadeen v. City of New York*,
    No. 07 Civ. 10965 (DLC), 2009 U.S. Dist. LEXIS 71079 (S.D.N.Y. Aug. 12, 2009) .................. 5

*Gorman-Bakos v. Cornell Coop. Extension*,
    252 F.3d 545 (2d Cir. N.Y. 2001) ........................................................................ 8

*Houston v. New York Post Co.*,
    No. 93 Civ. 4408 (KTD), 1996 U.S. Dist. LEXIS 19705 (S.D.N.Y. Dec. 19, 1996)....................21

*Howard v. Senkowski*,
    986 F.2d 24 (2d Cir. 1993) ...............................................................................7, 8

*Jeffes v. Barnes*,
    20 F. Supp. 2d 404 (N.D.N.Y. 1998) ...................................................................... 6

*Kaluczky v. City of White Plains*,
    57 F.3d 202 (2d Cir. 1995) .................................................................................28

*Kelly v. Schmidberger*,
    806 F.2d 44 (2d Cir. 1986) .................................................................................19

*Kessler v. Westchester Cty. Department of Social Services*,
    461 F.3d 199 (2d Cir. 2006) ................................................................................ 2

*Konits v. Valley Stream Central High School District*,
    394 F.3d 121 (2d Cir. 2005) ................................................................................ 2

*Marinaccio v. Boardman*,
    No. 02 Civ. 00831 (NPM), 2005 U.S. Dist. LEXIS 42417 (N.D.N.Y Apr. 19, 2005) ...............15

*Morgenstern v. County of Nassau*,
    No. 04 Civ. 058 (JS)(ARL), 2008 U.S. Dist. LEXIS 91746 (E.D.N.Y. Sept. 29, 2008) ............. 5

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
    429 U.S. 274 (1977), *rev'd on other grounds*, 208 F.3d 49 (2d Cir. 2000) ............................ 6

*Natale v. Town of Ridgefield*,
    170 F.3d 258 (2d Cir. 1999) ...................................................................................................28

*Owen v. City of Independence, Missouri*,
    445 U.S. 622 (1980) .................................................................................................................16

*Perry v. Burger King Corp.*,
    924 F. Supp. 548 (S.D.N.Y. 1996) ..........................................................................................29

*Perry v. Sindermann*,
    408 U.S.  593 (1972) .......................................................................................................... 10, 11

*Piesco v. Koch*,
    12 F.3d 332 (2d Cir. 1993) ........................................................................................................ 8

*Purgess v. Sharrock*,
    33 F.3d 134 (2d Cir. N.Y. 1994) ..............................................................................................27

*Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors, Inc.*,
    No. 96 Civ. 6320, 1997 U.S. Dist. LEXIS 9288 (S.D.N.Y. July 1, 1997).............................19

*Reuland v. Hynes*,
    460 F.3d 409 (2d Cir. 2006) ...................................................................................................... 5

*Rosenblatt v. City of New York*,
    No. 05 Civ. 5521, 2007 U.S. Dist. LEXIS 55853 (S.D.N.Y. July 31, 2007) ........................... 4

*Rucci v. Thoubboron*,
    68 F. Supp. 2d 311 (S.D.N.Y. 1999) ......................................................................................... 8

*Sadowy v. Sony Corp. of America*,
    496 F. Supp. 1071 (S.D.N.Y. 1980) .........................................................................................22

*Scheiner v. N.Y. City Health & Hospitals Corp.*,
    152 F. Supp. 2d 487 (S.D.N.Y. 2001) ....................................................................................... 7

*Segal v. City of New York*,
  459 F.3d 207 (2d Cir. 2006) ...................................................................................13

*Sousa v. Roque*,
  578 F.3d 164 (2d Cir. 2009) .................................................................................... 5

*Stein v. Board of City of New York*,
  792 F.2d 13 (2d Cir. 1986) ....................................................................................10

*Sterling Interiors Group v. Haworth, Inc.*,
  No. 94 Civ. 9216 (CSH), 1996 U.S. Dist. LEXIS 10756 (S.D.N.Y. July 29, 1996) ...................20

*Tesoriero v. Syosset Central Sch. District*,
  382 F. Supp. 2d 387 (E.D.N.Y. 2005) ........................................................................30

*Texas Department of Community Affairs v. Burdine*,
  450 U.S. 248 (1981) ............................................................................................ 9

*Treppel v. Biovail Corp.*,
  No. 03 Civ. 3002 (PKL), 2005 U.S. Dist. LEXIS 2737 (S.D.N.Y. Feb. 22, 2005) ......................27

*Ulrich v. City and County of San Francisco*,
  308 F.3d 968 (9th Cir. 2002) ..................................................................................16

*Vasbinder v. Ambach*,
  926 F.2d 1333 (2d Cir. 1991) .................................................................................. 6

*Velez v. Levy*,
  401 F.3d 75 (2d Cir. 2005) ....................................................................................16

*White Plains Towing Corp. v. Patterson*,
  991 F.2d 1049 (2d Cir. 1993) .........................................................................10, 13, 16

## STATE CASES

*Donati v. Queens Ledger Newspaper Group*,
  659 N.Y.S.2d 306 (2d Dep't 1997) ...........................................................................20

*Gjonlekaj v. Sot*,
  308 A.D.2d 471 (2d Dep't 2003) ..............................................................................24

*Liberman v. Gelstein*,
  80 N.Y.2d 429 (1992) .........................................................................................20

*Parks v. Steinbrenner*,
  131 A.D.2d 60 (1st Dep't 1987) ..............................................................................25

*People ex rel. Sweet v. Lyman*,
   157 N.Y. 368 (N.Y. 1898)..................................................................................................... 7

*Silsdorf v. Levine*,
   59 N.Y.2d 8 (N.Y. 1983) ...................................................................................................26

*Social Investigator Eligibles Association v. Taylor*,
   268 N.Y. 233 (N.Y. 1935)................................................................................................... 7

*Steinhilber v. Alphonse*,
   68 N.Y.2d 283 (N.Y. 1986) ........................................................................................25, 26

*Vincenzino v. Calvosa*,
   572 N.Y.S.2d 611 (N.Y. Sup. Ct. 1991).........................................................................29

*Weider v. Skala*,
   80 N.Y.2d 628 (N.Y. 1992) ...............................................................................................28

*Whittaker v. Delaware and Hudson Canal Co.*,
   126 N.Y. 544 (1891) ...........................................................................................................29

*Wood v. New York*,
   274 N.Y. 155 (N.Y. 1937)............................................................................................6, 29

Plaintiffs Edward Carter ("Mr. Carter"), Frank Fiorillo ("Mr. Fiorillo"), Kevin Lamm ("Mr. Lamm"), Joseph Nofi ("Mr. Nofi"), and Thomas Snyder ("Mr. Snyder"), (collectively, "Plaintiffs"), by their attorneys, Thompson Wigdor & Gilly LLP, respectfully submit this Memorandum in Opposition to the Motion for Summary Judgment by Defendant Acting Deputy Police Chief George B. Hesse ("Defendant Hesse").

## PRELIMINARY STATEMENT

Plaintiffs are five police officers who had the courage to overcome the "blue wall of silence" and fulfill their duty to protect the public by speaking out in opposition to the regime of endemic corruption within the Ocean Beach Police Department ("OBPD" or the "Department").  Ultimately, when confronted by Plaintiffs' refusal to become complicit in the OBPD's rampant lawlessness and betrayal of the public trust, Defendants not only terminated Plaintiffs' employment as police officers, but also undertook a concerted effort to defame Plaintiffs and destroy their law enforcement careers.

