**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X

EDWARD CARTER, FRANK FIORILLO,  KEVIN
LAMM, JOSEPH NOFI, and THOMAS SNYDER,

                        Plaintiffs,

        v.

INCORPORATED VILLAGE OF OCEAN BEACH;
MAYOR JOSEPH C. LOEFFLER, JR., individually
and in his official capacity; former mayor NATALIE K.
ROGERS, individually and in her official capacity,
OCEAN BEACH POLICE DEPARTMENT; ACTING
DEPUTY POLICE CHIEF GEORGE B. HESSE,
individually and in his official capacity; SUFFOLK
COUNTY; SUFFOLK COUNTY POLICE
DEPARTMENT; SUFFOLK COUNTY DEPARTMENT
OF CIVIL SERVICE; and ALISON SANCHEZ,
individually and in her official capacity,

                        Defendants.

-----------------------------------------------------------------------X

Case No. 07-Civ-_____

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 2 1 2007 ★
BROOKLYN OFFICE

CV 07 1215

WEXLER, J

BOYLE, M.J.

## COMPLAINT AND JURY DEMAND

Plaintiffs Edward Carter, Frank Fiorillo, Kevin Lamm, Joseph Nofi and Thomas Snyder,

(collectively "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint

in this action, hereby respectfully allege, upon knowledge as to themselves and their own actions

and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

Plaintiffs are five police officers who had the courage to overcome the "blue wall of

silence" and fulfill their duty to protect the public by speaking out in opposition to the regime of

endemic corruption within the Ocean Beach Police Department ("OBPD" or the "Department").

Plaintiffs' repeated and tireless efforts to champion integrity and the highest values of public

service have met with abject failure, as the Department has inexorably fallen under the control of officers and commanders who, while in uniform, drink alcohol and frequent local bars, recklessly turn their backs on minors consuming alcohol and others using drugs, associate with known criminals, allow their friends and acquaintances to violate the law while in Ocean Beach with impunity, and attempt to cover-up numerous acts of despicable police brutality by coercing the silence of witnesses, victims and the very people who are oath-bound to enforce the laws that are supposed to protect us.

Ultimately, when confronted by Plaintiffs' refusal to become complicit in the OBPD's rampant lawlessness and betrayal of the public trust, Defendants not only terminated Plaintiffs' employment as police officers, but also undertook a concerted effort to defame Plaintiffs and destroy their law enforcement careers. This lawsuit aims to restore Plaintiffs' good names, to reform the Ocean Beach Police Department, to ensure the safety of Ocean Beach residents and those who come to visit Ocean Beach, and to punish those who are responsible for visiting this shocking litany of dangerous and unlawful conduct upon Plaintiffs and the citizens and visitors of Ocean Beach.

## NATURE OF THE CLAIMS

1.      This is an action for preliminary and permanent injunctive relief and for damages to redress the wrongful termination, retaliation and other unlawful conduct perpetrated against Plaintiffs in violation of their federal and state constitutional rights to due process of law, equal protection of the laws, and freedom of speech, as well as for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO").

2.      This action also seeks damages and other relief pursuant to New York Civil Service Law § 75, New York Labor Law § 740, as well as for claims of Defamation, Civil

2

Conspiracy, Termination in Violation of Public Policy and Negligent Retention of an Unfit Employee under the laws of New York State.

3.　　Plaintiffs, therefore, seek immediate reinstatement, complete "make whole" relief and other compensatory and punitive damages, as well as other equitable relief, to redress the violation of their constitutional, statutory and common law rights.

## JURISDICTION AND VENUE

4.　　This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343, 1983, 1985 and 1986 as this action involves federal questions regarding the deprivation of Plaintiffs' rights as secured by the Constitution and laws of the United States. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state or local law pursuant to 28 U.S.C. § 1367(a).

5.　　Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

6.　　Plaintiff Edward Carter ("Officer Carter") is a male adult citizen who resides in Suffolk County, New York. Officer Carter was employed as a Police Officer in the Incorporated Village of Ocean Beach from May 1991 to September 1993, and from May 2001 to April 2, 2006, when he was unlawfully removed from his employment duties in retaliation for his decision to come forward and raise complaints of public corruption and other violations of law and disregard of public and officer safety. Officer Carter was duly certified to serve as a police officer in Suffolk County in or around May 1991.

3

7.      Plaintiff Frank Fiorillo ("Officer Fiorillo") is a male adult citizen who resides in Suffolk County, New York.  Officer Fiorillo was employed as a Police Officer in the Incorporated Village of Ocean Beach from April 27, 2002 to April 2, 2006, when he was unlawfully removed from his employment duties in retaliation for his decision to come forward and raise complaints of public corruption and other violations of law and disregard of public and officer safety, as well as for his refusal to engage in a cover-up of police brutality.  Officer Fiorillo was duly certified to serve as a police officer in Suffolk County on or about June 3, 2002.

8.      Plaintiff Kevin Lamm ("Officer Lamm") is a male adult citizen who resides in Suffolk County, New York.  Officer Lamm was employed as a Police Officer in the Incorporated Village of Ocean Beach from May 9, 1998 to April 2, 2006, when he was unlawfully removed from his employment duties in retaliation for his decision to come forward and raise complaints of public corruption and other violations of law and disregard of public and officer safety, as well as for his refusal to engage in a cover-up of police brutality.  Officer Lamm was duly certified to serve as a police officer in Suffolk County on or about May 8, 1998.

9.      Plaintiff Joseph Nofi ("Officer Nofi") is a male adult citizen who resides in Suffolk County, New York.  Officer Nofi was employed as a Police Officer in the Incorporated Village of Ocean Beach from May 2001 to April 2, 2006, when he was unlawfully removed from his employment duties in retaliation for his decision to come forward and raise complaints of public corruption and other violations of law and disregard of public and officer safety.  Officer Nofi was duly certified to serve as a police officer in Suffolk County on or about May 5, 2000.

10.      Plaintiff Thomas Snyder ("Officer Snyder") is a male adult citizen who resides in Suffolk County, New York.  Officer Snyder was employed as a Police Officer in the

Incorporated Village of Ocean Beach from May 1991 to July 1997, and from June 2001 to April 20, 2006, when he was unlawfully removed from his employment duties in retaliation for his decision to come forward and raise complaints of public corruption and other violations of law and disregard of public and officer safety, as well as for his refusal to engage in a cover-up of police brutality. Officer Snyder was duly certified to serve as a police officer in Suffolk County in or around May 1991.

11.     Defendant Incorporated Village of Ocean Beach ("Ocean Beach" or the "Village") is a public employer with its principal place of business at Bay and Cottage Walks, Ocean Beach, New York.

12.     Defendant Ocean Beach Police Department is a public employer with its principal place of business at Bay and Bayberry Walks, Ocean Beach, New York.

13.     Defendant George B. Hesse  ("Hesse") was and is employed by Ocean Beach and the OBPD, with his principal place of business at Bay and Bayberry Walks, Ocean Beach, New York.  Upon information and belief, Hesse resides in Suffolk County, New York.  At all times hereinafter mentioned, Defendant Hesse was and is the official responsible for the management and supervision of the OBPD, including its maintenance and operation, as well as the hiring, promotion and discipline of employees, and all other employment related issues.  Additionally, Hesse was and is a policymaker for the OBPD, charged with the responsibility of ensuring that employees are not subject to unlawful treatment.  He is also responsible for properly training and supervising employees of the OBPD.  Hesse engaged in the unlawful conduct as set forth below.

14.     Defendant Mayor Joseph C. Loeffler, Jr. ("Loeffler") is and has been employed by the Village of Ocean Beach as the Mayor of Ocean Beach from July 2006 to the present, with his principal place of business at Bay and Cottage Walks, Ocean Beach, New York.  As mayor of

5

Ocean Beach, Loeffler also serves as Police Commissioner and is ultimately responsible for the OBPD's maintenance and operations, including, but not limited to, the hiring, firing, granting of promotions and discipline of employees and all other employment related issues. Additionally, Loeffler is a policymaker for Ocean Beach charged with the responsibility of ensuring that employees are not subjected to unlawful treatment.