## STATEMENT OF FACTS[1]

## ARGUMENT

### I.  Defendant Hesse Has Failed To Satisfy the Standards for Summary Judgment and His Motion Should be Denied

Summary judgment may not be granted unless the submissions of the parties "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Here, Defendant Hesse bears the burden

---

[1]    Plaintiffs respectfully refer this Court to the facts presented in: Plaintiffs' 56.1 Counter-Statement of Material Facts in Dispute in Response to Defendant Hesse's 56.1 Statement ("Pl 56.1-Hesse"); Plaintiffs' 56.1 Counter-Statement of Material Facts in Dispute in Response to Ocean Beach Defendants' 56.1 Statement ("Pl. 56.1-Hesse"); Plaintiffs' 56.1 Counter-Statement of Material Facts in Dispute in Response to County Defendants' 56.1 Statement ("Pl 56.1-County"); and the Declaration of Andrew S. Goodstadt in Support of Plaintiffs' Opposition to Ocean Beach Defendants' Motion for Summary Judgment ("Goodstadt Decl."), together with the exhibits attached thereto ("Ex.").

of making this showing, and the Court must view all facts in the light most favorable to the

non-moving party, and resolve all ambiguities and inferences in favor of the non-moving

party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  The record here also demonstrates that genuine factual disputes

exist, and that the disputed facts are material to Plaintiffs' claims, thus precluding summary

judgment.  Indeed, Defendant Hesse's arguments for summary judgment, which are based

on unsupported, rebutted, and/or internally inconsistent claims, fail to take into account

that "at the summary judgment stage the judge's function is not . . . to weigh the evidence

and determine the truth of the matter but to determine whether there is a genuine issue for

trial."  *Kessler v. Westchester Cty. Dep't of Social Servs.*, 461 F.3d 199, 206 (2d Cir. 2006)

(internal citation omitted).  As such, there are genuine issues for trial on all claims, and

thus, Defendant Hesse is not entitled to summary judgment.

## II.    Defendant Hesse is Not Entitled to Summary Judgment on Plaintiffs' First Amendment Retaliation Claims

"[T]o establish a First Amendment claim of retaliation as a public employee, [a

plaintiff] must show that (1) his speech addressed a matter of public concern, (2) he

suffered an adverse employment action, and (3) a causal connection existed between the

speech and the adverse employment action." *Konits v. Valley Stream Cent. High School Dist.*,

394 F.3d 121, 124 (2d Cir. 2005) (internal quotation marks omitted).  Here, the record

demonstrates that Plaintiffs have satisfied this burden.

### A.    Plaintiffs' Protected Complaints

Plaintiffs' claims of First Amendment retaliation are based on Defendant Hesse's

retaliatory termination of their employment for having raised numerous complaints during

their employment as OBPD Officers concerning, among other things: (i) the unlawful cover-

2

up of an incident of police brutality orchestrated by Defendant Hesse (*See* Pl. 56.1-Hesse ¶¶ 164-84; Ex. 73-77); (ii) Defendant Hesse's hiring and retention of OBPD officers in violation of County Civil Service law (*id.*); (iii) the direct threat to the public safety resulting from Defendant Hesse's failure to prevent, and condonation and participation in, OBPD officers drinking in local bars while on-duty and/or in uniform (*id.*); (iv) Defendant Hesse's failure to prevent, and condonation of, OBPD officers driving while intoxicated (*id.*) (v) Defendant Hesse's failure to properly secure OBPD firearms (*id.*); (vi) Defendant Hesse's failure to discipline OBPD officers for destruction of evidence and OBPD property (*id.*); (vii) Defendant Hesse's unlawful selective law enforcement, including, *e.g.*, by prohibiting Plaintiffs from issuing (and even tearing up) summonses to favored businesses and individuals within Ocean Beach (*id.*); and (viii) Defendant Hesse's failure require uncertified OBPD Officers to become familiar with Suffolk County Police radio codes, resulting in a direct threat to public safety, as well as Plaintiffs' own safety as OBPD Officers (*id.*).

Contrary to Defendant Hesse's misleading and false assertions, Plaintiffs addressed these complaints not only to Defendant Hesse himself (Pl. 56.1-Hesse ¶¶ 164-69, 171-80), but also to former Police Chief Paradiso (*id.* ¶¶ 170, 172, 183), Village Trustee and police-liaison to the Village Board Defendant Loeffler (*id.* ¶ 181; Ex. 74, 76), Village Trustee Einig (Ex. 74, 76), and the Suffolk County District Attorney's Office (Pl. 56.1-Hesse ¶ 184).

**B. Plaintiffs' Complaints Were Made "as Citizens"**

Defendant Hesse attempts to avoid liability for his unlawful misconduct by claiming that Plaintiffs complained about these matters pursuant to their duties as OBPD officers, rather than as "citizens" (*see* Hesse Mem. 3-5). However, this allegation is flatly

contradicted by the record.  First, as the senior-most OBPD official who exercised policy-making authority over the OBPD and its employees (*See* Hesse-56.1 ¶ 24; Ex. 31; Pl. 56.1-Hesse ¶ 215).  Defendant Hesse's responses to Plaintiffs' repeated complaints of Hesse's misuse of power and threats to public safety and Plaintiffs' own safety clearly preclude his present attempt to characterize Plaintiffs' complaints as a matter of their "official duties." *See Rosenblatt v. City of New York*, 05 Civ. 5521, 2007 U.S. Dist. LEXIS 55853, at *17 (S.D.N.Y. July 31, 2007) (complaint by public employee about fraud and corruption was not made pursuant to her official duties because her job duties did not include raising such complaints).  Having been repeatedly berated by Defendant Hesse for raising such complaints, Plaintiffs' continuing complaints were, at the very least, outside the scope of their official "duties" as defined by Defendant Hesse, the policy maker vested with authority over the terms and conditions of employment for OBPD officers.  (*See* Hesse-56.1 ¶ 24; Ex. 31; Pl. 56.1-Hesse ¶ 215).  And, notwithstanding that Plaintiffs' complaints were, in fact, consistent with their position as law-abiding police officers, there is no evidence that Plaintiffs' "official duties included complaining about all kinds of workplace mismanagement, whatever the context in which these complaints were made" or that complaining about such matters "was particularly within the province of plaintiff[s]' professional duties, more so than that of other [Police Department] employees." *See Drolett v. Demarco*, 05-cv-1335 (JCH), 2007 U.S. Dist. LEXIS 46044 (D. Conn. June 22, 2007) ("The court does not construe the Police Department's rules to require Drolett to make complaints, but only to permit him to do so–that is, there is no evidence that he was employed specifically to make such reports.") (citing *Garcetti v. Ceballos*, 126 S. Ct. 1952, 1959-60 (2006)).

4

Moreover, the mere fact that Plaintiffs – like other law-abiding OBPD officers, as well as citizens of, and visitors to, Ocean Beach – were affected by the misconduct complained of "does not convert these complaints into a personal employee grievance devoid of a broader public purpose." *See Gangadeen v. City of New York*, 07 Civ. 10965 (DLC), 2009 U.S. Dist. LEXIS 71079, at *40-41 (S.D.N.Y. Aug. 12, 2009).  Indeed, "[i]t would be a bizarre result to preclude a First Amendment retaliation claim based on allegations of health and safety concerns because the person complaining was also affected by the dangerous condition." *Id.*  Thus, any claim by Defendant Hesse to the contrary should be rejected.