15.     Defendant Natalie K. Rogers ("Rogers") was employed by the Village of Ocean Beach as the Mayor of Ocean Beach from July 1998 through July 2006, with her principal place of business at Bay and Cottage Walks, Ocean Beach, New York. As mayor of Ocean Beach, Rogers also served as Police Commissioner of Ocean Beach and was ultimately responsible for the OBPD's maintenance and operations, including, but not limited to, the hiring, firing, granting of promotions and discipline of employees and all other employment related issues. Additionally, Rogers was a policymaker for Ocean Beach charged with the responsibility of ensuring that employees were not subjected to unlawful treatment.

16.     Upon information and belief, Defendant Suffolk County was and is a municipal corporation of the State of New York, with its principal place of business at H. Lee Dennison Building, 100 Veterans Memorial Highway, Hauppauge, New York.

17.     Defendant Suffolk County Police Department was and is an agency of the State of New York and is a public employer with its principal place of business at 30 Yaphank Avenue, Yaphank, New York.

18.     Defendant Suffolk County Department of Civil Service ("Suffolk County Civil Service") was and is a public employer with its principle place of business at North County Complex, 725 Veterans Memorial Highway, Building #158, Hauppauge, New York. Suffolk County Civil Service is responsible for overseeing personnel actions taken by approximately 240

6

employing jurisdictions, including Ocean Beach and the OBPD, and for ensuring that such personnel actions conform to Suffolk County Civil Service regulations and other applicable laws.

19.     Defendant Alison Sanchez ("Sanchez") is and has been employed by the Suffolk County Department of Civil Service, with her principal place of business at North County Complex, 725 Veterans Memorial Highway, Building #158, Hauppauge, New York.  Sanchez was and is directly responsible for overseeing personnel actions taken by Ocean Beach and the OBPD, and for ensuring that such personnel actions conform to Suffolk County Civil Service regulations and other applicable laws.

## ADMINISTRATIVE PROCEEDINGS

20.     Plaintiffs timely served a Notice of Claim and Demand against Defendants on June 30, 2006.

21.     Plaintiffs duly appeared for examinations pursuant to General Municipal Law 50(h) before counsel for Defendants Incorporated Village of Ocean Beach and the Ocean Beach Police Department on January 23-24 and January 31, 2007.

22.     All other administrative prerequisites have been satisfied.

## FACTUAL ALLEGATIONS

**Plaintiffs' Employment as Police Officers for the Village of Ocean Beach**

23.     Plaintiffs were each hired as Ocean Beach Police Officers by Police Chief Edward Paradiso.

24.     Plaintiffs are all graduates of the Suffolk County Police Academy ("SCPA"), having successfully completed a law enforcement training program sanctioned by the Municipal Bureau of Police.

7

25.     Plaintiffs are also certified by Suffolk County Civil Service to work as police officers in Ocean Beach, having satisfied an array of medical, physical agility, psychological, and mandatory polygraph examinations, as required, as well as comprehensive backgrounds checks.

26.     Throughout their careers with the OBPD, Plaintiffs performed their duties in an exemplary fashion, and were never the subject of a public complaint, investigation or disciplinary action.

27.     In fact, Plaintiffs regularly received commendations from residents and business owners in Ocean Beach.

**Hesse Installs a Regime of Corruption and Unlawful Abuse of Power**

28.     Hesse was vested with the authority of Police "Sergeant" in or around 2000, despite the fact that, upon information and belief, Hesse never passed the required Suffolk County Civil Service Examination to qualify for the position of Sergeant.

29.     In his capacity as Sergeant, Hesse exercised direct supervisory authority over officers assigned to the night tour of duty, including Plaintiffs.  Upon information and belief, Hesse was temporarily removed from his position as commander of the night shift for several months in or around 2002, in response to public complaints concerning his inadequate performance as night shift commander.

30.     In or around May 2002, Hesse began to install and consolidate a regime of corruption, cronyism and outright thuggery in the Ocean Beach Police Department.

31.     Indeed, several purported officers in the OBPD failed to even take, let alone pass, the regimen of tests required for certification as a police officer in Suffolk County.

32.     As just one example, Hesse allowed his allies on the force — many of whom were unqualified and had not been duly certified by Suffolk County Civil Service — to spend their shifts drinking at local bars while in uniform and officially on-duty.  Moreover, Hesse instructed other officers under his command, including Plaintiffs, to neglect their own duties in order to chauffeur their intoxicated colleagues both inside and out of Ocean Beach.

33.     Hesse also encouraged and enabled on-duty officers to drink alcohol in the police station.  Indeed, Hesse would collect money from these officers to have "rocket fuel," a mixed alcoholic beverage containing 160 proof vodka, tequila and rum, delivered by a local bartender to the station for Hesse and his clique of officers to drink while on-duty in the police station.

34.     Moreover, beginning in May 2002, Hesse undertook a concerted effort to advance a handpicked cadre of uncertified and unqualified police officers, who had not been certified for duty by the Civil Service Department in Suffolk County.  These newly hired, uncertified officers soon aligned themselves with Hesse and his friends on the force, further marginalizing the influence of Plaintiffs and other dedicated and properly certified OBPD Officers.

35.     Hesse also hired civilians as police dispatchers, despite the fact that they did not meet minimum standards, in violation of Suffolk County Civil Service Law.

36.     Plaintiffs each advised Hesse on numerous occasions that the Department and Village were left dangerously short of personnel when Plaintiffs were assigned to chauffer intoxicated officers and their civilian friends, and while such uncertified officers were drinking in the local bars.  Hesse ignored Plaintiffs' repeated complaints, without regard for any resulting threat to public safety and Plaintiffs' own safety.

37.     Indeed, the OBPD's retention of uncertified officers posed a constant threat to public safety and Plaintiffs' own safety.  For example, on one occasion Officer Nofi called in a "10-1," the Suffolk County police radio code for "officer in need of assistance."  This is an emergency code that requires an immediate response because it indicates that an officer's life is in danger.  However, Officer Nofi received no response because the uncertified officer on-duty had not been properly trained at the Suffolk County Police Academy or by a properly certified Ocean Beach field training officer, and therefore failed to recognize the County's police radio codes.  When Officer Nofi later complained to Hesse that the OBPD's uncertified officers represented a severe danger to public and officer safety, Hesse and the uncertified officer responded by mocking and laughing at him.

38.     Upon information and belief, the Suffolk County Police Department compounded and exacerbated this severe danger to public safety by allowing certain of the uncertified officers to obtain firearms certification, even though these officers did not have pistol permits and had not been trained or certified by the Suffolk County Police Academy or any other accredited police training agency in Suffolk County.

39.     In addition, Hesse allowed the uncertified officers to assign dock masters to "cover" their shifts at the OBPD, blithely entrusting law enforcement power and responsibility to untrained and unsupervised civilians.

40.     Hesse also allowed the uncertified officers to drink beer while patrolling in police vehicles.  In fact, when Plaintiffs would confiscate beer from people on the beach, Hesse and the uncertified officers would drink the confiscated beer, and even would tell Plaintiffs what brands of beer to confiscate.  Plaintiffs each frequently complained to Hesse about this unlawful and dangerous conduct.

10

41.     Rather than address Plaintiffs' numerous complaints about these violations of law and department policy, Hesse instructed Plaintiffs to remove empty beer cans and other refuse that the uncertified officers abandoned in their vehicles and left strewn about the police station after a night on duty.

42.     Despite Plaintiffs' repeated complaints, Hesse's policy of allowing the uncertified officers to become intoxicated while on-duty became even more expansive during the Summer of 2004.

43.     By way of example only, Officer Snyder was assigned to OBPD headquarters, where he served as an emergency dispatcher.  Notwithstanding Hesse allowing the uncertified officers to frequent bars while on-duty, Officer Snyder frequently would attempt to contact them over the emergency police radio if no other officers were available to respond to a public emergency.  In retaliation for what they perceived as Officer Snyder's unwarranted interruptions, the uncertified officers began confiscating the police Department's emergency cell phone from Officer Snyder at the start of his shift – despite the fact that the emergency cell phone was the exclusive mechanism for receiving emergency calls from the public.  When their shifts ended, they would return the emergency cell phone to Officer Snyder, who would then review a series of unanswered messages from residents and/or visitors of Ocean Beach who had attempted in vain to contact the OBPD.