### C.  Plaintiffs' Complaints Addressed Matters of "Public Concern"

Speech "addresses a matter of public concern" if it "relates to any matter of political, social, or other concern to the community" (*Morgenstern v. County of Nassau*, No. 04-CV-058 (JS)(ARL), 2008 U.S. Dist. LEXIS 91746 (E.D.N.Y. Sept. 29, 2008) (quoting *Reuland v. Hynes*, 460 F.3d 409, 415 n.5 (2d Cir. 2006))), or is a "subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication" *id.* (quoting *City of San Diego v. Roe*, 125 S. Ct. 521, 526 (2004)).  The fact that certain complaints may align with advancement of a speaker's personal interest does not remove those complaints from the ambit of First Amendment protections.  *See Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir. 2009) (holding that speaker's personal motivation for complaint is not determinative, so long as complaint relates to matter of public concern).

Although Defendant Hesse completely ignores the substance and extent of Plaintiffs' numerous complaints, and consequently makes no arguments against the characterization of these unacknowledged complaints as matters of "public concern," it should be clear that

any such arguments cannot be seriously entertained.  Indeed, "[o]ne would be hard-

pressed to find a clearer example of speech that is more appropriately classified as a matter

involving public concern and deserving of First Amendment protection" than Plaintiffs

Snyder, Fiorillo and Lamm's opposition to Defendant Hesse's cover-up of their

investigation into an OBPD officer's assault of a civilian on Halloween night 2004.  *See Jeffes*

*v. Barnes*, 20 F. Supp. 2d 404 (N.D.N.Y. 1998) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v.*

*Doyle*, 429 U.S. 274, 282(1977), *rev'd on other grounds*, 208 F.3d 49 (2d Cir. 2000) ("In the

present case, plaintiffs allege that their supervisors and co-workers retaliated against them

for publicly disclosing the misconduct of their co-workers and cooperating in the federal

criminal investigation and subsequent prosecution.").  Similarly, complaints about OBPD

officers failing to properly secure firearms, destroying police property and evidence,

allowing favored business owners to violate the law with impunity, drinking on duty

and/or while in uniform, and driving while intoxicated, are undoubtedly matters of great

concern to every right-thinking citizen, and can scarcely be dismissed as mere workplace

grievances.  *See Vasbinder v. Ambach*, 926 F.2d 1333, 1340 (2d Cir. 1991) (finding that

speech concerning the corrupt practices of public employees is speech regarding matters of

serious public concern).  Moreover, Defendant Hesse's willful violation of civil service

requirements for OBPD officers was contrary to a provision of the New York State

Constitution that was enacted for the protection of the public, and is thus also a matter of

"public concern."  *See Wood v. New York*, 274 N.Y. 155, 161 (N.Y. 1937) ("The civil service

provisions of the Constitution and of the law were intended as a protection for the public

and all the employees in the civil service as well as security for the individual employee.").[2]

---

[2]      *See also Social Investigator Eligibles Ass'n v. Taylor*, 268 N.Y. 233, 237 (N.Y. 1935) (citations omitted)

Finally, there is no merit to Defendant Hesse's specious claim that complaints addressed directly to Defendant Hesse himself are outside the scope of Plaintiffs' First Amendment protection.  *See, e.g., Connick v. Myers*, 461 U.S. 138, 145 (U.S. 1983) ("First Amendment protection applies when a public employee arranges to communicate privately with his employer rather than to express his views publicly.").  Not only is Defendant Hesse's claim patently false (*see* Pl. 56.1-Hesse ¶¶ 181, 184; Ex. 74, 76), but even if true, it is of no consequence to Plaintiffs' protections under the First Amendment.

**D.  Plaintiffs Were Terminated Because of their Protected Complaints**

The causal connection between protected speech and an adverse employment action "must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action."  *Scheiner v. N.Y. City Health & Hosps. Corp.*, 152 F. Supp. 2d 487, 496 (S.D.N.Y. 2001).  Causation can be established indirectly, through circumstantial evidence, or directly by evidence of a retaliatory animus.  *See Howard v. Senkowski*, 986 F.2d 24, 26 n.2 (2d Cir. 1993) ("Though pretext analysis was developed in Title VII cases . . . it is fully applicable to constitutional claims where the issue is whether an improper motive existed.").  Here, Plaintiffs can easily satisfy both standards.

First, Defendant Hesse *admitted* in writing that he terminated Plaintiffs because they complained about him.  Specifically, Defendant Hesse stated in writing that Plaintiffs'

---

("The command of that section is addressed to conventional and stable duties of the functionaries of civil government.  Its aim was to supplant by a merit system a spoils system of office holding."); *People ex rel. Sweet v. Lyman*, 157 N.Y. 368, 375 (N.Y. 1898) ("The obvious purpose of this provision was to declare the principle upon which promotions and appointments in the public service should be made . . . and to establish merit and fitness as the basis of such appointments and promotions in place of their being made upon partisan or political grounds." ) (citing Record Constitutional Convention, vol. 5, p. 2444; vol. 6, p. 2552, *et seq.*).

complaints "got you out of law enforcement."  (Pl. 56.1-Hesse ¶ 228, 230, 232; Ex. 13).  This direct evidence, standing alone, is sufficient to establish a causal connection and defeat summary judgment.  *See* 986 F.2d at 26.

Second, it is well settled that the timing of a defendant's conduct, such as where the protected speech was followed closely in time by adverse treatment in employment, may be circumstantial evidence of a retaliatory motive.  *See Gorman-Bakos*, 252 F.3d at 554. However, the Court of Appeals for the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and allegedly retaliatory action."  *Id.* (citations collecting cases omitted); *see also Benedict v. Town of Newburgh*, 125 F. Supp. 2d 675, 678-79 (S.D.N.Y. 2000).  And in cases where an employer's state of mind or motives are relevant, the materials before the court must be carefully scrutinized for circumstantial evidence that could support an inference of retaliatory animus.  *See Rucci v. Thoubboron*, 68 F. Supp. 2d 311, 318 (S.D.N.Y. 1999) (citing *Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996)); *Piesco v. Koch*, 12 F.3d 332, 342 (2d Cir. 1993) ("The second element, the employer's motivation, presents a question of fact.").

In this case, the circumstantial evidence of Defendant Hesse's retaliatory motivation for terminating Plaintiffs is also overwhelming.  Specifically, Defendant Hesse terminated Plaintiffs' employment on April 2, 2006, which was the first summer season that he had the authority to fire police officers.  (*See, e.g.*, Hesse 56.1 ¶¶ 23-24).  And, after directing Plaintiffs to depart the Village in front of all remaining OBPD officers, Defendant Hesse noted explicitly that Plaintiffs were terminated based on his suspicion that they were

8

wearing "a wire" or going to wear "a wire" for the County District Attorney.  (*See* Ex. 17).  In addition, Defendant Hesse informed Plaintiff Carter that Plaintiffs Fiorillo, Snyder and Lamm's careers in law enforcement were over because Plaintiffs refused to comply with his demands to revise their investigation reports of the Halloween incident so as to exculpate uncertified OBPD officer Gary Bosetti.  (*See* Ex. 13).  Defendant Hesse confirmed these facts repeatedly over the following months in defamatory message board postings on the *Schwartz Report* website.  *See*, *e.g.*, Section IV(A), *infra*; (Pl. 56.1-Hesse ¶¶ 225-51).

Moreover, Defendant Hesse's shifting and pretextual justifications for his decision to terminate Plaintiffs further evidences his retaliatory motivations.  *See generally Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981) (pretext exists if "employer's proffered explanation is unworthy of credence").  For example, on April 2, 2006, Defendant Hesse falsely claimed that he was terminating Plaintiffs' employment due to budget cuts, a pretextual justification flatly refuted by record evidence that no such "budget cuts" existed.  (Pl. 56.1-Hesse ¶ 259).  Similarly, the record is completely devoid of any documentation whatsoever concerning Defendant Hesse's more recent claims of purported "insubordination" or any other form of misconduct by Plaintiffs.  (*See* Hesse Mem. at 6); (Pl. 56.1-Hesse ¶ 84).  Accordingly, Plaintiffs have demonstrated a causal connection between their protected First Amendment speech and retaliatory termination by Defendant Hesse, and Defendant Hesse's for summary judgment on Plaintiffs' First Amendment retaliation claims should be denied.  *See Anderson v. New York*, 614 F. Supp. 2d 404, 430 (S.D.N.Y. Apr. 27, 2009) (denying summary judgment where there was a question of fact "as to whether plaintiff [had] shown a causal connection between her protected speech and her discharge").