**Unlawful Obstruction of Justice and Selective Enforcement Orchestrated by Hesse**

44.     In June 2002, Officer Fiorillo, while patrolling in Ocean Beach, received a call regarding a fight at the village docks.  When Officer Fiorillo responded at the scene, he observed what appeared to be an adult male punching an adult female.  Officer Fiorillo restrained the aggressor (who was in fact a highly intoxicated off-duty police officer) and offered assistance to

11

the victim, acting, as always, in accordance with his commitment to the highest standards of professionalism and integrity.

45.     However, later that night, Hesse ordered Officer Fiorillo and other on-duty officers to report to police headquarters. Instead of commending Officer Fiorillo's selfless act of public service, Hesse proceeded to ridicule, berate and condemn him for intervening in the fight. In the presence of other assembled officers, including Officers Lamm and Nofi, Hesse chided Officer Fiorillo and identified the aggressor as a close personal friend and senior OBPD Officer. Rather than disciplining this Officer, Hesse insisted that his friends in the OBPD be afforded the freedom to violate the law with impunity.

46.     In a separate incident that occurred shortly thereafter, Officer Fiorillo was on patrol, when Hesse, who was in uniform and on-duty, called and demanded that Officer Fiorillo transport him to a party at a private residence in Ocean Beach, leaving the Village understaffed and under patrolled. Approximately two hours later, Hesse instructed Officer Fiorillo to return to the same residence and chauffeur him home, again leaving the Village without adequate police patrol.

47.     Upon returning to the party to pick up Hesse, Officer Fiorillo recognized the residence as the home of a known drug dealer. When Officer Fiorillo inquired as to Hesse's relationship with the drug dealer, Hesse described him as a close personal friend, and, incredibly, forbade Officer Fiorillo to interfere with the known drug dealer's activities in Ocean Beach.

48.     Indeed, Hesse freely admitted to Officer Fiorillo and others that he regularly spent the night at the known drug dealer's residences in Ocean Beach and Manhattan.

49.     Hesse also required Plaintiffs, during their tours of duty, to chauffer him to and from different residences both inside and out of Ocean Beach so Hesse could engage in sexual escapades. These trips, which happened on multiple occasions, left the Village under-patrolled and placed the public safety at risk. And, when Hesse would return from such locations, he would brag about sleeping with multiple women both inside and outside of Ocean Beach, making such comments as "She just had the German Sausage."

50.     As another example of Hesse's improper selective enforcement, in or around July 2003, Officer Fiorillo issued a summons to the son of a business owner in Ocean Beach. The husband of the business owner later confronted Officer Fiorillo and demanded that he withdraw the summons because he "takes care of the Bosetti brothers," (two uncertified officers) at the OBPD. When Officer Fiorillo refused to withdraw the summons and advised the Businessman to explain his objections to a judge, Hesse countermanded Officer Fiorillo's decision and personally tore the summons to pieces. Officer Fiorillo later learned that the business owner was a close acquaintance of Hesse and his drug-dealing friend.

51.     Clearly outraged by Plaintiffs' enforcement of the laws against his friends and acquaintances, Hesse instructed Plaintiffs and other officers under his command not to issue summons to certain bars that Hesse and his clique of uncertified officers frequented both on and off duty, even though those bars regularly served alcohol to minors. Plaintiffs frequently complained to Hesse about his unlawful directives to selectively enforce the law by disregarding crimes and other violations of law committed by Hesse's friends.

52.     In yet another incident in or around May 2004, Officers Snyder and Lamm were on a foot-post at Bay and Ocean Breeze Walks when they witnesses a downpour of beer fall at their feet as well as a laughing crowd on a third floor balcony above. Officers Snyder and Lamm

13

contacted Hesse for assistance, and when he arrived, the trio proceeded to the apartment, where they observed a large group of underage youths drinking alcohol without any adult supervision, as well as an extensive collection of illicit drug paraphernalia.

53.     Oblivious to the evident harm that could befall a group of intoxicated minors who had no compunctions about openly pouring beer off a balcony, Hesse directed Officers Lamm and Snyder not to issue any citations or make any arrests, despite the fact that the youths were breaking the law.

54.     Subsequently, the OBPD received complaints that occupants of the same apartment were violating noise ordinances and endangering pedestrians by throwing objects onto the sidewalk.  The Department also was notified that the youths were continuing to unlawfully consume alcohol and use other illegal drugs.  However, Hesse continued to prohibit Plaintiffs' investigation of these alleged crimes by instructing them to stay away from that apartment. Indeed, on another occasion Plaintiffs even observed certain of the uncertified officers on the apartment balcony, drinking and socializing with the same group of minors.

55.     In yet another instance of Hesse encouraging minors to abuse alcohol, Hesse intervened when another officer issued a citation to a minor carrying a case of beer.  In the presence of Officers Lamm and Snyder, as well as the officer who had attempted to issue the citation, Hesse returned the case of beer to the underage youth.  Hesse later ordered that Officer Lamm refrain from issuing citations or enforcing the law against this youth.

56.     Rather than uphold and enforce the laws, Hesse undermined Officers Snyder and Lamm's authority and responsibility, and advised the youths that Officer Lamm was a "loser," that "no one likes him," and that they should "not listen to" Officer Lamm's lawful directives. Although Hesse did confiscate certain illicit drugs and related drug paraphernalia, he later failed

14

to properly secure and inventory these items and did not issue any citations to the youths.   In fact, Hesse used his unsecured desk drawer and a shelf above his desk to store evidence, including without limitation, illegal narcotics and drug paraphernalia.

57.     Plaintiffs' complaints about Hesse's selective enforcement and blatant undermining of their authority and duties were met with disdain and derision by Hesse, who not only ignored Plaintiffs' complaints, but actually ridiculed them in response.

58.     In yet another example of corruption at the OBPD, in early September 2004, Officers Dyer and Fiorillo witnessed Officer Richard Bosetti plying an alleged domestic abuse victim with alcohol.  Officer Dyer explained to Officers Snyder and Bockelman that Bosetti was "trying to talk [the victim] out of filing a domestic incident report."

59.     The victim's body was visibly cut and bruised at the time, and Officer Bockelman later discovered that she had not received medical attention for her injuries during Officer Bosetti's "interview," and that she was prevented from obtaining such care until at least three hours after the alleged incident of domestic abuse.

60.     In a separate incident, occurring in or around June 2004, Officer Fiorillo was en route to the police station when he observed Officer Richard Bosetti drinking at a local bar. Bosetti approached Officer Fiorillo and informed them that he and his brother Officer Gary Bosetti had thrown an OBPD file cabinet containing surveillance tapes and other important Department property into the Great South Bay, directly beneath Chief Paradiso's apartment window.  Richard Bosetti asserted that he and his brother should not be criticized for throwing the cabinet into the bay because they had been "too drunk" to control themselves when they decided to do so.  Richard Bosetti then asked that Officer Fiorillo help retrieve the cabinet from the bay and return it to OBPD headquarters.  Officer Fiorillo refused to comply with Bosetti's

request, explaining that he would not assume responsibility for the Bosettis' misconduct.  Officer Fiorillo later complained about this incident to Chief Paradiso, but, upon information and belief, no disciplinary action was ever taken in response.

61.     To the contrary, Hesse ordered Officer Fiorillo to spend three consecutive shifts standing motionless beneath a streetlight at the intersection of Dehnhoff Walk and Bay Walk. Hesse further instructed that Officer Fiorillo was forbidden to move from his assigned post for any reason, including for meals and other scheduled breaks, and that no other officer was permitted to speak to Fiorillo during that period.

62.     Hesse mockingly instructed Officer Fiorillo to wash the fleet of OBPD vehicles before the end of his shift.  When Officer Fiorillo noted that the dock masters were already tasked with cleaning the police vehicles, Hesse responded with a tirade of verbal abuse, rendered in the presence of other officers.