9

### III. Defendant Hesse's Motion for Summary Judgment on Plaintiffs' Claims for Deprivation of Property Interest in Continued Employment Without Due Process Must be Denied

#### A. Plaintiffs Were Employed as OBPD Officers Until Defendant Hesse Unlawfully Terminated Their Employment on April 2, 2006

To state a due process violation, Plaintiffs must first show a deprivation of a constitutionally protected property interest in their continued employment as OBPD Officers. *See, e.g.*, *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1061-62 (2d Cir. 1993); *Clark v. Mercado*, No. 98-7934, 1999 U.S. App. LEXIS 11845, at *6 (2d Cir. May 28, 1999). Defendant Hesse attempts to evade liability for unlawfully depriving Plaintiffs of their constitutionally property interest in continued employment as Part-Time/Seasonal OBPD officers without due process of law by disingenuously asserting that, at the time of their terminations, Plaintiffs were "at will employees, who had no property interest in prospective government employment." (*See* Hesse Mem. 6-7, 12). As set forth below, Defendant Hesse is mistaken on both points.

First, Defendant Hesse's attempt to mischaracterize Plaintiffs as merely "prospective" or "at will" employees fails to take into account that "[a] property interest arising out of public employment may result from an explicit or implicit understanding between the employer and the employee, a contract, formal or informal rules, policies and practices of the employer, or the course of dealing between the employer and the employee." *Clark*, 1999 U.S. App. LEXIS 11845, at *6 (citing *Perry v. Sindermann*, 408 U.S. 593, 599-603 (1972)); *Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 782-83 (2d Cir. 1991); *Stein v. Board of City of New York*, 792 F.2d 13, 15-18 (2d Cir. 1986)). Indeed, like the United States Supreme Court, the Second Circuit has "embraced this broader approach as to what may constitute a possible source of a property interest." *See Furlong v. Shalala*,

10

156 F.3d 384, 395 (2d Cir. N.Y. 1998) (citations omitted).  Accordingly, it is undisputed that "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit.  *See Perry*, 408 U.S. at 602-03 (citing *Roth*, 408 U.S. at 577).

In this case, Defendant Hesse's mischaracterization of the continuing employment status of incumbent Part-Time/Seasonal OBPD officers is flatly refuted by the uncontroverted testimony of Plaintiffs and non-party OBPD officers alike, who uniformly attested to procedures and mutually explicit understanding that Part-Time/Seasonal OBPD officers who worked consecutive "summer seasons," or continuously from year-to-year, maintained their employment status as OBPD officers without interruption.  (Pl. 56.1-Hesse ¶¶ 198-200).  Specifically, neither Plaintiffs, nor any other OBPD officers who maintained employment from year-to-year, were ever required to "reapply" for their positions, nor did they receive annual notices of "termination."  (*Id.*).  Indeed, there is no evidence whatsoever regarding the existence of any formal or informal requirement or practice of Ocean Beach requiring such officers to reapply for their positions or to be rehired as such.[3] (*Id.*).

Instead, the only documentation exchanged between incumbent Part Time/Seasonal OBPD officers and Defendants in connection with employment for each consecutive approaching summer season is the correspondence that the OBPD addressed to each returning officer regarding the scheduling of the OBPD's annual, department-wide pre-season meetings.  (Pl. 56.1-Hesse ¶ 262).  Plaintiffs, like all other currently employed Part-

---

[3]      To the extent that Suffolk County Civil Service may have had its own purported policies that bear on the continuing employment status of incumbent Part-Time/Seasonal OBPD officers, it is undisputed that Ocean Beach failed to comply with Civil Service procedures applicable to the OBPD.  (*See, e.g.*, County 56.1 ¶ 21)

Time/Seasonal OBPD officers, received such letters from Defendant Hesse inviting them to the annual pre-season meeting on April 2, 2006 and advising that "new ID cards will be issued to all." (Ex. 54). Under these circumstances, the claim that Plaintiffs – unlike all other returning OBPD officers who received the April 2, 2006 letter, and exchanged no other applications or correspondence regarding reemployment with the Village – were, uniquely, "non-employees" on April 2, 2006 is therefore devoid of merit. In fact, other that Defendant Hesse telling Plaintiffs that they were terminated at the 2006 pre-season meeting, there was nothing different about that "season" from prior "seasons" during which Plaintiffs' employment continued without interruption. (Pl. 56.1-Hesse ¶¶ 198-200, 252, 261). Moreover, any attempt by Defendant Hesse to argue that Plaintiffs' were merely "prospective" employees who were "not rehired" is belied by Defendant Hesse's notice to the Village Board of Trustees regarding his "termination" of Plaintiffs (Ex. 46), as well as Hesse's repeated reference to Plaintiffs' "terminations" in defamatory and stigmatizing messages that Hesse posted about Plaintiffs on the *Schwartz Report* website (*see* Pl. 56.1-Hesse ¶ 228, 230, 232).

**IV.    Defendant Hesse's Motion to Dismiss Plaintiffs' "Stigma Plus" Claims for Deprivation of their Liberty Interest in Continued Law Enforcement Careers Without Due Process Must be Denied**

In order to prove a constitutional claim for deprivation of a liberty interest without due process, Plaintiffs' must prove "stigma-plus," which "refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' [e.g., the loss of government employment] or property right (the plus), without adequate process." *Abrahams v. Inc. Village of Hempstead*, No. 08-cv-02584 (SJF)(WDW), 2009 U.S. Dist. LEXIS 46725, at *8 (E.D.N.Y. June 2, 2009) (quoting *Segal v. City of New York*,

459 F.3d 207, 213 (2d Cir. 2006) (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003))); *see also Patterson*, 370 F.3d at 330 (stating that "[l]oss of one's reputation can . . . invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment") (citation omitted).

To demonstrate the "'stigma' component of a "stigma-plus" claim, a plaintiff must show that (1) the government made stigmatizing statements about [him] – statements that call into question [the] plaintiff's good name, reputation, honor, or integrity; (2) these stigmatizing statements were made public; and (3) the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." *Abrahams*, 2009 U.S. Dist. LEXIS 46725, at *8 (quoting *Segal*, 459 F.3d at 212) (citations and quotation marks omitted).  As set forth below, the record evidence amply demonstrates that Plaintiffs have satisfied each of these elements, precluding Defendant Hesse's request for summary judgment.

### A. Defendant Hesse Made Numerous, Public Stigmatizing Statements About Plaintiffs

Defendant Hesse's purported defense to Plaintiffs' claim that he made stigmatizing statements about them is utterly devoid of merit.  Indeed, the litany of stigmatizing statements by Hesse concerning Plaintiffs' terminations include, by way of examples only:

- Joining together with the assembled OBPD officers in jeering and laughing at Plaintiffs as they departed after being terminated, and stating, immediately after Plaintiffs' terminations, that Plaintiffs were terminated because they were "rats" who had agreed to wear a wire for the Suffolk County D.A. and throw the department "under the bus" (Pl. 56.1-OB ¶¶ 262-65);

- Falsely stating in correspondence to Plaintiff Carter's potential employer that Plaintiff Carter was terminated for sleeping through his shifts at the OBPD (*id.* ¶ 268);

- Misrepresenting to Plaintiffs' potential employers that Plaintiffs had been terminated for unspecified misconduct (*id.* ¶¶ 266-67);

- Falsely claiming, in writing, in connection with the Halloween Incident, that Plaintiffs "are lucky that they didn't get charged with official misconduct and falsely reporting an incident" (*id* ¶ 225); and

- Writing and publically posting the baseless claim that Plaintiffs Fiorillo and Lamm were terminated for "abusing the public," and "earning the title 'RAT,' as a result of which Niether [sic] of you will ever work another law enforcement job here in the United States" (*id* ¶ 228).