## OBPD Officers Brutalize Innocent Civilians & Plaintiffs Breach the "Blue Wall of Silence"

The "Halloween Incident"

63.     Early on the morning of October 31, 2004, on-duty Officers Snyder, Fiorillo and Lamm were notified by an Ocean Beach resident that "the Bosettis are in a fight.  You'd better get [to Houser's Bar] right away."

64.     On their arrival at Houser's Bar, patrons were hastily vacating the premises, and two injured civilians, Christopher Shalick and John Tesoro, reported that they were "hit with a pool cue and beaten with fists by a [patron who identified himself as a] police officer" while attempting to defend a friend who was being "choked and beaten" with a pool cue.

65.     During Officers Snyder, Fiorillo and Lamm's initial investigation of the incident, Officer Richard Bosetti, who was drinking with his brother Gary Bosetti at the Halloween party at Houser's bar, told them that they "did not understand" what had happened, and then refused to answer further questions about either the incident or his brother Officer Gary Bosetti's whereabouts, and also refused to assist in the investigation.

66.     In reaction to Officer Richard Bosetti's silence, the patrons who remained at Houser's Bar and had not fled the scene of the fight raised concerns of a "cover-up" by the police department.  Officer Snyder assured the patrons that there would be no cover-up, and attempted to enter the bar after the victims of the attack reported the perpetrator was still inside.

67.     However, Houser's bouncer physically prevented Officers Snyder, Fiorillo and Lamm from entering the bar.  When the bouncer finally allowed the Officers entrance, after being warned that his actions could constitute the unlawful "impeding of an investigation," the victims of the attack stated that the perpetrator was no longer at the scene.

68.     Shortly thereafter, Officer Fiorillo returned to the police station with the third victim, Bryan Vankoot, who had sustained serious injuries to his face and neck.  Officer Lamm photographed the injuries.

69.     Defendant Joseph Loeffler, then serving in the capacities of Village Board member and official Police Liaison, was present in the station and stated that he believed the injuries to Vankoot constituted "assault second with a dangerous instrument."

70.     Ocean Beach Rescue examined Vankoot and determined that his injuries required hospitalization.  Upon information and belief, a Suffolk County Marine Boat then transported Mr. Vankoot and the two other victims, Shalick and Tesoro, to the hospital.

The Cover-Up by Hesse

71.    Pursuant to Department procedure, Officers Snyder, Lamm and Fiorillo completed a field report on the incident (the "Field Report"), which they submitted to Chief Edward Paradiso along with statements from the assault victims and the Ocean Beach Rescue report.  Upon information and belief, the Field Report was then rewritten by or at the direction of Hesse, without Officers Fiorillo, Lamm and Snyder's knowledge or input, despite the fact that they were the only officers on-duty in Ocean Beach at the time of the incident.

72.    Chief Paradiso and Officer Snyder spoke the morning of October 31, 2004, and Chief Paradiso stated that the victims wished to file a complaint, that they had identified Officer Gary Bosetti as their attacker, and that as a result, Bosetti would be fired.  At the time, Gary Bosetti's whereabouts were still unknown to the officers.

73.    On October 31, 2004, Chief Paradiso terminated Gary Bosetti's employment for his role in brutalizing the civilians at Houser's earlier that morning.  After demanding Bosetti's shield and sidearm, Paradiso offered Bosetti the opportunity to submit a resignation letter.

74.    Within the same week, Hesse asked Officers Snyder, Fiorillo and Lamm to submit a "department internal correspondence 10-42" regarding the Halloween Incident, and requested that each officer provide an individual statement concerning the incident.

75.    After Officer Snyder complied with Hesse's directive to complete his statement, Hesse claimed that "there's some discrepancies between what you and [Officer Richard Bosetti] say."  Although Officer Snyder reaffirmed that his report was fully accurate, Hesse later insisted to Officer Carter that Snyder's report was "a piece of shit," and indicated that Officer Snyder

needed to protect Bosetti rather than the victims.  Hesse later repeated this remark to Officer Fiorillo when Officer Fiorillo attempted to submit his own statement.

76.     Hesse then directed an uncertified OBPD officer, John "Pat" Cherry, who was not on-duty and did not witness the fight at Houser's, to investigate the incident.  Cherry conducted a sham investigation that included consulting with some of Hesse's friends who had been at Houser's Bar on the night of October 30 and morning of October 31 and asking these individuals to submit false and misleading statements concerning the events surrounding the fight and the fight itself.  Upon information and belief, Cherry and Hesse ratified these false statements to cover-up the Bosetti brothers' involvement in the Halloween Incident and by attempting to shift blame to the <u>victims</u>.  Such conclusions are directly contradicted by the reports filed by Officers Fiorillo, Lamm and Snyder.

77.     Officers Fiorillo, Lamm and Snyder received no further information on the investigation from Hesse or Officers Cherry, Richard Bosetti, or Gary Bosetti.

78.     Later that week, Hesse demanded Officer Fiorillo file a new amended statement concerning the October 31 incident at Houser's Bar and adopt Hesse's protection of Officers Gary and Richard Bosetti.  Officer Fiorillo refused to participate in the cover-up being perpetrated by Hesse, and refused to rewrite the report to conceal the Bosettis' criminal, vicious and brutal attack on three civilians.

79.     A short time later, Hesse disparaged Officer Fiorillo's statement in front of other officers and impugned its accuracy.

80.     Hesse then showed Officer Snyder's statement to Officer Fiorillo, who noted that his statement and Officer Snyder's agreed as to the events of October 31.  Hesse then disparaged

19

Officer Snyder's statement as well.  Hesse then insisted that only Officer Cherry's report described "what really happened."

81.     Shortly thereafter, Hesse again demanded that Officer Fiorillo rewrite his statement, in an effort to cover-up Gary and Richard Bosetti's involvement in the fight.  Officer Fiorillo again refused the request because his investigation on the night of the fight led to the conclusion that Officer Gary Bosetti had attacked the victims with a pool cue.

82.     Hesse also insisted that Officer Lamm's report concerning the Halloween Incident "was no good" and told Officer Lamm that incident described in his report "is not what happened."  Instead, Hesse handed a folder to Officer Lamm and said "this is what really happened."  Officer Lamm refused to adopt Hesse's plainly inaccurate version of the Halloween Incident or to cover-up Gary and Richard Bosetti's involvement in the fight.

83.     In or around the week following the incident, Hesse rehired Gary Bosetti to work as an OBPD officer.

84.     Rather than disciplining Gary Bosetti for unlawfully brutalizing a civilian with a pool cue, Hesse instructed that Gary Bosetti actually arrest two of the Bosettis' victims, Bryan Vankoot and Christopher Shalick for their involvement in the Halloween Incident.

85.     This was part of Hesse's pattern and practice of attempting to cover-up numerous criminal assaults of civilians by OBPD officers by filing false criminal charges against the victims of such brutal attacks.

86.     Hesse later stated to Officers Fiorillo and Carter that Officer Snyder's report of the fight, "makes me sick," and indicated that he believed Officer Snyder "ha[d] it in for Gary

20

Bosetti," implying that Officer Snyder had willfully submitted a false report implicating the Bosettis.

**Hesse Retaliates Against Plaintiffs & Terminates Their Employment**

87.     Rather than address Plaintiffs' refusal to engage in a cover-up of Officer Gary Bosetti's unlawful assault, as well as the other numerous complaints of unlawful conduct perpetrated by Hesse and several other officers, Hesse and his clique of uncertified officers engaged in a concerted pattern of retaliatory conduct against Plaintiffs.

88.     On or about November 1, 2005, Chief Paradiso withdrew from active duty and commenced an extended term of disability-leave from the OBPD.  In his absence, Hesse was designated "Acting Police Chief" and vested with full responsibility for the OBPD's maintenance, policy and operation, including but not limited to, the hiring, firing, granting of promotions and discipline of employees and all other employment related issues.