(*See also id.* ¶¶ 225-51). In light of the foregoing, it is obvious that Plaintiffs can satisfy the "stigma" element of their "stigma-plus" due process claims.  Any claim to the contrary is absurd and should be rejected.

### B.    Defendant Hesse's Stigmatizing Statements Were Made Public

The record also amply demonstrates that Defendant Hesse's numerous stigmatizing statements about Plaintiffs were publically disseminated.  "In determining the degree of dissemination that satisfies the 'public disclosure' requirement, we must look to the potential effect of dissemination on the employee's standing in the community and the foreclosure of job opportunities.  As a result, what is sufficient to constitute 'public disclosure' will vary with the circumstances of each case."  *Marinaccio v. Boardman*, 02-CV-00831 (NPM), 2005 U.S. Dist. LEXIS 42417, at *56-57 (N.D.N.Y Apr. 19, 2005) (citing *Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 44 (2d Cir. 1987)).  Thus, emphasizing the "*potential effect of dissemination on the employee's standing in the community and the foreclosure of job opportunities,*" the Second Circuit has held that even the placement of statements in an employee's personnel file may satisfy the contemporaneous public disclosure elements of a stigma-plus claim.  *See Brandt*, 820 F.2d at 45 (reversing grant of summary judgment based

on questions of fact as to whether statements included in plaintiff's personnel file were likely to be disclosed to prospective employers).

In this case, Defendant Hesse engaged in conduct and made statements to other members of the OBPD and dock masters that stigmatized Plaintiffs' reputations, standing and good names within minutes of Plaintiffs terminations.  (Pl. 56.1-Hesse ¶¶ 264-65). Hesse subsequently posted at least 33 written stigmatizing statements concerning false bases for each of Plaintiffs' terminations on publically accessible Internet message boards, on a forum devoted to the specific subject the Ocean Beach Police Department.  (*See* Ex. 17). Indeed, this message board has been accessed over 70,000 times, and currently contains hundreds of separate posts.  (*See* Ex. 19).  Defendant Hesse also made false and stigmatizing statements directly to Plaintiffs' prospective employers.  (Pl. 56.1-Hesse ¶ 266-69).  The evidence of Defendant Hesse's publicization of stigmatizing statements concerning the patently false grounds for Plaintiffs' terminations is therefore overwhelming, precluding Defendant Hesse's entitlement to summary judgment on this element of their stigma plus due process liberty claims.

C.    **A Proper Nexus Exists to Demonstrate that Hesse's Stigmatizing Statements Constituted a Deprivation of Plaintiffs' Protected Liberty Interest Under the Due Process Clause of the Constitution**

"When government actors defame a person and -- either previously or subsequently -- deprive them of some tangible legal right or status, . . . a liberty interest may be implicated, even though the 'stigma' and 'plus' were not imposed at precisely the same time."  *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005) (citations omitted); *Patterson*, 370 F.3d at 335 (citing with approval *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 983 (9th Cir. 2002) (stating no requirement for strict temporal link between stigmatizing

15

statements and discharge; instead requirement is that stigmatizing statements be "so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye")).[4]  As set forth above, Defendant Hesse made stigmatizing statements at the time of Plaintiffs' termination and continued to do so in the ensuing months, as the subject of "Ocean Beach Police Corruption" received extensive coverage in local press.  (*See* Ex. 17).  Accordingly, the nexus between Defendant Hesse's unlawful termination and stigmatization of Plaintiffs precludes summary judgment on Plaintiffs' stigma-plus Due Process claims.

**V.      Whistleblower Claims Under Civil Service Law § 75-B**

Defendant Hesse attempt to argue that he is entitled to summary judgment on Plaintiffs' whistleblower claims under Civil Service Law § 75-b because Plaintiffs purportedly (i) were not "employees" at the time of their terminations, and (ii) purportedly failed to disclose their complaints to a "public body."  (*See* Hesse Mem. 11-12).  However, as set forth above and below, the record demonstrates that these claims are false and should be dismissed.

Defendant Hesse's claim that Plaintiffs were not employees at the time their employment was unlawfully terminated should be rejected for the reasons set forth at Part III.A., *supra.  See also* N.Y. Civ. Serv. § 75-b(1)(b) ("'employee' shall mean any person holding a position by appointment or employment in the service of a public employer").  As

---

[4]      *See also Owen v. City of Independence, Missouri*, 445 U.S. 622, 626-29, 633 (1980) (upholding stigma-plus claim against municipality, where stigmatizing statements were originally made in private by official imposing the "plus" and were actually released to public by another municipal actor who made additional stigmatizing statements; Court held that accusations had "received extensive coverage in the press, and even if they did not in point of fact 'cause' petitioner's discharge, the defamatory and stigmatizing charges certainly 'occurred in the course of the termination of employment.'").

to Defendant Hesse's second argument, N.Y. Civ. Serv. § 75-b(2)(a)(ii) prohibits retaliation against an employee who reports information "*which the employee reasonably believes to be true and reasonably believes constitutes an improper government action.*" *Id.* Defendant Hesse does not dispute that Plaintiffs' complaints to Defendant Hesse or former OBPD Chief Paradiso fall within this broad category of protected conduct. (*See* Hesse Mem. at 11). Rather, Defendant Hesse maintains that such complaints did not constitute a "disclosure to a government body" under N.Y. Civ. Serv. § 75-b(2)(b). (*Id.* at 12). However, Defendant Hesse disregards Plaintiffs' complaints to the Suffolk County DA's Office, which, concededly satisfy the requisite disclosure to a public body. (Pl. 56.1-Hesse ¶ 184). Moreover, Defendant Hesse also ignores the fact that Plaintiffs complained to Defendant Trustee Loeffler, who assured them that he was aware of the matters complained of and would take appropriate remedial action after being elected Mayor (Pl. 56.1-Hesse ¶ 181), as well as Trustee Einig (Ex. 74, 76).

Defendant Hesse likewise ignores the plain language of N.Y. Civ. Serv. § 75-b(2)(b), which provides that an employee "shall be deemed to have disclosed information to a governmental body" if the employee makes "a good faith effort to provide the appointing authority or his or her designee the information to be disclosed," *and* "provide[s] the appointing authority or designee a reasonable time to take appropriate action." *Id.* In this case, Plaintiffs' complaints to the Suffolk County DA's Office satisfy the requisite disclosure to a public body. (Pl. 56.1-OB ¶ 187), and Plaintiffs' complaints to Defendant Loeffler, together with Plaintiffs' reasonable reliance Defendant Loeffler's assurances that he would take action upon beginning service as Mayor (which came to pass in July 2006, shortly after Plaintiffs' termination (Pl. 56.1-OB ¶ 209)), also demonstrates the requisite disclosure to a governmental

17

body, precluding Defendants' entitlement to summary judgment on Plaintiffs' claims under N.Y.

Civ. Serv. § 75-b.  Accordingly, Defendant Hesse's motion must be denied.