89.     On March 11, 2006, Hesse sent a letter to all OBPD officers to announce that the annual Department meeting would be held on April 2, 2006, at which time "new ID cards will be issued to all."

90.     The April 2 meeting represented the first opportunity for Acting Deputy Chief Hesse to exercise his newfound authority to purge the Department of the officers who complained about his and his friends' (both within and outside the Department) unlawful conduct and who were not part of his "crew."

91.     On April 2, shortly before the annual departmental meeting commenced, without prior notice, Hesse terminated Officers Fiorillo, Lamm, Carter and Nofi's employment with the Department.  This sudden purge of the Department was deliberately timed to maximize

Plaintiffs' humiliation, and to ensure that Plaintiffs would be unable to secure new civil service positions in advance of their termination. The timing of these terminations was also designed to prevent Officer Lamm from obtaining the full-time position that he was eligible for in accordance with Suffolk County Civil Service regulations.

92.     Hesse suggested that Officers Fiorillo, Lamm and Nofi were being terminated due to alleged departmental budget cuts, a statement obviously belied by the fact that the OBPD was actually slated to receive a budget *increase*, including an apparently sizable raise for Hesse. The pretextual nature of Hesse's purported budget cuts is also underscored by the fact that Hesse hired more of his friends to serve as uncertified OBPD officers in Plaintiffs' stead. Moreover, certain officers received pay increases for tours on which there were no supervisors.

93.     The officers fired were qualified under objective civil service standards, whereas some of the officers retained had neither taken the appropriate tests nor otherwise satisfied these standards.

94.     Shortly before the April 2 meeting commenced, Officer Hesse stated that Plaintiffs' approach to law enforcement was incompatible with his plans for a "kinder and gentler police department," an apparent euphemism for his criminalization of the OBPD.

95.     Hesse also advised the remaining officers at the meeting that Plaintiffs were "rats," in an apparent reference to Plaintiffs' repeated complaints regarding abuse of power, obstruction of justice, uncertified officers, and other unlawful conduct by Hesse and his friends in the Department.

96.     Hesse told Officer Carter that he was being terminated for "directives." However, Hesse was unable to explain to Officer Carter what "directives" he was referring to. At a later

22

date, Hesse stated to others that Officer Carter was terminated for sleeping while on-duty. Such shifting explanations, neither of which can be supported by facts, demonstrate the pretextual nature of such purported justifications for Plaintiffs' termination.

97.     In addition, upon information and belief, Hesse told the remaining officers that Officers Snyder and Carter were terminated because they "were to wear a wire" for the Suffolk County District Attorney in connection with an ongoing police brutality investigation at Ocean Beach. Such statements are patently false.

98.     On or about April 20, 2006, Hesse told Officer Snyder that he was being terminated because he "was the guy who ratted to civil service about the uncertified officers working there."

**Alison Sanchez Conspires With Hesse to Destroy Plaintiffs' Careers**

99.     Within days of their termination, Officers Fiorillo, Nofi and Lamm met with Alison Sanchez, the Suffolk County Civil Service official responsible for overseeing civil service compliance in Ocean Beach. Upon information and belief, Sanchez was responsible for appointing and approving the hiring of the uncertified officers at the OBPD.

100.     Sanchez assured Officers Fiorillo, Nofi and Lamm that their conversation would remain confidential, and that they should speak freely and candidly, particularly because Officer Nofi was a full-time employee of Suffolk County, and disclosure of his decision to seek recourse for Hesse and the OBPD's unlawful termination of his employment potentially would adversely affect his other job with the County.

101.     Officers Fiorillo, Nofi and Lamm then relayed the substance of their employment experience at the OBPD, including their termination without notice or cause in retaliation for

complaints regarding repeated instances of obstruction of justice, abuse of power and other unlawful conduct committed by, or at the direction of, Hesse.

102.    In response, Sanchez advised Officers Fiorillo, Nofi and Lamm that Hesse had behaved lawfully and within his authority under Civil Service Law, and that Plaintiffs would not "have a leg to stand on" in their attempt to appeal their termination or raise further complaints against Hesse.

103.    Upon information and belief, Sanchez knew that her statements to Plaintiffs were false, that Plaintiffs reasonably believed her statements to be true, and that Plaintiffs likely would act in reasonable reliance on her statements.  Moreover, Sanchez made these false statements with an intent to deceive Plaintiffs and prevent them from seeking legal recourse in connection with their termination.

104.    When Officers Fiorillo, Nofi and Lamm left Sanchez's office, Sanchez immediately called Hesse and notified him of the substance of her conversation with Plaintiffs, in flagrant disregard of her promise to keep Plaintiffs' conversation confidential.  It is not surprising that Sanchez breached her promise to Officers Fiorillo, Nofi and Lamm, as Hesse has bragged to Officer Carter about having a sexual relationship with Sanchez in the past.

105.    Officer Lamm thereafter received a notice from Suffolk County Civil Service stating that he was "not qualified" to serve as a police officer, despite his years of distinguished service at the OBPD.

**Hesse Unlawfully Interferes with Plaintiffs' Efforts to Obtain New Employment**

106.    In or around May 2006, Hesse later stated to Carter that those "three fucking mutts [Fiorillo, Lamm and Nofi's] law enforcement careers are over." Hesse devoted himself to fulfilling this promise.

107.    By way of example only, Hesse gave bad references and forwarded false information regarding Officers Nofi and Fiorillo to the Southampton Police Department, thereby directly causing them to lose offers of new employment with that Department.

108.    Fiorillo was also denied a job with TMJ Protection Resources in New York City because he no longer possessed the required police credentials.

109.    Upon information and belief, Carter and Snyder were denied promotions to the respective positions of Lieutenant and Sergeant in the Town of Islip due to unfounded negative references from Hesse. Carter was also denied the ability to apply for positions with Suffolk County because he could not obtain references from the OBPD or provide a clear explanation for his termination.

110.    Upon information and belief, Hesse circulated false and malicious negative references concerning Plaintiffs among officials working for the Town of Islip.

111.    Upon information and belief, he provided a false and misleading statement concerning Officer Lamm to the Suffolk County Applicant Investigation Section, thereby preventing Officer Lamm from obtaining a new position with the Suffolk County Police Department.

112.    Hesse's concerted and unlawful retaliatory effort did not end in the State of New York. Specifically, Officer Nofi was denied a law enforcement job in Florida as Deputy Sheriff

for Collier County due to malicious and false references from Hesse.  In fact, not only did Hesse provide an unfavorable reference, but he explicitly told the investigator in Florida that Officer Nofi had filed a lawsuit against him.

113.    As a result of false, damaging and baseless allegations that have been inserted in Plaintiffs' Civil Service records, as well as Hesse's calculated plan to prevent Plaintiffs from obtaining subsequent law enforcement jobs through his pattern of malicious and false negative references, Plaintiffs have been unable to secure new, comparable employment in the law enforcement profession.

114.    Plaintiffs have also been humiliated and defamed by malicious and utterly baseless attacks on their integrity and record of public service that have appeared on publicly accessible Internet "blogs."  Upon information and belief, these postings were created by OBPD Officer Tyree Bacon at the direction of and/or with approval from Hesse.  By way of example only, these postings describe Plaintiffs' as "rats who were lucky they were not charged with official misconduct and falsification of an official document" and claim that Plaintiffs were fired for consistently abusing, beating and humiliating the public, despite the fact that Plaintiffs were terminated for *opposing* such unlawful conduct.  Nevertheless, Plaintiffs and their families have been repeatedly confronted and castigated by strangers who have assumed that these baseless and malicious allegations against Plaintiffs are true.

115.    As a result of Defendants' pattern and practice of obstruction of justice, abuse of authority, corruption, and attacks against innocent civilians, and their subsequent retaliation against and defamation of Plaintiffs, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment,

26

stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and physical and emotional pain and suffering.