## VI.    Defendant Hesse is Not Entitled To Summary Judgment on Plaintiffs' Claims of Defamation *Per Se*

### A.    Plaintiffs' Defamation Claims Are Properly Pleaded

There is no merit to Defendant Hesse's argument that he is entitled to judgment as a

matter of law based on Plaintiffs' purported failure to "plead with specificity the

defamatory statements made by Hesse." (*See* Hesse. Mem. at 14).  Although the C.P.L.R. §

3016(a) requires that defamation claims be stated particularly, its pleading requirements

are inapplicable to the present case, which is pending in federal court, and thus Defendant

Hesse's reliance on this argument is misplaced.  Instead, Plaintiffs' pleading is governed by

Fed. R. Civ. P. 8(a)(2), which merely requires that Plaintiffs set forth "a short and plain

statement of the claim showing that [they are] entitled to relief.[5]"  By stating facts that

generally allege the elements of their defamation claims, Plaintiffs have satisfied the short

and plain statement requirement under the Federal Rules.  *See Pasqualini v. Mortgageit,*

498 F. Supp. 2d 659 (S.D.N.Y. 2007) (citing *Markovic v. N.Y. City Sch. Constr. Auth.*, No. 99

Civ. 10339, 2000 U.S. Dist. LEXIS 13130, at *8-9 (S.D.N.Y. Sept. 13, 2000) ("Because

plaintiff's claims do not sound in fraud, the particularity requirement of *Fed. R. Civ. P. 9(b)*

does not apply.  In fact, defamation claims . . . have *expressly* been found to be subject to

*Fed. R. Civ. P. 8(a)* and *not* a more heightened standard of pleading.") (emphasis in

original)); *see also Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors, Inc.*, No. 96 Civ.

6320, 1997 U.S. Dist. LEXIS 9288, at *21-22 (S.D.N.Y. July 1, 1997) ("The Federal Rules of

---

[5]    The only special pleading requirements mandated by the Federal Rules of Civil Procedure are those contained in Rule 9, which makes no mention of defamation.

Civil Procedure require less particularity in pleading defamation than New York law requires.  In fact, 'the mode of pleading defamation is governed by Rule 8 [of the] Fed. R. Civ. P., which requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of *res judicata* if appropriate.'") (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980)).

Moreover, contrary to Defendant Hesse's misplaced arguments (Hesse. Mem. at 15), Plaintiffs' Complaint "need not state the precise words of the defamatory statements."  *See Baez v. Jetblue Airways Corp.*, No. 09-CV-596 (CPS)(SMG), 2009 U.S. Dist. LEXIS 67020, at *39-40 (E.D.N.Y. Aug. 3, 2009) (citing *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)).  "Nor must the complaint state the time, place and speaker of each defamatory statement, as 'those are Rule 9(b), not Rule 8(a) requirements.'" *Id.* (quoting *Sterling Interiors Group v. Haworth, Inc.*, 94-cv-9216 (CSH), 1996 U.S. Dist. LEXIS 10756, at *74 (S.D.N.Y. July 29, 1996)).  Accordingly, Plaintiffs have properly pleaded their defamation claims, and Defendant Hesse's claim to the contrary should be rejected.

### B.   Defendant Hesse Defamed Plaintiffs on Numerous Occasions

Under New York law, the elements of a cause of action for defamation are:  (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) "of and concerning" the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander *per se*, and (vii) not protected by privilege.  *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001).  The New York Court of Appeals has recognized four categories of statements as defamatory per se: (1) those that accuse the plaintiff of a serious crime; (2) those that "tend to injure another

19

in his or her trade, business or profession;" (3) those that accuse the plaintiff of having a "loathsome disease;" or (4) and those that impute "unchastity to a woman." *See Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992); *see also Donati v. Queens Ledger Newspaper Group*, 659 N.Y.S.2d 306 (2d Dep't 1997) ("It is well-settled that "[a] plaintiff suing in libel need not plead or prove special damages if the defamatory statement 'tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of [him] in the minds of right-thinking persons, and to deprive [him] of their friendly intercourse in society.'") (quoting *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369 (1977)).

### 1. *Stigmatizing and Defamatory Statements and Conduct at Time of Plaintiffs' Termination*

Defendant Hesse carefully orchestrated his termination of Plaintiffs as OBPD officers to maximize its humiliating and stigmatizing effect.  Indeed, Defendant Hesse sent a letter to each of the Plaintiffs, along with all of the other OBPD officers, inviting them to the annual OBPD pre-season meeting, scheduled for April 2, 2006.  (Ex. 54).  This was the first pre-season meeting that Defendant Hesse was to conduct in his new capacity as Acting Chief, as well as the first season where he could exercise his ill-gained authority to terminate officers in the OBPD.  (*See*, *e.g.*, Hesse 56.1 ¶¶ 23-24).  Defendant Hesse's letter to Plaintiffs requested that, as returning officers, they bring all uniforms, equipment and ID badges to the meeting "for inspection," and stated that "new ID cards will be issued to all." (*See* Ex. 54).

Before the meeting began, Defendant Hesse instructed the attendees to form a line outside the boathouse. (Pl. 56.1-Hesse ¶ 263).  Plaintiffs were the first in line, and were

called in to meet with Hesse, who then terminated their employment one-by-one.[6]

Defendant Hesse made them turn in their equipment in front of other officers, and had

another officer break into Mr. Carter's OBPD locker with bolt cutters.  (*See* Ex. 73).

Defendant Hesse then directed the Plaintiffs to depart through the throng of assembled

officers, to a water-taxi that he had scheduled to remove Plaintiffs from the Island. (Pl.

56.1-Hesse ¶ 264).  Defendant Hesse then stood on a balcony "giggling" at Plaintiffs as the

assembled officers mocked and jeered at Plaintiffs until they departed.  (*Id.* ¶ 265).

Defendant Hesse then falsely informed the remaining officers that he terminated Plaintiffs,

*inter alia*, because he had purportedly learned that they were to "wear a wire" for the

Suffolk County D.A. in connection with an investigation into claims of police brutality by

Hesse and other OBPD Officers and throw them all "under the bus."[7] (Pl. 56.1-Hesse ¶ 264;

Ex. 16).  These false, stigmatizing statements, standing alone, constitute defamation *per se.*

> **2.** **Stigmatizing and Defamatory Statements to Plaintiffs' Potential Employers Regarding Plaintiffs' Terminations and Fitness as Police Officers**

Defendant Hesse's campaign of retaliation against Plaintiffs for their opposition to

his unlawful and improper administration of the OBPD did not end with his public and

humiliating termination of Plaintiffs' employment on April 2, 2006.  Instead, Defendant

---

[6]  It bears mention that Defendant Hesse terminated Plaintiffs' employment, but knowingly retained uncertified officers who he knew were working in violation of Civil Service rules.

[7]  Similarly, is no merit to Defendant Hesse's argument, made of whole cloth, that he is immunized against claims of defamation *per se* in connection with the "Halloween Incident" by virtue of the "single instance rule."  (*See* Hesse Mem. at 19) (citing *Houston v. New York Post Co.*, No. 93-cv-4408 (KTD), 1996 U.S. Dist. LEXIS 19705 (S.D.N.Y. Dec. 19, 1996)).  Indeed, Defendant Hesse's reliance on *Houston* is completely misplaced, as that case held the single instance rule *inapplicable*, recognizing that courts have "refused to extend the rule to statements that 'smack more of reporting a characteristic of the plaintiff, *i.e.*, that [the plaintiff] is professionally unreliable or irresponsible, than of reporting one single act or omission which in some way reflects badly on his professional competence."  *Id.* at *9 (quoting *Sadowy v. Sony Corp. of America*, 496 F. Supp. 1071, 1077-78 (S.D.N.Y. 1980)).  In this case, Defendant Hesse's defamatory statements targeted Plaintiffs' fundamental professional competence, and are therefore properly categorized as defamation *per se.*

Hesse undertook a campaign of retaliatory defamation bent on fulfilling his promise that Plaintiffs' "careers in law enforcement are over," and that Plaintiffs never "will [n]ever work another law enforcement job here in the United States." (Ex. 13; Pl. 56.1-Hesse ¶ 228); *see also Curto v. Med. World Communs., Inc.*, 388 F. Supp. 2d 101, 112 (E.D.N.Y. 2005) (Although an employer's critical assessment an employee's job performance can constitute protected opinion rather than fact, given that "the gravamen of Plaintiff[s'] Complaint is that Defendants wrongfully terminated [them] based upon . . . retaliation, it is possible that [the defendant's] statements in this regard may have been merely pretextual and thus presumptively false.") (citing *Sadowski v. Technical Career Insts.*, 93 Civ. 0455, 1994 U.S. Dist. LEXIS 15590, at *14 n.2 (S.D.N.Y. Nov. 2, 1994) (denying motion for summary judgment on defamation claim based upon memorandum summarizing reasons for plaintiff's termination because memorandum may have been pretextual and thus false)).