## AS AND FOR A FIRST CAUSE OF ACTION

### (42 U.S.C. § 1983, 1985 – First Amendment Retaliation)

116.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

117.    As set forth above, by, among other things, repeatedly reporting endemic corruption and abuse of power by members of the OBPD to their superiors at the OBPD and to the Suffolk County Civil Service Department, Plaintiffs engaged in activity protected by the First Amendment.  Motivated by an intent to punish Plaintiffs for this protected activity, Defendants took numerous adverse actions against them, including without limitation, terminating Plaintiffs' employment at the OBPD and intentionally interfering with prospective employment opportunities.  Defendants thereby deprived Plaintiffs of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution, and conspired among themselves to do so (taking numerous steps in furtherance thereof) in violation of 42 U.S.C. § 1985.

118.    Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment.  Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, wantonly and knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983 and the First and Fourteenth

Amendments to the United States Constitution.  In addition, upon information and belief, Defendants Hesse and Sanchez conspired among themselves to deprive Plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, 1985, and the First and Fourteenth Amendments to the United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

119.    Moreover, at all times relevant to this cause of action, Defendants Hesse and Loeffler were each policy makers acting on behalf of Defendant OBPD and Defendant Ocean Beach with full authority to make policy concerning the treatment of his immediate employees. Accordingly, Defendants' actions in retaliating against Plaintiffs by, among other things, removing Plaintiffs from their position at the OBPD were taken pursuant to official policy, practice and custom implemented by Hesse.  As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs have suffered and continue to suffer actual damages, including without limitation, lost past and future earnings, mental anguish, pain and suffering.

## AS AND FOR A SECOND CAUSE OF ACTION

### (N.Y. State Constitution – Free Speech Retaliation)

120.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

121.    As set forth above, by, among other things, repeatedly reporting endemic corruption and abuse of power by members of the OBPD to their superiors at the OBPD and to the Suffolk County Civil Service Department, Plaintiffs engaged in activity protected by the New York State Constitution.  Motivated by an intent to punish Plaintiffs for this protected activity,

28

Defendants took numerous adverse actions against them, including without limitation, terminating Plaintiffs' employment at the OBPD. Defendants thereby deprived Plaintiffs of rights, remedies, privileges and immunities guaranteed by the New York State Constitution, and conspired among themselves to do so (taking numerous steps in furtherance thereof).

122.    Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, wantonly and knowingly, and with the specific intent to deprive Plaintiffs of their right to free speech as secured by the New York State Constitution. In addition, upon information and belief, Defendants Hesse and Sanchez conspired among themselves to deprive Plaintiffs of their right to free speech as secured by the New York State Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

123.    Moreover, at all times relevant to this cause of action, Defendants Hesse and Loeffler were each policy makers acting on behalf of Defendant OBPD and Defendant Ocean Beach with full authority to make policy concerning the treatment of his immediate employees. Accordingly, Defendants' actions in retaliating against Plaintiffs by, among other things, removing Plaintiffs from their position at the OBPD were taken pursuant to official policy, practice and custom. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs have suffered and continue to suffer actual damages, including without limitation, lost past and future earnings, mental anguish, pain and suffering.

## AS AND FOR A THIRD CAUSE OF ACTION

**(42 U.S.C. § 1983, 1985/Procedural Due Process/U.S. Constitution)**

124.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

125.    At all times relevant hereto, Plaintiffs had a valuable property interest in their employment with the OBPD, their reputation, and their status.  By engaging in the scheme as set forth above, including without limitation, failing to provide Plaintiffs with a pre-termination hearing, refusing to provide a name-clearing hearing for Plaintiffs, and willfully deceiving Plaintiffs by leading them to believe that they were not entitled to such hearings or to any other form of legal process, Defendants Hesse, Loeffler, OBPD, Ocean Beach, Suffolk County, Suffolk County Civil Service, and Sanchez impermissibly deprived Plaintiffs of their property interests without due process of law in violation of 42 U.S.C. § 1983, 1985, and the Fourteenth Amendment to the Untied States Constitution and conspired among themselves to do so (taking numerous steps in furtherance thereof).

126.    Defendants Hesse, Loeffler, OBPD, Ocean Beach, Suffolk County, Suffolk County Civil Service, and Sanchez acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment.  Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, wantonly and knowingly, and with the specific intent to deprive Plaintiffs of their right to due process of law as secured by 42 U.S.C. § 1983, 1985, and the Fourteenth Amendment to the Untied States Constitution.  In addition, upon information and belief, Defendants Hesse and Sanchez conspired among themselves to deprive Plaintiffs of their right to free speech as secured by 42 U.S.C. § 1983, 1985, and the Fourteenth

30

Amendment to the Untied States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

127.    Moreover, at all times relevant to this cause of action, Defendants Hesse and Loeffler were each policy makers acting on behalf of Defendant OBPD and Defendant Ocean Beach with full authority to make policy concerning the treatment of his immediate employees. Accordingly, Defendants' actions in retaliating against Plaintiffs by, among other things, removing Plaintiffs from their position at the OBPD were taken pursuant to official policy, practice and custom.

128.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs have suffered and continue to suffer actual damages, including without limitation, lost past and future earnings, mental anguish, pain and suffering.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (New York State Procedural Due Process)

129.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

130.    At all times relevant hereto, Plaintiffs had a valuable property interest in their employment with the OBPD, their reputation, and their status.  By engaging in the scheme as set forth above, including without limitation, failing to provide Plaintiffs with a pre-termination hearing and refusing to provide a name-clearing hearing for Plaintiffs, and willfully deceiving Plaintiffs by leading them to believe that they were not entitled to such hearings or to any other form of legal process, Defendants Hesse, Loeffler, OBPD, Ocean Beach, Suffolk County, Suffolk County Civil Service, and Sanchez impermissibly deprived Plaintiffs of their property

interests without due process of law in violation of New York State Constitution Art. I, sec. 6, and conspired among themselves to do so (taking numerous steps in furtherance thereof).

131.    Defendants Hesse, Loeffler, OBPD, Ocean Beach, Suffolk County, Suffolk County Civil Service, and Sanchez acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment.  Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, wantonly and knowingly, and with the specific intent to deprive Plaintiffs of their right to due process of law as secured by New York State Constitution Art. I, sec. 6.  In addition, upon information and belief, Defendants Hesse and Sanchez conspired among themselves to deprive Plaintiffs of their right to free speech as secured by New York State Constitution Art. I, sec. 6, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

132.    Moreover, at all times relevant to this cause of action, Defendants Hesse and Loeffler were each policy makers acting on behalf of Defendant OBPD and Defendant Ocean Beach and with full authority to make policy concerning the treatment of his immediate employees.  Accordingly, Defendants' actions in retaliating against Plaintiffs by, among other things, removing Plaintiffs from their position at the OBPD were taken pursuant to official policy, practice and custom.

133.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs have suffered and continue to suffer actual damages, including without limitation, lost past and future earnings, mental anguish, pain and suffering.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (42 U.S.C. § 1983/Due Process/U.S. Constitution)

134.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

135.    At all times relevant hereto, Plaintiffs had a valuable property interest in their employment with the OBPD, their reputation, and their status.  By engaging in the conduct as set forth above, including without limitation, by making defamatory statements as set forth above, Defendants Hesse, OBPD, and Ocean Beach impermissibly stigmatized Plaintiffs, causing damage to their good name and reputation in conjunction with their termination from government employment.

136.    Defendants impermissibly deprived Plaintiffs of their property interest without due process of law in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the Untied States Constitution and conspired among themselves to do so (taking numerous steps in furtherance thereof).

137.    Defendants Hesse, OBPD, and Ocean Beach acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, wantonly and knowingly, and with the specific intent to deprive Plaintiffs of their right to due process of law as secured by 42 U.S.C. § 1983 and by the Fourteenth Amendment to the Untied States Constitution.

138.    Defendants Hesse, OBPD, and Ocean Beach's  stigmatizing conduct has marred Plaintiffs' reputations to such an extent that they have been unable to secure regular employment

in the law enforcement profession since their termination from the OBPD in April 2006. By stigmatizing Plaintiffs as dishonest men, "rats," and rogue law enforcement officers, Hesse, OBPD, and Ocean Beach have deprived Plaintiffs of their good names and thereby violated the due process safeguards embodied in the Fourteenth Amendment to the United States Constitution.