By way of example only, on or about May 15, 2006, Defendant Hesse contacted Gregg Decanio, who was responsible for evaluating Plaintiff Carter's application for promotion to the position of Park Ranger III, and impugned Mr. Carter's fitness as a law enforcement officer and employee by falsely claiming that Plaintiff Carter was terminated for "sleeping the tour away" during his shifts at the OBPD.  (Pl. 56.1-Hesse ¶ 268; Ex. 21; Ex. 14 at 3:8-21).).  Indeed, Plaintiff Carter was never written up or disciplined for his alleged sleeping.  Moreover, not only is this claim patently false, but Chief Paradiso admitted that Plaintiff Carter never slept on the job. (Pl. 56.1-Hesse ¶ 84).

Defendant Hesse also brazenly boasted to OBPD officers about the retaliatory and defamatory statements that he had provided to the Suffolk County Police Department to prevent Mr. Lamm from securing a position as a police officer in May 2006.  (*Id.* ¶ 269).

Similarly, when Mr. Fiorillo applied and was scheduled to interview for a police officer position with the Southampton Police Department, Defendant Hesse made retaliatory and defamatory statements alleging that Plaintiff was terminated for some unspecified misconduct, to Sergeant Scott Foster (who was handling Mr. Fiorillo's application), impugning Mr. Fiorillo's competence and fitness as a police officer. (*Id.* ¶ 267).   In reliance on Defendant Hesse's baseless, false and defamatory misrepresentations, Sergeant Foster contacted Mr. Fiorillo and cancelled his scheduled interview.  (*See* Ex. 24). When Mr. Fiorillo inquired as to the basis for the abrupt cancellation, and tried to explain his concern about the possibility that it may have had something to do with Defendant Hesse's retaliatory motivation, Sergeant Foster refused to provide an explanation.  (*Id.*).  Similarly, Mr. Nofi's application for a position with the Collier County, Florida Sheriff's Department also was terminated in response to Defendant Hesse's mischaracterization of Mr. Nofi's termination and unfounded lawsuit against Defendant Hesse and the OBPD.[8]  (Pl. 56.1- Hesse ¶ 266).

Defendant Hesse's defamatory statements to Plaintiffs' potential employers were part and parcel of his admitted campaign of retaliation based on Plaintiffs' repeated complaints about his misconduct, where were protected under the First Amendment, as well as Plaintiffs' refusal to participate in, and explicit opposition to, Defendant Hesse's sham investigation and cover-up of uncertified OBPD officer Gary Bosetti's assault against a civilian.  Moreover, Defendant Hesse's statements to Plaintiffs' potential employers plainly imputed to Plaintiffs misconduct and unfitness as law enforcement professionals, and as

---

[8]        At the time of Defendant Hesse's false statements to the Collier County investigator, there was no "lawsuit" by Mr. Nofi pending against Hesse or the OBPD.

employees generally.  *See Gjonlekaj v. Sot*, 308 A.D.2d 471, 473-74 (2d Dep't 2003) ("[A] defamatory statement is libelous *per se* if it imputes fraud, dishonesty, misconduct, or unfitness in conducting one's profession.").  Accordingly, Defendant Hesse's motion for summary judgment on Plaintiffs claims for defamation *per se* should be denied.

### 3.   *Stigmatizing and Defamatory Statements Posted on Publicly Accessible Internet Message Boards*

Defendant Hesse's attempt to mischaracterize the defamatory statements that he acknowledges posting on publically accessible internet message boards – to say nothing of the statements posted from the *same IP addresses* which Defendant Hesse has failed to acknowledge at all – as non-actionable expressions of mere "opinion" are devoid of merit. (*See* Hesse Mem. at 16-18).  By way of example only, Defendant Hesse posted the following stigmatizing and defamatory statements about Plaintiffs on an internet message board devoted to the subject of "Ocean Beach Police Corruption:"

> Kevin Lamm and Frank Fiorillo . . . . The Deputy Chief let you go because you guys abuse the public.  That is not how we do business in this department. . . . Now you have even less credibility than you did before. Congratulations for truely [sic] earning the title "**RAT**" Niether [sic] of you will ever work another law enforcement job here in the United States. . . . Good luck you rat bastards!

(Pl. 56.1-Hesse ¶ 228).  Defendant Hesse's reference to himself in the third person as "The Deputy Chief" proceeds to falsely assert that Plaintiffs were terminated specifically because "you guys abuse the public," which is plainly a statement of fact, rather than opinion.

Moreover, although it is true that expressions of "pure opinion" may not be actionable, Defendant Hesse fails to present any argument regarding the equally settled principle that "when a defamatory statement of opinion implies that it is based upon undisclosed detrimental facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and actionable."  *See Parks v. Steinbrenner*, 131 A.D.2d

24

60, 62 (1st Dep't 1987) (citing *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289-90 (N.Y. 1986)).

Defendant Hesse similarly ignores that a defamatory opinion "which is ostensibly accompanied by a recitation of the underlying facts upon which the opinion is based, but those underlying facts are either falsely misrepresented or grossly distorted" is also actionable as a "mixed opinion." *Id.* (citing *Silsdorf v. Levine*, 59 N.Y.2d 8 (N.Y. 1983)).

To the extent that Defendant Hesse's reference to Plaintiffs' purportedly "earning the title RATS" might, *arguendo*, be construed as "opinion" it at also a statement that implicitly rests on undisclosed facts concerning the circumstances of Plaintiffs' termination. *See Parks*, 131 A.D.2d at 62. Thus, this message cannot be characterized merely as Defendant Hesse's "opinion" as to the reasons for Plaintiffs termination, but rather constitutes a *per se* defamatory statement of apparent fact as to Plaintiffs' gross misconduct and unsuitability to serve as police officers. *See Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 178 (2d Cir. 2000) ("If the words are reasonably susceptible of multiple meanings . . . it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood.") (internal citation omitted).

Accordingly, this message board postings, as well as the posts *at* Pl. 56.1-Hesse ¶¶ 225, 228-39, 242-49, are clear instances of actionable defamation *per se* by Defendant Hesse. Finally, Defendant Hesse's suggestion that "no prospective employers" of Plaintiffs were among the more than 70,000 viewers of his defamatory postings should not be credited in his favor as the moving party on summary judgment. (*See* Ex. 19).