139.    Moreover, at all times relevant to this complaint, Defendant Hesse was a policy maker acting on behalf of Defendant OBPD and Defendant Ocean Beach and with full authority to make policy concerning the treatment of his immediate employees. Accordingly, Defendants Hesse, OBPD, and Ocean Beach's actions in destroying Plaintiffs' reputations were taken pursuant to official policy, practice and custom.

140.    As a direct and proximate result of Defendants' stigmatizing acts, Plaintiffs have suffered actual damages, including but not limited to, lost income and future earnings as evidenced by their inability to secure regular work in the law enforcement profession, in an amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (New York State Due Process)

141.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

142.    At all times relevant hereto, Plaintiffs had a valuable property interest in their employment with the OBPD, their reputation, and their status. By engaging in the conduct as set forth above, including without limitation, by making defamatory statements as set forth above, Defendants Hesse, OBPD, and Ocean Beach impermissibly stigmatized Plaintiffs, causing

damage to their good name and reputation in conjunction with their termination from government employment.

143.     Defendants Hesse, OBPD, and Ocean Beach impermissibly deprived Plaintiffs of their property interest without due process of law in violation of New York State Constitution Art. I, sec. 6, and conspired among themselves to do so (taking numerous steps in furtherance thereof).

144.     Defendants Hesse, OBPD, and Ocean Beach acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, wantonly and knowingly, and with the specific intent to deprive Plaintiffs of their right to due process of law as secured by New York State Constitution Art. I, sec. 6.

145.     Defendants Hesse, OBPD, and Ocean Beach's stigmatizing conduct has marred Plaintiffs' reputations to such an extent that they have been unable to secure regular employment in the law enforcement profession since their termination from the OBPD in April 2006.  By stigmatizing Plaintiffs as dishonest men, "rats," and rogue law enforcement officers, Defendants have deprived Plaintiffs of their good names and thereby violated the due process safeguards embodied in the New York State Constitution.

146.     Moreover, at all times relevant to this complaint, Defendant Hesse was a policy maker acting on behalf of Defendant OBPD and Defendant Ocean Beach and with full authority to make policy concerning the treatment of his immediate employees.  Accordingly, Defendants Hesse, OBPD, and Ocean Beach's actions in destroying Plaintiffs' reputations were taken pursuant to official policy, practice and custom.  As a direct and proximate result of Defendants'

35

stigmatizing acts, Plaintiffs have suffered actual damages, including but not limited to, lost income and future earnings as evidenced by their inability to secure regular work in the law enforcement profession, in an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (42 U.S.C. § 1983, 1985 - Fourteenth Amendment – Equal Protection)

147.   Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

148.   Defendants Hesse, Loeffler, OBPD, Ocean Beach, Sanchez, and Suffolk County Civil Service subjected Plaintiffs to arbitrary and irrational discrimination by selectively terminating Plaintiffs employment with a malicious or bad faith intent to injure Plaintiffs. Defendants thereby deprived Plaintiffs to their right to Equal Protection of the Law, in violation of 42 U.S.C. § 1983, 1985, and the Fourteenth Amendments to the United States Constitution, and conspired among themselves to do so (taking numerous steps in furtherance thereof).

149.   Defendants Hesse, Loeffler, OBPD, Ocean Beach, Sanchez, and Suffolk County Civil Service acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, wantonly and knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, 1985, and the Fourteenth Amendments to the United States Constitution.  In addition, upon information and belief, Defendants Hesse and Sanchez conspired among themselves to deprive Plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, 1985, and the Fourteenth Amendment to the

United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

150.    Moreover, at all times relevant to this complaint, Defendants Hesse and Loeffler were each policy makers acting on behalf of Defendant OBPD and Defendant Ocean Beach and with full authority to make policy concerning the treatment of his immediate employees. Accordingly, Defendants' actions in retaliating against Plaintiffs by, among other things, removing Plaintiffs from their position at the OBPD were taken pursuant to official policy, practice and custom.  As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs have suffered and continue to suffer actual damages, including without limitation, lost past and future earnings, mental anguish, pain and suffering.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (N.Y. Civil Service Law 75-b)

151.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

152.    While employed by the OBPD and Ocean Beach, Plaintiffs were "public employees" within the meaning of the New York Civil Service Law 75-b.

153.    At all times relevant to this complaint, Defendants OBPD and Ocean Beach were "public employers" within the meaning of New York Civil Service Law 75-b.

154.    At all times relevant to this complaint, Defendant Ocean Beach was a "governmental body" within the meaning of New York Civil Service Law 75-b.

155.    Defendants' termination of Plaintiffs' employment was an "adverse personnel action" taken in violation New York Civil Service Law 75-b on the sole basis that Plaintiffs each

disclosed what they reasonably believed to be "improper governmental action" as that term is defined in New York Civil Service Law 75-b.

156.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs have suffered and continue to suffer actual damages, including without limitation, lost past and future earnings, mental anguish, pain and suffering.

## AS AND FOR A NINTH CAUSE OF ACTION

### (N.Y. Labor Law 740)

157.     Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

158.     While employed by the OBPD and Ocean Beach, Plaintiffs had repeated exposure to activities, policies and practices of the OBPD, Ocean Beach and Defendant Hesse which create a substantial and specific danger to the public health and safety and which violate applicable laws, rules and regulations, including: (1) Police Officers drinking while on-duty (in the police station; in local bars; and while driving OBPD vehicles, both inside and out of Ocean Beach); (2) Failure to follow Department policy regarding proper supervision of police weapons; (3) Directives from Hesse insisting that Police Officers allow drug dealers and other criminals to violate the law with impunity in Ocean Beach; (4) The unlawful cover-up of a police officers' brutal assaults upon innocent civilians; and (5) The hiring and retention of uncertified police officers who were not familiar with OBPD procedure, including emergency radio codes and response procedures.

159.     Plaintiffs' repeatedly notified Hesse, their superior and direct supervisor, of these violations of laws, rules and regulations.

160.    Plaintiffs' were terminated from their employment at the OBPD because they objected to and refused to participate in any such unlawful activities, policies and practices.

161.    Plaintiffs have been unable, despite reasonable efforts, to find comparable employment.

162.    As a direct and proximate result of the foregoing, Plaintiffs have been denied employment, lost wages, benefits and promotional opportunities, and incurred damages thereby.

## AS AND FOR A TENTH CAUSE OF ACTION

### (Defamation Per Se Under State Law)

163.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

164.    Defendants Hesse and OBPD published defamatory statements about Plaintiffs, including without limitation, assertions that: a) Plaintiffs were dishonest men, "rats," and rogue law enforcement officers (April 2, 2006); b) Plaintiffs' had conspired to inculpate innocent police officers for acts of brutality against innocent citizens (April 2, 2006); c) Plaintiffs had conspired to disqualify fellow officers from continued employment with the OBPD without cause (April 2, 2006); d) that citizens of Ocean Beach should recognize that because "Officer Kevin Lamm is a loser and no one likes him," Officer Lamm's lawful directives should be freely ignored; and e) by repeatedly advising prospective employers that he had terminated Plaintiffs for cause, that Plaintiffs were litigious, and that he could not comment favorably on Plaintiffs' performance as police officers, all in a manner and context that created the impression that these were not mere expressions of opinion, but rather well-founded assertions of fact.

165.    These statements were false and maligned Plaintiffs' honesty, trustworthiness, dependability, and professional and business abilities.

166.    Defendants Hesse and OBPD published such statement to the public and others who have no need to know them.

167.    Defendants Hesse and OBPD has had knowledge that such statements were false and/or acted with reckless disregard of their falsity.

168.    As a result of the foregoing conduct, Plaintiffs have suffered and will continue to suffer severe mental anguish and pain, including loss of self-esteem, personal dignity and career fulfillment.  Plaintiffs have confronted great inconvenience, indignity and risk, including but not limited to a loss of their livelihood, and a loss of their ability to meet various financial obligations.  Thus, Plaintiffs were inhibited and prevented from enjoying life, and were forced to undergo emotional injury which they will continue to experience in the future.