## VII.   **Plaintiffs Have Satisfied Their Burdens To Demonstrate Defendant Hesse's Tortious Interference With Prospective Business Relationships And That Summary Judgment Should Be Denied**

As set forth above, Defendant Hesse repeatedly interfered with Plaintiffs' efforts to secure new employment by providing false, stigmatizing information that constituted defamation *per se* to Plaintiffs' potential employers, and to all internet users generally. Defendant Hesse correctly notes that a claim of tortious interference with prospective business relationships requires that a defendant interfere "by directing some activities towards the third party and convincing the third party not to enter a business relationship with the Plaintiff," and generally requires "that the defendant's conduct amounts to a crime or an independent tort." (Hesse Mem. at 27) (citations omitted)*; see also Treppel v. Biovail Corp.*, 03 Civ. 3002 (PKL), 2005 U.S. Dist. LEXIS 2737, at *14 (S.D.N.Y. Feb. 22, 2005) ("A recognized exception to this general rule applies where a defendant engages in conduct "for the sole purpose of inflicting intentional harm on plaintiffs.") (citations omitted).

As set forth above, Plaintiffs have satisfied this showing.  Accordingly, Defendant Hesse's motion for summary judgment on Plaintiffs' claims for tortious interference with prospective business relationships must be denied.  *See Purgess v. Sharrock*, 33 F.3d 134, 142 (2d Cir. N.Y. 1994) (affirming jury verdict on claim of tortious interference with prospective business relations where record demonstrated that (1) the plaintiff's "attempts to obtain employment" constituted "business relations" between the plaintiff and the prospective employers; (2) the defendants knew of the plaintiff's attempts to obtain employment with the prospective employers; (3) the defendants' false statements to the employers and failures to respond to inquiries from the prospective employers established that the defendants acted with "malice" and "unfairly or improperly;" and (4) evidence that the prospective employers "had serious reservations about hiring [the plaintiff] after

communicating with" the defendants established that the defendants' conduct caused "injury" to the plaintiff's relationships with the prospective employers.).

### VIII.   Defendant Hesse's Motion for Summary Judgment on Plaintiffs' Substantive Due Process and Termination In Violation of Public Policy Claims Must be Denied

An "abuse of executive power so clearly unjustified by any legitimate objective of law enforcement [is] barred by the Fourteenth Amendment." *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). "Substantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) (citations omitted); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) ("Substantive due process protects [individuals] against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect' or 'ill-advised.'"). As set forth below, Plaintiffs have satisfied these standards.

Plaintiffs were terminated by Defendant Hesse in reprisal for refusing to become complicit in a cover-up of police brutality, repeatedly raising complaints in opposition misconduct by Hesse and others that represented a threat to public safety, Hesse's fear that they would provide damaging information to the district attorney in Hesse's pending criminal matter, and Plaintiffs' opposition to OBPD practices that represented a threat to public safety. (*See* Ex. 13, 16, 73-77). *See generally Weider v. Skala*, 80 N.Y.2d 628 (N.Y.

1992) (permitting breach of contract action by attorney who was at-will employee and was fired for forcing his law firm to report disciplinary violations of the attorney's fellow associate, because it was implicit condition of plaintiff's at-will employment that, in conducting the firms legal practice, both plaintiff and firm would do so in compliance with prevailing rules of conduct and ethical standards of profession).  It is beyond cavil that Defendant Hesse's termination of Plaintiffs' employment as OBPD officers on these grounds was "a gross abuse of governmental authority" and "conscience shocking."  Indeed, Plaintiffs were terminated from their employment as law enforcement officers for refusing to *violate* the law.  Accordingly, Plaintiffs are entitled to proceed to trial on their claims based on substantive due process and termination in violation of public policy.

## IX.     Defendant Hesse is Liable for Plaintiffs' Claims of Negligent Hiring And Supervision Of Unfit Employees

"Under New York law an employer is required to exercise such an oversight and supervision of . . . servants, that if they afterwards become habitually or notoriously incompetent or unfit, from carelessness or bad habits, to perform their duties, this incompetency, if long continued, should be discovered and guarded against."  *Brink's, Inc. v. New York*, 717 F.2d 700, 705 (2d Cir. 1983) (quoting *Whittaker v. Delaware and Hudson Canal Co.*, 126 N.Y. 544, 549 (1891)).  "[T]o recover damages for injuries sustained because an employer has hired or retained an incompetent employee, a plaintiff must establish a duty owed by the defendant employer, a breach of that duty by the defendant employer, and damages proximately caused by the defendant employer's breach."  *Perry v. Burger King Corp.*, 924 F. Supp. 548, 552 (S.D.N.Y. 1996) (quoting *Vincenzino v. Calvosa*, 572 N.Y.S.2d 611, 612 (N.Y. Sup. Ct. 1991)).

In this case, as set forth above, Defendant Hesse unlawfully terminated and defamed Plaintiffs.  It is undisputed that Defendant Hesse's exercise of supervisory authority over the OBPD was contrary to clear provisions of Civil Service Law (Pl. 56.1-Hesse ¶ 85), which exist for the specific purpose of ensuring minimum standards of competence among government employees.  *See generally Wood v. New York*, 274 N.Y. 155, 161 (N.Y. 1937).  Had Defendant Hesse refrained from willfully continuing to act in the proscribed supervisory capacity that enabled him to harm Plaintiffs, Plaintiffs would not have been harmed.

Defendant Hesse's motion for summary judgment on Plaintiffs' negligent hiring and supervision claims makes no effort to refute these points, but argues instead that Plaintiffs have purportedly failed to show that "defendant/employer knew or should have known of its employee's propensity to engage in acts warranting dismissal, yet failed to act accordingly."  (Hesse Mem. at 22) (quoting *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 401 (E.D.N.Y. 2005)).  However, as set forth above, Defendant Hesse – as well as uncertified OBPD officer Gary Bosetti, who Plaintiffs identified as the perpetrator of an assault on a civilian on the night of Halloween 2004 (*see* Pl. 56.1-Hesse ¶ 94-125); and uncertified OBPD officer Patrick Cherry, who Hesse appointed to conduct a sham "investigation" of the Halloween incident, after Plaintiffs refused to comply with Hesse's demands to falsify the findings of their initial investigation (*see* Pl. 56.1-Hesse ¶ 126-62) – were employed in violation of Civil Service Law, as Defendant Hesse and the Ocean Beach Defendants knew.[9]  (*See* Ex. 30); *see also* N.Y. Civ. Serv. § 101 ("Misdemeanor to pay salary

---

[9]    Plaintiffs also complained, *inter alia*, about Defendants' hiring and retention of uncertified OBPD Officers Moller and Hardman.  *See* (Pl. 56.1-Hesse ¶ 173).

or compensation for which certification has been refused").  If Defendant Hesse had not continued to act in his unauthorized supervisory capacity, and continued the unauthorized employment of Bosetti and Cherry, Plaintiffs would not have sustained the harms of retaliatory termination and defamation.  Accordingly, Defendant Hesse's motion for summary judgment on Plaintiffs' claims for negligent hiring and supervision must be denied.

## **CONCLUSION**

For all the reasons set forth above, Defendant Hesse's motion for summary judgment should be denied in its entirety.[10]

Dated:   December 29, 2009          Respectfully submitted,
         New York, NY

                                   **THOMPSON WIGDOR & GILLY LLP**

By: _____
                  Douglas H. Wigdor
                  Andrew Goodstadt
                  Ariel Y. Graff
                  85 Fifth Avenue
                  New York, New York 10003
                  Telephone: (212) 257-6800
                  Facsimile: (212) 257-6845
                  dwigdor@twglaw.com
                  agoodstadt@twglaw.com
                  agraff@twglaw.com

                  *COUNSEL FOR PLAINTIFFS*

---

[10]     Plaintiffs, however, voluntarily dismiss from this case the: Seventh Cause of Action (brought under the Equal Protection clause of the 14th Amendment) in light of *Engquist v. Oregon Dept. of Agriculture*, 128 S. Ct. 2146 (2008), which the Supreme Court decided during the pendency of this case; Ninth Cause of Action (brought under New York Labor Law § 740); and the Thirteenth Cause of Action (brought under the RICO statute).