169.    The acts of Defendants Hesse and OBPD were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm Plaintiffs without regard for Plaintiffs' well-being and were based on a lack of concern and ill-will towards Plaintiffs.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

### (Termination in Violation of Public Policy Under State Law)

170.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

171.    As set forth above, Defendants terminated Plaintiffs' employment because Plaintiffs complied with and/or refused to violate laws and regulations governing law enforcement personnel in Ocean Beach, Suffolk County, and the State of New York.

172.     Plaintiffs have been unable, despite reasonable efforts, to find comparable employment.

173.     Defendants' action in terminating Plaintiffs' employment for taking actions in compliance with the laws, regulations or code of professional ethics governing their business or profession represents a violation of the public policy of the State of New York.

174.     As a result of Defendants' actions, Plaintiffs have incurred injury.  In addition, because Defendants' actions were performed with malice and without justification or excuse, Plaintiffs are entitled to punitive damages.

## AS AND FOR A TWELFTH CAUSE OF ACTION

### (Negligent Retention of an Unfit Employee Under State Law)

175.     Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

176.     As set forth above, Defendants Hesse, Ocean Beach, OBPD and Suffolk County Civil Service deliberately retained and advanced the careers of uncertified and unqualified personnel who served alongside Plaintiffs as police officers, while Defendant Loeffler, Mayor of Ocean Beach, negligently permitted Hesse to do so.  Defendant Hesse had knowledge of the undue risk of harm to which Plaintiffs were thereby exposed based on: 1) explicit statutory standards governing minimum qualifications for police officers; and 2) actual knowledge of danger to which Plaintiffs were exposed by their reliance on fellow officers who were ignorant of OBPD policies and practices, including without limitation, emergency police radio codes.

177.     Defendant Loeffler had direct knowledge of the undue risk of harm to which Plaintiffs and the public were exposed due to the retention of unfit Village Police Officers, as

41

Defendant Loeffler was present in the police station on the night of October 30, 2004, when the

victim's of Officer Gary Bosetti's assault arrived from Houser's Bar and identified Officer Gary

Bosetti as their attacker.  Although Defendant Loeffler stated that Officer Bosetti's conduct

constituted "assault second with a dangerous weapon," Loeffler made no effort (either at that

time, in his capacity as a Village of Ocean Beach Board Member, or later, in his capacity as

Mayor of Ocean Beach) to supervise Hesse's investigation of and/or response to the incident or

to relieve Bosetti of command.

178.    As a direct and proximate result of Defendants' Hesse, OBPD, Loeffler, and

Ocean Beach's breach of duty to supervise, Plaintiffs have been injured and have incurred

damages thereby.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

## (RICO)

179.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding

paragraphs as if fully set forth herein.

180.    As set forth above, Defendant Hesse, a natural person, has violated the provisions

of the Racketeer Influenced and Corrupt Organizations Act by, among other things, engaging in

two or more acts of obstruction of justice within ten years, including without limitation: a)

ordering Plaintiffs to falsify official police records and ultimately terminating Plaintiffs

employment when they refused to do so; b) prohibiting Plaintiffs from interfering with the

unlawful activities of a known drug dealer operating within the jurisdiction of the OBPD; c)

ordering Plaintiffs to facilitate other officers' dereliction of duty, including without limitation, by

allowing those officers to imbibe intoxicating beverages while on-duty; and d) conspiring with

Alison Sanchez to prevent Plaintiffs from taking any action that might prevent Hesse from perpetrating similar acts on an ongoing basis.

181.    The aforementioned instances of unlawful obstruction of justice, as well as other unlawful activity as set forth above, constitute a pattern of "racketeering activity" within the meaning 18 U.S.C. 1961, et seq.

182.    Defendant Hesse committed and conspired to commit the aforementioned pattern of racketeering activity as part of his transformation of the OBPD into a corrupt "enterprise" devoted to the fulfillment of his own venal and unlawful objectives and those of his cronies at the OBPD.

183.    The aforementioned conduct of Defendant Hesse affected interstate commerce, including without limitation, by deterring out-of-state tourists from vacationing in Ocean Beach.

184.    As a direct and proximate result of the aforementioned violations of 18 U.S.C. 1961, et seq, Plaintiffs have suffered and continue to suffer damages for which they are entitled to an award of treble damages.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

### (Civil Conspiracy Under State Law)

185.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding paragraphs as if fully set forth herein.

186.    As set forth above, Defendants Hesse and Alison Sanchez conspired to unlawfully destroy Plaintiffs' careers, and shared a mutual agreement and understanding regarding their objective to do so and the manner in which their common objective was to be achieved, and committed numerous overt acts in furtherance thereof.

43

187.    As a direct and proximate result of the aforementioned conduct, Plaintiffs have
suffered and continue to suffer damages.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION

### (Tortious Interference With A Prospective Business Relationship Under New York Law)

188.    Plaintiffs hereby repeat and reallege each allegation contained in the preceding
paragraphs as if fully set forth herein.

189.    As set forth above, Plaintiffs were variously scheduled to commence new
employment at a number of employers, including without limitation, the Suffolk County Police
Department, the Southampton Police Department, the Town of Islip, and the Collier County, FL,
Sheriffs Department.

190.    Defendant Hesse had knowledge of Plaintiffs' pending employment and/or
business relationships with these employers.

191.    Defendant Hesse intentionally and maliciously interfered with these pending
employment and/or business relationships through fraudulent, deceitful and/or illegal means.
Defendant Hesse did so willfully and maliciously, and his conduct was the direct cause for the
termination of Plaintiffs' aforementioned pending employment and/or business relationships.

192.    As a direct and proximate result of the aforementioned conduct, Plaintiffs have
suffered and continue to suffer damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor and against Defendants, jointly and severally, containing the following relief:

A.    A declaratory judgment that Defendants' actions constitute a violation of Plaintiff's First Amendment right to freedom of speech, a violation of Plaintiff's Fourteenth Amendment right to Due Process of law and Equal Protection of the laws, and retaliation in violation of New York Civil Service Law.

B.    A temporary restraining order and preliminary injunction immediately reinstating Plaintiffs to their civil service positions, together with backpay and complete restoration of all benefits, seniority and privileges of such employment, and prohibiting Defendants from further publication of defamatory statements concerning Plaintiffs;

C.    A permanent injunction reinstating Plaintiffs to their civil service positions, together with backpay and complete restoration of all benefits, seniority and privileges of such employment and permanently restraining Defendants from engaging in such wrongful and/or unlawful conduct in the future and enjoining Defendants from further publication of defamatory statements concerning Plaintiffs;

D.    An order directing Defendants to place Plaintiffs in the position they would have occupied but for Defendants' wrongful and/or unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of Defendants' wrongful and/or unlawful actions are eliminated and do not continue to affect Plaintiffs, including but not limited to, reinstating Plaintiffs to their permanent civil service position, together with backpay and complete restoration of all benefits, seniority and privileges of such employment;

E.       An award of damages in an amount to be determined at trial, but not less than $25,000,000, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, and other compensation;

F.       An award of damages in an amount to be determined at trial, but not less than $100,000,000 plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including but not limited to, compensation for their mental anguish, depression, humiliation, anxiety, embarrassment and emotional injury caused by Defendants;

G.       An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H.       An award of punitive damages, in an amount to determined at trial, but not less than $200,000,000, sufficient to deter Defendants from engaging in future illegal and/or wrongful conduct;

I.       An award of treble damages;

J.       An award of costs that Plaintiffs incurred in this action, as well as their reasonable attorneys' fees, to the fullest extent permitted by law; and

K.       Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: March 21, 2007
New York, New York

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By: _____

Douglas H. Wigdor (DW-9737)
Scott Browning Gilly (SG-6861)
Kenneth P. Thompson (KT-6026)
Andrew Goodstadt (AG-2760)

350 Fifth Avenue, Suite 5720
New York, New York 10118
Telephone: (212) 239-9292
Facsimile: (212) 239-9001

*Counsel for Plaintiffs*

47