UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EDWARD CARTER, FRANK FIORILLO, KEVIN LAMM, JOSEPH NOFI, and THOMAS SNYDER,

Plaintiffs,

vs.

CV 07 1215

INCORPORATED VILLAGE OF OCEAN BEACH; MAYOR JOSEPH C. LOEFFLER, JR., individually and in his official capacity; former mayor NATALIE K. ROGERS, individually and in her official capacity, OCEAN BEACH POLICE DEPARTMENT; ACTING DEPUTY POLICE CHIEF GEORGE B. HESSE, individually and in his official capacity; SUFFOLK COUNTY; SUFFOLK COUNTY POLICE DEPARTMENT, SUFFOLK COUNTY DEPARTMENT OF CIVIL SERVICE; and ALISON SANCHEZ, individually and in her official capacity,

Defendants.

VIDEOTAPED DEPOSITION OF
JOSEPH C. LOEFFLER, JR.
New York, New York
Wednesday, February 25, 2009

Reported by:
KRISTIN KOCH, RPR, RMR, CRR, CLR
JOB NO. 20823

February 25, 2009
10:04 a.m.

Deposition of JOSEPH C. LOEFFLER, JR., held at the offices of Rivkin Radler LLP, 926 RexCorp Plaza, Uniondale, New York, before Kristin Koch, a Registered Professional Reporter, Registered Merit Reporter, Certified Realtime Reporter, Certified Livenote Reporter and Notary Public of the State of New York.

A P P E A R A N C E S:

THOMPSON WIGDOR & GILLY LLP
Attorneys for Plaintiffs
85 Fifth Avenue
New York, New York 10003
BY: ARIEL Y. GRAFF, ESQ.

BEE READY FISHBEIN HATTER & DONOVAN, LLP
Attorneys for Incorporated Village of Ocean Beach
170 Old Country Road
Mineola, New York 11501
BY: JOSHUA JEMAL, ESQ.

RIVKIN RADLER LLP
Attorneys for Incorporated Village of Ocean Beach, Joseph C. Loeffler Jr., Natalie K. Rogers and Ocean Beach Police Department
926 RexCorp Plaza
Uniondale, New York 11556-0926
BY: KENNETH A. NOVIKOFF, ESQ.
MICHAEL P. WELCH, ESQ.

A P P E A R A N C E S: (Continued)

MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.
Attorneys for George B. Hesse
530 Saw Mill River Road
Elmsford, New York 10523
BY: KEVIN W. CONNOLLY, ESQ.

ALSO PRESENT:

SILVIO FACCHIN, Legal Video Specialist
FRANK FIORILLO
THOMAS SNYDER
JOSEPH NOFI
KEVIN LAMM

9e28f7aa-4e93-4641-9524-8529961356c8

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties herein, that filing and sealing be and the same are hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be sworn to and signed before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the Court.

- oOo -

(Loeffler Exhibit 1, Confidential 09:50:33
Wage/Salary History, marked for 09:50:33
identification.) 09:57:23
(Loeffler Exhibit 2, Ocean Beach 09:57:23
Defendants' Response to Plaintiffs' First 09:57:23
Set of Interrogatories, marked for 09:57:23
identification.) 09:57:24
* * * 10:03:38
THE VIDEOGRAPHER: This is the tape 10:03:38
labeled number 1 of the videotaped 10:03:40
deposition of Mayor Joseph Loeffler in the 10:03:42
matter of Edward Carter, et al., versus 10:03:46
Incorporated Village of Ocean Beach, et al. 10:03:48
We are now going on the record. The 10:03:51
time is 10:04 a.m. Counsel will state 10:03:53
their appearances for the record. 10:03:56
MR. GRAFF: Ari Graff from the law 10:03:58
firm of Thompson Wigdor & Gilly 10:03:59
representing the plaintiffs in this action, 10:04:01
three of whom are present with me here 10:04:03
today; Frank Fiorillo, Tom Snyder and Joe 10:04:05
Nofi. 10:04:09
MR. NOVIKOFF: And just for the 10:04:11
record, let the record reflect that 10:04:12

Mr. Fiorillo is not wearing a suit. 10:04:14
For all of the Village defendants 10:04:16
except Mr. Hesse, Ken Novikoff and Michael 10:04:18
Welch from the law firm of Rivkin Radler 10:04:22
LLP, and Joshua Jemal, general counsel to 10:04:25
the Village from the law firm of -- 10:04:28
MR. JEMAL: Bee Ready Fishbein 10:04:28
Hatter & Donovan. 10:04:32
MR. CONNOLLY: Kevin W. Connolly of 10:04:32
Marks, O'Neill, O'Brien & Courtney for the 10:04:34
defendant George Hesse. 10:04:36
THE VIDEOGRAPHER: Will the court 10:04:37
reporter please swear in the witness. 10:04:38
J O S E P H C. L O E F F L E R, J R., 10:04:46
called as a witness, having been duly sworn
by a Notary Public, was examined and
testified as follows:
MR. GRAFF: This deposition will be 10:04:47
governed by the Federal Rules of Civil 10:04:50
Procedure and local civil rules for the 10:04:53
Eastern District of New York. 10:04:56
MR. NOVIKOFF: Same stips as in 10:04:56
every other deposition that we have had? 10:04:58
MR. GRAFF: Sure. 10:04:59

Loeffler
MR. NOVIKOFF: Okay. 10:05:00
EXAMINATION BY 10:05:00
MR. GRAFF: 10:05:00
**Q. Good morning, Mayor Loeffler. As 10:05:00**
**you heard a moment ago, my name is Ari Graff, a 10:05:02**
**lawyer representing the plaintiffs. I am going 10:05:05**
**to be asking you a series of questions today. 10:05:07**
**Do you understand that you are 10:05:11**
**testifying under oath in this deposition and 10:05:12**
**are legally obligated to tell the truth? 10:05:15**
MR. NOVIKOFF: You can move on. The 10:05:17
witness is well aware what his obligations 10:05:19
are. He just swore under oath. 10:05:21
MR. GRAFF: Okay. The witness can 10:05:22
indicate that in response to my question. 10:05:24
MR. NOVIKOFF: Move on. He is not 10:05:25
going to answer that question. 10:05:26
MR. GRAFF: You are going to 10:05:27
instruct him not to answer? 10:05:28
MR. NOVIKOFF: What's the point, 10:05:29
Ari? He swore under oath. Ask him does he 10:05:30
understand what the oath means. 10:05:33
**Q. Do you understand that the oath that 10:05:33**
**you took at the beginning of the deposition a 10:05:35**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**moment ago indicated that you are obligated to tell the truth during this deposition? 10:05:38 10:05:41**

A. Yes, I do. 10:05:43

**Q. Thank you. Have you ever testified under oath before? 10:05:43 10:05:45**

A. Yes, I have. 10:05:47

**Q. And how many times have you testified under oath before? 10:05:47 10:05:51**

A. Between 50 and 100 times. 10:05:53

**Q. In any of those cases when you testified under oath, were you a party to the proceeding? 10:05:58 10:06:01 10:06:03**

A. Yes. 10:06:03

**Q. And what was the most recent time that you testified under oath prior to today? 10:06:14 10:06:18**

A. About four years ago. 10:06:20

**Q. And in what context did you give sworn testimony four years ago? 10:06:23 10:06:24**

A. It was in a federal trial in Central Islip. 10:06:26 10:06:30

**Q. And what was the nature of your testimony in that case? 10:06:30 10:06:34**

A. It was referencing a gun arrest that I had made while I was employed by the Suffolk 10:06:35 10:06:38

Loeffler

County Police Department that was being prosecuted in the federal court. 10:06:41 10:06:42

**Q. Other than testimony that you have given in the context of your official police duties, have you ever testified under oath in any other context? 10:06:44 10:06:46 10:06:49 10:06:51**

A. Yes. 10:06:52

**Q. And in what context would that be? 10:06:52**

A. I had an EBT in an automobile accident. 10:06:55 10:06:58

**Q. Other than the EBT, are there any other times that you testified not in the context of your official law enforcement duties? 10:06:59 10:07:02 10:07:05 10:07:09**

A. Yes, at my divorce proceedings. 10:07:09

**Q. Other than that, are there any others? 10:07:13 10:07:15**

A. No. 10:07:15

**Q. Have you ever been a plaintiff in any lawsuit? 10:07:16 10:07:19**

A. No. 10:07:22

**Q. Have you ever been a defendant in any lawsuit other than this lawsuit? 10:07:24 10:07:25**

A. Yes. 10:07:28

Loeffler

**Q. And in what cases have you been a defendant? 10:07:31 10:07:33**

MR. NOVIKOFF: In his official capacity or individual capacity? 10:07:34 10:07:36

MR. GRAFF: In either. 10:07:37

MR. NOVIKOFF: Why don't you break it down, official and then individual. 10:07:38 10:07:39

**Q. We can break it down. In what cases have you testified as a named defendant in your official capacity? 10:07:40 10:07:44 10:07:46**

A. I testified in federal court on a case that I handled. 10:07:48 10:07:55

**Q. And what was the nature of that case? 10:07:57 10:07:58**

A. That case was an allegation by a defendant reference treatment that he received while in custody. 10:07:59 10:08:04 10:08:08

**Q. And what was the official capacity or position that you held at that time? 10:08:11 10:08:13**

A. I was a detective with the Suffolk County Police Department. 10:08:16 10:08:18

**Q. And what was the nature of the treatment that was the basis? 10:08:19 10:08:23**

A. We never got that far. The case was 10:08:25

Loeffler

dismissed. 10:08:27

**Q. Other than that case, have there -- do you remember the name of the plaintiff in that case? 10:08:28 10:08:30 10:08:32**

A. No, I do not. 10:08:32

**Q. Other than that case, have there been any other cases where you have testified in your official capacity as a named defendant? 10:08:33 10:08:35 10:08:37**

A. No. 10:08:39

**Q. Other than this case, have there been any cases in which you have testified in your individual capacity as a named defendant? 10:08:39 10:08:41 10:08:43**

A. No. 10:08:45

**Q. I know you have gone through this many times before, but just to quickly go over some of the protocols that we usually follow, as you can see, there is a court reporter here -- 10:08:46 10:08:53 10:08:56 10:08:58 10:09:00**

MR. NOVIKOFF: What makes you think he has gone over this many times before? 10:09:00 10:09:01

MR. GRAFF: He has given testimony before in the context of -- 10:09:03 10:09:04

MR. NOVIKOFF: So what makes you think he has gone over whatever protocols? 10:09:06 10:09:07

9e28f7aa-4e93-4641-9524-8529961356c8

Page 13

Loeffler
Why don't you just ask questions. 10:09:07
MR. GRAFF: Okay. 10:09:10
**Q. I will note that if you don't hear a 10:09:17**
**question or don't understand a question or a 10:09:20**
**word, please feel free to let me know and I'll 10:09:22**
**rephrase or repeat the question so that you can 10:09:24**
**understand it. 10:09:26**
**Also, if you would like to take a 10:09:27**
**break at any time, please just let me know and 10:09:29**
**we can do that, but I would usually ask that if 10:09:31**
**there is a question pending, you first answer 10:09:34**
**the question before the break. 10:09:35**
**Are you presently taking any 10:09:39**
**medications that could affect your ability to 10:09:42**
**testify fully and completely today? 10:09:44**
A. No. 10:09:47
**Q. Are you presently under a doctor's 10:09:48**
**care for any condition that could affect your 10:09:51**
**ability to testify fully and completely today? 10:09:53**
A. No. 10:09:55
**Q. Is there any reason you can think of 10:09:55**
**why you wouldn't be able to answer my questions 10:09:59**
**truthfully, fully and completely today? 10:10:01**
MR. NOVIKOFF: Objection. I think 10:10:03

Page 14

Loeffler
you should ask the question about 10:10:05
truthfully, because if the question 10:10:07
encompasses "fully and completely," that 10:10:10
subsumes that your questions are clear, so 10:10:12
if you ask him if there is anything he can 10:10:13
think that of would prevent him from 10:10:16
answering honestly, that's a legitimate 10:10:18
question and he can answer that question. 10:10:20
MR. GRAFF: Okay. 10:10:21
**Q. I will note again that to the extent 10:10:21**
**that you are unclear about a question I am 10:10:22**
**asking, please tell me and I can repeat or 10:10:26**
**rephrase the question. 10:10:28**
MR. NOVIKOFF: Counsel, I'm here to 10:10:29
object to the form of the question. That's 10:10:32
my role. Are you suggesting by that 10:10:34
instruction to the witness that he is 10:10:37
somehow waiving his rights under the 10:10:38
Federal Rules of Civil Procedure to review 10:10:41
his transcript at the conclusion and make 10:10:42
whatever changes he wants with any 10:10:45
explanation that he wants? 10:10:46
MR. GRAFF: I am suggesting only 10:10:47
what I stated to the witness. This 10:10:48

Page 15

Loeffler
deposition is governed by the Federal Rules 10:10:50
of Civil Procedure. 10:10:52
MR. NOVIKOFF: I just want to make 10:10:52
that clear. 10:10:55
MR. GRAFF: Mr. Novikoff, are you 10:10:56
requesting the opportunity to review the 10:10:58
transcript? 10:10:59
MR. NOVIKOFF: I think -- if you 10:11:00
want to introduce it at trial, if this ever 10:11:01
gets to trial, you better show him the 10:11:03
transcript. 10:11:05
MR. GRAFF: Okay. Pursuant to the 10:11:06
Federal Rules of Civil Procedure you have 10:11:08
the right to request that opportunity 10:11:09
before the completion of this deposition, 10:11:11
as you now have. 10:11:13
**Q. Is there any reason, Mayor Loeffler, 10:11:14**
**that you can think of why you wouldn't be able 10:11:16**
**to answer my questions truthfully today? 10:11:18**
A. No. 10:11:20
**Q. Is there any reason you can think of 10:11:21**
**why you wouldn't be able to answer my questions 10:11:23**
**fully and completely to the best of your 10:11:25**
**understanding and recollection? 10:11:27**

Page 16

**Loeffler**
A. No. 10:11:28
**Q. Who have you spoken with about this 10:11:29**
**lawsuit other than your counsel? 10:11:39**
A. My wife, my family, members of the 10:11:41
Village staff, news reporters, and some members 10:11:47
of the general public. 10:12:02
**Q. Are you finished with that answer? 10:12:08**
A. Yes, I am. 10:12:10
**Q. And what is your wife's name? 10:12:11**
A. Conde, C-O-N-D-E. 10:12:13
**Q. And how long have you been married 10:12:19**
**to Conde? 10:12:20**
A. Eleven years. 10:12:21
**Q. And prior to your marriage to Conde, 10:12:29**
**have you been married to anyone else? 10:12:32**
A. Yes, I was. 10:12:33
**Q. And who else have you been married 10:12:34**
**to? 10:12:36**
A. Donna. 10:12:36
**Q. And what have you discussed -- were 10:12:41**
**you referring to your current wife Conde as -- 10:12:43**
A. Yes. 10:12:46
**Q. What have you discussed with Conde 10:12:46**
**about this lawsuit? 10:12:49**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

MR. NOVIKOFF: Objection. Spousal privilege. You have to lay a much better foundation to get him to answer about communications he has with his wife about a lawsuit in which he is named a party of. 10:12:49 10:12:51 10:12:54 10:12:55 10:12:59

MR. GRAFF: We can come back to that. 10:13:01 10:13:02

**Q. Which family members did you intend to refer to as having -- as people who you have discussed this lawsuit with? 10:13:02 10:13:04 10:13:09**

A. My children, my brother. 10:13:10

**Q. And -- 10:13:16**

A. My mother. That's about it. 10:13:17

**Q. Specifically which children? 10:13:21**

A. I have four children; Suzanne, Christine, Michael and Jillian. 10:13:23 10:13:26

**Q. And have you spoken with all four of your children about this lawsuit? 10:13:30 10:13:34**

A. Yes. 10:13:35

**Q. And what have you discussed in substance with your children concerning this lawsuit? 10:13:36 10:13:39 10:13:41**

A. That I thought this -- 10:13:41

MR. NOVIKOFF: Go ahead. 10:13:43

Loeffler

A. That I thought this was a frivolous lawsuit and a waste of my time and that I was very annoyed that I had to respond to these questions and that it was taking a lot of my time away from my family, this lawsuit has, and I'm annoyed at that. 10:13:44 10:13:45 10:13:48 10:13:51 10:13:55 10:13:59

**Q. Other than your annoyance at the lawsuit, is there anything else that you can recall that you have discussed in substance with any of your children? 10:14:00 10:14:04 10:14:05 10:14:08**

MR. NOVIKOFF: Objection to the characterization of his testimony. I think he said more than he was merely annoyed with the lawsuit. 10:14:08 10:14:09 10:14:11 10:14:13

**Q. Other than what you referred to in your last response, have you discussed anything else? 10:14:14 10:14:16 10:14:17**

A. That would be the sum and substance of what I said. 10:14:17 10:14:19

**Q. And can you recall any specific conversations with any of your children on that subject? 10:14:20 10:14:21 10:14:23**

A. No, I can't. 10:14:24

MR. NOVIKOFF: What subject? The 10:14:25

Loeffler

lawsuit, his annoyance, the fact that it's frivolous? What? You gotta be precise, Ari. 10:14:27 10:14:29 10:14:32

**Q. Precise -- what you had testified to before, including your annoyance. 10:14:34 10:14:36**

MR. NOVIKOFF: Objection to the form. 10:14:38 10:14:38

A. I'm confused. 10:14:39

MR. NOVIKOFF: Yes, if you want to break it down, break it down. 10:14:40 10:14:42

**Q. Can you recall when the last time you discussed this lawsuit with Suzanne, your daughter, was? 10:14:43 10:14:44 10:14:48**

A. Within the last month. I discussed it with all my children in the last month. 10:14:48 10:14:51

MR. NOVIKOFF: Just answer the question. 10:14:53 10:14:53

**Q. What members of the Village staff have you discussed this lawsuit with? 10:14:54 10:14:55**

MR. NOVIKOFF: So we are off his children now? 10:14:58 10:14:59

MR. GRAFF: I am asking about the Village staff right now. 10:15:00 10:15:01

MR. NOVIKOFF: Okay, good. 10:15:02

Loeffler

A. The members of the board. 10:15:04

**Q. And who are the members of the board that you are referring to? 10:15:10 10:15:11**

A. It would be William Wingate, James Mallott, Kenneth Klein and Steven Einig. 10:15:12 10:15:18

**Q. And what have you discussed with William Wingate concerning this lawsuit? 10:15:32 10:15:34**

MR. NOVIKOFF: Now, if the witness has addressed anything about this lawsuit with a trustee member outside the presence of counsel, I will permit him to answer. If the witness has discussed with a trustee in the presence of counsel, but not for the purpose of seeking legal advice, I will allow the witness to answer. If he has in a meeting with a trustee member with counsel present seeking legal advice from counsel, that I will object to and assert privilege. 10:15:36 10:15:41 10:15:45 10:15:48 10:15:50 10:15:53 10:15:55 10:15:58 10:16:01 10:16:04 10:16:07 10:16:10

MR. GRAFF: I understand. 10:16:10

MR. NOVIKOFF: Okay. 10:16:11

A. This matter has been discussed in -- at meetings, Village board meetings, and during executive session with counsel present. 10:16:11 10:16:16 10:16:19

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

MR. NOVIKOFF: See, now, if it's -- now, just for clarity, when you say board meetings, it's open to the general public? 10:16:21 10:16:23 10:16:25

THE WITNESS: Yes. 10:16:26

MR. NOVIKOFF: Okay. So if it's open to the general public, you have to answer. If it was an executive session for the purpose of seeking legal advice and counsel, then I'm going to instruct you not to answer. Do you understand at least my distinction? 10:16:27 10:16:28 10:16:30 10:16:33 10:16:35 10:16:38 10:16:41

THE WITNESS: Yes, I do. 10:16:42

**Q. Okay. And keeping Mr. Novikoff's distinction in mind, what have you discussed with William Wingate concerning this lawsuit? 10:16:43 10:16:45 10:16:48**

A. All the discussions I've had with the Board of Trustees has been during executive session. 10:16:49 10:16:51 10:16:53

**Q. So you have never had any discussions with William Wingate individually concerning this lawsuit? 10:16:54 10:16:55 10:16:58**

A. No sum and substance about this lawsuit. The only thing I have discussed is the fact that I'd be responding to this EBT 10:16:58 10:17:00 10:17:02

Loeffler

today. 10:17:06

**Q. And prior to -- strike that. 10:17:07**

**How long have you known William Wingate? 10:17:17 10:17:18**

A. 25 years. 10:17:19

**Q. And what is the nature of your relationship with Mr. Wingate? 10:17:21 10:17:24**

A. He is a friend. 10:17:27

**Q. And in what context did you first meet Mr. Wingate? 10:17:37 10:17:39**

A. I bought a piece of property from him, land. 10:17:40 10:17:45

**Q. And is that land located in Ocean Beach? 10:17:48 10:17:50**

A. Yes, it is. 10:17:50

**Q. And in what year did you purchase that land? 10:17:51 10:17:53**

A. 1985. 1984. 10:17:54

**Q. Have you -- what is the address of that property that you are referring to? 10:17:59 10:18:02**

A. 68 Ocean Road, Ocean Beach. 10:18:04

**Q. Other than that purchase of land from Mr. Wingate, have you been involved in any other real estate transactions in which he 10:18:16 10:18:20 10:18:22**

Loeffler

**played a part that you are aware of? 10:18:24**

A. No. 10:18:26

**Q. Has Mr. Wingate ever loaned you any money in connection with any real estate transactions? 10:18:27 10:18:29 10:18:31**

A. Yes. 10:18:32

**Q. And on how many occasions has Mr. Wingate loaned you money in connection with a real estate transaction? 10:18:34 10:18:37 10:18:39**

A. Two. 10:18:41

**Q. And what was the more recent of those two occasions? When did that take place? 10:18:42 10:18:47**

A. Fifteen years ago. 10:18:49

**Q. And how much money did he loan you at that time? 10:18:50 10:18:52**

A. I don't know. I don't remember exactly how much. 10:18:53 10:18:54

**Q. And what real estate was being purchased at that time? 10:18:55 10:18:58**

A. 29 Beachwold Walk in Seaview. 10:18:59

**Q. And what was the other real estate transaction in connection with which Mr. Wingate loaned you money? 10:19:05 10:19:13 10:19:15**

A. He had held a mortgage on the 10:19:16

Loeffler

property that I bought at 68 Ocean Road. 10:19:19

**Q. And how -- in what amount was the mortgage? 10:19:21 10:19:27**

A. I don't remember. 10:19:27

**Q. If I suggested that it was a hundred thousand dollars, would that refresh your recollection? 10:19:27 10:19:30 10:19:31**

A. It could have been. 10:19:32

**Q. Have you ever been involved in any purchase of real estate from Ocean Beach, that is, the Village of Ocean Beach? 10:19:32 10:19:40 10:19:43**

A. Yes. 10:19:47

**Q. And on how many occasions have you been involved in purchasing real estate from the Village of Ocean Beach? 10:19:47 10:19:49 10:19:51**

A. One. 10:19:53

**Q. And when was that occasion? 10:19:53**

A. Approximately three years ago. 10:19:55

**Q. And what real estate did you purchase at that time? 10:19:57 10:19:58**

A. I purchased a 4 by 50 foot right of way from the Village of Ocean Beach. 10:19:59 10:20:04

**Q. And where is the -- that located, the address? 10:20:06 10:20:09**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

A. 68 Ocean Road. 10:20:09

**Q. And how much did you pay for that real estate? 10:20:11 10:20:14**

A. $1,500, I think. 10:20:14

**Q. And do you know what the assessed value of the real estate was at the time that you purchased it? 10:20:18 10:20:21 10:20:23**

A. It didn't have an assessed value, I don't think. 10:20:24 10:20:28

**Q. Subsequent to your purchase of that piece of real estate, has it been assessed, to your knowledge? 10:20:29 10:20:32 10:20:34**

A. No, it has not. 10:20:35

**Q. Do you know what the value of that real estate is? 10:20:39 10:20:41**

A. No, I don't. 10:20:41

**Q. When did you first meet Trustee James Mallott? 10:20:50 10:20:53**

A. Thirty years ago. 10:20:55

**Q. And what's the nature of your relationship with Mr. Mallott? 10:20:56 10:20:58**

A. Friend. 10:20:59

**Q. And is he a family friend? Do your families interact socially? 10:21:04 10:21:08**

Loeffler

MR. NOVIKOFF: Objection. Form. 10:21:10

**Q. Do your families interact socially? 10:21:13**

A. No. 10:21:17

**Q. And when did you meet Trustee Kenneth Klein? 10:21:18 10:21:20**

A. Five years ago. 10:21:23

**Q. And in what context did you meet Mr. Klein? 10:21:28 10:21:30**

A. He was a member of the Zoning Board of Appeals in the Incorporated Village of Ocean Beach. 10:21:31 10:21:32 10:21:36

**Q. What's the nature of your relationship with Mr. Klein? 10:21:36 10:21:37**

A. He is a friend. 10:21:38

**Q. And Trustee Steven Einig, when did you first meet him? 10:21:43 10:21:46**

A. 2003. 10:21:48

**Q. In what context did you first meet Mr. Einig? 10:21:52 10:21:53**

A. He was a member of the sitting board of the Village of Ocean Beach. 10:21:54 10:21:56

**Q. When you say "the city board," is that -- 10:21:59 10:22:01**

A. Sitting board. 10:22:01

Loeffler

**Q. Sitting board? 10:22:01**

A. Sitting, S-I-T-T-I-N-G. 10:22:04

**Q. What's the nature of your relationship with Mr. Einig? 10:22:07 10:22:09**

A. He is a friend. 10:22:10

**Q. Have any of your children ever been employed by Ocean Beach? 10:22:11 10:22:19**

A. Yes. 10:22:20

**Q. And which children have been employed by Ocean Beach? 10:22:20 10:22:23**

A. All of them. 10:22:24

**Q. What positions has Suzanne Loeffler held with Ocean Beach? 10:22:25 10:22:29**

A. She worked in the Village office and she was the director of the recreation department. 10:22:30 10:22:32 10:22:34

**Q. And during what period of time did she work in the Village office? 10:22:34 10:22:36**

A. I don't know the exact date. 10:22:37

**Q. Do you know the years? 10:22:44**

A. No, I don't. 10:22:45

**Q. And during what period of time, if you know, did she work in the recreation department? 10:22:46 10:22:49 10:22:52**

Loeffler

A. Up until two years ago she worked there -- three years ago she worked there. 10:22:52 10:22:55

**Q. And do you know how long she held her position with that department? 10:22:57 10:22:59**

A. No, I don't. 10:23:00

**Q. And what positions has Jillian Loeffler held with the Village of Ocean Beach? 10:23:01 10:23:07**

A. She is the seasonal director of the recreation department. 10:23:10 10:23:13

**Q. And how long has she held that position? 10:23:13 10:23:15**

A. Two years. 10:23:15

**Q. Did you have any role in her obtaining that position? 10:23:16 10:23:18**

A. No, I did not. 10:23:19

**Q. And what positions has Mike Loeffler held with Ocean Beach? 10:23:20 10:23:24**

A. He was a seasonal lifeguard. 10:23:25

**Q. During what period of time was he a seasonal lifeguard? 10:23:27 10:23:30**

A. More than five years ago. 10:23:32

**Q. And what positions has Christine Loeffler held with Ocean Beach? 10:23:39 10:23:41**

A. She worked for the -- this last 10:23:43

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

summer for three months she worked at the 10:23:49
recreation department. 10:23:52
**Q. And that was after Suzanne Loeffler 10:23:58**
**no longer worked there? 10:24:02**
A. Correct. 10:24:03
**Q. Thank you. Are you related to 10:24:03**
**Winnie or Winifred Loeffler? 10:24:09**
A. That's my mother. 10:24:10
**Q. Has your mother, Mrs. Loeffler, held 10:24:13**
**any positions with Ocean Beach? 10:24:16**
A. Yes, she has. 10:24:17
**Q. What positions has she held? 10:24:19**
A. She was the court clerk. 10:24:21
**Q. During what period of time was she 10:24:22**
**court clerk? 10:24:25**
A. Approximately 30 years. 10:24:25
**Q. And do you know what the nature of 10:24:30**
**her duties were as Village clerk -- court 10:24:32**
**clerk? Excuse me. 10:24:35**
A. She worked in the court. 10:24:35
**Q. Other than the members of your 10:24:40**
**family who we have just been discussing, have 10:24:42**
**any other family members of yours ever been 10:24:45**
**employed by Ocean Beach? 10:24:47**

**Loeffler**

A. My father. 10:24:48
**Q. And was your father the chief of 10:24:49**
**police at Ocean Beach? 10:24:53**
A. Yes, he was. 10:24:53
**Q. And do you know during what period 10:24:54**
**of time he was the police chief? 10:24:56**
A. From 1956 until 1993 maybe. 10:24:58
**Q. Have any other members of your 10:25:15**
**family been employed by Ocean Beach? 10:25:17**
A. My brother, Alan. 10:25:19
**Q. Alan Loeffler? 10:25:20**
A. Yes, sir. 10:25:21
**Q. What position has your brother held 10:25:22**
**with Ocean Beach? 10:25:24**
A. He was a police officer in the 10:25:25
Village Police Department. 10:25:26
**Q. And, to your knowledge, has Alan 10:25:30**
**Loeffler held any law enforcement positions 10:25:33**
**outside of Ocean Beach? 10:25:35**
A. Yes, he has. 10:25:37
**Q. And what law enforcement positions 10:25:38**
**has he held? 10:25:41**
A. He worked for the U.S. Marshal 10:25:41
Service and he worked for the Town of Islip. 10:25:43

Loeffler

**Q. Do you know what position he held in 10:25:50**
**the Town of Islip? 10:25:51**
A. He was harbor master. 10:25:52
**Q. Is that a law enforcement position? 10:25:54**
A. Yes, it is. 10:25:57
**Q. Do you know during what period of 10:25:59**
**time he held the position of harbor master in 10:26:01**
**the Town of Islip? 10:26:04**
A. Thirty years. For thirty years. He 10:26:05
just retired, so that would be from, let's see, 10:26:07
1975 to 2005, something like that. 10:26:10
**Q. And did your brother, Alan Loeffler, 10:26:19**
**communicate to you why he was retiring in 2005? 10:26:23**
A. Because he had thirty years in the 10:26:25
department. 10:26:27
**Q. Have you ever been convicted of a 10:26:34**
**crime? 10:26:36**
A. No. 10:26:36
MR. NOVIKOFF: You don't want to ask 10:26:40
what position he had with the U.S. Marshal? 10:26:42
MR. GRAFF: I will ask the questions 10:26:47
that I'd like to ask. 10:26:48
MR. NOVIKOFF: All right. I just 10:26:50
thought it was interesting that you only 10:26:51

Loeffler

asked about the Town of Islip and not the 10:26:52
U.S. Marshal. 10:26:54
**Q. Since your counsel has raised it, 10:26:55**
**what position did Alan Loeffler hold at the 10:26:57**
**U.S. Marshal? 10:26:59**
A. He was a sky marshal during the 10:27:00
early '70s working at Kennedy Airport. 10:27:02
**Q. Have you had any conversations with 10:27:09**
**former Mayor Rogers concerning this lawsuit? 10:27:11**
A. No. 10:27:14
MR. NOVIKOFF: Okay. You can 10:27:16
answer. Right, you can answer. He 10:27:18
wouldn't have been an employee at the time. 10:27:19
A. Would you repeat the question, 10:27:22
please. 10:27:23
**Q. Have you had any conversations with 10:27:23**
**former Mayor Rogers concerning this lawsuit? 10:27:25**
MR. NOVIKOFF: Oh, actually, other 10:27:28
than in the presence of counsel. 10:27:29
MR. GRAFF: Yes. 10:27:31
**Q. None of my questions today are 10:27:32**
**intended to get at anything that was 10:27:33**
**communicated by your counsel to you or by you 10:27:35**
**to your counsel or by anyone else in your 10:27:38**

Page 33

Loeffler

**presence in the presence of counsel for the purpose of obtaining legal advice. 10:27:41 10:27:43**

**With that in mind, have you had any conversations with former Mayor Rogers concerning this lawsuit? 10:27:45 10:27:47 10:27:49**

A. Yes. 10:27:51

**Q. On how many occasions have you spoken with Mayor Rogers concerning this lawsuit? 10:27:52 10:27:54 10:27:57**

A. Once. 10:27:57

**Q. And when did that conversation take place? 10:27:57 10:27:59**

A. About a year ago. 10:28:00

**Q. And in substance, can you tell me what was discussed between the two of you in that conversation? 10:28:03 10:28:05 10:28:08**

MR. NOVIKOFF: As long as it was outside the presence of counsel. 10:28:09 10:28:11

A. It was discussed that we were both defendants in this lawsuit and that we were going to pursue this lawsuit vigorously. 10:28:12 10:28:14 10:28:16

**Q. Have you had any conversations with Mary Anne Minerva concerning this lawsuit? 10:28:22 10:28:25**

A. Yes. 10:28:27

Page 34

Loeffler

**Q. And what's the most recent occasion when you communicated with Ms. Minerva about this lawsuit? 10:28:28 10:28:30 10:28:33**

MR. NOVIKOFF: Now, I am only going to direct the witness on two things. One, if your discussion with Ms. Minerva was in the presence of counsel, you don't answer, or if your discussion with Ms. Minerva was at the request of counsel in order to obtain information concerning this lawsuit, then I would instruct you not to answer. Other than that, go wild. 10:28:34 10:28:35 10:28:37 10:28:39 10:28:42 10:28:44 10:28:48 10:28:50 10:28:52

A. I spoke to her last week informing her that I would be at this EBT. 10:28:55 10:28:58

**Q. Other than that conversation and any conversations, as your counsel noted, that were in the presence of counsel or under the direction of counsel in connection with litigation of this case, have you had any other communications with Ms. Minerva about this lawsuit? 10:29:01 10:29:04 10:29:08 10:29:10 10:29:13 10:29:15 10:29:18**

A. Yes. 10:29:18

**Q. And in substance what have you discussed with Ms. Minerva about this lawsuit? 10:29:18 10:29:20**

Page 35

Loeffler

A. I thought it was a waste of my time and a frivolous lawsuit brought by some disgruntled employees. 10:29:22 10:29:24 10:29:26

**Q. Did you have any conversations with Ms. Minerva concerning her deposition in this lawsuit? 10:29:28 10:29:30 10:29:32**

MR. NOVIKOFF: Concerning the fact that she was going to be deposed or concerning anything she said at her deposition after the fact? 10:29:33 10:29:34 10:29:36 10:29:38

MR. GRAFF: Either. 10:29:39

MR. NOVIKOFF: Then objection to form. Break it down. 10:29:40 10:29:41

A. Would you please repeat the question. 10:29:44 10:29:45

**Q. Have you had any conversations with Ms. Minerva concerning her deposition in this lawsuit? 10:29:45 10:29:47 10:29:49**

MR. NOVIKOFF: Objection to form. You can answer. 10:29:49 10:29:50

A. No, I have not. 10:29:51

**Q. And have you had any conversations with Mayor Rogers -- former Mayor Rogers about her deposition in this lawsuit? 10:29:52 10:29:56 10:30:00**

Page 36

Loeffler

MR. NOVIKOFF: Objection to form. 10:30:01

A. No, I have not. 10:30:02

**Q. Do you know who Patrick Cherry is? 10:30:10**

A. Yes, I do. 10:30:13

**Q. And who is Patrick Cherry? 10:30:14**

A. He is an employee of the Incorporated Village of Ocean Beach. 10:30:16 10:30:18

**Q. And in what capacity is he employed? 10:30:19**

A. He is a dispatcher. 10:30:21

**Q. Is that a police dispatcher? 10:30:23**

A. Yes, he is. 10:30:24

**Q. Have you had any conversations with Pat Cherry regarding this lawsuit? 10:30:25 10:30:27**

**(Kevin Lamm enters.) 10:30:29**

A. No, I have not. 10:30:29

**Q. Have you had any conversations with George Hesse about this lawsuit? 10:30:31 10:30:48**

A. Yes, I have. 10:30:50

MR. NOVIKOFF: I'm sorry, could you just read that question? Only because I believe another plaintiff came into the room in the course of the question, Kevin Lamm, so I just want to note that, and if you could just read the question back. 10:30:58 10:30:59 10:31:00 10:31:01 10:31:02 10:31:04

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

(Record read.) 10:31:11

**Q. And when is the most recent occasion on which you had communication with George Hesse about this lawsuit? 10:31:12 10:31:14 10:31:16**

A. About a week ago. 10:31:18

**Q. What did you discuss with George Hesse in that conversation a week ago? 10:31:23 10:31:27**

A. That I would be attending this EBT. 10:31:28

**Q. Was anything else -- strike that. 10:31:31**

**Did he say anything to you in response when you communicated that fact? 10:31:33 10:31:34**

A. He said "good luck." 10:31:35

**Q. Was anything else discussed between the two of you in that conversation? 10:31:37 10:31:39**

A. No. 10:31:40

MR. NOVIKOFF: About this lawsuit? 10:31:40

MR. GRAFF: No, in general. 10:31:41

MR. NOVIKOFF: Oh, okay. 10:31:43

A. I discussed how the weather was in New York, I discussed how his family was, I talked to him about his boat. General conversation that friends talk about, but not about this lawsuit. 10:31:45 10:31:47 10:31:49 10:31:53 10:31:56

**Q. And does George Hesse own a boat? 10:31:59**

**Loeffler**

A. Yes, he does. 10:32:02

**Q. What kind of boat does he have? 10:32:03**

A. 32-foot Sea Ray. 10:32:05

**Q. Do you own any boats? 10:32:09**

A. Yes, I do. 10:32:10

**Q. Do you own more than one boat? 10:32:10**

A. No, I do not. 10:32:12

**Q. What kind of boat do you own? 10:32:14**

A. A 25-foot Contender. 10:32:15

**Q. Other than the conversation with George Hesse that you have already referred to, have you had any other communications with Mr. Hesse concerning this lawsuit? 10:32:17 10:32:19 10:32:21 10:32:23**

A. No. 10:32:25

MR. NOVIKOFF: Concerning this lawsuit after the Complaint was filed? 10:32:31 10:32:33

MR. GRAFF: That's what initiated the lawsuit, so yes. 10:32:37 10:32:39

MR. NOVIKOFF: Well, your question was a little bit vague, so I just wanted to be clear that the witness is only addressing conversations with Mr. Hesse after the commencement of this lawsuit concerning this lawsuit. 10:32:41 10:32:42 10:32:44 10:32:45 10:32:47 10:32:49

Loeffler

The question is other than what you have just testified to, have you spoken with Mr. Hesse concerning this lawsuit after this lawsuit was filed? 10:32:53 10:32:55 10:32:57 10:33:01

A. Yes. That's what I said, didn't I? 10:33:04

**Q. And what was communicated in substance between you and Mr. Hesse in those conversations? 10:33:08 10:33:10 10:33:12**

A. Basically that I would be attending a deposition, that the lawsuit was pending. There was other discussions taking place about other Village business, but not about this lawsuit. 10:33:13 10:33:17 10:33:23 10:33:27 10:33:30

**Q. Have you reviewed the Complaint that was filed in federal court in this lawsuit? 10:33:30 10:33:32**

A. Yes, I have. 10:33:35

**Q. And did you discuss the Complaint with George Hesse? 10:33:36 10:33:39**

A. Yes, I did. 10:33:40

**Q. And were there any specific allegations in the Complaint that you can recall discussing with George Hesse? 10:33:48 10:33:49 10:33:51**

A. I only discussed with him the portions of the Complaint that were reference 10:33:54 10:33:56

Loeffler

to me. 10:33:59

MR. NOVIKOFF: So you didn't have a long conversation, did you? 10:34:02 10:34:04

THE WITNESS: No, sir. 10:34:05

**Q. And do you recall what was communicated in substance between you and Mr. Hesse about those portions of the Complaint? 10:34:06 10:34:10 10:34:13 10:34:14**

A. That they were baseless and untrue. 10:34:15

**Q. Did you discuss any of the allegations in the Complaint with former Mayor Rogers? 10:34:17 10:34:26 10:34:30**

MR. NOVIKOFF: Outside the presence of counsel. 10:34:30 10:34:31

A. No, I did not. 10:34:32

**Q. Have you had any communications with any of the plaintiffs since this lawsuit was filed? 10:34:33 10:34:37 10:34:39**

A. No, I have not. 10:34:39

**Q. When did you first learn that the plaintiffs were making allegations against Ocean Beach concerning the subject matter of this lawsuit? 10:34:44 10:34:46 10:34:48 10:34:50**

A. With the filing of the lawsuit. 10:34:51

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**Q. And that's the federal lawsuit? 10:34:54**

A. Yes. I believe that was in April about. I'm not sure of the exact date. 10:34:56 10:34:59

**Q. Do you know who Richard Bosetti is? 10:35:02**

A. Yes, I do. 10:35:08

**Q. Who is Richard Bosetti? 10:35:09**

A. He is a former police officer in the Incorporated Village of Ocean Beach. 10:35:11 10:35:13

**Q. And when did he stop serving as a police officer, if you know? 10:35:14 10:35:18**

A. Sometime this year. I don't know if it was '08 or '09. I'm not positive. 10:35:20 10:35:23

**Q. Did you ever have any communications with Richard Bosetti concerning the subject of this lawsuit? 10:35:27 10:35:29 10:35:32**

A. No, I did not. 10:35:32

**Q. And do you know why Richard Bosetti stopped working as a police officer with the Incorporated Village of Ocean Beach? 10:35:33 10:35:37 10:35:39**

A. He resigned. 10:35:41

**Q. Do you know who Gary Bosetti is? 10:35:42**

A. Yes, I do. 10:35:49

**Q. Is that Richard Bosetti's brother? 10:35:49**

A. Yes, it is. 10:35:51

Loeffler

**Q. And was he also a police officer at Ocean Beach? 10:35:52 10:35:54**

A. Yes, he was. 10:35:54

**Q. And do you know during what period of time he was a police officer with Ocean Beach? 10:35:55 10:35:57 10:35:59**

A. No, I do not. 10:35:59

**Q. Do you know when his service as a police officer ended? 10:36:00 10:36:02**

A. '07, '08. 10:36:02

**Q. And do you know why Gary Bosetti's service as a police officer ended at that time? 10:36:09 10:36:13**

A. He resigned. 10:36:14

**Q. Do you know anything about the circumstances of his resignation? 10:36:16 10:36:18**

A. No, I don't. 10:36:20

**Q. And do you know anything about the circumstances of Richard Bosetti's resignation? 10:36:25 10:36:28**

A. No, I do not. 10:36:31

**Q. Did you ever ask either Richard or Gary Bosetti to resign? 10:36:32 10:36:34**

A. I did not. 10:36:35

**Q. Did you ever direct anyone else to ask either Richard or Gary Bosetti to resign? 10:36:36 10:36:40**

**Loeffler**

A. I did not. 10:36:42

**Q. Did you have any communications with either Richard or Gary Bosetti concerning either of their resignations? 10:36:46 10:36:49 10:36:53**

A. I did not. 10:36:54

**Q. Have you had any conversations with either -- strike that -- with Gary Bosetti concerning the subject of this lawsuit? 10:36:55 10:36:57 10:37:00**

A. I did not. 10:37:02

**Q. Do you know who Ty or Tyree Bacon is? 10:37:08 10:37:10**

A. Yes, I do. 10:37:11

**Q. And who is Tyree Bacon? 10:37:12**

A. He is a police officer in the Village of Ocean Beach. 10:37:14 10:37:16

**Q. Have you had any conversations with Tyree Bacon about this lawsuit? 10:37:17 10:37:19**

A. No, I have not. 10:37:22

**Q. Have you had any conversations with Tyree Bacon about any of the allegations in the Complaint? 10:37:23 10:37:25 10:37:27**

A. No, I have not. 10:37:27

**Q. Are you currently a resident of Ocean Beach? 10:37:28 10:37:40**

**Loeffler**

A. Yes. 10:37:41

MR. NOVIKOFF: Objection. 10:37:41

You can answer. 10:37:42

A. Yes, I am. 10:37:44

**Q. And do you reside at 68 or 68-69 Ocean Road? 10:37:45 10:37:48**

A. Yes, I do. 10:37:49

**Q. I have a few questions that just go to your educational background. 10:37:50 10:37:56**

**Did you graduate high school? 10:37:59**

A. Yes, I did. 10:38:00

**Q. What high school did you attend? 10:38:01**

A. Bay Shore High School. 10:38:02

**Q. And what year did you graduate? 10:38:04**

A. 1967. 10:38:08

**Q. And did you attend any college or university? 10:38:09 10:38:12**

A. Yes, I did. 10:38:12

**Q. And what college or university did you attend after high school? 10:38:13 10:38:16**

A. The State University College of Potsdam. 10:38:19 10:38:21

**Q. And did you obtain a degree from the State University College of Potsdam? 10:38:23 10:38:25**

9e28f7aa-4e93-4641-9524-8529961356c8

Page 45

Loeffler

A. No, I did not. 10:38:28

**Q. How many years did you attend the State University College of Potsdam? 10:38:29 10:38:33**

A. Two. Two. 10:38:36

**Q. And other than those two years, have you had any other formal coursework at any college or university? 10:38:38 10:38:43 10:38:47**

A. Yes. 10:38:48

**Q. And could you identify that, please? 10:38:48**

A. Dowling College. 10:38:51

**Q. And what did you study at Dowling College? 10:38:53 10:38:55**

A. Business administration. 10:38:55

**Q. And did you attain any degree at Dowling College? 10:38:57 10:39:00**

A. Yes, I did. 10:39:01

**Q. What degree? 10:39:02**

A. Bachelor of business administration. 10:39:02

**Q. And in what year did you get that degree? 10:39:05 10:39:06**

A. Sometime in the '80s. 10:39:07

**Q. Have you attended any other colleges or universities? 10:39:12 10:39:15**

A. Farmingdale University. 10:39:16

Page 46

Loeffler

**Q. And what was the nature of your study at Farmingdale University? 10:39:19 10:39:22**

A. Finance. 10:39:24

**Q. Did you attain any degree from Farmingdale University? 10:39:26 10:39:29**

A. No, I did not. 10:39:30

**Q. How many years did you attend Farmingdale? 10:39:31 10:39:33**

A. Two. 10:39:34

**Q. Have you attended any other colleges or universities other than what we have already discussed? 10:39:34 10:39:37 10:39:40**

A. No. 10:39:40

**Q. Why did you stop attending Farmingdale University after two years? 10:39:40 10:39:42**

A. I only took some night courses there. 10:39:44 10:39:46

**Q. And was that in pursuit of any certification or formal credential? 10:39:47 10:39:50**

A. Yes, it was. 10:39:52

**Q. And did you attain any kind of certification or formal credential? 10:39:53 10:39:56**

A. Yes, I did. 10:39:58

**Q. And in what? 10:39:59**

Page 47

**Loeffler**

A. I got a bachelor of business administration from Dowling College and I used those credits that I obtained in Farmingdale towards the pursuit of that degree. 10:40:01 10:40:03 10:40:05 10:40:07

**Q. Thank you. Other than the colleges and universities that you have already identified, have you attended any other colleges or universities? 10:40:09 10:40:14 10:40:15 10:40:17**

A. No, I have not. 10:40:18

**Q. Have you attained any other degrees or certifications? 10:40:20 10:40:21**

A. Yes. I received a certificate from the Metropolitan Police Training Council as a police officer of the Suffolk County Police Department in 1973. 10:40:22 10:40:32 10:40:36 10:40:40

**Q. Have you attained any other certifications? 10:40:43 10:40:46**

A. I attained -- I attended the FBI Academy training as a hostage negotiator and received a certificate for that. 10:40:47 10:40:51 10:40:57

**Q. And when did you receive that certificate? 10:40:58 10:40:59**

A. In 1987. 10:40:59

**Q. Have you attained any other**

Page 48

**Loeffler**

**certifications? 10:41:03 10:41:04**

A. No, I have not. 10:41:05

**Q. Other than this lawsuit, have you been involved in any other lawsuits in the context of your service at Ocean Beach? 10:41:10 10:41:22 10:41:26**

MR. NOVIKOFF: Objection to the form of the question. I would think that as mayor or trustee any time the Village was sued, this witness would be involved, so I am objecting to the form. I think I have given you a way to clean it up. 10:41:29 10:41:30 10:41:33 10:41:36 10:41:44 10:41:45

MR. GRAFF: I will come back to that. 10:42:00 10:42:01

**Q. Have you ever sued or threatened to sue any employer of yours? 10:42:01 10:42:03**

MR. NOVIKOFF: Wait a minute. 10:42:05

Can you read that question. 10:42:06

(Record read.) 10:42:11

MR. NOVIKOFF: Any employer of -- okay. I understand the question. Objection to form. 10:42:12 10:42:14 10:42:15

A. No, I have not. 10:42:17

**Q. Other than these plaintiffs, have any employees of Ocean Beach ever sued or 10:42:18 10:42:24**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**threatened to sue you personally? 10:42:27**

MR. NOVIKOFF: Objection to form. 10:42:29
That he is aware of? 10:42:31

MR. GRAFF: Yes. 10:42:32

MR. NOVIKOFF: Okay. I am still 10:42:33
going to object to form, but that at least 10:42:34
clears up part of the objection. 10:42:37

A. No. 10:42:38

**Q. Have any formal grievances ever been 10:42:38**
**filed against you personally during your 10:42:44**
**services at Ocean Beach? 10:42:46**

MR. NOVIKOFF: Objection to the 10:42:48
phrase "formal grievances." I don't know 10:42:50
what that means. 10:42:51

**Q. Do you know what a grievance is? Is 10:42:52**
**there a grievance in the context of Ocean 10:42:54**
**Beach? 10:42:55**

MR. NOVIKOFF: Is it now grievance 10:42:55
or is it now formal grievance? Your 10:42:56
question was formal grievance. 10:42:58

**Q. Would you know what I am referring 10:42:59**
**to by the phrase "formal grievance," 10:43:01**
**Mr. Loeffler? 10:43:04**

A. Not in the context you are asking 10:43:04

Loeffler

the question, no. 10:43:06

**Q. Is there another context in which -- 10:43:07**

MR. NOVIKOFF: There could be 10:43:10
multiple contexts. 10:43:11

**Q. Have you ever been disciplined by 10:43:14**
**any employer? 10:43:17**

A. No, I have not. 10:43:17

**Q. Have you ever been terminated from 10:43:18**
**any employment position? 10:43:20**

A. No, I have not. 10:43:22

**Q. Have you ever been asked to resign 10:43:23**
**from any position? 10:43:24**

A. No, I have not. 10:43:26

**Q. Have you ever been subject to any 10:43:27**
**discipline by any employer? 10:43:29**

A. I believe you already asked that 10:43:30
question. I have not. 10:43:32

**Q. The answer is no. 10:43:33**

**Other than any conversations with 10:43:36**
**counsel, what, if anything, did you do to 10:43:38**
**prepare for this deposition today? 10:43:40**

MR. NOVIKOFF: And other than 10:43:43
meeting with counsel, meeting and speaking 10:43:45
with counsel? 10:43:47

Loeffler

MR. GRAFF: Yes. 10:43:47

MR. NOVIKOFF: And anything that 10:43:50
took place within that meeting, like 10:43:51
looking at documents? I mean, I think we 10:43:52
have already established you can ask him if 10:43:55
he looked at any documents to refresh his 10:43:57
recollection, but I don't think it's 10:44:00
appropriate for you to ask him if he looked 10:44:01
at any documents that I or Michael Welch or 10:44:03
Josh Jemal handed to him. So that's why I 10:44:06
am just, you know, trying to figure out 10:44:09
exactly what you are asking. 10:44:10

MR. GRAFF: Okay. 10:44:11

**Q. With that distinction in mind, what, 10:44:12**
**if anything, have you done to prepare for this 10:44:15**
**deposition? 10:44:17**

A. Would you repeat that. I don't 10:44:17
quite understand what you are asking. 10:44:19

**Q. Sure. Other than anything that 10:44:20**
**happened in any meetings with counsel, what, if 10:44:21**
**anything, did you do to prepare for this 10:44:24**
**deposition? 10:44:26**

A. I took a shower this morning, had 10:44:26
breakfast. 10:44:30

Loeffler

**Q. Have you reviewed any transcripts 10:44:31**
**from any other depositions in this case? 10:44:33**

A. No. 10:44:35

MR. NOVIKOFF: Outside the 10:44:35
presentation of counsel? 10:44:36

MR. GRAFF: No, in general. 10:44:37

MR. NOVIKOFF: I don't know if -- 10:44:40
and I think the answer is already given, 10:44:44
but if I showed him a transcript of a 10:44:47
witness, I don't know if that's 10:44:51
discoverable. I think if he looked at a 10:44:55
transcript to refresh his recollection, at 10:44:57
least based upon what Judge Boyle has 10:45:00
already ruled, that would not be 10:45:02
objectionable. So that's the distinction. 10:45:04

MR. GRAFF: I understand the 10:45:06
distinction you are making. I am asking if 10:45:07
he has reviewed any transcripts. 10:45:09

MR. NOVIKOFF: Outside of the 10:45:10
presence -- 10:45:11

MR. GRAFF: No. I am asking if he 10:45:12
has reviewed any transcripts. 10:45:13

MR. NOVIKOFF: He answered no. 10:45:17
I'm -- the answer is not waiving my right 10:45:20

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

to object on the grounds of attorney/client privilege, but since you already answered "no," we might as well move on instead of fighting for ten minutes. 10:45:21 10:45:25 10:45:27 10:45:29

MR. GRAFF: Thank you. 10:45:30

**Q. And the answer to that was no? 10:45:31**

A. Yes. 10:45:33

**Q. Did you review any documents that refreshed your recollection of anything in connection with this deposition today? 10:45:34 10:45:36 10:45:41**

A. No, I have not. 10:45:42

**Q. Other than the law firm of Rivkin Radler, have there been other law firms that have represented you or the Village of Ocean Beach in this lawsuit? 10:45:43 10:46:07 10:46:09 10:46:10**

MR. NOVIKOFF: And other than Josh Jemal's law firm, which I think we can all stipulate has been -- 10:46:14 10:46:16 10:46:19

MR. GRAFF: Yes. 10:46:19

MR. NOVIKOFF: -- general counsel. 10:46:19

A. I believe Mark Anash was the first -- no, I don't -- no. 10:46:22 10:46:25

MR. NOVIKOFF: If you can recall. It's not a guessing game. 10:46:27 10:46:29

Loeffler

A. I don't recall. No, I believe it's been Rivkin Radler. 10:46:30 10:46:31

**Q. And just to be clear, is there another law firm that the name you can't remember now or you are -- 10:46:34 10:46:36 10:46:38**

A. No. In this lawsuit, Rivkin Radler. 10:46:39

MR. NOVIKOFF: But, again, I mean, this is a memory game, Ari, because I think the record in the docket would reflect that there was, in fact, another lawsuit that appeared on behalf of Ocean Beach prior to Rivkin Radler. 10:46:41 10:46:43 10:46:45 10:46:48 10:46:50 10:46:52

MR. GRAFF: I am asking now -- 10:46:52

MR. NOVIKOFF: I know, I mean, you are asking -- 10:46:53 10:46:54

A. I don't know who it was. I don't remember. 10:46:54 10:46:56

MR. GRAFF: I asked the court reporter to mark as Exhibit 1 a one-page document produced by Ocean Beach without Bates number. I am going to pass that to the witness. 10:47:01 10:47:02 10:47:05 10:47:07 10:47:09

I will note that Mr. Novikoff is holding the document. 10:47:11 10:47:12

Loeffler

MR. NOVIKOFF: Because I would like to look at it. 10:47:12 10:47:12

MR. GRAFF: I do have a copy for you, Mr. Novikoff. 10:47:13 10:47:15

MR. NOVIKOFF: Thank you. And I would like to compare it to the copy that you provided me. Is there a question? Or would you like the witness to look at it? 10:47:16 10:47:16 10:47:20 10:47:25

MR. GRAFF: I'd like the witness to look at it first and to tell me if he recognizes the document. 10:47:27 10:47:28 10:47:30

MR. NOVIKOFF: Fair enough. There you go (handing). 10:47:30 10:47:31

(Document review.) 10:47:45

MR. NOVIKOFF: The only question is do you recognize it. Not the information that's on it -- 10:47:54 10:47:54 10:47:59

THE WITNESS: Okay. 10:47:59

MR. NOVIKOFF: -- just the document. 10:48:00

A. I've never seen this before. 10:48:00

**Q. Okay. 10:48:02**

A. This is the first time I am seeing this. 10:48:03 10:48:05

**Q. The document is headed Confidential 10:48:05**

**Loeffler**

**Wage Salary/History, employee name is Joseph C. Loeffler, Jr. 10:48:09 10:48:12**

**If you look towards the bottom of the document, it indicates that you were mayor from July 3rd, '06 and the end date it has here is May 31st, '07. 10:48:13 10:48:15 10:48:16 10:48:19**

MR. NOVIKOFF: That's what the document says, yes. 10:48:21 10:48:22

**Q. Is that the date that you began serving as mayor? 10:48:23 10:48:25**

MR. NOVIKOFF: So the question is did you start serving as mayor of Ocean Beach on July 3rd, 2006? 10:48:26 10:48:27 10:48:29

MR. GRAFF: Yes. 10:48:31

A. Yes, I did. 10:48:32

**Q. And the document above mayor indicates that you served as a trustee, it has it on a number of lines, but the period of time is from August 2002 through May 30 -- I'm sorry, through July 2nd, 2006. 10:48:33 10:48:36 10:48:37 10:48:39 10:48:43**

**Is that the time that you served as a trustee in Ocean Beach? 10:48:45 10:48:47**

A. Yes, that's correct. 10:48:49

**Q. And if it would be of assistance to 10:48:50**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**you in connection with these questions, I'm 10:48:52**
**sure Mr. Novikoff would be happy to let you see 10:48:54**
**the document. 10:48:56**

MR. NOVIKOFF: If Mr. Loeffler -- if 10:48:56 he needs to look at the document to refresh 10:48:58 his recollection, then he will so advise 10:48:59 me. 10:49:02

**Q. During the period that you were 10:49:02**
**trustee or mayor, did you hold any other 10:49:03**
**employment? 10:49:07**

MR. NOVIKOFF: With Ocean Beach? 10:49:08

MR. GRAFF: With anyone. 10:49:09

MR. NOVIKOFF: Okay. 10:49:11

A. I was employed by the Suffolk County 10:49:11 Police Department. 10:49:14

**Q. And what position did you hold at 10:49:15**
**the Suffolk County Police Department during 10:49:16**
**that period? 10:49:18**

A. I was a detective. 10:49:19

**Q. And who was your direct superior in 10:49:25**
**the Suffolk County Police Department during 10:49:29**
**that period? 10:49:30**

MR. NOVIKOFF: Objection to the 10:49:35 frame -- to the form. 10:49:36

Loeffler

A. James -- Lieutenant James Maher. 10:49:38

**Q. Was he your supervisor during that 10:50:01**
**entire period? 10:50:03**

A. What period is that? 10:50:04

**Q. The period when you were also 10:50:06**
**serving as trustee or mayor. 10:50:08**

A. I believe so. 10:50:09

**Q. Have you held any other employment 10:50:16**
**other than a Suffolk County detective during 10:50:17**
**the period that you served as trustee or mayor? 10:50:22**

A. No. 10:50:25

**Q. Moving up on the document, it 10:50:25**
**indicates that you were a building inspector 10:50:30**
**from January 1st, 1980 through June 1st, 1980. 10:50:32**
**Do you recall that? 10:50:38**

A. Yes, I do. 10:50:39

**Q. Between the time that you finished 10:50:39**
**serving as a building inspector until you 10:50:42**
**became a trustee, what, if any, employment did 10:50:44**
**you hold? 10:50:46**

MR. NOVIKOFF: With the Village? 10:50:47

MR. GRAFF: With anyone. What, if 10:50:49 any, employment. 10:50:51

A. I was employed by the Suffolk County 10:50:52

Loeffler

Police Department. 10:50:54

**Q. Any other employment? 10:50:54**

A. No. 10:50:56

**Q. What about during those years when 10:50:56**
**you were a building inspector in 1980, did you 10:51:00**
**hold any other employment? 10:51:04**

A. No. 10:51:04

**Q. Were you also employed by the 10:51:05**
**Suffolk County Police Department? 10:51:07**

A. Yes, oh, yes. I've been employed by 10:51:08 the Suffolk County Police Department from July 10:51:11 of 1973 through January of 2004. 10:51:13

**Q. And did you -- were you continuously 10:51:21**
**employed by the Suffolk County Police 10:51:22**
**Department during that entire period? 10:51:24**

A. Yes, I was. 10:51:25

**Q. Okay. Moving up on the document, it 10:51:26**
**indicates that you served as a police officer 10:51:32**
**at Ocean Beach from September 5th, 1970 through 10:51:34**
**July 7th, 1973. Is that accurate, to the best 10:51:40**
**of your recollection? 10:51:44**

A. Yes. 10:51:45

**Q. Other than the positions that I have 10:51:46**
**referred to on Exhibit 1 and your position with 10:51:52**

**Loeffler**

**the Suffolk County Police Department, have you 10:51:54**
**held any other employment during the period? 10:51:57**

A. Well, I think that I was a -- I 10:52:02 worked -- I picked up garbage. I worked in the 10:52:04 maintenance department for two summers while I 10:52:07 was in college. 10:52:09

**Q. And that was at Ocean Beach? 10:52:09**

A. Yes, it was. 10:52:11

**Q. Other than the employment positions 10:52:11**
**that we have just been discussing, have you 10:52:14**
**held any other employment? 10:52:16**

MR. NOVIKOFF: Objection. 10:52:18

A. I was chief of the Fire Department. 10:52:19

**Q. Is that the Fire Department in -- 10:52:22**

A. Ocean Beach Fire Department. 10:52:24

**Q. During what period were you chief of 10:52:25**
**the Ocean Beach Fire Department? 10:52:27**

A. Early '80s. I'm not sure of the 10:52:29 dates. 10:52:36

**Q. Is there currently a chief of the 10:52:37**
**Ocean Beach Fire Department? 10:52:40**

A. Yes, there is. 10:52:41

**Q. Who is that person? 10:52:41**

A. Robert Thornberg. 10:52:42

Loeffler

**Q. And when you became mayor of Ocean Beach on July 3rd, 2006, did you also at that time become police commissioner in Ocean Beach? 10:52:50 10:52:55 10:52:57**

MR. NOVIKOFF: Objection. Form. 10:53:00

A. I became the person in charge of the Police Department, yes, I did. 10:53:05 10:53:06

**Q. And was there any formal title in connection with your being the person in charge of the Police Department? 10:53:07 10:53:10 10:53:11**

MR. NOVIKOFF: Objection to form. 10:53:12

A. Besides the title bestowed upon me by Village law and general municipal law, no. 10:53:13 10:53:18

**Q. And what title are you referring to? 10:53:21**

A. Well, the mayor of the Village is the chief operating officer of a Village according to Village law and he is in charge of all departments. 10:53:22 10:53:24 10:53:26 10:53:29

**Q. And at the time that you first became mayor, other than yourself who was the most senior official with responsibility for the Ocean Beach Police Department? 10:53:37 10:53:39 10:53:43 10:53:46**

MR. NOVIKOFF: Senior in terms of age, senior in terms of years, senior in terms of experience? 10:53:47 10:53:48 10:53:50

Loeffler

MR. GRAFF: Organizational hierarchy. 10:53:51 10:53:53

MR. NOVIKOFF: All right. 10:53:54

You can answer. 10:53:55

A. Chief Edward Paradiso was the chief of police. 10:53:56 10:53:58

**Q. And is Mr. Paradiso still the chief of police? 10:53:59 10:54:01**

A. No, he is not. 10:54:01

**Q. When did he stop serving as chief of police? 10:54:02 10:54:04**

MR. NOVIKOFF: Objection to the form. 10:54:06 10:54:07

You can answer the question. 10:54:08

A. He retired in 2008, I think. 10:54:09

**Q. And was Chief Paradiso actively serving in the capacity of chief of police through his retirement in July 2008? 10:54:16 10:54:19 10:54:21**

MR. NOVIKOFF: Objection to the form of the question. I don't know what you mean by "actively." 10:54:22 10:54:23 10:54:26

MR. GRAFF: On a day-to-day basis. 10:54:28

MR. NOVIKOFF: Still, form. 10:54:29

**Q. Are you able to answer the question 10:54:35**

**Loeffler**

**as I have stated it? 10:54:36**

A. Restate the question for me, please. 10:54:38

**Q. Was Chief Paradiso actively serving in the capacity of chief of police on a day-to-day basis until his retirement in 2008? 10:54:40 10:54:43 10:54:46**

MR. NOVIKOFF: Objection to the form. 10:54:49 10:54:49

You can answer. 10:54:50

A. No, he was not. 10:54:50

**Q. At what point in time did he stop actively serving on a day-to-day basis? 10:54:52 10:54:54**

A. I'm not sure it was '06 or '07, he became injured in the line of duty. 10:54:56 10:55:03

**Q. Do you recall what the nature of his injury was? 10:55:07 10:55:09**

A. He had a torn Achilles tendon. 10:55:09

**Q. Do you know how he tore that Achilles tendon? 10:55:15 10:55:16**

A. I am not positive of that. 10:55:17

**Q. Other than -- strike that. 10:55:18**

**Is there currently a chief of police in Ocean Beach? 10:55:27 10:55:29**

A. No, there is not. 10:55:30

**Q. Other than yourself, who, if anyone, 10:55:31**

**Loeffler**

**in the Village of Ocean Beach would be the next highest-ranking official with oversight over the Police Department? 10:55:36 10:55:41 10:55:43**

MR. NOVIKOFF: Presently? 10:55:44

MR. GRAFF: Presently. 10:55:45

MR. NOVIKOFF: As Mr. Loeffler sits here today. Okay. 10:55:46 10:55:49

A. George Hesse. 10:55:50

**Q. And when you first became mayor, was Chief Paradiso -- had he already sustained his injury? 10:55:53 10:55:58 10:56:01**

A. No. I was a little quick to say that. I'm not positive. 10:56:01 10:56:08

**Q. During the period when Chief Paradiso was actively serving as chief of police, in what capacity was George Hesse employed at the Ocean Beach Police Department? 10:56:09 10:56:16 10:56:20 10:56:23**

MR. NOVIKOFF: I am going to object to the form of the question. 10:56:24 10:56:25

You can answer that. 10:56:26

A. He was employed as a sergeant. 10:56:27

**Q. Is there currently anyone who is employed as sergeant in the Ocean Beach Police Department? 10:56:37 10:56:39 10:56:42**

Loeffler

A. No, there is not. 10:56:42

**Q. Is George Hesse still a sergeant with the Ocean Beach Police Department? 10:56:43 10:56:50**

A. No, he is not. 10:56:51

**Q. At what point in time did George Hesse stop serving in the capacity of sergeant? 10:56:52 10:56:54**

A. I don't recall. 10:56:57

**Q. Do you recall -- strike that. Did you participate -- strike that. 10:57:08 10:57:12**

MR. NOVIKOFF: I eagerly await the question. 10:57:28 10:57:30

**Q. Did George Hesse, to your knowledge, voluntarily decide to stop serving as sergeant at that time? 10:57:32 10:57:35 10:57:38**

MR. NOVIKOFF: Objection. 10:57:40

A. No, he did not. 10:57:48

**Q. Did you direct that George Hesse should stop serving as police sergeant at that time? 10:57:49 10:57:52 10:57:55**

MR. NOVIKOFF: Again, if the conversations involve an attorney present at the time you had any communications with Mr. Hesse, then I am going to instruct you not to answer the question. 10:57:55 10:58:00 10:58:04 10:58:06 10:58:09

Loeffler

**Q. Other than in the presence of counsel, did you direct anyone in substance or to the effect that George Hesse should no longer continue to serve as police sergeant? 10:58:12 10:58:14 10:58:19 10:58:22**

MR. NOVIKOFF: I am going to object to the form of the question. 10:58:25 10:58:27

A. George Hesse was placed, I don't remember the date, on what I determined to be a modified duty assignment. 10:58:28 10:58:30 10:58:33

**Q. And why did you place him on a modified duty assignment at that time? 10:58:37 10:58:39**

MR. NOVIKOFF: Objection. To the extent the reasons entail communications with counsel, I am going to instruct you not to answer the question. 10:58:41 10:58:42 10:58:46 10:58:47

A. It was done under advice of counsel. 10:58:49

**Q. Do you know when George Hesse began working in the Ocean Beach Police Department? 10:58:51 10:58:55**

A. No, I do not. 10:58:58

**Q. Was George Hesse already working in the Ocean Beach Police Department when you began serving as trustee? 10:58:59 10:59:03 10:59:05**

A. Yes. 10:59:07

**Q. Was George Hesse ever promoted in 10:59:08**

Loeffler

**connection with his employment at Ocean Beach subsequent to the time that you first became trustee? 10:59:15 10:59:18 10:59:20**

MR. NOVIKOFF: Objection to the form. I don't know what the term "promoted" means. I mean, did his responsibilities increase, that's fine. Did his title change, that's fine. I'm not sure what "promoted" means in the context in which we are talking about. 10:59:20 10:59:21 10:59:28 10:59:31 10:59:32 10:59:35 10:59:37

**Q. Mayor Loeffler, did you understand -- 10:59:38 10:59:39**

A. No, I do not. 10:59:40

**Q. Do you know what "promoted" means? 10:59:41**

A. Yes. 10:59:43

**Q. Okay. And what's your understanding of "promoted," please? 10:59:43 10:59:46**

A. Elevated in rank. 10:59:47

**Q. And was George Hesse -- going with that definition, was George Hesse promoted -- 10:59:49 10:59:51**

A. George Hesse was given a different rank, yes, he was. 10:59:54 10:59:56

**Q. And was it a higher rank than the rank that he had held? 10:59:57 10:59:59**

Loeffler

A. Yes. 11:00:00

**Q. And from what rank to what rank did he move? 11:00:01 11:00:04**

A. He went from being a sergeant to being the deputy chief of police. 11:00:04 11:00:07

**Q. And were you responsible for that promotion? 11:00:09 11:00:12**

A. Partially, yes. 11:00:13

**Q. And what was your role in connection with that promotion? 11:00:14 11:00:16**

A. I made a motion to elevate him to that level. 11:00:17 11:00:19

**Q. Why did you make that motion? 11:00:19**

A. Because he had taken on the duties and responsibilities of the police chief while he was on 207C. 11:00:22 11:00:23 11:00:27

THE COURT REPORTER: I'm sorry, "while he was on" -- 11:00:32 11:00:32

A. 207C. Injured in the line of duty. 11:00:32

MR. NOVIKOFF: "He" being Mr. Paradiso? 11:00:35 11:00:37

THE WITNESS: Yes. 11:00:37

**Q. Prior to George Hesse -- you making that motion to promote George Hesse, did you 11:00:41 11:00:45**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**have any conversations with anyone concerning the possibility of giving him that promotion? 11:00:48 11:00:50**

MR. NOVIKOFF: Other than counsel, right? 11:00:52 11:00:55

A. It was discussed during executive session with counsel present. 11:00:56 11:00:58

MR. NOVIKOFF: Well, here is the delineation that Judge Boyle has made in this case, and tell me if I am wrong. If the discussion was had among trustees but the purpose of the discussion was not to seek legal counsel, then you have to answer it. If the discussion was had for the purpose of seeking legal counsel with regard to any issue, then I am going to instruct you not to answer. 11:01:02 11:01:03 11:01:05 11:01:08 11:01:12 11:01:14 11:01:16 11:01:19 11:01:21 11:01:24

A. I think it was discussed that since he was taking on the responsibility, we would give him the designation. 11:01:27 11:01:30 11:01:31

**Q. And who specifically on the Board of Trustees was involved in that discussion? 11:01:33 11:01:35**

A. Everyone. 11:01:37

**Q. And was it discussed by the Board of Trustees on more than one occasion? 11:01:39 11:01:41**

Loeffler

A. Yes. 11:01:43

**Q. On how many occasions was it discussed by the Board of Trustees? 11:01:49 11:01:51**

A. Two that I remember. 11:01:54

**Q. And in substance, what was discussed on the first occasion? 11:01:55 11:01:58**

A. The role that Chief Paradiso was playing in the Police Department at that time, that he wasn't available, and that George had taken on the responsibilities of the Police Department and that the thought was that we would recognize those responsibilities through elevating him to deputy chief of police, and at the next meeting I believe we did that. 11:02:00 11:02:06 11:02:08 11:02:11 11:02:18 11:02:23 11:02:26 11:02:29

**Q. And who were the members of the Board of Trustees during -- on the first occasion? 11:02:34 11:02:36 11:02:38**

A. The same ones that were there on the second occasion. 11:02:38 11:02:41

**Q. And can you identify those members, please? 11:02:42 11:02:43**

A. It was myself, Jim Mallott, Steve Einig, Bill Wingate and Mayor Rogers was the composition of the board at that time when the 11:02:44 11:02:50 11:02:56

Loeffler

decision was made. 11:02:58

**Q. And were any of those members of the Board of Trustees that you just identified at that time serving as police commissioner in Ocean Beach? 11:03:01 11:03:03 11:03:06 11:03:09**

A. No, they were not. 11:03:09

**Q. Did any of those members of the Board of Trustees that you have identified have any responsibility with respect to the Ocean Beach Police Department? 11:03:11 11:03:13 11:03:17 11:03:19**

MR. NOVIKOFF: Objection to the form of the question. 11:03:23 11:03:24

A. I don't understand what you mean by "responsibility." 11:03:29 11:03:30

**Q. Let me ask a slightly different question. Did any of the members of the Board of Trustees have more responsibility than any of the other members over the Ocean Beach Police Department? 11:03:31 11:03:33 11:03:36 11:03:37 11:03:40**

MR. NOVIKOFF: Same objection. 11:03:41

You can answer, if you understand it. 11:03:43 11:03:44

A. No, no one had any more responsibility. 11:03:47 11:03:48

Loeffler

**Q. So Trustee Mallott didn't have any more responsibility than any of the other trustees? 11:03:49 11:03:51 11:03:53**

A. Correct. 11:03:53

**Q. And what, if any, was Mayor Rogers' responsibility over the Police Department at that time? 11:03:58 11:04:02 11:04:04**

MR. NOVIKOFF: Objection to the form. 11:04:04 11:04:06

You can answer. 11:04:06

A. As the chief operating officer of the Village of Ocean Beach, Village law makes her the ex facto head of all departments. 11:04:07 11:04:10 11:04:14

**Q. Are you aware of any investigation conducted by any member of the Board of Trustees concerning Edward Paradiso at or around the time that George Hesse received that promotion? 11:04:28 11:04:31 11:04:34 11:04:38 11:04:40**

MR. NOVIKOFF: Objection to the form of the question. There is a lot of problems with that question. 11:04:41 11:04:42 11:04:48

A. You have to be a little more specific about the time frame, I believe. Do you want to give me some dates? 11:04:55 11:04:57 11:04:59

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**Q. In the year prior to the promotion, 11:05:05**
**if that would help. 11:05:08**
A. In the year prior to promotion -- 11:05:10
**Q. Are you aware of any investigation 11:05:13**
**conducted by any member of the Board of 11:05:16**
**Trustees concerning Ed Paradiso? 11:05:19**
MR. NOVIKOFF: Objection to the form 11:05:21
of the question. 11:05:22
A. I am not aware. 11:05:23
**Q. Are you aware of any investigation 11:05:25**
**conducted or overseen by Mayor Rogers with 11:05:28**
**respect to Chief Paradiso in the year leading 11:05:31**
**up to George Hesse's promotion? 11:05:34**
MR. NOVIKOFF: Objection. Again, 11:05:36
I'm not trying to be difficult. Are you 11:05:38
asking about an investigation done by Mayor 11:05:40
Rogers as an individual or Mayor Rogers as 11:05:43
the mayor on behalf of the trustees or the 11:05:45
Village? 11:05:48
MR. GRAFF: Any investigation that 11:05:49
he is aware of by Mayor Rogers in her 11:05:50
individual or official capacities. 11:05:52
MR. NOVIKOFF: I am going to object 11:05:54
to form. 11:05:55

Loeffler

You can answer the question. 11:05:55
A. Yes. 11:05:56
**Q. And what investigation were you 11:05:57**
**aware of? 11:05:59**
A. Mayor Rogers conducted an 11:05:59
investigation that was brought to her attention 11:06:01
about some outside employment that Chief 11:06:04
Paradiso was involved in while employed by the 11:06:07
Village of Ocean Beach. 11:06:09
**Q. And is there any policy at Ocean 11:06:11**
**Beach that would prohibit an employee of Ocean 11:06:16**
**Beach from having contemporaneous employment 11:06:18**
**with another entity? 11:06:21**
A. You have to give me a time frame. 11:06:23
**Q. At the time that we are discussing, 11:06:26**
**which is in the year leading up to -- 11:06:29**
A. No, there was no prohibition. 11:06:31
**Q. Is there presently any prohibition? 11:06:36**
A. No prohibition, but there is -- now 11:06:39
there is a notification requirement. 11:06:41
**Q. And do you know who brought the 11:06:42**
**issue of George Hesse's dual employment to 11:06:50**
**Mayor Rogers' attention? 11:06:54**
MR. NOVIKOFF: Unless it was through 11:06:56

Loeffler

counsel's communication -- 11:06:59
A. No, excuse me, George Hesse was not 11:07:00
under -- Mayor Rogers didn't investigate George 11:07:02
Hesse. 11:07:05
**Q. I'm sorry, I believe I misspoke. 11:07:05**
A. You did misspeak. 11:07:07
**Q. Okay. Do you know who brought the 11:07:09**
**issue of Ed Paradiso's dual employment to Mayor 11:07:10**
**Rogers's attention? 11:07:14**
A. No. 11:07:14
MR. NOVIKOFF: And the answer is yes 11:07:14
or no. 11:07:15
A. I do not. 11:07:16
**Q. And do you know what the nature of 11:07:17**
**the investigation was? 11:07:22**
MR. NOVIKOFF: Again, yes or no. 11:07:25
A. Yes. 11:07:26
**Q. And what was the nature of the 11:07:26**
**investigation? 11:07:28**
MR. NOVIKOFF: Objection to the 11:07:30
form. 11:07:31
You can answer. 11:07:31
A. There was some question about his 11:07:31
hours of employment conflicting with the hours 11:07:34

Loeffler

of employment at his second job. 11:07:36
**Q. When you say "conflicting," do you 11:07:38**
**mean that he was simultaneously working hours 11:07:40**
**in both places? 11:07:43**
A. Is that what you are asking me? 11:07:44
**Q. Yes. 11:07:45**
MR. NOVIKOFF: Objection to his 11:07:45
knowledge of specifically what Mr. Paradiso 11:07:47
did or -- 11:07:49
MR. GRAFF: You know what, strike 11:07:50
that. 11:07:50
**Q. What is the nature of the 11:07:50**
**conflicting hours that you are referring to? 11:07:52**
MR. NOVIKOFF: Objection to the 11:07:53
extent you know specifically what the 11:07:54
conflicting hours were. 11:07:56
A. I don't. I don't know what the 11:07:58
conflicting hours were. 11:08:00
**Q. Do you know if there was any 11:08:02**
**conclusion on the basis of that investigation? 11:08:05**
MR. NOVIKOFF: Conclusion of what, 11:08:08
the investigation or anything else after 11:08:09
the investigation? 11:08:11
MR. GRAFF: Anything that was 11:08:11

9e28f7aa-4e93-4641-9524-8529961356c8

Page 77

Loeffler

concluded based on what was discovered during the investigation. 11:08:13 11:08:15

MR. NOVIKOFF: I am going to object to the form. Ari, you know what's going on. I think the questions -- I mean, I am not objecting on the questions. I am just saying you kind of know what has proceeded between Mr. Paradiso and the Village, I would hope you know, so you could ask the questions a little bit more focussed and get the answers. Objection to form. 11:08:17 11:08:19 11:08:21 11:08:23 11:08:25 11:08:27 11:08:29 11:08:31 11:08:33

You can answer. 11:08:34

A. I believe those were privileged communications that transpired and I don't think I am at liberty to speak about those. 11:08:36 11:08:39 11:08:41

**Q. So those are conversations that happened in the presence of counsel for legal advice? 11:08:44 11:08:45 11:08:47**

A. Absolutely. 11:08:47

**Q. Okay. Do you know whether anyone on the Board of Trustees had any direct communication with Ed Paradiso concerning that investigation? 11:08:48 11:08:51 11:08:54 11:08:56**

A. I do not. 11:08:57

Page 78

Loeffler

**Q. Do you know whether Ed Paradiso ever expressed any opinion as to the promotion of George Hesse to the position of sergeant at that time? 11:08:59 11:09:07 11:09:12 11:09:15**

MR. NOVIKOFF: Objection. 11:09:15

A. He never expressed an opinion to me. 11:09:18

**Q. Did anyone ever communicate to you that Ed Paradiso had expressed to them an opinion about George Hesse's promotion? 11:09:21 11:09:24 11:09:27**

MR. NOVIKOFF: If you could follow it, you could answer it. 11:09:30 11:09:31

A. Did anyone ever express to me that they talked to somebody that talked to Ed Paradiso that may have had an opinion about whether he was promoted? Is that what you asked me? 11:09:33 11:09:37 11:09:39 11:09:40 11:09:43

**Q. Let me ask it more specifically. 11:09:43**

A. Okay. 11:09:45

**Q. Did Mayor Rogers indicate to you that she was aware of Ed Paradiso's opinion with respect to George Hesse's promotion? 11:09:46 11:09:47 11:09:50**

A. She never communicated that with me. 11:09:52

**Q. At that time were you aware from any source whether George -- whether Ed Paradiso 11:09:54 11:10:07**

Page 79

Loeffler

**had an opinion concerning George Hesse's promotion? 11:10:12 11:10:14**

MR. NOVIKOFF: Objection. 11:10:15

A. I think I already answered that. I have no -- 11:10:15 11:10:18

**Q. As you sit here today, do you know what Ed Paradiso's opinion was at that time? 11:10:18 11:10:20**

MR. NOVIKOFF: At what time? An opinion about what? 11:10:23 11:10:25

MR. GRAFF: At the time of the promotion, his opinion -- 11:10:26 11:10:27

MR. NOVIKOFF: About? 11:10:27

MR. GRAFF: -- about the promotion. 11:10:28

MR. NOVIKOFF: So you are asking does this witness -- you know what, form. Objection. 11:10:29 11:10:30 11:10:33

You can answer. 11:10:33

A. I don't know. 11:10:34

MR. GRAFF: Can I ask the videographer how much time we have left on this tape? 11:10:42 11:10:43 11:10:46

THE VIDEOGRAPHER: About 22 minutes. 11:10:46

**Q. I had asked the court reporter to mark as Loeffler Exhibit 2 a document in this 11:10:54 11:10:55**

Page 80

Loeffler

**case that's headed Ocean Beach Defendants' Response to Plaintiffs' First Set of Interrogatories. If I could ask you to take a look at the document, Mayor Loeffler, and tell me, please, if this is a document that you have seen before. 11:10:59 11:11:04 11:11:06 11:11:08 11:11:11 11:11:12**

MR. NOVIKOFF: Look at it as thoroughly as you need to in order to answer the question (handing). 11:11:19 11:11:21 11:11:23

While you are looking at the document, I am going to get a cup of coffee. 11:12:03 11:12:05 11:12:08

(Document review.) 11:12:58

A. Okay, I have reviewed it. 11:13:55

MR. NOVIKOFF: And the question is does he recognize the document? 11:14:58 11:14:59

MR. GRAFF: Yes. 11:15:01

A. As it's shown to me, yes, I recognize it. 11:15:02 11:15:05

**Q. When did you see this document first? 11:15:06 11:15:07**

MR. NOVIKOFF: Objection. He didn't testify that he has seen it before today. He just says he recognizes the document. 11:15:08 11:15:10 11:15:13

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**Q. Did you see the document before today? 11:15:15 11:15:16**

A. I don't remember seeing this document. I didn't sign it, so I don't know if I reviewed -- I don't know. I don't remember seeing that document. I do now recall now that we had a different law firm. 11:15:17 11:15:18 11:15:24 11:15:27 11:15:27

THE COURT REPORTER: I can't hear you. I'm sorry. 11:15:27 11:15:27

A. I do recall now after reading this that we had a different law firm representing us in the beginning. Now I remember it was Anthony Marino. 11:15:30 11:15:32 11:15:34 11:15:37

**Q. Okay. There are some numbered statements in the document. If I could turn your attention to the statement numbered 9. 11:15:39 11:15:41 11:15:43**

MR. NOVIKOFF: Okay. What's the question? 11:15:45 11:15:46

MR. GRAFF: I'd like to ask Mayor Loeffler to please read it. 11:15:47 11:15:49

MR. NOVIKOFF: The document speaks for itself, Ari. We don't need to read it into the record and burden the transcript. 11:15:50 11:15:51 11:15:53

**Q. "The persons involved with the 11:15:56**

Loeffler

**decision to hire employees were the Suffolk County Civil Service Commission and the Ocean Beach Board of Trustees." 11:15:58 11:15:59 11:16:02**

**Mayor Loeffler, during your service as trustee at Ocean Beach, was it the case that the persons involved with this decision to hire employees in Ocean Beach were the Suffolk County Civil Service Commission and Ocean Beach Board of Trustees? 11:16:03 11:16:05 11:16:08 11:16:10 11:16:13 11:16:15**

MR. NOVIKOFF: Hold on. I am going to object to the form of the question and I do think I need to explain why I am objecting, because there is a number of reasons and I don't know if this witness could even answer the question in this form. 11:16:16 11:16:17 11:16:19 11:16:22 11:16:24 11:16:25 11:16:26

One, you have read into the record an answer, but the document doesn't have the question on it, so I think it would be important if you are going to read something in as an answer, to show the question. 11:16:27 11:16:28 11:16:30 11:16:33 11:16:34 11:16:36

Secondly, talking about persons involved with the decision to hire 11:16:37 11:16:40

Loeffler

employees. I don't know who employees refer to. If you are referring to some of the plaintiffs in this action, I think, if I understand the record correctly, some of the plaintiffs were hired back in the early 1990s, so the question is whether this witness even has an understanding as to when at least some of these witnesses were hired as to who was involved. 11:16:41 11:16:43 11:16:45 11:16:48 11:16:50 11:16:53 11:16:55 11:16:58 11:16:59

So that's the objection, but proceed. 11:17:01 11:17:03

**Q. Okay. Well, since the document is not in front of the witness, I am going to represent that the question I am about to read is the question to which the statement responds. Interrogatory No. 9. I'm reading from Plaintiffs' First Set of Interrogatories to Defendants' Incorporated Village of Ocean Beach, Mayor Joseph C. Loeffler, Jr., Former Mayor Natalie K. Rogers, and Ocean Beach Police Department dated July 11th, 2007. 11:17:03 11:17:04 11:17:06 11:17:08 11:17:10 11:17:14 11:17:16 11:17:19 11:17:22 11:17:25**

**Interrogatory No. 9 reads: 11:17:29**

**"Identify each and every person responsible for hiring employees including but not limited to 11:17:31 11:17:34**

Loeffler

**police officers, police dispatchers and dock masters at Ocean Beach and/or OBPD from 2000 to the present, including the role of each person identified in your response." 11:17:37 11:17:40 11:17:47 11:17:49**

MR. NOVIKOFF: So now what's the question? 11:17:50 11:17:51

**Q. The question is, Mayor Loeffler, is it a -- as you understand it, is it an accurate response that the persons involved with the decision to hire employees were the Suffolk County Civil Service Commission and the Ocean Beach Board of Trustees? 11:17:52 11:17:55 11:18:00 11:18:02 11:18:04 11:18:06**

MR. NOVIKOFF: You are asking this witness to testify as to whether response number 9 is accurate to the question that you just presented? 11:18:07 11:18:08 11:18:14 11:18:16

MR. GRAFF: Yes. 11:18:18

MR. NOVIKOFF: I am going to object to the form. 11:18:19 11:18:20

You can answer, if you want. 11:18:21

A. Yes, it is true, it's accurate. 11:18:23

THE COURT REPORTER: I'm sorry? 11:18:23

A. Yes, it is accurate. 11:18:33

**Q. Interrogatory No. 12 states: 11:18:33**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**"Identify and describe any and all policies concerning the consumption of alcoholic beverages by on-duty or off-duty OBPD officers in Ocean Beach from 2000 to the present." 11:18:36 11:18:39 11:18:42 11:18:46**

**The response states: "There is a policy in place that prohibits the consumption of alcoholic beverages by officers on duty." 11:18:49 11:18:50 11:18:52**

**Mayor Loeffler, are you familiar with the policy in place in Ocean Beach that prohibits the consumption of alcoholic beverages by officers on duty? 11:18:56 11:18:58 11:19:02 11:19:03**

A. Yes, I am. 11:19:03

**Q. And can you describe that policy? 11:19:06**

A. It's the 2006 policy manual of the Ocean Beach Police Department which prohibits the consumption of alcoholic beverages on duty. 11:19:07 11:19:13 11:19:14

**Q. And when did that policy manual take effect? 11:19:17 11:19:20**

A. 2006. 11:19:20

**Q. Okay. Prior to the implementation of that policy in 2006, was there any policy that prohibited the consumption of alcoholic beverages by on- or off-duty officers in Ocean Beach? 11:19:21 11:19:27 11:19:30 11:19:33 11:19:35**

Loeffler

MR. NOVIKOFF: I am going to object to the form of the question. Foundation. 11:19:35 11:19:36

You can answer. 11:19:39

A. I don't know if I have ever read the prior policy manual. I don't know if there was one in existence, a policy manual for the Ocean Beach Police Department. 11:19:40 11:19:44 11:19:47 11:19:49

**Q. Are you aware of any informal policy that would have been applicable at that time? 11:19:50 11:19:52**

MR. NOVIKOFF: Objection to the form of the question. 11:19:54 11:19:55

You can answer. 11:19:57

A. Informal policy? I don't know what exactly you mean. Do -- 11:19:57 11:20:05

MR. NOVIKOFF: No, no, no. 11:20:09

**Q. If you are unclear on the question -- 11:20:10 11:20:13**

A. I am unclear. 11:20:13

MR. NOVIKOFF: He just said he doesn't -- 11:20:13 11:20:14

**Q. Could you explain what part of the question is unclear to you? 11:20:14 11:20:17**

MR. NOVIKOFF: As opposed to the entire question. 11:20:18 11:20:20

Loeffler

A. I'm not familiar with the policy or the policy manual that was in existence prior to 2006. That's what you are asking me to testify about; is that correct? 11:20:21 11:20:24 11:20:28 11:20:30

**Q. Yes, let me go on. Maybe I can be more clear. 11:20:31 11:20:33**

**Other than the policy manual that you are referring to, is there any other written policy applicable to the operations of the Ocean Beach Police Department? 11:20:34 11:20:35 11:20:38 11:20:42**

MR. NOVIKOFF: Wait. Now? 11:20:43

MR. GRAFF: Now, yes. 11:20:46

MR. NOVIKOFF: Are there any other written policies applicable to the Ocean Beach Police Department right now? 11:20:47 11:20:48 11:20:51

MR. GRAFF: To the operations of the Police Department other than the policy manual, yes. 11:20:51 11:20:53 11:20:54

MR. NOVIKOFF: Okay. 11:20:55

A. I have no knowledge of the sum and substance of the policy manual prior to 2006. 11:20:57 11:21:00

**Q. Interrogatory No. 19, and if you would like to follow it, the response also number 19 in what's been marked as Loeffler 3, 11:21:04 11:21:07 11:21:11**

Loeffler

**interrogatory 19 reads: "Describe the qualifications" -- 11:21:14 11:21:16**

MR. NOVIKOFF: Wait. Wait did you just mark what you are reading as 3, as Loeffler 3? Because all you have given me is Loeffler 2. 11:21:18 11:21:19 11:21:22 11:21:24

MR. GRAFF: I'm sorry, the response is in Loeffler 2. 11:21:25 11:21:26

MR. NOVIKOFF: Okay. So you are reading from another document? 11:21:27 11:21:28

MR. GRAFF: I am reading from Plaintiffs' Interrogatories. 11:21:29 11:21:31

**Q. "Describe the qualifications, tests, criteria, training, experience and certifications including but not limited to Civil Service certification necessary to become and/or remain employed as a police officer at OBPD." 11:21:31 11:21:34 11:21:36 11:21:38 11:21:42 11:21:44**

**Mayor Loeffler, were you able to follow the question that I just read? 11:21:46 11:21:47**

A. Yes. 11:21:49

MR. NOVIKOFF: You mean was he able to listen to what you just said? 11:21:50 11:21:51

MR. GRAFF: It was a long sentence. 11:21:53

9e28f7aa-4e93-4641-9524-8529961356c8

Page 89

Loeffler

I wanted to make sure that it was clear from beginning to end. 11:21:54 11:21:56

MR. NOVIKOFF: Okay. 11:21:57

**Q. Response number 19 states: "All officers are hired pursuant to the rules and qualifications of the Suffolk County Civil Service Department." 11:21:57 11:21:59 11:22:01 11:22:03**

**Mayor Loeffler, as of the date of this response, November 9th, 2007, was that an accurate statement? 11:22:04 11:22:06 11:22:09**

MR. NOVIKOFF: Objection. 11:22:09

A. Yes, it was. 11:22:11

**Q. And would that statement be accurate with respect to the entire period during which you served as trustee or mayor? 11:22:14 11:22:16 11:22:20**

MR. NOVIKOFF: Note my objection. 11:22:22

A. I don't know. 11:22:23

MR. NOVIKOFF: He is not an expert on the Civil Service law. 11:22:27 11:22:28

MR. GRAFF: Okay. 11:22:30

**Q. Interrogatory No. 22 states: "Describe Defendant Loeffler's role and/or responsibilities concerning the OBPD from 2000 to the present." 11:22:31 11:22:35 11:22:37 11:22:40**

Page 90

**Loeffler**

**The response -- well, let me first ask you what were -- what was your role or responsibilities concerning the OBPD from 2000 to the present, if any? 11:22:42 11:22:47 11:22:51 11:22:53**

MR. NOVIKOFF: If any. Okay. Note my objection. 11:22:55 11:22:56

You can answer. 11:22:57

A. I was a trustee with the Village from 2002 to 2006 and I was mayor from 2006 until the present day. 11:22:57 11:22:59 11:23:03

**Q. Okay. So response number 22, Mayor Joseph C. Loeffler, Jr. had no role in the operations of the Police Department other than as a member of the Board of Trustees and currently as mayor of the Village." Is that -- 11:23:04 11:23:07 11:23:09 11:23:11 11:23:13**

MR. NOVIKOFF: Object -- 11:23:16

A. Currently as mayor of the Village I have a role and responsibility in the Police Department. 11:23:16 11:23:18 11:23:20

**Q. Okay. 11:23:21**

MR. NOVIKOFF: Was there a question? Because I think you were about to ask a question and then the witness started answering. 11:23:23 11:23:26 11:23:28 11:23:29

Page 91

Loeffler

THE WITNESS: Sorry. 11:23:30

MR. NOVIKOFF: So are you done with -- have you completed your question? 11:23:30 11:23:31 11:23:33

MR. GRAFF: There is not a question pending at the moment. 11:23:33 11:23:34

MR. NOVIKOFF: Okay, that's fine. 11:23:35

THE VIDEOGRAPHER: Counselors, now it's ten minutes until the end of tape. 11:23:41 11:23:43

MR. NOVIKOFF: Oh, that is so cool. 11:23:45

MR. GRAFF: Okay, so let's take a break at this point. 11:23:46 11:23:49

THE VIDEOGRAPHER: We are now going off the record. The time is 11:24 a.m. 11:23:50 11:23:53

(Recess was taken from 11:24 to 11:34.) 11:23:57 11:23:57

(Loeffler Exhibit 3, Incorporated Village of Ocean Beach Board of Trustees Meeting Held January 28, 2006, Bates stamped 000028, marked for identification.) 11:33:52 11:33:52 11:33:52 11:34:07

THE VIDEOGRAPHER: We are back on the record. The time is 11:34 a.m. This is the beginning of the tape labeled number 2. 11:34:07 11:34:13 11:34:16 11:34:18

Page 92

Loeffler

BY MR. GRAFF: 11:34:20

**Q. During the break I asked the court reporter to mark as Exhibit Loeffler 3 a one-page document produced by Ocean Beach bearing Bates number 28. 11:34:20 11:34:22 11:34:24 11:34:25**

**Mayor Loeffler, I am going to pass you the document and when you have had a chance to review the document, if you could tell me, please, whether you have seen this document before. 11:34:28 11:34:30 11:34:32 11:34:34 11:34:36**

MR. GRAFF: Mr. Novikoff, are you examining for accuracy? 11:34:42 11:34:44

MR. NOVIKOFF: I'm not the deponent here. I am doing what a lawyer does, sir. I am looking at what you have marked versus what you have handed me, and I do note for the record that there appears to be an arrow handwritten in on this document and I do not know whether that arrow was on the document when it was produced or not, but that could be verified. 11:34:46 11:34:48 11:34:50 11:34:53 11:34:55 11:34:56 11:34:59 11:35:01 11:35:03

MR. GRAFF: I can represent the arrow was there. We didn't make that. 11:35:04 11:35:05

MR. NOVIKOFF: Okay. So the 11:35:07

Loeffler

question is you want him to look at this and see if he recognizes it? 11:35:08 11:35:10

MR. GRAFF: If he has seen it before, yes. 11:35:11 11:35:12

MR. NOVIKOFF: Okay, go ahead (handing). 11:35:13 11:35:14

(Document review.) 11:35:25

**Q. Mayor Loeffler, have you had a chance to look at the document? 11:35:25 11:35:27**

A. Yes, I have. 11:35:28

**Q. Do you recognize it? 11:35:29**

MR. NOVIKOFF: Note for the record it appears on the top of the document to be page 8 of what apparently is minutes of a Board of Trustee meeting held on January 28, 2006. 11:35:30 11:35:31 11:35:33 11:35:36 11:35:38

MR. GRAFF: And I will note that the first seven pages weren't produced. 11:35:39 11:35:40

MR. NOVIKOFF: That's fine, just so the record is clear what it is. 11:35:42 11:35:43

**Q. Mayor Loeffler, do you recognize this document? 11:35:45 11:35:47**

A. Yes, I do. 11:35:47

**Q. And do you recognize it to be as 11:35:48**

Loeffler

**characterized by your counsel, minutes from a Board of Trustees meeting held on January 28th, '06, the 8th page? 11:35:50 11:35:53 11:35:55**

MR. NOVIKOFF: That's not how I characterized it. 11:35:57 11:35:58

**Q. Do you recognize it as I have characterized it? 11:35:59 11:36:02**

A. It appears to be part of the minutes from the board meeting of January 28th, 2006, yes, it does. 11:36:02 11:36:04 11:36:07

**Q. Okay. The section that's marked with an arrow, the arrow is pointing to the subheading designation of George Hesse as deputy chief of police. 11:36:08 11:36:10 11:36:14 11:36:16**

**Do you recall whether George Hesse was ever designated as deputy chief of police? 11:36:17 11:36:18**

MR. NOVIKOFF: Objection. 11:36:20

A. Before this or by this document? 11:36:25

**Q. By this document or at this time. 11:36:27**

MR. NOVIKOFF: Doesn't the document say designation of George Hesse as deputy chief of police? 11:36:29 11:36:30 11:36:33

A. That's what it says. 11:36:34

**Q. And was that -- is that consistent 11:36:35**

Loeffler

**with what you recall happening? 11:36:38**

A. Yes. 11:36:42

**Q. When the document says "Trustee Loeffler made motion to designate George Hesse as deputy chief of police with all power and authority involved with that position," what is the power and authority involved with the position of deputy chief of police? 11:36:43 11:36:44 11:36:46 11:36:49 11:36:51 11:36:52**

MR. NOVIKOFF: Objection. 11:36:55

You can answer. 11:36:55

A. It would be bestowing him the same powers as the chief of police. 11:36:56 11:36:59

**Q. Thank you. 11:37:01**

**Was there a written motion that you proposed or was this an oral motion? 11:37:05 11:37:07**

MR. NOVIKOFF: Objection. Written motion like what lawyers do? I don't know what you mean by "written motion." 11:37:09 11:37:11 11:37:15

**Q. When it says "Trustee Loeffler made motion," is that something that you would have done orally? 11:37:16 11:37:19 11:37:21**

A. Orally. 11:37:21

**Q. Then skip down two subheadings, it says Executive Session, 12 p.m., "Trustee 11:37:24 11:37:27**

Loeffler

**Wingate moved to go into executive session for purpose of discussing personnel and litigation matters." 11:37:29 11:37:31 11:37:33**

**Do you recall what the personnel matters that were discussed in that executive session were? 11:37:35 11:37:36 11:37:38**

MR. NOVIKOFF: Again, if the discussion was done for the purposes of seeking legal advice with regard to any issues, then I am going to have to instruct him not to answer. If they were just done as overall discussions concerning Village matters and merely -- and just the counsel was present because the counsel is present, then you can answer the question. 11:37:40 11:37:42 11:37:46 11:37:48 11:37:51 11:37:53 11:37:55 11:37:57 11:38:00

A. I don't remember. 11:38:01

**Q. Okay. We can put aside that document. 11:38:04 11:38:07**

**Do you recall whether anyone expressed any opposition on the Board of Trustees to designating George Hesse as deputy chief of police? 11:38:14 11:38:15 11:38:18 11:38:21**

A. Can I review that document? 11:38:23

MR. NOVIKOFF: Sure. 11:38:25

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**Q. That would refresh your recollection? 11:38:26 11:38:27**

A. Well, I am trying to see if -- 11:38:28

**Q. Sure. 11:38:29**

A. It says "upon call, all voted aye," so I guess that would indicate that there was no opposition. 11:38:31 11:38:34 11:38:36

**Q. And before the actual voting did anyone verbalize any objections or reservations about designating George Hesse as -- 11:38:37 11:38:39 11:38:41**

A. Are you asking me to testify about this or about the actions at the meeting? 11:38:43 11:38:45

**Q. The actions at the meeting. 11:38:47**

MR. NOVIKOFF: I am going to object to the question. Objections and reservations have two different meanings, so if you want to break it down, then go ahead. I mean, I think it's clear your Exhibit 3 indicates that it was a majority vote, but I understand what you are asking next, I just think the form is improper. 11:38:48 11:38:49 11:38:50 11:38:53 11:38:55 11:38:57 11:38:59 11:39:01

**Q. Did anyone on the Board of Trustees express any concerns about the designation of George Hesse as deputy chief of police? 11:39:03 11:39:14 11:39:18**

**Loeffler**

MR. NOVIKOFF: Objection to the form. 11:39:20 11:39:21

You can answer. 11:39:21

A. I don't recall. 11:39:22

**Q. Do you recall whether there was a discussion of your motion? 11:39:26 11:39:27**

MR. NOVIKOFF: Objection. Discussion by whom? 11:39:31 11:39:31

**Q. Discussion by the Board of Trustees upon the making of the motion to designate George Hesse. 11:39:33 11:39:35 11:39:37**

MR. NOVIKOFF: Again, I don't want to be difficult, but I would presume that a vote is a discussion. So I am objecting to form. 11:39:38 11:39:40 11:39:43 11:39:48

A. The motion was presented. It was -- a roll call was taken, a vote was made, and a motion passed. 11:39:48 11:39:52 11:39:56

**Q. Okay. Between the making of the motion and the vote, did anybody say anything with respect to the substance of the motion? 11:39:56 11:39:59 11:40:01**

A. I don't recall. 11:40:04

**Q. Okay. Thank you. 11:40:05**

**Have you ever heard of an entity 11:40:12**

**Loeffler**

**called the Ocean Beach Police Benevolent Association? 11:40:14 11:40:18**

A. Yes, I have. 11:40:18

**Q. And what is that organization? 11:40:19**

A. I'm not sure. 11:40:20

**Q. When did you hear of it? 11:40:23**

A. I believe I -- some point in time I remember getting a solicitation for funds from that organization. 11:40:25 11:40:27 11:40:30

**Q. And were you a trustee at that time? 11:40:30**

A. I don't believe so. 11:40:33

**Q. Were you a mayor at that time? 11:40:37**

A. I don't believe so. 11:40:38

**Q. Other than receiving a solicitation, have you in any other contexts encountered something called Ocean Beach Police Benevolent Association? 11:40:39 11:40:43 11:40:48 11:40:52**

A. No. 11:40:52

MR. NOVIKOFF: Objection. He never said he encountered it. 11:40:52 11:40:53

MR. GRAFF: He encountered it on the solicitation document. 11:40:55 11:40:57

MR. NOVIKOFF: If that's what you mean by "encounter." Okay. I am going to 11:40:58 11:40:59

Loeffler

object to form. 11:40:59

A. I have no knowledge of that organization, truthfully. 11:41:00 11:41:01

**Q. Did you respond to that solicitation notice? 11:41:02 11:41:05**

A. I don't remember. 11:41:05

**Q. To your knowledge, in your capacity as mayor currently, is there in existence something called the Ocean Beach Police Benevolent Association? 11:41:08 11:41:11 11:41:15 11:41:18**

A. I don't know. 11:41:18

**Q. Do you know anybody by the name of Sally Hess? 11:41:32 11:41:34**

MR. NOVIKOFF: How do you spell the last name? 11:41:36 11:41:37

MR. GRAFF: H-E-S-S. 11:41:38

A. No, I don't. 11:41:40

**Q. Do you know anybody by the name of Tina Hess? 11:41:43 11:41:45**

A. No, I don't. 11:41:47

**Q. Do you know anybody by the name of Ronnie Hess? 11:41:57 11:42:01**

A. No, I don't. 11:42:02

**Q. Mayor Loeffler, how long have you 11:42:04**

Loeffler

**been a resident of Ocean Beach? 11:42:06**

MR. NOVIKOFF: Note my objection. 11:42:11
You can answer. 11:42:12

A. 50 years, 55 years. 11:42:16

MR. NOVIKOFF: Is that 5-5? 11:42:18

THE WITNESS: 5-5. 11:42:19

A. Most of my life. 11:42:20

**Q. And are you -- during those 55 11:42:21 years, have you been a year-round resident of 11:42:28 Ocean Beach? 11:42:30**

A. Yes. 11:42:30

**Q. Continuously for 55 years? 11:42:30**

A. Uh-huh. 11:42:33

THE COURT REPORTER: You have to 11:42:33 answer verbally. 11:42:33

A. Yes. 11:42:34

**Q. To your knowledge, has any Ocean 11:42:36 Beach police officer ever discharged their 11:42:43 firearm in a line of duty? 11:42:46**

MR. NOVIKOFF: As an Ocean Beach 11:42:48 police officer? 11:42:50

MR. GRAFF: Yes. 11:42:51

MR. NOVIKOFF: Okay. 11:42:51
To your knowledge. 11:42:53

Loeffler

A. None. No, not to my knowledge. 11:42:54

**Q. Have you ever discharged your 11:42:57 firearm in the line of duty? 11:42:58**

MR. NOVIKOFF: As an Ocean Beach 11:43:00 police officer? 11:43:01

MR. GRAFF: Ever. 11:43:01

MR. NOVIKOFF: Oh, okay. 11:43:01

A. Yes. 11:43:03

**Q. On how many occasions has that 11:43:05 happened? 11:43:07**

A. One. 11:43:08

**Q. And who were you shooting at on that 11:43:12 occasion? 11:43:14**

A. A perpetrator. 11:43:16

**Q. When did that take place? 11:43:17**

A. 1975. 11:43:20

**Q. Have you ever shot anyone? 11:43:21**

MR. NOVIKOFF: Objection. When you 11:43:32 mean shot at someone, you mean where the 11:43:34 bullet actually hit somebody -- 11:43:37

MR. GRAFF: Yes. 11:43:38

MR. NOVIKOFF: -- or shot at 11:43:38 somebody? 11:43:38

MR. GRAFF: No, shot someone where 11:43:38

Loeffler

the bullet hit them. 11:43:39

MR. NOVIKOFF: Okay. 11:43:40

A. Yes. 11:43:41

**Q. Who have you shot? 11:43:42**

A. Perpetrator. 11:43:43

**Q. Other than that occasion in 1975, 11:43:45 have you shot anyone else? 11:43:48**

A. No. 11:43:49

**Q. And just to be clear, have you shot 11:43:49 anyone else inadvertently not intending to 11:44:02 shoot them? 11:44:05**

A. No. 11:44:06

MR. NOVIKOFF: Are you going to ask 11:44:16 about deer? 11:44:17

**Q. During the period of your service as 11:44:26 trustee at Ocean Beach, did you ever discipline 11:44:28 any employees of Ocean Beach? 11:44:31**

MR. NOVIKOFF: Objection to the 11:44:33 form, "discipline." I don't know what it 11:44:35 means. 11:44:36

A. No. 11:44:38

**Q. What about during your service as 11:44:42 mayor, have you ever had occasion to discipline 11:44:44 any employee at Ocean Beach? 11:44:46**

Loeffler

MR. NOVIKOFF: Same objection. 11:44:48

A. Yes. 11:44:49

**Q. On how many occasions have you 11:44:52 disciplined an employee at Ocean Beach? 11:44:55**

A. Two. 11:44:57

**Q. Starting with the first of those 11:45:01 occasions, could you describe the 11:45:04 circumstances. 11:45:07**

A. The first one was with -- both of 11:45:08 them were clerical staff in the Village office. 11:45:12

**Q. And what precipitated your 11:45:15 disciplining a member of the clerical staff on 11:45:21 the first occasion? 11:45:24**

A. I don't know the particulars of the 11:45:24 discipline, but they both received -- letters 11:45:26 of discipline were placed in their employee 11:45:28 jackets. 11:45:31

**Q. Do you remember the name of the 11:45:31 individual member of the clerical staff on the 11:45:35 first occasion? 11:45:38**

A. Susan Caffuco. 11:45:39

**Q. And on the second occasion, do you 11:45:45 remember the particular name of the clerical 11:45:54 staff? 11:45:56**

Loeffler

A. Arta Wejien. 11:45:56

**Q. Do you know what precipitated your discipline of Arta Wejien? 11:46:04 11:46:08**

A. I don't remember. 11:46:10

**Q. And you also don't remember why Susan Caffuco was -- 11:46:10 11:46:12**

A. I don't remember the sum and substance, but I know that there were two letters -- I have issued two letters of discipline. 11:46:12 11:46:13 11:46:14 11:46:16

**Q. Other than those two letters, have you disciplined any other members of Ocean Beach, any other employees of Ocean Beach? 11:46:18 11:46:20 11:46:22**

MR. NOVIKOFF: Objection. Asked and answered. 11:46:24 11:46:25

A. No, I have not. 11:46:25

**Q. Have you ever directed anyone else to discipline anyone, any employees of Ocean Beach? 11:46:27 11:46:30 11:46:33**

MR. NOVIKOFF: Objection to the form. 11:46:33 11:46:34

A. No, I have not. 11:46:34

**Q. Have you ever terminated the employment of any employees at Ocean Beach? 11:46:38 11:46:42**

Loeffler

MR. NOVIKOFF: Okay. I am going to object only -- has this witness as mayor or the trustee ever on his own accord said "you're fired"? 11:46:44 11:46:45 11:46:51 11:46:55

MR. GRAFF: Effectuated the termination, either yourself or by directing someone else to. 11:46:56 11:46:57 11:47:00

MR. NOVIKOFF: Okay, I am going to object to the form, but you can answer. 11:47:01 11:47:02

A. Define "termination" for me. 11:47:04

**Q. Do you understand what "termination" means in the context of employment? 11:47:10 11:47:12**

A. No, I don't. 11:47:13

**Q. To discontinue the employment of a person, to prevent that person from continuing to work at Ocean Beach. 11:47:14 11:47:23 11:47:28**

MR. NOVIKOFF: Those are the two definitions of "terminate" that you are asking this witness to answer on? 11:47:31 11:47:32 11:47:34

MR. GRAFF: Yes. 11:47:36

MR. NOVIKOFF: Okay. Objection to the form of the question. 11:47:37 11:47:39

A. No. 11:47:41

**Q. To your knowledge, has any Ocean 11:47:41**

Loeffler

**Beach police officer ever been terminated? 11:47:48**

A. No. 11:47:50

**Q. To your knowledge, has any member of the Ocean Beach Police Department ever been subject to discipline? 11:47:53 11:48:12 11:48:14**

MR. NOVIKOFF: Objection to the form of the question. I think "discipline" is a very broad word. 11:48:15 11:48:18 11:48:20

A. And "anyone." Is that over the last 60 years or what are you talking about? 11:48:22 11:48:26

**Q. Yes. 11:48:27**

MR. NOVIKOFF: Over the last 60 years? 11:48:28 11:48:29

MR. GRAFF: That he is aware, yes. 11:48:29

A. I have no -- 11:48:31

MR. NOVIKOFF: Objection. 11:48:31

A. No, I have no knowledge. 11:48:33

MR. GRAFF: I am going to ask the court reporter to please mark as Exhibit Loeffler 4 a one-page document produced by Ocean Beach bearing Bates number 001005. 11:48:52 11:48:53 11:48:54 11:48:56 11:48:58

(Loeffler Exhibit 4, memo dated April 4, 2006, Bates stamped 001005, marked 11:49:15 11:49:15

Loeffler

for identification.) 11:49:15

MR. NOVIKOFF: And you want him to do what with this? 11:49:15 11:49:15

**Q. To review the document and to let me know if this is a document that you have seen before, Mayor Loeffler. 11:49:34 11:49:36 11:49:38**

**(Document review.) 11:49:39**

MR. NOVIKOFF: So the question is does he recognize this document? 11:49:39 11:49:54

MR. GRAFF: Yes. 11:49:55

A. I don't remember seeing that document. 11:49:56 11:49:58

**Q. Okay. At the bottom of the document, if you will note there is a CC and there is two names who that document is CC'd to. 11:50:00 11:50:05 11:50:07 11:50:10**

MR. NOVIKOFF: Let the record reflect that it's CC'd to Natalie K. Rogers/Mayor/Police Commissioner and Joseph Loeffler/Trustee. 11:50:10 11:50:11 11:50:13 11:50:16

**Q. Mayor Loeffler, during the time that you were a trustee at Ocean Beach, was Mayor Rogers -- did Mayor Rogers ever serve as police commissioner of Ocean Beach? 11:50:18 11:50:21 11:50:26 11:50:29**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler
MR. NOVIKOFF: Objection to the form 11:50:30
of the question. 11:50:30
A. She by Village law would be the 11:50:31
department head for all departments. So the 11:50:36
term "police commissioner" could broadly be 11:50:40
used for that position. 11:50:42
**Q. If you look at the top left of the 11:50:44**
**document -- 11:50:46**
MR. NOVIKOFF: Okay. 11:50:49
**Q. It says Natalie -- this is in the 11:50:50**
**header. 11:50:51**
MR. NOVIKOFF: It says Natalie C. 11:50:51
Rogers, Mayor/Police Commissioner. Okay. 11:50:53
**Q. Do you know why the designation with 11:50:56**
**the mayor/police commissioner specifically with 11:50:58**
**reference to the Police Department and not to 11:51:01**
**other departments in Ocean Beach? 11:51:03**
MR. NOVIKOFF: Objection to the 11:51:04
form. I don't know if you have established 11:51:05
that this letterhead is different than any 11:51:08
other letterhead, so I am going to object 11:51:10
to the form of the question. 11:51:13
If you can answer, if you can 11:51:15
answer. If you need to look at the 11:51:17

Loeffler
document -- 11:51:17
A. It looks -- it appears that it's 11:51:18
police department stationery. Other 11:51:19
departments have different stationery. I don't 11:51:21
know. 11:51:24
**Q. Have you ever seen stationery that 11:51:24**
**identified the mayor, whoever the mayor might 11:51:26**
**have been at that time, as mayor/fire 11:51:29**
**commissioner? 11:51:31**
A. Not that I recall. 11:51:33
**Q. Do you recall ever seeing a document 11:51:39**
**that identified the mayor as mayor/sanitation 11:51:41**
**commissioner. 11:51:44**
MR. NOVIKOFF: The answer is just 11:51:45
yes, you recall, or no, you recall. 11:51:46
A. No. 11:51:48
**Q. Do you recall ever seeing a document 11:51:48**
**that identified the mayor as mayor slash any 11:51:51**
**department other than police followed by the 11:51:55**
**word "commissioner"? 11:51:58**
MR. NOVIKOFF: Again, it's just yes 11:51:59
if you recall -- 11:52:00
A. No. 11:52:01
**Q. Do you recall if you have ever 11:52:07**

Loeffler
**during the time that you served as a trustee 11:52:09**
**and Mayor Rogers was serving as mayor whether 11:52:12**
**you ever received correspondence that was 11:52:14**
**copied to Mayor Rogers and to yourself but to 11:52:17**
**no other members of the Board of Trustees? 11:52:20**
A. I don't recall. 11:52:22
**Q. The document at the reference line 11:52:27**
**is headed Termination of Employment. The text 11:52:30**
**reads: "For your information, the following 11:52:33**
**officers were let go and will not be returning 11:52:35**
**to work for the 2006 summer season." Then it 11:52:37**
**lists certain names. 11:52:40**
**Mayor Loeffler, are you aware that 11:52:42**
**certain officers were let go and did not return 11:52:44**
**to work for the 2006 summer season as stated in 11:52:46**
**the document? 11:52:49**
MR. NOVIKOFF: Objection to the form 11:52:49
of the question. I don't know what you 11:52:50
mean by "let go." 11:52:51
MR. GRAFF: As stated in the 11:52:52
document, to the extent that he can 11:52:53
understand it. 11:52:55
MR. NOVIKOFF: The document says 11:52:56
"let go." I don't know if you have asked 11:52:57

Loeffler
this witness what his understanding, if 11:52:58
any, of the frame -- word "let go" is as 11:53:00
used by Mr. Hesse. So I am going to object 11:53:03
to the question. I think you need to lay a 11:53:07
foundation, Ari. 11:53:09
MR. GRAFF: Okay. 11:53:10
**Q. Now if you could look at the 11:53:10**
**document, do you understand what the document 11:53:12**
**is referring to? 11:53:13**
A. Yes, I do. 11:53:17
**Q. And what is the document referring 11:53:18**
**to? 11:53:20**
A. It's referring to the fact that 11:53:20
there are one, two, three, four, five, six -- 11:53:22
seven names of individuals that were not 11:53:27
rehired. 11:53:29
**Q. And other than based on this 11:53:30**
**document, do you recall that these seven or 11:53:33**
**eight officers were not rehired at that time? 11:53:37**
A. Is it seven or is it eight? 11:53:40
**Q. Seven. 11:53:42**
A. That's what I thought. 11:53:43
MR. NOVIKOFF: So what's the 11:53:46
question? Now that we have gotten the math 11:53:47

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

right. 11:53:47

**Q. If you have a recollection of this 11:53:47 happening independent of this document. 11:53:50**

A. No, I don't. 11:53:51

MR. NOVIKOFF: Wait, wait, was 11:53:52 the -- objection to form. Was the question 11:53:53 does he have knowledge independent of this 11:53:55 document that seven officers were not 11:53:58 rehired in April 2006? 11:54:00

That's the question. Taking this 11:54:05 document aside, do you have knowledge that 11:54:07 in April 2006 seven officers were not 11:54:12 rehired? That's the question. 11:54:15

A. Yes, I do. 11:54:18

**Q. And how did you first learn that 11:54:19 seven officers -- 11:54:23**

MR. GRAFF: I'll note, Mr. Novikoff, 11:54:25 we have got the conflicting terminology. 11:54:26 If we refer to -- 11:54:29

MR. NOVIKOFF: Yes, we all 11:54:30 understand that your position is that they 11:54:31 were terminated, our position is that they 11:54:32 were not rehired. I'm not going to suggest 11:54:35 at trial that your use of the word one way 11:54:38

Loeffler

or the other changes your position and you 11:54:41 are not going to use at the time of trial 11:54:43 or in motion that my use of whatever phrase 11:54:45 changes our position. 11:54:48

MR. GRAFF: Thank you. 11:54:49

**Q. When did you first learn that seven 11:54:49 officers were not rehired in 2006, Mayor 11:54:52 Loeffler? 11:54:56**

A. Sometime after April 4th of 2006. 11:54:56

**Q. And how did you come to learn of it 11:55:04 at that time? 11:55:06**

A. I believe Deputy Chief Hesse 11:55:06 informed the board that he would not be 11:55:12 rehiring these people. 11:55:13

**Q. And was that -- did he inform them 11:55:14 in person in a spoken communication? 11:55:18**

A. I don't recall. 11:55:20

**Q. Do you recall whether he informed 11:55:20 the board at any formal meeting of the board? 11:55:23**

MR. NOVIKOFF: I am going to object 11:55:28 to the form of the question. 11:55:29

You can answer, though. 11:55:30

A. I don't recall. 11:55:31

**Q. Do you recall whether he provided 11:55:34**

Loeffler

**any reason why those officers were not being 11:55:35 rehired when he informed the board? 11:55:38**

A. If I don't recall him doing that, I 11:55:40 couldn't recall any reasons. 11:55:43

**Q. Do you recall ever having any 11:55:45 conversations directly with George Hesse about 11:55:46 the fact that certain officers were not rehired 11:55:48 to work for the 2006 season? 11:55:51**

MR. NOVIKOFF: At what period of 11:55:52 time? 11:55:54

MR. GRAFF: At any period of time. 11:55:55

A. Well, obviously five of those 11:55:57 officers are part of this lawsuit, so I do have 11:55:58 some knowledge that they were not rehired as 11:56:01 part of the filing of the documents by the 11:56:04 plaintiffs. 11:56:07

**Q. Prior to the plaintiffs filing the 11:56:08 document in this lawsuit, did you have any 11:56:10 communications with George Hesse that you can 11:56:13 recall concerning officers not being rehired 11:56:16 for the 2006 season? 11:56:18**

A. No, I don't recall. 11:56:20

**Q. Do you know who William Powell is? 11:56:22**

A. No, I don't. 11:56:26

Loeffler

**Q. Do you know who John Dyer is? 11:56:27**

A. No, I don't. 11:56:28

**Q. At the time that George Hesse 11:56:30 informed you that officers were not being 11:56:34 rehired -- 11:56:37**

A. No. 11:56:37

**Q. Informed the board? Is that what 11:56:40 your hesitation was? 11:56:41**

A. Okay, yes. 11:56:42

**Q. Informed the board including 11:56:43 yourself that certain officers would not be 11:56:45 rehired for 2006, did you know who Edward 11:56:47 Carter was? 11:56:51**

A. Yeah. 11:56:52

MR. NOVIKOFF: Did he know who he 11:56:52 was or was he aware that there was a person 11:56:54 affiliated with Ocean Beach named Edward 11:56:56 Carter? 11:56:59

MR. GRAFF: Either way. 11:57:04

MR. NOVIKOFF: Okay. Objection to 11:57:04 the form. 11:57:06

A. I know who Edward Carter is. 11:57:06

**Q. And who did you know Edward Carter 11:57:08 to be at that time? 11:57:10**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

A. A police officer. 11:57:11

**Q. Had you ever had any communications with Edward Carter directly? 11:57:12 11:57:14**

A. Once. 11:57:17

**Q. On what occasion did you -- 11:57:18**

A. He showed up at a fire scene in the wintertime. He was working a midnight tour. That's the only time I ever spoken to Edward Carter. 11:57:20 11:57:22 11:57:25 11:57:27

**Q. And in substance what did you -- or what did you say to Ed Carter in that conversation? 11:57:27 11:57:29 11:57:31**

A. "Thanks for coming." 11:57:31

**Q. And where was the location of that fire scene? 11:57:35 11:57:37**

A. On Denhnoff Roadway in Ocean Beach. 11:57:39

**Q. And what structure, if any, was on fire? 11:57:42 11:57:45**

A. Four Seasons Hotel. 11:57:45

**Q. And do you know what Ed Carter did when he arrived at that fire scene, what role he played, if any? 11:57:53 11:57:55 11:57:58**

A. No, I don't. 11:57:59

**Q. As of April 2006 did you know who 11:58:01**

Loeffler

**Kevin Lamm was? 11:58:04**

A. Yes. 11:58:05

MR. NOVIKOFF: Objection. 11:58:05

**Q. And who did you know Kevin Lamm to be? 11:58:06 11:58:08**

A. A police officer within the Village of Ocean Beach. 11:58:08 11:58:10

**Q. Had you ever had any communications with Mr. Lamm as of April of 2006? 11:58:10 11:58:12**

A. Yes, from time to time I would speak with him. 11:58:14 11:58:16

**Q. And can you recall anything of what you discussed with Kevin Lamm as of April 2006? 11:58:16 11:58:19**

A. Small talk. I would see him. He would meet the ferries a lot. I guess that was one of his jobs in the Police Department. See him on the street, just say "hi." 11:58:23 11:58:26 11:58:29 11:58:31

**Q. As of April 2006, did you have any reason to believe that Kevin Lamm's performance as a police officer was less than satisfactory? 11:58:33 11:58:36 11:58:39**

MR. NOVIKOFF: Objection. 11:58:41

You can answer. 11:58:42

A. I had no knowledge of his performance status. 11:58:42 11:58:47

Loeffler

**Q. And what about Ed Carter, as of April 2006 did you have any knowledge of his performance status? 11:58:48 11:58:53 11:58:55**

MR. NOVIKOFF: Same objections. 11:58:56

A. No. 11:58:57

MR. NOVIKOFF: Actually, I withdraw the objection because the question was changed. 11:59:01 11:59:03 11:59:04

**Q. As of April 2006, did you know who Joseph Nofi was? 11:59:06 11:59:08**

MR. NOVIKOFF: Objection. 11:59:09

A. Yes. 11:59:10

**Q. And who did you know Joseph Nofi to be? 11:59:11 11:59:14**

A. A police officer with the Ocean Beach Police Department. 11:59:14 11:59:15

MR. NOVIKOFF: Ari, is your question as of April 2006 or was it as of April 4th, 2006? If your question is as of April 2006, that subsumes the entire month of April, which I think this witness testified that perhaps he and George Hesse -- 11:59:15 11:59:17 11:59:24 11:59:28 11:59:31 11:59:32

**Q. With that clarification, prior to the ending of his employment up to April 4th, 11:59:34 11:59:36**

Loeffler

**2006, who did you know Joseph Nofi to be? 11:59:39**

MR. NOVIKOFF: Objection. 11:59:42

A. A police officer in the Ocean Beach Police Department. 11:59:43 11:59:45

**Q. Had you ever had any communications with Joseph Nofi as of that time? 11:59:46 11:59:47**

A. Prior to that date, is that what you are talking about? 11:59:50 11:59:52

**Q. Yes. 11:59:52**

A. Yes. 11:59:53

**Q. And can you recall the substance of anything that was communicated in those conversations? 11:59:53 11:59:55 11:59:56**

A. No, I can't. Mostly small talk. 11:59:57

**Q. Do you recall whether you ever discussed any issues with respect to the Ocean Beach Police Department with Joseph Nofi? 12:00:00 12:00:03 12:00:07**

MR. NOVIKOFF: Objection to the form. 12:00:10 12:00:10

A. I'm not clear on what you are asking. 12:00:13 12:00:15

**Q. Well, did any of the small talk include anything concerning the Ocean Beach Police Department? 12:00:15 12:00:17 12:00:20**

9e28f7aa-4e93-4641-9524-8529961356c8

Page 121

**Loeffler**

MR. NOVIKOFF: Other than the fact that Mr. Lamm was an officer at the time? 12:00:20 12:00:21

THE WITNESS: No, we are talking about Mr. Nofi, right? 12:00:24 12:00:25

MR. NOVIKOFF: Mr. Nofi, I mean. 12:00:26

MR. GRAFF: Right. 12:00:26

MR. NOVIKOFF: Okay. Objection to the form. 12:00:27 12:00:28

A. No. 12:00:29

**Q. Do you recall discussing any -- discussing with Joe Nofi any other officers at the Ocean Beach Police Department? 12:00:29 12:00:31 12:00:33**

A. No. 12:00:34

**Q. Do you recall ever discussing with Kevin Lamm any other officers at the Ocean Beach Police Department? 12:00:35 12:00:36 12:00:39**

A. No. 12:00:39

**Q. As of April 4th, 2006, did you know who Frank Fiorillo was? 12:00:39 12:00:44**

A. Yes. 12:00:45

**Q. Who did you know him to be? 12:00:45**

A. A police officer with the Ocean Beach Police Department. 12:00:47 12:00:48

**Q. Had you ever had any communications 12:00:49**

Page 122

**Loeffler**

**with Frank Fiorillo as of that date? 12:00:50**

A. Yes. 12:00:52

**Q. How many times would you say you communicated with Frank Fiorillo? 12:00:52 12:00:54**

A. I don't know. 12:00:56

**Q. Can you recall the substance of any of those communications? 12:00:58 12:01:00**

A. Mostly small talk, "how are you doing, how are things going." 12:01:01 12:01:03

**Q. Other than that small talk, can you recall anything else that you communicated? 12:01:04 12:01:06**

A. No. 12:01:07

**Q. Did you have any knowledge of Frank Fiorillo's performance as a police officer as of April 4th, 2006? 12:01:08 12:01:11 12:01:14**

A. No. 12:01:15

**Q. Do you recall ever discussing any other officers at the Ocean Beach Police Department with Frank Fiorillo? 12:01:15 12:01:28 12:01:30**

MR. NOVIKOFF: Objection. You have been asking these questions "do you recall" and I have objected and I haven't objected. When you say "do you recall," are you asking him affirmatively did you have any 12:01:31 12:01:32 12:01:36 12:01:38 12:01:40

Page 123

Loeffler

discussions with him? 12:01:42

MR. GRAFF: Yes. 12:01:43

MR. NOVIKOFF: Okay. So when you say going forward, and you may want to change your questions, "do you recall," this witness should assume that that means did you ever? Because there is two -- two different meanings to those questions. 12:01:44 12:01:45 12:01:48 12:01:50 12:01:53 12:01:57

MR. GRAFF: I would not want to confuse the witness or the testimony. 12:01:58 12:02:00

MR. NOVIKOFF: Okay. Ask him did you have any conversations with -- 12:02:01 12:02:02

**Q. Did you have any conversations with Frank Fiorillo prior to April 4th, 2006? 12:02:02 12:02:04**

A. Yes. 12:02:07

**Q. Other than small talk, do you recall anything specific that you discussed with Frank Fiorillo? 12:02:08 12:02:12 12:02:14**

A. No. 12:02:14

**Q. Did you ever discuss any police matters with Frank Fiorillo? 12:02:15 12:02:22**

A. No. 12:02:23

MR. NOVIKOFF: Objection. 12:02:24

THE WITNESS: Sorry. 12:02:26

Page 124

Loeffler

MR. NOVIKOFF: No, you can answer, that's fine. 12:02:27 12:02:28

A. No. 12:02:29

**Q. As of April 4th, 2006, did you know who Thomas Snyder was? 12:02:29 12:02:32**

A. Yes. 12:02:33

**Q. And who did you know him to be? 12:02:34**

A. A police officer of the Ocean Beach Police Department. 12:02:35 12:02:37

**Q. Do you have any knowledge of his performance as a police officer? 12:02:37 12:02:40**

A. No, I do not. 12:02:41

**Q. Did you ever have any communications with Tom Snyder? 12:02:42 12:02:43**

A. I don't know if we ever actually -- very infrequent, if I did. I don't remember. 12:02:45 12:02:56

**Q. Can you recall the substance of anything communicated? 12:02:58 12:02:59**

A. No. No. 12:02:59

**Q. Do you recall whether -- strike that. 12:03:03 12:03:05**

**Did you ever discuss any other officers at the Ocean Beach Police Department with Tom Snyder? 12:03:05 12:03:09 12:03:11**

Page 125

Loeffler

A. No, I did not. 12:03:12

**Q. Did you ever direct any of the five plaintiffs in this lawsuit during their time that they were police officers at Ocean Beach, did you ever direct any of them to not issue a citation to any particular person? 12:03:14 12:03:16 12:03:19 12:03:21 12:03:26**

MR. NOVIKOFF: Objection to the form. You have a wholesale lack of foundation on that question. You are presuming that it was the mayor's responsibility or authority to direct police officers to -- 12:03:28 12:03:29 12:03:32 12:03:42 12:03:44 12:03:47

MR. GRAFF: I'm not assuming anything. I am asking if he did direct them. 12:03:48 12:03:49 12:03:51

MR. NOVIKOFF: Well, I am objecting to the form. 12:03:51 12:03:52

A. Direct them -- repeat the question for me, please. 12:03:55 12:04:00

**Q. I will ask it a slightly different way. 12:04:01 12:04:03**

**Did you ever ask any of the five plaintiffs to not issue a citation or violation to any particular person on any particular 12:04:04 12:04:05 12:04:09**

Page 126

Loeffler

**occasion? 12:04:11**

A. Not that I recall. 12:04:12

**Q. Did you ever ask any of the five plaintiffs in this case to not arrest any particular person on any particular occasion? 12:04:14 12:04:18 12:04:21**

A. No. 12:04:23

MR. NOVIKOFF: Do you have a good faith basis to suggest that he did? 12:04:27 12:04:28

MR. GRAFF: I do. 12:04:30

MR. NOVIKOFF: Okay. Can we hear it? Because I think what you just accused the mayor of Ocean Beach of doing by virtue of the question is that he did direct someone not to arrest someone else and I think that's a pretty serious accusation to me. 12:04:31 12:04:33 12:04:37 12:04:40 12:04:41 12:04:44 12:04:47

MR. GRAFF: I will be more specific. 12:04:47

THE WITNESS: Okay, that would be great. 12:04:49 12:04:49

**Q. Did you ever direct any of the officers not to arrest or issue a citation to Michael Loeffler? 12:04:49 12:04:51 12:04:54**

A. Oh, absolutely. Absolutely, I did. 12:04:55

**Q. And when did that happen? 12:04:57**

Page 127

Loeffler

A. When they attempted to issue him a citation for a crime that he didn't commit. 12:04:59 12:05:01

**Q. When did that take place? 12:05:05**

A. I don't remember the date. 12:05:06

**Q. Do you remember the year? 12:05:07**

A. 2005 maybe. I'm not sure. 12:05:09

**Q. And which officer specifically are you referring to? 12:05:13 12:05:15**

A. Officer Fiorillo, right here, sitting right here. 12:05:15 12:05:17

**Q. And can you describe the context of what you are referring to? 12:05:19 12:05:22**

A. Yes. He wanted to issue my son a summons for stealing a barbecue. 12:05:22 12:05:24

MR. NOVIKOFF: Is there anything more you want to add to that? 12:05:31 12:05:32

THE WITNESS: Well, I have to more answer to that, but that's... 12:05:33 12:05:34

MR. NOVIKOFF: Okay. 12:05:35

**Q. If you could elaborate on that, please. 12:05:35 12:05:37**

A. Well, do you want -- 12:05:37

MR. NOVIKOFF: Do you want the witness to -- 12:05:40 12:05:41

Page 128

Loeffler

MR. GRAFF: Yes. 12:05:42

MR. NOVIKOFF: Testify as to whatever you want to testify about the incident. 12:05:42 12:05:43 12:05:45

A. There was an incident that occurred at 31 Ocean Road where my son removed a barbecue from that residence and took it to Ocean Bay Park and Officer Fiorillo, I believe, wanted to issue him a summons for stealing that barbecue, but I own that house. That's my barbecue. So I don't know what Officer Fiorillo was going to commit, but he would have committed a false arrest. I was attempting to stop him from doing that and allow him not to, but I owned that house. That was my barbecue. Okay. So in attempting to assist Officer Fiorillo in not getting involved in a false arrest suit, I did make that suggestion that he not do that, because there would not be a complainant at that house. 12:05:45 12:05:47 12:05:50 12:05:53 12:05:55 12:05:57 12:06:01 12:06:03 12:06:05 12:06:08 12:06:11 12:06:13 12:06:18 12:06:20 12:06:23 12:06:25

**Q. And was that house your residence? 12:06:26**

A. No, it was one of my rental houses at the time. 12:06:29 12:06:31

**Q. Was it occupied at the time? 12:06:32**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

A. Sure, it was. 12:06:33

**Q. And did you recognize the specific barbecue in question as being your property and not something that the renting party had brought? 12:06:34 12:06:36 12:06:38 12:06:40**

A. Absolutely did. It was my barbecue. 12:06:41

**Q. Other than that specific occasion, did you ever direct any other Ocean Beach police officers to refrain from arresting or issuing a citation to Michael Loeffler? 12:06:43 12:06:45 12:06:47 12:06:51**

A. No. I didn't advise him not to arrest him. He could have arrested him and maybe he should have and then my son might have a decent lawsuit against the police department and Officer Fiorillo. All I did was advise him that that barbecue belonged to me. 12:06:54 12:06:59 12:07:01 12:07:03 12:07:07 12:07:09

**Q. And what, if anything, did Frank Fiorillo do in response to that advice? 12:07:11 12:07:13**

A. I don't know. Obviously he didn't issue the summons. 12:07:15 12:07:17

**Q. Other than the officers who were not rehired in the 2006 season, are you aware of any other officers who were not rehired at any other times during your service as mayor or 12:07:32 12:07:34 12:07:37 12:07:41**

Loeffler

**trustee? 12:07:44**

A. I don't recall. 12:07:50

**Q. Have you -- when was the last time you spoke to Ed Paradiso? 12:08:06 12:08:08**

A. About a year ago, I guess. Approximately a year. 12:08:14 12:08:22

**Q. Do you recall what you spoke with Ed Paradiso about at that time? 12:08:23 12:08:26**

A. His father's funeral. 12:08:27

**Q. Have you ever had any conversations with Ed Paradiso concerning this lawsuit? 12:08:29 12:08:31**

A. No, I have not. 12:08:33

**Q. Do you know whether there was any Civil Service test that George Hesse was required to take in order to attain the position of police sergeant? 12:08:34 12:08:44 12:08:46 12:08:48**

MR. NOVIKOFF: Objection to the form. I don't know if this witness is an expert in Civil Service law. 12:08:50 12:08:51 12:08:57

THE COURT REPORTER: I can't hear you. 12:08:57 12:08:57

MR. NOVIKOFF: I said i don't know if this witness is -- and I know he is not an expert on the Civil Service law, so you 12:08:57 12:08:58 12:08:59

Loeffler

can answer. 12:09:01

A. Was -- a test that he was required to take? 12:09:02 12:09:06

**Q. Yes. 12:09:06**

A. I don't know. 12:09:07

**Q. Do you know whether there was -- strike that. 12:09:07 12:09:09**

**Do you know whether George Hesse ever passed any Civil Service examination in connection with the position of police sergeant? 12:09:11 12:09:13 12:09:17 12:09:19**

A. No, I do not. 12:09:19

**Q. Do you know whether George Hesse passed any Civil Service exam in connection with the position of deputy police chief? 12:09:20 12:09:22 12:09:25**

A. No, I do not. 12:09:28

**Q. Do you know what the Civil Service requirements are with respect to the hiring of police officers at Ocean Beach? 12:09:29 12:09:38 12:09:48**

MR. NOVIKOFF: All of the Civil Service requirements? 12:09:49 12:09:50

MR. GRAFF: Any. 12:09:51

MR. NOVIKOFF: Objection to form. 12:09:52

A. No, I do not. 12:09:53

Loeffler

**Q. Is there any particular individual or position at Ocean Beach that is responsible for overseeing compliance with applicable Civil Service requirements for employees? 12:09:55 12:10:01 12:10:04 12:10:08**

A. Yes. 12:10:09

**Q. And who is that person? 12:10:09**

A. Mary Anne Minerva. 12:10:12

**Q. And what position does Mary Anne Minerva hold? 12:10:15 12:10:16**

A. She is the Village clerk. 12:10:16

**Q. And do you exercise any oversight over Mary Anne Minerva's execution of those responsibilities? 12:10:18 12:10:20 12:10:23**

MR. NOVIKOFF: Objection to the form of the question. Other than in his overall capacity as mayor? 12:10:24 12:10:25 12:10:27

MR. GRAFF: Well, does he in his overall capacity as mayor or otherwise exercise any oversight over Mary Anne Minerva with respect to that. 12:10:30 12:10:31 12:10:34 12:10:37

MR. NOVIKOFF: I think the mayor would, as already testified -- 12:10:38 12:10:40

A. She would have general oversight over everybody. 12:10:41 12:10:42

Page 133

Loeffler

**Q. Okay. And in the context of your general oversight, have you ever done anything specific to oversee Mary Anne Minerva in connection with her execution or compliance with Civil Service requirements for employees?** 12:10:44 12:10:45 12:10:47 12:10:50 12:10:57

MR. NOVIKOFF: Objection. 12:10:58

You can answer. 12:11:00

A. That is within the realm of her responsibility as Village clerk. 12:11:01 12:11:04

**Q. And do you have any information as to whether Mary Anne Minerva has been effective in fulfilling that responsibility?** 12:11:07 12:11:09 12:11:14

A. I believe she has. 12:11:17

**Q. And on what do you base that belief?** 12:11:18

A. I believe she has told me that the payroll today is certified. 12:11:22 12:11:23

**Q. Do you know whether the payroll for -- specifically with respect to payroll for Ocean Beach police officers was certified throughout the period that you have served as mayor of Ocean Beach?** 12:11:27 12:11:29 12:11:31 12:11:34 12:11:36

A. I don't know. 12:11:37

**Q. Do you know whether the payroll was certified at any point during the period that** 12:11:40 12:11:42

Page 134

**Loeffler**

**you served as a trustee of Ocean Beach?** 12:11:46

MR. NOVIKOFF: Objection to the form of the question. 12:11:49 12:11:49

You can answer. 12:11:50

A. I don't know. 12:11:51

**Q. Other than Mary Anne Minerva, is there anyone else at Ocean Beach that you are aware of that has interactions with the Civil Service Department?** 12:11:54 12:11:56 12:11:59 12:12:04

MR. NOVIKOFF: Wait a minute, anyone at Ocean Beach that has interaction? Wouldn't any police officer presumably have interaction? 12:12:04 12:12:06 12:12:08 12:12:11

MR. GRAFF: Interaction with the Civil Service Department with respect to compliance with any applicable Civil Service requirements for employees at Ocean Beach. 12:12:12 12:12:13 12:12:15 12:12:18 12:12:20

MR. NOVIKOFF: I am going to object to the form. I would presume that every employee at some point in time or another should or had interaction with Civil Service, so I am going to object to the form of the question. I think I know what 12:12:20 12:12:21 12:12:23 12:12:26 12:12:28 12:12:30

Page 135

Loeffler

you are asking, but you didn't get there. 12:12:32

A. I have met with the Civil Service Commission as my -- within the realm of my time as being mayor. 12:12:35 12:12:37 12:12:41

**Q. And on how many occasions have you met with the Civil Service Commission?** 12:12:42 12:12:44

A. Twice. 12:12:46

**Q. And who specifically did you meet with?** 12:12:47 12:12:50

A. Alan Schneider. 12:12:51

**Q. Did you meet with Alan Schneider on both occasions?** 12:12:54 12:12:57

A. Yes, I did. 12:12:57

**Q. When was the first occasion that you met with Alan Schneider?** 12:12:58 12:13:01

A. Sometime after 2006. 12:13:03

**Q. And who requested that meeting?** 12:13:04

A. I did. 12:13:08

**Q. Why did you request a meeting with Alan Schneider at that time?** 12:13:09 12:13:11

A. Well, we were attempting to hire some full-time police officers off a new list that had been established. 12:13:12 12:13:14 12:13:21

**Q. And did you meet with Alan Schneider** 12:13:27

Page 136

**Loeffler**

**at his office?** 12:13:29

A. Yes. 12:13:29

**Q. How long did that meeting last?** 12:13:30

A. An hour, two. I don't remember. 12:13:31

**Q. What was discussed during that hour?** 12:13:33

A. Qualifications for us hiring full-time police officers. 12:13:35 12:13:38

**Q. Prior to that meeting, were there any individuals employed as full-time police officers in Ocean Beach?** 12:13:40 12:13:43 12:13:47

A. Yes. 12:13:49

**Q. And who was employed as a full-time police officer at Ocean Beach as of that meeting?** 12:13:49 12:13:52 12:13:54

A. Edward Paradiso, George Hesse, Paul Trosko. I think that might be all. I'm not -- I think that's it. 12:13:54 12:14:08 12:14:19

**Q. Why were you looking to hire more full-time police officers specifically at that point in time?** 12:14:20 12:14:23 12:14:25

A. Because it's my opinion that the police department needs to move away from seasonal and part-time police officers and hire full-time police officers because they are more 12:14:25 12:14:29 12:14:32 12:14:34

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

responsive and more reliable than the ones we have been hiring. 12:14:38 12:14:40

**Q. And can you identify any specific deficiencies with respect to seasonal police officers generally that would lead you to believe that Ocean Beach would be better served by full-time police officers? 12:14:41 12:15:09 12:15:12 12:15:18 12:15:19**

MR. NOVIKOFF: Are you sure you want to ask that question? 12:15:22 12:15:23

A. In my opinion, full-time police officers serve the community better, are less apt to take time off to fulfill their job requirements, and they put the Village first, where seasonal or part-time police officers who have full-time jobs would put their jobs first before the Village of Ocean Beach. So it is of my opinion that the Village is better served by hiring full-time police officers. 12:15:25 12:15:27 12:15:30 12:15:33 12:15:35 12:15:38 12:15:41 12:15:43 12:15:46

**Q. And in what ways would the seasonal police officers not put Ocean Beach first? 12:15:49 12:15:52**

A. Well, if they had a conflict between their full-time job and the seasonal job, I would suspect that they would rely on taking the seasonal -- the full-time job more 12:15:54 12:15:57 12:16:00 12:16:03

Loeffler

importantly than the seasonal job. 12:16:05

**Q. And did you review any kind of attendance records or other documentation? 12:16:08 12:16:09**

A. I just told you it was my opinion. 12:16:12

**Q. In connection with forming that opinion. 12:16:14 12:16:15**

A. No, I did not. 12:16:16

**Q. And on what do you base that opinion? 12:16:17 12:16:19**

A. On other Police Departments. 12:16:20

**Q. Are you aware of any specific officers who would -- any specific seasonal officers who would not put Ocean Beach Police Department first? 12:16:24 12:16:26 12:16:32 12:16:35**

A. No, I am not. 12:16:35

**Q. Did you have any discussions with anybody else at Ocean Beach concerning your opinion at that time? 12:16:36 12:16:40 12:16:43**

A. No. 12:16:44

**Q. Did you have any discussions with George Hesse about why you were seeking to hire additional full-time police officers at that time? 12:16:50 12:16:52 12:16:55 12:16:56**

A. I told him that was what I was going 12:16:56

Loeffler

to do. 12:16:59

**Q. Did he ask you why? 12:16:59**

A. Yes, and I told him exactly what I told you. 12:17:00 12:17:03

**Q. And did he say anything in response? 12:17:03**

A. No, he did not. 12:17:06

**Q. As far as you know, was George Hesse's employment as a full-time police officer in compliance with any applicable Civil Service requirements at that time? 12:17:10 12:17:12 12:17:17 12:17:20**

MR. NOVIKOFF: Objection to the form. 12:17:21 12:17:22

A. I believe he was. 12:17:23

**Q. Was that discussed at all at that first meeting with Alan Schneider? 12:17:27 12:17:29**

A. Yes. 12:17:32

**Q. And in substance what was discussed with respect to that issue? 12:17:34 12:17:38**

A. Whether George Hesse could fulfill the job category classification of supervisor. 12:17:39 12:17:43

**Q. And what, if anything, did Mr. Schneider express on that topic? 12:17:47 12:17:52**

A. That he could not. 12:17:54

**Q. Did Mr. Schneider indicate whether 12:18:01**

**Loeffler**

**George Hesse could meet the requirements for continued service as a full-time police officer? 12:18:04 12:18:07 12:18:09**

A. No, just -- we just spoke about supervision. 12:18:09 12:18:12

**Q. And did you -- other than what you have already testified to, what, if anything, do you recall of the substance of the discussion with Alan Schneider at that first meeting? 12:18:13 12:18:19 12:18:22 12:18:23 12:18:26**

MR. NOVIKOFF: Objection to asking this witness to recall exactly what he has testified to. 12:18:26 12:18:27 12:18:31

A. Mr. Schneider allowed us to hire a part-time -- seasonal police sergeant. 12:18:32 12:18:37

**Q. And who was hired as the seasonal police sergeant? 12:18:42 12:18:52**

A. Richard -- I have to think of his last name. I can't think of it. We hired someone from the Police Department, from within the Police Department that had been a lieutenant with the New York City Police Department and Civil Service allowed us to hire him on a seasonal basis for the summer of 2007. 12:18:53 12:18:56 12:18:57 12:18:59 12:19:01 12:19:04 12:19:06

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**Q. And when did Paul Trosko become a full-time police officer, if you know? 12:19:15 12:19:18**

A. I don't know. 12:19:20

**Q. Was Mary Anne Minerva present at that meeting with Alan Schneider? 12:19:20 12:19:23**

A. Yes, she was. 12:19:25

**Q. What, if anything, did Mary Anne Minerva say during that meeting? 12:19:26 12:19:27**

A. I don't think she said anything. 12:19:29

**Q. Who else was present for that meeting? 12:19:31 12:19:34**

A. Peter Fishbein from the office of Bee Ready Fishbein. 12:19:35 12:19:38

**Q. Anyone else? 12:19:41**

A. County attorney's office. I don't remember who she was. A female county attorney. 12:19:42 12:19:45 12:19:48

**Q. If I said the name Arlene Zwilling, would that refresh your recollection as to that person's name? 12:19:48 12:19:52 12:19:53**

A. I don't remember. It could. I don't -- I don't remember. And there was someone else from Civil Service, another official. Bettenhouse, Richard Bettenhouse. 12:19:54 12:19:57 12:19:59 12:20:06

Loeffler

I'm sorry. 12:20:10

MR. NOVIKOFF: That's the name of the -- 12:20:11 12:20:12

A. That's the name of the officer we appointed sergeant, temporary sergeant. 12:20:12 12:20:14

**Q. Do you know anybody at the Civil Service -- Suffolk County Civil Service Department by the name of Alison Sanchez? 12:20:19 12:20:23 12:20:25**

A. Yes. 12:20:27

**Q. And who do you know her to be? 12:20:28**

MR. NOVIKOFF: Based upon what? Before the filing of the Complaint? 12:20:29 12:20:30

MR. GRAFF: No, as he sits here today. 12:20:31 12:20:32

MR. NOVIKOFF: What's that? 12:20:33

MR. GRAFF: As he sits here today. 12:20:33

MR. NOVIKOFF: Yeah, but the question is very broad. Does he know -- you asked him, I think, essentially how does he know her. The question I think should be did he know of her before the filing of the Complaint or after the filing. 12:20:34 12:20:34 12:20:37 12:20:39 12:20:40 12:20:42 12:20:44

MR. GRAFF: I will clarify that. 12:20:44

Loeffler

MR. NOVIKOFF: Okay. 12:20:46

**Q. Did you know who Alison Sanchez was prior to the filing of the Complaint? 12:20:46 12:20:48**

A. No, I don't think so. 12:20:50

**Q. And would you have known the same individual by the name Alison Chester? 12:20:57 12:20:59**

A. No, it was Alison Sanchez. 12:21:01

**Q. Do you recall how you first heard the name Alison Sanchez? 12:21:06 12:21:07**

A. Yes. 12:21:10

**Q. And in what context did you first hear her name? 12:21:11 12:21:13**

A. I was introduced to her. She was in the Village office reviewing payroll documents. 12:21:14 12:21:16

**Q. When did that happen? 12:21:19**

A. I don't remember. 12:21:20

**Q. Who was she reviewing the payroll documents with? 12:21:21 12:21:25**

A. Mary Anne Minerva. 12:21:25

**Q. Anyone else? 12:21:26**

A. Not that I recall. 12:21:27

**Q. How did you know what documents Ms. Sanchez and Ms. Minerva were reviewing? 12:21:28 12:21:35**

A. They appeared to be payroll 12:21:38

Loeffler

documents. 12:21:40

**Q. Did you have any conversations with Mary Anne Minerva about her meeting on that occasion with Alison Sanchez? 12:21:41 12:21:42 12:21:45**

A. No. 12:21:48

**Q. When was the second occasion that you met with Mr. Schneider? 12:21:49 12:21:51**

A. Probably a year after, a year following the appointment of Richard Bettenhouse. 12:21:56 12:22:01 12:22:03

**Q. And why did you meet with Mr. Schneider on that occasion? 12:22:04 12:22:06**

A. Because we wished to continue that position for another year. 12:22:07 12:22:09

**Q. And was that an in-person meeting? 12:22:11**

A. Yes, it was. 12:22:15

**Q. Was it also again at Mr. Schneider's office? 12:22:16 12:22:19**

A. Yes, it was. 12:22:19

**Q. Who else was present for the meeting? 12:22:20 12:22:21**

A. The same people that were at the first meeting. 12:22:21 12:22:25

**Q. And how long did that meeting last? 12:22:27**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

A. I don't recall. 12:22:29

**Q. And in substance what was discussed during that meeting? 12:22:31 12:22:33**

A. The continuation of the position of temporary sergeant for the Village of Ocean Beach Police Department. 12:22:34 12:22:36 12:22:39

**Q. Were any other topics discussed? 12:22:39**

A. No. 12:22:41

**Q. And in substance what did Mr. Schneider communicate with respect to that issue during that meeting? 12:22:42 12:22:45 12:22:47**

A. That they would allow it for one more season, but they would not continue to allow it. 12:22:48 12:22:50 12:22:53

**Q. During either of your meetings with Mr. Schneider did you take any notes during the meeting? 12:22:59 12:23:01 12:23:04**

A. No, I did not. 12:23:05

**Q. Do you know whether anyone took notes during either of those meetings? 12:23:06 12:23:09**

A. I believe counsel did. 12:23:10

**Q. Would that be counsel for Ocean Beach or counsel for the county? 12:23:11 12:23:15**

A. I believe both counsels did. 12:23:16

Loeffler

**Q. As mayor of Ocean Beach do you have the authority to terminate the employment of police officers at Ocean Beach? 12:23:18 12:23:36 12:23:39**

A. I don't know. 12:23:40

**Q. Do you know who, if anyone, at Ocean Beach has the authority to terminate police officers currently? 12:23:44 12:23:46 12:23:48**

A. I would imagine the Village board would have that authority and probably the department heads can terminate people under their guise as long as they meet the termination requirements of Civil Service. 12:23:49 12:23:59 12:24:06 12:24:08 12:24:12

**Q. And would a department head at Ocean Beach need to obtain approval from anyone else at Ocean Beach in order to terminate an employee under their supervision? 12:24:13 12:24:17 12:24:18 12:24:21**

A. No. We allow them to hire and fire. 12:24:23

**Q. What about when George Hesse was acting deputy chief, did he have hire and fire authority over the Ocean Beach Police Department? 12:24:25 12:24:29 12:24:32 12:24:34**

A. Yes, he did. 12:24:34

MR. GRAFF: I am going to ask the court reporter to please mark as 12:24:51 12:24:53

Loeffler

Exhibit Loeffler 5 a one-page document produced to us by the county without Bates number. 12:24:54 12:24:56 12:24:59

(Loeffler Exhibit 5, letter dated January 4, 2007, marked for identification.) 12:25:08 12:25:08 12:25:26

MR. NOVIKOFF: And is there a question? Do you want him to look at the document? 12:25:26 12:25:27 12:25:30

MR. GRAFF: When you are done reviewing it, Mr. Novikoff. 12:25:30 12:25:31

MR. NOVIKOFF: I'm sorry. 12:25:31

**Q. If Mayor Loeffler could please look at the document, and my first question is whether you have seen the document before. 12:25:32 12:25:34 12:25:37**

**(Document review.) 12:25:53**

A. Yes, I have seen this document. 12:25:53

**Q. When did you first see the document? 12:25:55**

A. Sometime in January of '07. 12:25:57

**Q. Was the version of the document that you saw signed? 12:25:59 12:26:00**

A. I don't recall. 12:26:02

**Q. Did you receive it in the mail? 12:26:06**

A. I receive everything in the mail. 12:26:08

Loeffler

**Q. So you received this Exhibit 5 in the mail? 12:26:11 12:26:12**

A. I would think -- I don't know. I don't know how it got into my possession. 12:26:13 12:26:14

**Q. Do you recall where you were when you saw the document? 12:26:17 12:26:18**

A. I imagine I was in the Village office. 12:26:19 12:26:21

**Q. At that time did you know who Alison Sanchez was? 12:26:21 12:26:23**

A. Yes. 12:26:24

**Q. Had you ever received correspondence from Alison Sanchez prior to this exhibit? 12:26:26 12:26:28**

MR. NOVIKOFF: That he is aware of. 12:26:30

MR. GRAFF: That he is aware of. 12:26:31

A. I don't recall. 12:26:34

**Q. Did you receive this document before or after your first meeting with Alan Schneider? 12:26:34 12:26:40 12:26:42**

MR. NOVIKOFF: Do you need to look at the document? 12:26:45 12:26:47

THE WITNESS: Yes, let me see it. 12:26:47

MR. NOVIKOFF: (Handing). 12:26:49

A. I believe before. 12:26:57

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**Q. Was this document -- strike that. 12:26:58**
**When you received this document, did you have an understanding of what it was referring to with the first few sentences: "This department has become aware that Police Officer George Hesse has been working in a supervisory capacity. Supervisory responsibility is a duty that is out of title for a police officer"? 12:27:23**

MR. NOVIKOFF: Objection to the form. I think you are asking him if he had an understanding as to what Alison Sanchez meant and that's, I think, palpably objectionable. I think the appropriate question would be does he have an understanding as to what this letter means. 12:27:36

MR. GRAFF: That's what I attempted to ask. 12:27:42

MR. NOVIKOFF: Okay, because that's not what you asked. 12:27:43

So do you have an understanding? 12:27:44

A. Is that the question? 12:27:46

MR. NOVIKOFF: Yes. Not as to what Alison Sanchez meant, but do you have an

Loeffler

understanding. 12:27:50

A. Yes, I do. 12:27:50

**Q. And at the time that you first read this, did you have the same understanding? 12:27:53**

MR. NOVIKOFF: I don't think you have established that his understandings is different. He says he has an understanding. 12:28:02

A. That's my understanding of it, so... 12:28:03

**Q. And is your -- okay. 12:28:04**
**And what is your understanding of the second sentence, "supervisory responsibility is a duty that is out of title for a police officer"? 12:28:11**

A. That a police officer is out of title doing supervisory work. 12:28:15

**Q. And out of title, what does that refer to in this context, as you understand it? 12:28:21**

A. Civil Service title. 12:28:23

**Q. And as of January 4, 2007, how long had George Hesse been working in a supervisory capacity at Ocean Beach? 12:28:36**

MR. NOVIKOFF: Objection to the form of the question. 12:28:38

Loeffler

A. I don't know. 12:28:39

**Q. The second paragraph states: "Once we have determined the proper position classification, you may then act to appoint Mr. Hesse to this title." I'm sorry, I skipped a sentence. 12:28:53**
**The third sentence of the first paragraph: "To remedy this, we will need you to submit a new duties statement so that we may review the position and determine the proper title." 12:29:02**
**To your knowledge, was a new duty statement for George Hesse ever submitted to the Civil Service Department subsequent to your receipt of this letter? 12:29:09**

A. Not to my knowledge. 12:29:10

**Q. The first sentence of the second paragraph: "Once we have determined the proper position classification, you may then act to appoint Mr. Hesse to this title." 12:29:21**

MR. NOVIKOFF: Okay. 12:29:26

**Q. To your knowledge, did the Civil Service Department ever determine the proper position classification for George Hesse? 12:29:31**

**Loeffler**

MR. NOVIKOFF: You are asking him if the Civil Service Department did something? 12:29:34

MR. GRAFF: That he is aware of, yes. 12:29:38

MR. NOVIKOFF: I am going to object. 12:29:39

You can answer. 12:29:40

A. George Hesse was determined to be a police officer. 12:29:46

**Q. Did George Hesse's position at the Ocean Beach Police Department change subsequent to your receipt of this letter? 12:30:02**

MR. NOVIKOFF: Objection. 12:30:05

**Q. And to clarify the time period a little better, after your receipt of this letter but before he was placed on modified duty. 12:30:14**

MR. NOVIKOFF: I am still going to object, but at least that clarified one of the issues. 12:30:20

A. Yes, George Hesse's title as sergeant was not utilized after the receipt of this letter. 12:30:31

**Q. And did his duties in the Ocean Beach Police Department change in connection 12:30:35**

Loeffler

**with that title no longer being utilized? 12:30:37**
A. Yes. 12:30:39
**Q. And what duties were changed in 12:30:40 connection with that title change? 12:30:44**
A. He was directed to no longer perform 12:30:46 supervisory responsibilities with reference to 12:30:50 the Ocean Beach Police Department. 12:30:53
**Q. And who directed George Hesse to no 12:30:54 longer perform supervisory responsibilities? 12:30:58**
A. I did. 12:31:01
**Q. And, to your knowledge, did George 12:31:01 Hesse adhere to that direction? 12:31:04**
A. Yes, he has. 12:31:06
**Q. And when did you direct George Hesse 12:31:07 to no longer exercise supervisory 12:31:11 responsibilities? 12:31:14**
A. Sometime after the receipt of that 12:31:14 letter. 12:31:16
**Q. And that was prior to his being 12:31:16 placed on modified duty? 12:31:18**
A. I'm not sure when the directive -- 12:31:20 do you have a copy of the directive for 12:31:22 modified duty assignment, the policy? 12:31:24
**Q. We might get to that later. I am 12:31:25**

Loeffler

**just now -- 12:31:26**
A. Well, you know -- 12:31:26
MR. NOVIKOFF: The witness is asking 12:31:28 you to show him a document to help him 12:31:29 answer the question, so if you have it, you 12:31:32 should show it to him. If not, I think 12:31:34 this line of questioning should end then. 12:31:35
MR. GRAFF: I will ask a different 12:31:37 question now. 12:31:39
**Q. After you directed George Hesse to 12:31:42 no longer exercise supervisory responsibility, 12:31:44 who, if anyone, exercised supervisory 12:31:48 responsibility with respect to the Ocean Beach 12:31:51 Police Department? 12:31:53**
A. In the summer of '07 Richard 12:31:53 Bettenhouse did. 12:31:55
**Q. And did Richard Bettenhouse's 12:31:56 employment end at the end of summer '07? 12:32:02**
MR. NOVIKOFF: Objection to the form 12:32:04 of the question. 12:32:05
A. Yes. 12:32:11
**Q. And after the time that Richard 12:32:12 Bettenhouse's employment ended, who, if anyone, 12:32:14 exercised supervisory responsibility over the 12:32:16**

Loeffler

**Ocean Beach Police Department? 12:32:18**
A. I did. 12:32:19
**Q. Anyone else? 12:32:20**
A. No. 12:32:21
**Q. And in what ways did you exercise 12:32:22 that supervisory responsibility? 12:32:25**
A. I supervised the issuance of 12:32:28 directives, policy, and the certifying -- or 12:32:34 the issuance of orders within the Police 12:32:42 Department. 12:32:46
**Q. And what directives did you 12:32:46 supervise the issuance of? 12:32:51**
A. I issued a bunch of directives. I 12:32:53 don't know -- 12:32:55
**Q. Can you think of a single one? 12:32:56**
A. I can think of one directive that I 12:32:58 issued that when there are more than three 12:33:02 police officers working, one of them shall 12:33:05 be -- we set up station points and should be 12:33:07 responsible to patrol the residential area of 12:33:08 the Village. That was one of the directives 12:33:12 that I wrote. 12:33:14
**Q. Why did you issue that directive? 12:33:14**
A. Because I wanted to have a better 12:33:16

Loeffler

police presence in the residential district 12:33:18 when there was at least three police officers 12:33:20 working. 12:33:22
**Q. And what had been the practice until 12:33:22 the time that you --**
MR. NOVIKOFF: Wait, what had been --
THE COURT REPORTER: One at a time.
MR. NOVIKOFF: What's the question?
**Q. What had been the practice up until 12:33:25 the time that you issued that directive? 12:33:29**
MR. NOVIKOFF: You mean going back 12:33:30 the 55 years that the mayor was in the 12:33:31 Village? 12:33:33
MR. GRAFF: Going back to the 12:33:34 beginning of your service as mayor. 12:33:35
A. There was no direction. 12:33:37
**Q. And can you think of any other 12:33:40 directives that you issued? 12:33:43**
A. I just -- no, I don't -- 12:33:45
**Q. What policies did you supervise the 12:33:48 issuance of? 12:33:52**
A. I think the adoption of the policy 12:33:53 manual, I supervised that when it went into 12:34:04

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

place in 2006. 12:34:08
**Q. And what is that policy manual that 12:34:11 you are referring to? 12:34:13**
A. It's the policy manual for the 12:34:14 Village Police Department. 12:34:16
**Q. Who drafted it, authored it? 12:34:17**
A. It's a combination of a lot of 12:34:20 Police Departments. 12:34:23
**Q. And who compiled it? 12:34:23**
A. Paul Trosko had a lot to do with 12:34:25 compiling that before he left the employ of the 12:34:29 Police Department. 12:34:31
**Q. And did you oversee Paul Trosko's 12:34:32 compilation of the policy manual? 12:34:38**
A. Yes. 12:34:45
**Q. Did you give Paul Trosko any 12:34:46 instructions with respect to his compilation of 12:34:48 the policy manual? 12:34:51**
A. Yes. 12:34:52
**Q. What did you instruct Paul Trosko 12:34:52 with respect to that issue? 12:34:55**
A. "Do a good job." 12:34:56
**Q. And prior to the issuance of the 12:34:57 policy manual in 2006, what, if any, written 12:35:01**

**Loeffler**

**policies internal to Ocean Beach governed the 12:35:08 conduct or operation of the Ocean Beach Police 12:35:11 Department? 12:35:13**
A. I don't -- I'm unaware that there 12:35:13 was one. 12:35:15
**Q. Why did you direct the compilation 12:35:16 of the policy manual in 2006? Why did you 12:35:22 decide to do that at that time? 12:35:24**
A. Because it hadn't been done. 12:35:25
**Q. And what was the purpose in doing it 12:35:27 if it hadn't been done until that point? 12:35:30**
MR. NOVIKOFF: Objection to the form 12:35:32 of the question. 12:35:32
A. I felt the Police Department needed 12:35:33 a policy manual that could be referred to in 12:35:37 any police situation which needed to be 12:35:39 addressed by any police officer in the Village 12:35:42 of Ocean Beach and we would use it as a 12:35:44 reference to how to handle situations and what 12:35:47 the policies, goals and expectations of the 12:35:49 Police Department were. 12:35:51
**Q. And is that based on your experience 12:35:52 as a police officer? 12:35:55**
A. Absolutely. 12:35:56

Loeffler

**Q. Is it based on anything else? 12:35:56**
MR. NOVIKOFF: Other than his life 12:35:58 experience? 12:36:00
A. It's based on my life experience as 12:36:00 a police officer. 12:36:02
**Q. And after that policy manual was 12:36:03 issued in 2006, was it distributed to all the 12:36:05 officers at the Ocean Beach Police Department? 12:36:08**
A. Yes, it was. 12:36:09
**Q. And is it like a pocket guide or 12:36:10 something more weighty? 12:36:14**
A. It's approximately a thousand pages. 12:36:15
MR. NOVIKOFF: I don't think it's a 12:36:18 pocket guide. 12:36:19
**Q. Was any training provided to the 12:36:20 officers with respect to the policy manual? 12:36:21**
A. Yes. 12:36:23
**Q. What training? 12:36:24**
A. The training was that they all had 12:36:24 to read it and sign that they had read it. 12:36:26
**Q. All one thousand pages? 12:36:28**
A. Absolutely. 12:36:30
**Q. Was there any quiz or test to 12:36:30 determine whether they had effectively 12:36:32**

**Loeffler**

**assimilated the material after reading it? 12:36:34**
MR. NOVIKOFF: You mean did they put 12:36:36 them in a chair with chalk and they had to 12:36:37 write it out? 12:36:39
A. No, we just expected them to do 12:36:40 that. I read it. 12:36:43
**Q. Was the policy manual issued in 2006 12:36:54 subsequent to April 4th -- excuse me. Strike 12:37:01 that. 12:37:06**
**Were any of the plaintiffs employed 12:37:12 as police officers at any time when the policy 12:37:14 manual was in effect? 12:37:16**
A. No. 12:37:19
**Q. Did you ever discuss the substance 12:37:20 of the policy manual with any police officers 12:37:24 at Ocean Beach other than Paul Trosko? 12:37:27**
MR. NOVIKOFF: Prior to its issuance 12:37:30 or subsequent to its issuance? 12:37:31
MR. GRAFF: Subsequent to its 12:37:32 issuance. 12:37:33
A. George Hesse. 12:37:34
**Q. And do you recall in substance what 12:37:38 you discussed with George Hesse? 12:37:41**
A. In making up the policy manual I 12:37:42

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

wanted his input in it. 12:37:46

**Q. And did he provide any input? 12:37:47**

A. Yes, he did. 12:37:49

**Q. And what was the nature of his input? 12:37:50 12:37:51**

A. He made many comments about input. 12:37:52

**Q. Can you remember anything? 12:37:55**

A. No, I can't. 12:37:56

**Q. Are you familiar with an Ocean Beach employee handbook? 12:37:57 12:38:03**

A. Yes. 12:38:05

MR. GRAFF: I don't want to make this a memory game. I am actually going to mark the handbook so you can take a look. 12:38:08 12:38:09 12:38:12

If I could ask the court reporter to please mark as Exhibit Loeffler 6 a document with the title page Incorporated Village of Ocean Beach Employee Handbook produced by Ocean Beach Bates numbers 1 through 25. 12:38:26 12:38:28 12:38:31 12:38:34 12:38:36 12:38:38

(Loeffler Exhibit 6, The Incorporated Village of Ocean Beach Employee Handbook, Bates stamped 000001 through 000025, marked for identification.) 12:38:42 12:38:42 12:38:42 12:38:42

Loeffler

MR. GRAFF: I will note that Mr. Novikoff is comparing the 25 pages. 12:39:01 12:39:19

MR. NOVIKOFF: Hey, it's your exhibit. Are you suggesting for a moment that as competent counsel I shouldn't make sure that what you are handing the witness isn't what you are handing me? 12:39:22 12:39:24 12:39:26 12:39:27 12:39:29

MR. GRAFF: Certainly not, but, as you know, this deposition is being videotaped. You are not on camera. I wanted to explain the delay for the record. 12:39:30 12:39:30 12:39:31 12:39:33

MR. NOVIKOFF: I don't see why you needed to. Did I explain the delay when you were trying to get your exhibits together prior to reconvening for the second session of this deposition, counsel? I don't think so. 12:39:35 12:39:37 12:39:38 12:39:40 12:39:42 12:39:44

Here you go, Mayor (handing). 12:39:46

**Q. Mayor Loeffler, do you recognize this document as the Ocean Beach employee handbook? 12:39:51 12:39:53 12:39:54**

A. I haven't had a chance to review it yet. 12:39:55 12:39:56

**Q. Please take as much time as you need 12:39:57**

**Loeffler**

**to answer that question. 12:39:59**

**(Document review.) 12:40:00**

MR. GRAFF: While Mr. Loeffler is reviewing the document, could I ask the videographer how much time we have on the tape? 12:41:31 12:41:32 12:41:32 12:41:34

THE VIDEOGRAPHER: We have 22 minutes. 12:41:34 12:41:37

(Document review.) 12:42:39

**Q. Do you recognize this document as the Ocean Beach Employee Handbook? 12:43:02 12:43:06**

A. At the time -- at this time, yes. 12:43:08

**Q. And you are referring to the page marked -- 12:43:11 12:43:13**

A. No, I am referring to the date, in 2005 it was. 12:43:13 12:43:16

**Q. As marked on page 1 of the document? It's stamped upside-down number 1. 12:43:17 12:43:21**

A. On page 1, yes. 12:43:23

MR. NOVIKOFF: Cover page. 12:43:25

A. Cover page. 12:43:30

**Q. If I could go back to something we had been talking about earlier, at the time that you purchased a piece of real estate from 12:43:30 12:43:32 12:43:34**

**Loeffler**

**Ocean Beach, who specifically at Ocean Beach did you deal with in connection with that transaction? 12:43:35 12:43:37 12:43:39**

A. Bee Ready Fishbein are the attorneys for the Village. Every resident in the Village was given an opportunity to buy that piece of property. I wasn't the only one who bought it. 600 other people did too. 12:43:40 12:43:45 12:43:47 12:43:49 12:43:52

**Q. Bought the same property? 12:43:54**

A. Yeah. 12:43:55

**Q. Can you explain how that worked. 12:43:56**

A. Yes. The piece of properties were declared excess by the Village. Some pieces of property were right of way, some pieces of property were easements. They were in the front of the houses and behind the houses. They were 4-by-50 sections of property that the Village decided that were not of use to them and they sold them to each individual homeowner. As a homeowner I was entitled to buy that piece of property and I did, as did approximately 400 other people in the Village. 12:43:58 12:44:01 12:44:04 12:44:06 12:44:08 12:44:10 12:44:12 12:44:15 12:44:16 12:44:18 12:44:21

**Q. Other than counsel for the Village, who at Ocean Beach was responsible for 12:44:24 12:44:26**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**administering or overseeing that purchase that you have been describing?** 12:44:28 12:44:30

A. Counsel did it, pretty much. They set up the deeds, the transfer documents, insured the title reports. 12:44:31 12:44:33 12:44:37

**Q. And who proposed this real estate purchase system?** 12:44:39 12:44:43

A. I believe the -- it was before I was on the Village board, so sometime before '02. 12:44:44 12:44:49

**Q. Do you know whether there was any particular trustee who was overseeing this?** 12:44:53 12:44:55

A. No, I don't. 12:44:57

**Q. If I could ask you to please turn to what's stamped as page 4 of the handbook.** 12:44:59 12:45:02

MR. NOVIKOFF: Okay. Is there anything you would like the witness to do with this? 12:45:08 12:45:09 12:45:10

**Q. Do you recognize this particular page?** 12:45:11 12:45:13

MR. NOVIKOFF: Okay (handing). 12:45:13

A. I recognize it as page 4 of the handbook. 12:45:16 12:45:24

**Q. And it's headed acknowledgment --** 12:45:25

A. Is it page 4? Bates statement -- 12:45:29

Loeffler

stamp 4. 12:45:31

MR. NOVIKOFF: Just let the record reflect, counselor -- 12:45:33 12:45:34

A. It's an acknowledgment page. 12:45:35

MR. NOVIKOFF: -- that you got a table of contents that's page 2, page 3, and then page 4, which is Bates stamped does not have a number on it. 12:45:37 12:45:39 12:45:42 12:45:46

**Q. Right. I am referring to the Bates stamp.** 12:45:47 12:45:49

MR. NOVIKOFF: Okay. 12:45:50

**Q. To your knowledge, do employees at Ocean Beach -- strike that.** 12:45:50 12:45:51

**During the period that you served as a trustee at Ocean Beach, did employees at Ocean Beach, to your knowledge, sign and return this page of the handbook?** 12:45:53 12:45:54 12:45:57 12:45:59

A. I don't know. 12:46:00

**Q. Is this handbook -- strike that.** 12:46:01

**When the policy manual was issued in 2006, did this handbook continue to apply to the employment of Ocean Beach employees in the Police Department?** 12:46:10 12:46:12 12:46:15 12:46:20

MR. NOVIKOFF: Objection to the form 12:46:20

Loeffler

of the question. 12:46:21

A. It was a supplement to the policy manual. 12:46:23 12:46:27

**Q. Thank you. If I could ask you to please turn to what's stamped as page 10 of the handbook.** 12:46:30 12:46:31 12:46:35

MR. NOVIKOFF: Bates stamp 10? 12:46:36

**Q. Numbered page 6, Bates stamp 10.** 12:46:37

MR. NOVIKOFF: You got it. Okay. (Handing). Any particular part of page 10? 12:46:40 12:46:42

**Q. If I could direct your attention to the last subheading on the page, Employment of Relatives, my question is are you familiar with the policy that's set forth in that paragraph?** 12:46:45 12:46:47 12:46:49 12:46:51

A. Yes, I am. 12:46:53

MR. NOVIKOFF: Make sure. 12:46:53

A. I am. 12:46:53

MR. NOVIKOFF: Okay. 12:46:55

**Q. And at any point during your service as trustee or mayor, did the employment of any of your family members at Ocean Beach conflict or violate this policy?** 12:46:55 12:47:04 12:47:06 12:47:09

A. No. 12:47:10

MR. NOVIKOFF: In this witness' 12:47:10

Loeffler

opinion? 12:47:12

MR. GRAFF: Sure. 12:47:12

A. In my opinion, no. 12:47:13

MR. NOVIKOFF: Is there an issue in this lawsuit with regard to Mr. Loeffler's family members being -- working for the Village? 12:47:16 12:47:17 12:47:20 12:47:24

MR. GRAFF: Mr. Novikoff, in this deposition I ask the questions. 12:47:24 12:47:26

MR. NOVIKOFF: No, no, I understand and I am giving -- it's not my place to give you any latitude or give you broad latitude. I am just saying that it seems like that question went to an issue that is so far removed from this case. I am not going to tell him not to answer it. 12:47:27 12:47:28 12:47:30 12:47:32 12:47:35 12:47:37 12:47:39

MR. GRAFF: Well, he has answered it and I have another question. 12:47:40 12:47:42

MR. NOVIKOFF: Okay. 12:47:43

**Q. This is on what's Bates stamped 11, page number 7 of the handbook. The second to last subheading is captioned Substance Abuse.** 12:47:43 12:47:45 12:47:50

**Mayor Loeffler, are you familiar with the policy set forth underneath that** 12:47:54 12:47:55

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**caption? 12:47:58**

A. As it's read -- as I read it, yes. 12:47:59

**Q. Now, I am looking for clarification specifically on the last sentence of the paragraph there: "Any employee who repeatedly reports to work under the influence of alcohol or drugs may have his or her employment terminated immediately." 12:48:08 12:48:11 12:48:13 12:48:15 12:48:17 12:48:20**

**Do you understand what "repeatedly" means in this context? 12:48:22 12:48:24**

A. More than once. 12:48:25

MR. NOVIKOFF: Are you going to ask him what his understanding of the word "may" means in this context? Are you going to ask him if he is aware if any police officer violated this policy? 12:48:29 12:48:31 12:48:32 12:48:38 12:48:41

**Q. To your knowledge, has any employee of Ocean Beach employed in the Ocean Beach Police Department ever been terminated for violation of this policy? 12:48:42 12:48:45 12:48:48 12:48:50**

MR. NOVIKOFF: Objection to the form. You haven't established that any employee of the Village's behavior ever came within this policy. 12:48:51 12:48:52 12:48:54 12:48:57



Loeffler

You can answer. 12:48:58

A. I am not aware that anyone was. 12:49:02

**Q. Are you aware of any employee at Ocean Beach generally who has ever been terminated for violating this policy? 12:49:05 12:49:07 12:49:09**

MR. NOVIKOFF: Same objection. 12:49:11

A. I am unaware of anyone. 12:49:12

**Q. If I could ask you to turn to the very last page of the document Bates stamped 25, no page number. 12:49:14 12:49:21 12:49:25**

MR. NOVIKOFF: Okay. Table of Organization? 12:49:27 12:49:28

MR. GRAFF: Yes. 12:49:28

MR. NOVIKOFF: Got it. And is there a question? 12:49:29 12:49:31

**Q. I am asking -- I have some questions to clarify the Table of Organization. 12:49:32 12:49:34**

MR. NOVIKOFF: So ask him. 12:49:37

**Q. The mayor and the Board of Trustees I understand. Superintendent of Public Works and Village Administrator, is that one position or two positions? 12:49:38 12:49:40 12:49:42 12:49:44**

A. Two positions. 12:49:45

**Q. And during your employment as or 12:49:47**



Loeffler

**service as a trustee, who was the Superintendent of Public Works? 12:49:51 12:49:52**

A. Kevin Schielling. 12:49:54

**Q. And was he -- did he hold that position continuously during your service as a trustee? 12:49:56 12:49:59 12:50:02**

A. Yes. 12:50:02

**Q. Does he still hold that position? 12:50:02**

A. Yes, he does. 12:50:04

**Q. And who was the Village administrator when you first became a trustee? 12:50:05 12:50:07**

A. Ethan -- what's Ethan's last name? There was someone that was the Village administrator. 12:50:09 12:50:15 12:50:18

**Q. And was Ms. Minerva the next Village administrator after Ethan? 12:50:19 12:50:21**

A. Yes. 12:50:23

**Q. And the position that your mother held, the court clerk, is that reflected anywhere on this Table of Organization? 12:50:23 12:50:28 12:50:31**

A. No. 12:50:33

**Q. Did your mother hold any other positions other than clerk of the court? 12:50:43 12:50:45**

A. No. 12:50:46



Loeffler

**Q. The department heads that are identified here, water, sewer maintenance, beaches, recreation and fire and police departments, do each of those departments have a department head? 12:50:51 12:50:53 12:50:56 12:50:59 12:51:00**

A. Yes. 12:51:01

**Q. During your -- strike that. 12:51:02**

MR. GRAFF: That's all I have for the handbook. Counsel, would this be a good time for you to break for lunch? 12:51:19 12:51:20 12:51:22

MR. NOVIKOFF: No, actually, I would prefer to go on for another 45 minutes and then maybe break for lunch then. I don't think my witness is tired at all and I'm certainly not tired. 12:51:24 12:51:25 12:51:27 12:51:28 12:51:31

MR. GRAFF: Okay. Why don't we at least finish up this tape then. 12:51:32 12:51:33

**Q. Mayor Loeffler, who lives with you at your residence in Ocean Beach? 12:51:46 12:51:48**

A. My wife. 12:51:49

**Q. Do any of your children live with you? 12:51:51 12:51:53**

A. My daughter Jillian. 12:51:53

**Q. And other than Jillian, have any of 12:51:56**





9e28f7aa-4e93-4641-9524-8529961356c8

Page 173

Loeffler

**your other -- did any of your other children live with you at any point during your service as trustee or mayor? 12:51:57 12:51:59 12:52:01**

A. Yes. 12:52:02

**Q. Which children? 12:52:03**

A. All of them. 12:52:04

MR. NOVIKOFF: Are you just trying to fill up the time until the tape is over? 12:52:06 12:52:07

MR. GRAFF: No. 12:52:10

MR. NOVIKOFF: Okay. 12:52:12

**Q. During what period of time did Mike Loeffler live with you? 12:52:12 12:52:14**

A. On and off, most of his life. 12:52:16

MR. GRAFF: I will ask the court reporter to please mark as Exhibit Loeffler 7 a one-page document produced by Ocean Beach bearing Bates number 3780. 12:52:32 12:52:32 12:52:34 12:52:36 12:52:38

(Loeffler Exhibit 7, handwritten document, Bates stamped 003780, marked for identification.) 12:52:41 12:52:41 12:53:01

MR. NOVIKOFF: Is there a question? 12:53:01

MR. GRAFF: Yes. 12:53:03

**Q. When you have a chance to look at 12:53:03**

Page 174

Loeffler

**the document, can you identify it, please, Mayor Loeffler. 12:53:05 12:53:08**

**(Document review.) 12:53:15**

**Q. Can you identify the document? 12:53:42**

A. It's a change of duty assignment that I penned on March 27th, 2007. 12:53:43 12:53:46

**Q. And was this document that you penned originally only one page? 12:53:50 12:53:54**

A. Yes. 12:53:56

**Q. Why did you pen this document at this time, at that time, March 27th, '07? 12:54:00 12:54:05**

MR. NOVIKOFF: Other than what's already set forth in this document? 12:54:06 12:54:08

MR. GRAFF: Yes. 12:54:09

MR. NOVIKOFF: Okay. 12:54:10

**Q. What prompted you to pen this document? 12:54:10 12:54:12**

A. Advice of counsel. 12:54:12

**Q. And there is five numbered items towards the bottom of the document. Are those items that you drafted on the advice of counsel? 12:54:14 12:54:18 12:54:19 12:54:23**

A. Yes. 12:54:23

**Q. Did counsel speak to you on the 12:54:24**

Page 175

Loeffler

**phone as you were drafting it? 12:54:27**

MR. NOVIKOFF: Objection. Yeah, no, no, that's -- no. 12:54:28 12:54:33

**Q. Number 5 -- 12:54:38**

MR. GRAFF: You are going to instruct the witness not to answer? 12:54:40 12:54:40

MR. NOVIKOFF: On that one, yes. 12:54:41

MR. GRAFF: Okay. 12:54:42

**Q. Number 5: "The uniform of the day will be proper casual attire." What is proper casual attire, as stated in this document that you drafted? 12:54:42 12:54:43 12:54:46 12:54:48**

A. Non-uniform. 12:54:49

**Q. And number 3 says: "Turn in any key in your possession to any Police Department vehicles and facilities." To your knowledge, did -- 12:54:50 12:55:03 12:55:05 12:55:07**

MR. NOVIKOFF: Number 3, okay. 12:55:08

**Q. Did George Hesse ever turn in keys as stated in this paragraph, in this number? 12:55:09 12:55:12**

A. Yes, he did. 12:55:14

**Q. And what keys did he have that he turned in at that time? 12:55:15 12:55:18**

MR. NOVIKOFF: You mean whether they 12:55:20

Page 176

Loeffler

were metal or carbon or -- 12:55:22

MR. GRAFF: What were they keys to? 12:55:24

MR. NOVIKOFF: Oh, okay. 12:55:25

A. I believe he had copies of all the keys for the Police Department and the vehicles. 12:55:25 12:55:27 12:55:29

**Q. And was -- I take it the handwritten version is not what was presented to George Hesse? 12:55:29 12:55:36 12:55:38**

MR. NOVIKOFF: Why do you take that? Why don't you just ask him the question. 12:55:38 12:55:40

**Q. Was this handwritten version ever presented to George Hesse? 12:55:41 12:55:43**

A. I believe it was. I believe it may have been typed as well. 12:55:46 12:55:49

**Q. I, again, don't want to make this a memory game. I am going to ask -- 12:55:50 12:55:52**

A. Then what are you playing around here for? 12:55:54 12:55:56

MR. NOVIKOFF: I mean, if you have the written memo, then show him the written memo. 12:55:56 12:55:57 12:55:59

MR. GRAFF: Counsel, they could have both been given to George Hesse. 12:56:00 12:56:01

Loeffler

MR. NOVIKOFF: Then you should ask that question instead of saying "I take it." 12:56:03 12:56:04 12:56:06

MR. GRAFF: I'd like to ask the court reporter to please mark as Exhibit Loeffler 8 a one-page document bearing Bates number 3778 produced by Ocean Beach. 12:56:08 12:56:10 12:56:11 12:56:13 12:56:16

(Loeffler Exhibit 8, memo dated March 26, 2007, Bates stamped 003778, marked for identification.) 12:56:18 12:56:18 12:56:39

**Q. Mayor Loeffler, when you have had a chance to review the document marked Loeffler 8, can you tell me if you can identify the document. 12:56:39 12:56:41 12:56:44 12:56:47**

MR. NOVIKOFF: He is just giving you that document. If he wants you to compare it, he will. 12:56:47 12:56:57 12:56:59

(Document review.) 12:57:21

A. I have read it. 12:57:21

**Q. Can you identify the document, please? 12:57:22 12:57:24**

A. It's a document that's dated March 26, 2007 from myself to George Hesse signed by 12:57:24 12:57:27

Loeffler

me and it's signed by George Hesse, 3-28-07. 12:57:31

**Q. And who typed the document? 12:57:35**

A. I don't see the person's initials that typed it, but I didn't type it. One of the clerical person in the office typed it. 12:57:37 12:57:43 12:57:45

**Q. If I could ask you to compare Loeffler 7 to Loeffler 8 for a moment, Loeffler 7 ends at the bottom with bullet number 5. Loeffler 8 continues through bullet 8. Did you ever handwrite bullets 6 through 8 that appear on Loeffler 8? 12:57:47 12:57:50 12:57:52 12:57:56 12:58:00 12:58:04**

A. I don't know. I don't recall. 12:58:05

**Q. Do you know who was responsible for introducing numbers 6 through 8 into Loeffler 8? 12:58:07 12:58:10 12:58:12**

A. I was. 12:58:13

**Q. You were? 12:58:13**

A. Sure. 12:58:14

**Q. Was that also at the advice of counsel? 12:58:14 12:58:16**

A. Absolutely. 12:58:16

THE VIDEOGRAPHER: Counselors, now it's five minutes to the end. 12:58:20 12:58:21

**Q. Number 6 on the typewritten version: 12:58:24**

**Loeffler**

**"You shall refrain from any activities which may cause you to interact with members of the general public pertaining to police functions or duties." 12:58:27 12:58:30 12:58:32 12:58:34**

**Can you explain what you meant by "pertaining to police functions or duties"? 12:58:34 12:58:40**

A. Taking police action. 12:58:42

**Q. Number 8 states: "No verbal or written communication shall be made with reference to the police function of the department or any other information pertaining to the operation or policies of the Village of Ocean Beach without first obtaining board approval." 12:58:55 12:58:58 12:58:59 12:59:00 12:59:02 12:59:05 12:59:07**

**To your knowledge, has George Hesse ever obtained board approval to undertake verbal or written communications as set forth in this paragraph? 12:59:08 12:59:10 12:59:13 12:59:15**

MR. NOVIKOFF: Objection. Foundation. You didn't establish that George Hesse ever made the request to the board for the board to give approval. Objection. 12:59:16 12:59:17 12:59:19 12:59:21 12:59:25

A. I don't believe he ever applied for 12:59:26

Loeffler

permission. 12:59:30

**Q. To your knowledge, has George Hesse adhered to all the terms of this modified duty statement 1 through 8? 12:59:31 12:59:33 12:59:37**

A. Yes. 12:59:38

**Q. Are the terms of this statement still in effect? 12:59:39 12:59:40**

A. Yes. 12:59:41

**Q. In your handwritten version, Loeffler 7, the memo is addressed to Deputy Police Chief George Hesse. The typewritten version, Loeffler 8, is addressed to George Hesse. 12:59:43 12:59:44 12:59:47 12:59:49 12:59:52**

**Do you know why the typewritten version is not identical to your handwritten version in that respect? 12:59:53 12:59:54 12:59:56**

MR. NOVIKOFF: If it's on advice of counsel, just say "advice of counsel." 12:59:57 12:59:59

A. It's on advice of counsel. 13:00:01

**Q. Did you have any discussions with Mary Anne Minerva concerning Loeffler 7 or Loeffler 8? 13:00:04 13:00:06 13:00:09**

MR. NOVIKOFF: Any issue pertaining to it or the actual formation of it? 13:00:10 13:00:11

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler
MR. GRAFF: The documents. Either 13:00:14
of these specific texts. 13:00:15
MR. NOVIKOFF: So is the question to 13:00:18
the mayor did he ever have a communication 13:00:19
with Mary Anne Minerva concerning the 13:00:21
drafting of this document as opposed to the 13:00:23
issues that may have been presented in this 13:00:27
document. 13:00:29
MR. GRAFF: If that would help the 13:00:29
witness, yes, concerning the drafting of 13:00:31
either of these two documents. 13:00:33
A. I drafted the document. 13:00:34
**Q. Did you have any communications with 13:00:35**
**Mary Anne Minerva in the course of drafting the 13:00:37**
**document? 13:00:39**
A. I did not. 13:00:39
**Q. How did you communicate bullets 6 13:00:41**
**through 8 to whoever it is who typed the 13:00:43**
**document? 13:00:46**
A. I don't recall. 13:00:46
**Q. On Loeffler 8 right underneath the 13:01:13**
**date it states: "As of 0000 hour March 27, 13:01:15**
**2007 until further notice your assignment will 13:01:22**
**be changed from active to modified duty." 13:01:24**

**Loeffler**
MR. NOVIKOFF: Yes. 13:01:31
**Q. What, if anything, would prompt you 13:01:38**
**to provide further notice with respect to this 13:01:40**
**item to George Hesse? 13:01:42**
MR. NOVIKOFF: Objection. Form. 13:01:44
A. Ask -- would you repeat the question 13:01:49
for me. I'm not quite grasping it. 13:01:54
**Q. Why would you give further notice to 13:01:56**
**George Hesse that would alter his modified duty 13:01:58**
**statement? 13:02:02**
A. No, it says "and until further 13:02:02
notice." 13:02:04
**Q. Right. Were you contemplating any 13:02:04**
**circumstances that would lead you to provide 13:02:06**
**further notice in the future? 13:02:08**
MR. NOVIKOFF: It's a yes-or-no 13:02:10
question. 13:02:11
A. No. 13:02:12
THE VIDEOGRAPHER: Counselors, we 13:02:16
are at the end of the tape. 13:02:17
MR. GRAFF: Okay, so let's go off 13:02:18
the record, please. 13:02:20
THE VIDEOGRAPHER: We are now going 13:02:21
off the record. The time is 1:02 p.m. 13:02:22

Loeffler
(Recess was taken from 1:02 to 13:02:25
1:13.) 13:02:25
THE VIDEOGRAPHER: We are back on 13:11:26
the record. The time is 1:13 p.m. This is 13:12:57
the beginning of the tape labeled number 3. 13:13:00
BY MR. GRAFF: 13:13:03
**Q. Mayor Loeffler, if I could ask you 13:13:04**
**to please turn your attention back to 13:13:05**
**Exhibit Loeffler 8, the very last paragraph, 13:13:08**
**"please sign the original of this 13:13:11**
**correspondence and return it to the Village 13:13:12**
**office within 48 hours after receipt." 13:13:14**
**Would you mind reading the very next 13:13:19**
**sentence. I'm not sure if I can see all the 13:13:22**
**words. 13:13:24**
A. "You accept" -- "your acceptance of 13:13:24
these conditions of modified stature are 13:13:26
required to maintain your employment. All 13:13:29
conditions are subject to change and review by 13:13:30
the Village, by the board of Trustees, and are 13:13:32
not to be viewed as an employment contract." 13:13:35
**Q. Okay. 13:13:37**
**And have the conditions set forth in 13:13:41**
**this document been changed by the Board of 13:13:43**

**Loeffler**
**Trustees since March 26, 2007? 13:13:46**
A. No. 13:13:48
**Q. And when it states that "your 13:13:49**
**acceptance of these conditions of modified 13:13:52**
**stature are required to maintain your 13:13:54**
**employment," does that mean to Mr. Hesse's 13:13:57**
**employment would end if he were to violate any 13:13:59**
**of these terms? 13:14:02**
MR. NOVIKOFF: Objection. Calls for 13:14:03
speculation. Calls for possibly a legal 13:14:04
conclusion. 13:14:07
If you can answer it, you can answer 13:14:07
it. 13:14:09
A. If -- I don't understand exactly. 13:14:10
What are you asking me? 13:14:15
**Q. What would the consequences be, if 13:14:16**
**any, if George Hesse were to violate the terms 13:14:19**
**of this document? 13:14:19**
MR. NOVIKOFF: Note my objection. 13:14:20
For example, are you asking if George Hesse 13:14:21
came one day with his police shirt on 13:14:23
instead of proper casual attire, what would 13:14:25
be the consequences? 13:14:28
**Q. Let's ask about that specifically, 13:14:29**

Loeffler

**sure. 13:14:31**

**What if George Hesse failed to 13:14:32**
**comply with the uniform of the day proper 13:14:34**
**casual attire, what, if any, commences would 13:14:36**
**there be? 13:14:38**

MR. NOVIKOFF: Note my objection. 13:14:39
Calls for speculation. 13:14:40
You can answer. 13:14:41

A. I'd send him home to change. 13:14:42

**Q. And what about number 6, what, if 13:14:46**
**any, consequences would there be if George 13:14:50**
**Hesse were to interact with members of the 13:14:52**
**general public pertaining to police functions 13:14:54**
**or duties? 13:14:57**

MR. NOVIKOFF: Note my objection. 13:14:57

A. I would remind him to refrain from 13:14:58
that, since he has agreed to it. 13:15:00

**Q. What about number 8? 13:15:02**

MR. NOVIKOFF: Calls for 13:15:05
speculation. 13:15:06

**Q. Okay. "No verbal or written 13:15:07**
**communication shall be made with reference to 13:15:09**
**police function of the department or any other 13:15:11**
**information pertaining to the operations or 13:15:12**

Loeffler

**policies of the Village of Ocean Beach." 13:15:14**

MR. NOVIKOFF: Calls for 13:15:16
speculation. 13:15:17

**Q. What, if any, consequences would 13:15:17**
**there be if George Hesse were to violate that? 13:15:19**

MR. NOVIKOFF: Note my objection. 13:15:21
Calls for speculation. Calls for a legal 13:15:22
conclusion. 13:15:24

A. Until that happens I would have a 13:15:25
hard time telling you what would happen. 13:15:27

**Q. And as far as you know, George Hesse 13:15:28**
**has not violated any of these conditions 1 13:15:30**
**through 8? 13:15:32**

MR. NOVIKOFF: Asked and answered. 13:15:33
You can answer again. 13:15:33

A. That's correct. 13:15:35

MR. GRAFF: I am going to ask the 13:15:53
court reporter to mark as 13:15:54
Exhibit Loeffler 9 a one-page document 13:15:55
produced by Ocean Beach bearing Bates 13:15:57
number 5875. 13:15:59

(Loeffler Exhibit 9, Ratification 13:16:06
and Approval of Personnel, Bates stamped 13:16:06
005875, marked for identification.) 13:16:20

Loeffler

**Q. Mayor Loeffler, when Mr. Novikoff 13:16:20**
**finishes examining and you have had a chance to 13:16:23**
**review the document, could you tell me, please, 13:16:25**
**if you can identify it. 13:16:27**

MR. NOVIKOFF: Note for the record 13:16:28
that this is apparently a page 5 of a 13:16:29
document. 13:16:32
You can answer the question as posed 13:16:34
now. 13:16:36

MR. GRAFF: Before you get to that 13:16:40
question, I'd like to, just for clarity 13:16:41
sake, call for the production of any pages 13:16:44
of any of the meeting minutes that were 13:16:46
produced to us as single pages or without 13:16:48
all pages. 13:16:52

MR. NOVIKOFF: I am not about to go 13:16:53
through our entire production to ascertain 13:16:54
what is complete or not complete. You tell 13:16:57
me what you want and I will take it under 13:16:59
advisement. 13:17:01

RQ MR. GRAFF: Sure. I want all the 13:17:02
pages of the document that's been marked as 13:17:04
Loeffler 9, all the pages of the document 13:17:06
that's been marked as Loeffler 3. 13:17:09

Loeffler

MR. NOVIKOFF: Take it under 13:17:11
advisement. 13:17:12

(Document review.) 13:17:48

A. Yes. 13:17:48

**Q. Can you identify this document, 13:17:49**
**please? 13:17:50**

A. It purports to be page 5 of the 13:17:50
typed minutes of a Village board meeting. 13:17:55

**Q. Have you seen this document before? 13:17:57**

MR. NOVIKOFF: This one particular 13:17:58
page? 13:18:00

MR. GRAFF: Yes. 13:18:00

MR. NOVIKOFF: If you can answer it, 13:18:01
answer it. 13:18:03

A. I'm sure I have. 13:18:04

**Q. And when you saw it, did it have the 13:18:05**
**handwritten notations in the left-hand margin? 13:18:09**

A. I don't believe it did. 13:18:11

**Q. Can you identify the handwriting? 13:18:15**

A. No, I can't. 13:18:18

**Q. Can you make out any of the words 13:18:20**
**that are in the margin there? 13:18:23**

A. It says "Kara Arta" and then it says 13:18:25
"Arta." They are both employees of the Village 13:18:28

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

of Ocean Beach. 13:18:31

**Q. Are those two different people? 13:18:31**

A. Yes. 13:18:33

**Q. Kara and Arta? 13:18:33**

A. Yes. 13:18:34

**Q. Who is Kara? 13:18:35**

A. Kara is a clerk in the office. 13:18:35

**Q. And what is Kara's full name? 13:18:39**

A. Kara McKenna. 13:18:41

**Q. And what is Arta's full name? 13:18:46**

A. Wejien. It's W-E-J --I can get the 13:18:48 correct spelling for you. W-E-J-E-N-I-N or 13:18:56 something, I guess. 13:19:00

**Q. And what is Arta's position, Arta 13:19:01 Wejien? 13:19:04**

A. She is the deputy treasurer. Deputy 13:19:05 treasurer. Accounts payable clerk too. 13:19:10

**Q. At the very top of this page of the 13:19:24 document: "Ratification approval of personnel, 13:19:26 Trustee Mallott moved as follows, whereas 13:19:29 Mary Anne Minerva, Village administrator, has 13:19:31 provided a report to the Board of Trustees 13:19:33 detailing and listing new hires, has requested 13:19:36 ratification and approval by the Board of 13:19:39**

**Loeffler**

**Trustees for said new hires." 13:19:41**

**Mayor Loeffler, do you know what the 13:19:43 report provided by Mary Anne Minerva as 13:19:45 referenced in this document is? 13:19:47**

A. No, I don't. 13:19:49

**Q. Do you recall Mary Anne Minerva 13:19:55 delivering any kind of report with respect to 13:19:57 this matter? 13:20:00**

A. I don't recall, no. 13:20:01

**Q. The new hires that are identified 13:20:02 here, Trosko, Paul OBPD, F/T; underneath that, 13:20:08 Foti, Francis OBPD, F/T, are those the 13:20:13 full-time officers that were hired that were 13:20:18 discussed -- the hiring of which was discussed 13:20:20 at your first meeting with Mr. Schneider? 13:20:22**

A. No. Let me correct myself. It -- 13:20:25 I'm not sure if they -- these gentlemen were 13:20:43 part-time employees who became full-time 13:20:48 employees. 13:20:50

**Q. And did they become full-time 13:20:51 employees at or around the date of the 13:20:53 document, January 27th, '07? 13:20:57**

A. Yes, they did. 13:20:58

**Q. And do you know why they were made 13:20:59**

**Loeffler**

**full-time employees at that time? 13:21:03**

A. Because of the direction that I 13:21:05 wanted the Police Department to go, to hire 13:21:13 full-time employees instead of using part-time 13:21:15 and seasonal employees. 13:21:17

**Q. And did your meeting with 13:21:18 Mr. Schneider take place before or after 13:21:20 January 27th, 2007, the date of this document? 13:21:21**

A. Before. 13:21:26

**Q. So was the hiring of these two 13:21:28 individuals as full-time officers in compliance 13:21:31 with whatever requirements were communicated to 13:21:34 you by Mr. Schneider? 13:21:36**

A. Yes, they were. 13:21:37

**Q. And as of the date of this document, 13:21:39 did you know who Paul Trosko was? 13:21:41**

A. Yes. 13:21:44

**Q. In what context did you first meet 13:21:45 Paul Trosko? 13:21:49**

A. He was a part-time police officer in 13:21:50 the Village of Ocean Beach. 13:21:52

**Q. And you met him during his 13:21:53 employment as a police officer? 13:21:55**

A. Yes. 13:21:56

Loeffler

**Q. What about Francis Foti? 13:21:56**

A. The same. 13:21:58

**Q. You also met him -- 13:22:01**

A. As a part-time police officer. 13:22:04

**Q. Underneath that section, the very 13:22:05 next section is adoption of Police Department 13:22:08 rules and procedures. It says: "Mayor 13:22:09 Loeffler moved as follows. Whereas the Village 13:22:11 of Ocean Beach has determined that it is in the 13:22:14 best interests of the Village to have a written 13:22:16 set of rules and procedures for the Ocean Beach 13:22:17 Police Department and whereas the Village has 13:22:19 undertaken to prepare a set of rules and 13:22:21 procedures, now, therefor it is hereby resolved 13:22:23 that the Village hereby adopts these submitted 13:22:26 Ocean Beach department rules and procedures." 13:22:28**

**Mayor Loeffler, do you know what the 13:22:31 rules and procedures referenced in this section 13:22:32 are? 13:22:34**

A. Yes, the Ocean Beach Police 13:22:35 Department rules and procedures. 13:22:37

**Q. And is that the police manual that 13:22:38 was issued in 2006? 13:22:40**

A. Yes. Well, it was -- a draft was 13:22:40

Loeffler

issued in 2006. It was finalized as of this date. 13:22:45 13:22:48

**Q. And at what point in relation to January 27, 2007 was it distributed to the Ocean Beach Police Department officers? 13:22:48 13:22:50 13:22:53**

A. Upon its authorized issuance. 13:22:55

**Q. Was there any discussion among the Board of Trustees upon your making of this motion? 13:22:58 13:23:07 13:23:10**

MR. NOVIKOFF: Objection to the form. 13:23:11 13:23:12

A. There was discussion with the trustees that was carried out in the executive session with the advice of counsel, yes, with reference to this policy manual. 13:23:15 13:23:18 13:23:20 13:23:24

**Q. Other than in conversations that took place in the presence of counsel for the purpose of obtaining legal advice, did you have any conversations with any members of the Board of Trustees concerning the adoption of the Police Department manual? 13:23:27 13:23:29 13:23:31 13:23:33 13:23:36 13:23:40**

A. Yes. 13:23:40

**Q. And which members of the Board of Trustees did you discuss that with? 13:23:41 13:23:43**

**Loeffler**

A. All of them. 13:23:44

**Q. Individually? 13:23:44**

A. Together. At the board meeting. 13:23:45

**Q. And was that in executive session or general session? 13:23:49 13:23:51**

A. No, we discussed this in public. 13:23:52

**Q. And what was discussed in public? 13:23:53**

A. I expressed my -- the need that I felt that the Police Department needed to have a written policy manual in place and that this had taken a year to develop it and it was now in the final stages, it had been reviewed, it had been put into draft form, it had been rereviewed, it had been updated, and it was in a final document presentation form and at this time I presented it to the board to be finalized. 13:23:55 13:23:58 13:24:01 13:24:04 13:24:07 13:24:10 13:24:12 13:24:15 13:24:18 13:24:20

**Q. Does the substance of the Police Department -- if I say "manual," do we know what -- 13:24:21 13:24:34 13:24:36**

A. We know it was filed. 13:24:37

**Q. Okay. Does the substance of the Police Department manual relate in any way to any requirements of the Civil Service 13:24:38 13:24:39 13:24:42**

**Loeffler**

**Department with respect to the Ocean Beach Police Department? 13:24:45 13:24:46**

A. No, it does not. 13:24:46

**Q. Is the manual -- when it was distributed to Ocean Beach police officers, was it bound? 13:24:47 13:24:52 13:24:54**

A. Yes. 13:24:55

**Q. So was it sent to a printer and published in a bound book-like form? 13:24:55 13:25:00**

MR. NOVIKOFF: Objection to the form of the question. 13:25:03 13:25:05

A. It's in a ring binder form. 13:25:05

**Q. Binder. 13:25:05**

RQ MR. GRAFF: I'd also like to call for the production of the complete manual. 13:25:07 13:25:09

MR. NOVIKOFF: Take it under advisement. 13:25:11 13:25:11

**Q. Did you review any of the specific policies set forth in the police manual with any of the members of the Village board of Trustees? 13:25:16 13:25:19 13:25:22 13:25:26**

A. No. 13:25:26

**Q. Other than yourself, were any members of the Board of Trustees -- did any 13:25:29 13:25:32**

**Loeffler**

**members of the Board of Trustees contribute to the drafting or f authorship of the police manual? 13:25:36 13:25:38 13:25:41**

MR. NOVIKOFF: Objection to form. 13:25:41

A. I believe members of the board expressed concern and jubilance in the fact that we were taking a huge step into bringing the Police Department to a level that allowed for some accountability in the actions of police officers and that -- do you want me to finish or do you want to interrupt me? 13:25:42 13:25:50 13:25:54 13:25:58 13:26:00 13:26:04 13:26:07

**Q. Please. 13:26:08**

A. And I believe they reviewed the policy manual prior to its adoption and were grateful for my efforts and the efforts of the Police Department and the officers for producing such a document. 13:26:09 13:26:12 13:26:16 13:26:18 13:26:19

**Q. Are you done? 13:26:21**

A. Yes, I'm done. 13:26:22

**Q. I may have misheard earlier on. Did you say concern and jubilance? 13:26:23 13:26:26**

A. Yes. Concern that we hadn't done this before. 13:26:29 13:26:31

MR. GRAFF: Okay. You can put aside 13:26:47

Loeffler

this document. Thank you. 13:26:48

MR. NOVIKOFF: It's already been put aside. 13:26:51 13:26:52

MR. GRAFF: Excuse me? 13:26:52

MR. NOVIKOFF: It's already been put aside. 13:26:52 13:26:52

MR. GRAFF: I am going to ask the court reporter to please mark as Exhibit Loeffler 10 a one-page document produced to us by Ocean Beach bearing Bates number 9809. 13:26:57 13:26:59 13:27:03 13:27:06 13:27:08

(Loeffler Exhibit 10, Accept the NYS Department of State's Proposed Responses on the Local Waterfront Revitalization Program, Bates stamped 009809, marked for identification.) 13:27:11 13:27:11 13:27:11 13:27:11 13:27:11

MR. NOVIKOFF: And do you want the witness to look at this document? 13:27:34 13:27:36

**Q. Yes. As with all of the documents, if you could take as much time to review it and then let me know if you recognize it. 13:27:37 13:27:40 13:27:42**

MR. NOVIKOFF: And while the witness is looking at it, just let the record reflect that this is purportedly a page 3 13:27:43 13:27:44 13:27:46

Loeffler

of a document. 13:27:49

RQ MR. GRAFF: And we will call for the production of any other pages of this document that exist. 13:27:51 13:27:52 13:27:54

MR. NOVIKOFF: Take it under advisement. 13:27:55 13:27:56

**Q. Mayor Loeffler, can you identify the document? 13:28:06 13:28:08**

A. It appears to be page 3 of a production of the minutes of the Village board meeting that occurred on June 23rd, 2007. 13:28:09 13:28:15 13:28:17

**Q. If I could direct your attention to the last subheading on the document, Adoption of Police Department Rules and Procedures Update, "Trustee Mallott moved as follows." 13:28:21 13:28:24 13:28:27 13:28:28**

**Do you recall anything of the events that are described in the following paragraph there? 13:28:31 13:28:35 13:28:37**

MR. NOVIKOFF: Oh, you want him to read the events of what transpired after Trustee Mallott moved as follows -- 13:28:37 13:28:39 13:28:42

MR. GRAFF: Yes. 13:28:42

MR. NOVIKOFF: -- and tell you if he recalls any of it? 13:28:43 13:28:44

Loeffler

MR. GRAFF: That's exactly what I asked. 13:28:44 13:28:46

MR. NOVIKOFF: Sure. 13:28:46

Go ahead. 13:28:47

(Document review.) 13:28:59

A. Okay. 13:28:59

**Q. Do you recall any of the events that are described here? 13:29:08 13:29:10**

A. Yes, I do. 13:29:11

**Q. One of things that's described here is an update that had been prepared pertaining to domestic incidents and domestic violence. Do you recall what that refers to? 13:29:13 13:29:19 13:29:22 13:29:25**

A. Yes, I do. 13:29:26

**Q. What does that refer to? 13:29:27**

A. It refers to the handling of domestic incident and domestic violence calls which was updated in the policy manual. The policy manual is a living, breathing document that is constantly updated as circumstances require that to be. If there was a shortfall in the document and we notice it, we make a modification to it. The document then is presented to the Village board as an addendum 13:29:27 13:29:28 13:29:31 13:29:33 13:29:35 13:29:38 13:29:41 13:29:44 13:29:46

Loeffler

or an amendment to the policy manual, it's inserted, and then a copy of that addendum is given to all the people that signed for it, all the officers that signed for that document to be inserted into their copy of the policy manual. 13:29:49 13:29:52 13:29:55 13:29:58 13:29:59 13:30:01

**Q. And who prepared this update that's referenced here? 13:30:02 13:30:04**

A. I believe it may have been -- I don't know whether it was George Hesse or Paul Trosko. 13:30:06 13:30:14 13:30:16

**Q. Did you direct either of those people to prepare this update? 13:30:17 13:30:19**

A. What I directed them to do was the Ocean Beach Police Department is attempting to become an accredited police agency. It's a defined term in the State of New York. And in doing so there are certain requirements that need to be done. One of them is to constantly update and keep the policy manual in conformity with state law and provisions of the law and that's what they do. From time to time this has been -- this is not the only update, I believe, that's been done to the manual. 13:30:21 13:30:23 13:30:25 13:30:29 13:30:32 13:30:34 13:30:37 13:30:40 13:30:43 13:30:44 13:30:46

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**Q. And with respect to this particular update, was it updating an existing section pertaining to domestic incidents and domestic violence, or was that a new section? 13:30:48 13:30:50 13:30:53 13:30:56**

A. I believe it was updating an existing. 13:31:00 13:31:03

**Q. Was Trustee Mallott involved at all in this update to the department manual? 13:31:04 13:31:07**

A. No. 13:31:11

**Q. Do you know why Trustee Mallott made the motion for this update? 13:31:11 13:31:13**

MR. NOVIKOFF: Other than wanting to approve it? I mean, objection to the form. 13:31:15 13:31:16

A. I guess because it was his turn to read. 13:31:21 13:31:23

**Q. Let's put aside Loeffler 10. 13:31:28**

MR. NOVIKOFF: With pleasure. 13:31:28

**Q. Do you recall who determined that that section should be updated? 13:31:34 13:31:35**

A. No. 13:31:36

**Q. Did you have any discussions with anyone other than Paul Trosko or George Hesse or members of the Board of Trustees concerning this update? 13:31:37 13:31:42 13:31:45 13:31:47**

**Loeffler**

A. No. 13:31:47

**Q. Did you have any discussion with members of the Board of Trustees concerning this update? 13:31:48 13:31:50 13:31:52**

A. Probably not. 13:31:53

**Q. Are you aware of any specific incidents of domestic abuse or violence that were handled by the Ocean Beach Police Department during your service as trustee? 13:31:57 13:32:03 13:32:07 13:32:08**

A. No, I am not. 13:32:10

**Q. What about during your service as mayor? 13:32:11 13:32:14**

A. The Ocean Beach Police Department has responded to incidents of domestic violence since I've been mayor from 2006 to the present. 13:32:14 13:32:18 13:32:22

**Q. Are you aware of any specific instances? 13:32:24 13:32:26**

A. I am not aware of any specific instance. 13:32:27 13:32:28

MR. GRAFF: I am going to ask the court reporter to please mark as Exhibit Loeffler 11 a document produced to us by Ocean Beach bearing Bates numbers 2652 through 2661. 13:32:36 13:32:37 13:32:39 13:32:41 13:32:44

Loeffler

(Loeffler Exhibit 12, Section 1: Discipline/Charges and Specifications, Bates stamped 2652 through 2661, marked for identification.) 13:32:47 13:32:47 13:32:47 13:33:09

**Q. Mayor Loeffler, when you have had a chance to review the document, I am not going to ask about any specific provisions. My only question is if you can tell me what this document is, where it comes from. 13:33:09 13:33:12 13:33:13 13:33:16 13:33:18**

MR. NOVIKOFF: So are you asking the witness once I review it to review it himself? 13:33:20 13:33:22 13:33:25

MR. GRAFF: As much as he needs to to tell me if he recognizes it and what it is. 13:33:25 13:33:27 13:33:29

MR. NOVIKOFF: Okay. You got it. Here you go (handing). Read away. 13:33:29 13:33:30

**Q. Actually, if I could be more specific, I am going to ask now just about the first page of the document, 2652. 13:33:38 13:33:40 13:33:42**

MR. NOVIKOFF: So you don't want the witness to review it to see if he recognizes the document? 13:33:45 13:33:46 13:33:47

**Q. I am going to start with the first 13:33:48**

**Loeffler**

**page of the document. If you could review the very first page and tell me if you can -- if you recognize it. 13:33:50 13:33:51 13:33:53**

MR. NOVIKOFF: Recognize the first page? 13:33:53 13:33:54

MR. GRAFF: The first page. 13:33:55

MR. NOVIKOFF: Independent of the other eight pages? 13:33:55 13:33:57

MR. GRAFF: Yes. 13:33:58

A. I don't think I can do that. Right from here I don't -- I would need to review the whole document. 13:33:59 13:34:01 13:34:03

**Q. Okay, if you need to review the full document, please do. 13:34:03 13:34:06**

A. It's only... 13:34:07

(Document review.) 13:34:16

**Q. Mayor Loeffler, can you tell me what this document is? 13:35:35 13:35:37**

A. I'm not positive, no, I'm not. Do you want to tell me what it is? 13:35:38 13:35:41

**Q. I don't know. That's why I am asking you. 13:35:43 13:35:44**

A. Oh. It may be -- 13:35:45

MR. NOVIKOFF: Don't guess. 13:35:46

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

A. I'm not positive without seeing this in its proper context. 13:35:47 13:35:49

RQ MR. GRAFF: It's like to call for the production of the balance of whatever this document came from. 13:35:51 13:35:52 13:35:53

THE WITNESS: It's the policy manual. 13:35:55 13:35:56

**Q. Is it possible that this is part of the Police Department policy manual? 13:35:56 13:35:59**

A. Yes, it is. 13:36:00

MR. NOVIKOFF: Objection. 13:36:01

You can answer. Is it possible? 13:36:01

A. Yes, it is. 13:36:02

**Q. Do you recognize any specific page of it as part of the policy manual? 13:36:03 13:36:05**

MR. NOVIKOFF: I mean, the question I have, Ari, is you have asked me on behalf of my client to produce the entirety of this document of which the mayor is not absolutely sure what it is and certainly I don't know what it is. So I will endeavor upon taking your request under advisement to look for something that this may be included in, but I can't tell you that I 13:36:07 13:36:10 13:36:12 13:36:14 13:36:17 13:36:19 13:36:22 13:36:25 13:36:30

Loeffler

would know where to begin to look or my client would know where to begin to look. 13:36:32 13:36:35

MR. GRAFF: Okay. I believe I noted for the record, but this document was one produced by Ocean Beach which is why -- 13:36:37 13:36:40 13:36:42

MR. NOVIKOFF: No, I understand that. I'm not -- I'm not questioning for a moment that we produced it, but I can't tell you for certainty right now where this came from, so, I mean, I am going to do what I have to do as I am required under the federal rules, but I think the request is a little bit broad to ask me as counsel to request that my client search for the document in which this document is contained in, but I'll take it under advisement. 13:36:44 13:36:45 13:36:49 13:36:52 13:36:55 13:36:58 13:37:00 13:37:02 13:37:04 13:37:09 13:37:11 13:37:13

A. It -- 13:37:15

MR. NOVIKOFF: Don't guess. No question pending. Don't worry. 13:37:17 13:37:19

**Q. If you could please say what you had started saying. 13:37:19 13:37:22**

MR. NOVIKOFF: No. There is no question pending. 13:37:22 13:37:24

Loeffler

MR. GRAFF: That's the question. 13:37:25

MR. NOVIKOFF: Say what you were going to say? 13:37:25 13:37:26

MR. GRAFF: What you had started saying, yes. 13:37:27 13:37:28

MR. NOVIKOFF: How about if he was going to say he thought your questions were foolish, do you want him to say that? 13:37:28 13:37:30 13:37:32

**Q. Is that what you were going to say? 13:37:32**

A. No. 13:37:34

**Q. Could you please finish saying what you had started saying? 13:37:35 13:37:37**

A. I was under the impression that this may be part of the policy manual, but I -- not seeing it in this context and reading it, I don't -- I can't be sure of that, but it may be. 13:37:38 13:37:40 13:37:43 13:37:46 13:37:49

**Q. Okay. Thank you, Mayor Loeffler. We could put aside Loeffler 11. 13:37:49 13:37:51**

A. 12. I'm sorry. It says 12 on it. 13:37:55

MR. GRAFF: Loeffler 12. Excuse me. Where is the stamped copy of Loeffler 11? 13:37:57

MR. NOVIKOFF: I do not know.

Loeffler

MR. JEMAL: I think we skipped one.

THE COURT REPORTER: Can we go off the record for a second.

MR. GRAFF: Yes, please.

THE VIDEOGRAPHER: Going off the record. The time is 1:38 p.m.

(Discussion off the record.) 13:39:11

THE VIDEOGRAPHER: We are back on the record. The time is 1:39 p.m. 13:39:11 13:39:18

MR. GRAFF: And to clarify for the record, the last document that had been presented to the witness I had indicated that it should be marked as 11, but it's actually marked Loeffler 12. It bears Bates numbers 2652 to 2661. 13:39:20 13:39:22 13:39:24 13:39:25 13:39:28 13:39:30

And if I could now ask the court reporter to please mark as Exhibit Loeffler 11 a one-page document produced by Ocean Beach bearing Bates number 9810. 13:39:34 13:39:35 13:39:36 13:39:38

(Loeffler Exhibit 11, Resolution No. 2008-18, Bates stamped 009810, marked for identification.) 13:40:02 13:40:02 13:40:25

**Q. Mayor Loeffler, when you have had a chance to look at the document, could you tell 13:40:25 13:40:26**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**me, please, what the document is? 13:40:28**

A. It's a copy of the board resolution 13:40:30 2008-18 dated March 8th of 2008 and attested to 13:40:33 by Mary Anne Minerva, Village administrator, 13:40:41 clerk and treasurer. 13:40:44

**Q. The document relates to additional 13:40:45 updates to the police manual; is that correct? 13:40:46**

A. That's what it -- yes. 13:40:49

**Q. Who prepared the updates that are 13:40:49 referenced in this document? 13:40:51**

MR. NOVIKOFF: Who typed them, who 13:40:53 drafted them? 13:40:55

**Q. Who drafted those sections that are 13:40:56 updated? 13:40:57**

A. I would imagine they came from -- 13:40:58 they came from the Police Department. 13:41:07

**Q. Which Police Department? 13:41:08**

A. Ocean Beach Police Department. 13:41:10

**Q. Do you know who specifically at the 13:41:11 Ocean Beach Police Department? 13:41:14**

A. I don't recall. 13:41:15

**Q. Do you recall whether you reviewed 13:41:16 these sections before they were updated? 13:41:18**

A. Absolutely. 13:41:20

Loeffler

**Q. Do you recall what any of these 13:41:21 sections relate to? 13:41:23**

MR. NOVIKOFF: As he sits here 13:41:24 today? 13:41:25

MR. GRAFF: Yes. 13:41:25

A. Absolutely not. 13:41:26

MR. GRAFF: Okay, let's put aside 13:41:31 Loeffler 11. 13:41:33

Can I ask the videographer what time 13:41:41 it is? 13:41:43

THE VIDEOGRAPHER: It is 1:42 p.m. 13:41:44

MR. NOVIKOFF: Your call. We can 13:41:47 stop now, if you want. 13:41:48

MR. GRAFF: Could I ask the court 13:41:50 reporter -- 13:41:52

MR. NOVIKOFF: I think she wanted to 13:41:52 stop about an hour ago. 13:41:54

MR. GRAFF: Yes. Why don't we break 13:41:56 for lunch at this point. The time is 1:42. 13:41:57 Counsel, when would you like to resume? 13:42:00

MR. NOVIKOFF: Between 2:30 and 13:42:02 2:45. 13:42:04

MR. GRAFF: Great. 13:42:04

THE VIDEOGRAPHER: Going off the 13:42:05

Loeffler

record. The time is 1:42 p.m. 13:42:05

(Mr. Novikoff exits.) 13:42:07

(Lunch recess was taken from 1:42 to 13:42:07 2:37.) 13:42:08

THE VIDEOGRAPHER: We are back on 14:36:05 the record. The time is 2:37 p.m. 14:36:30

CONTINUED EXAMINATION BY 14:36:30

MR. GRAFF: 14:36:34

**Q. Good afternoon, again, Mayor 14:36:35 Loeffler. 14:36:37**

A. Good afternoon. 14:36:37

**Q. Prior to the time when Ed Paradiso 14:36:38 sustained the injury that led to him going out 14:36:44 on disability leave, did you have any knowledge 14:36:46 with respect to his performance as police chief 14:36:48 in Ocean Beach? 14:36:51**

MR. WELCH: Objection. Form. 14:36:54

You can answer. 14:36:55

A. I guess he was doing a pretty good 14:36:56 job. 14:37:03

**Q. Did you ever -- as you sit here 14:37:04 today, do you have any knowledge with respect 14:37:11 to Gary Bosetti's performance as a police 14:37:13 officer in Ocean Beach? 14:37:15**

**Loeffler**

A. No, I don't. 14:37:16

**Q. As you sit here today, do you have 14:37:17 any knowledge with respect to Richard Bosetti's 14:37:18 performance as a police officer in Ocean Beach? 14:37:21**

A. No, I don't know. I do not. 14:37:23

**Q. Do you know whether Richard Bosetti 14:37:24 was ever disciplined formally or informally for 14:37:26 sleeping on the job while on duty as a police 14:37:31 officer in Ocean Beach? 14:37:33**

MR. WELCH: Objection. Form. 14:37:34

You can answer. 14:37:35

A. Was it Richard or Gary? One of them 14:37:36 was. 14:37:42

**Q. And could you describe the context 14:37:42 in which one of them was disciplined for that? 14:37:46**

MR. WELCH: Objection. 14:37:49

You can answer. 14:37:51

A. One morning I went into the fire 14:37:52 hall, which is near the police station, and I 14:37:56 thought it was Gary, maybe it was Richie, was 14:38:00 lying on the couch watching TV. Apparently it 14:38:04 looked to me like he was sleeping, 9:00 in the 14:38:08 morning. I startled him. I got the ice out of 14:38:11 the ice machine, because I was going to go out 14:38:15

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

fishing, and he got up. Went back to the Village office. I told George Hesse to come over with Officer Bosetti and I explained to him when he got there that his conduct was unacceptable and we were having enough problems in Ocean Beach without having police officers who were sleeping on the job, which I thought he was doing, and that if this conduct were to continue, you know, there would be some consequences to it and I told George Hesse at the time that -- of the incident and what happened and he said he would handle it. 14:38:19 14:38:22 14:38:25 14:38:30 14:38:34 14:38:36 14:38:37 14:38:41 14:38:46 14:38:49 14:38:54 14:38:58

**Q. And do you have any information with respect to how or whether George Hesse handled that situation after that conversation? 14:39:00 14:39:02 14:39:05**

A. I'm not sure what he did. 14:39:07

**Q. Do you know how long -- for what period of time following that conversation the Bosetti at issue continued to work as a police officer in Ocean Beach? 14:39:09 14:39:16 14:39:20 14:39:24**

A. No, I don't. It wasn't a long period of time after that. 14:39:25 14:39:27

**Q. Did the Bosetti at issue indicate why he might have been sleeping at 9 in the 14:39:28 14:39:34**

**Loeffler**

**morning that day? 14:39:36**

MR. WELCH: Object to the form. 14:39:37

You can answer. 14:39:39

A. I believe he told me he was just catching up on the news on the television, he wasn't really sleeping. I didn't -- the answer, to me, didn't portray that he was catching up on the news. I thought he was sleeping. 14:39:42 14:39:45 14:39:47 14:39:50 14:39:52 14:39:54

**Q. Do you know whether there was any event or function involving the Ocean Beach Police Department the day or the night prior to the incident? 14:39:55 14:40:01 14:40:03 14:40:06**

A. I don't know. 14:40:08

**Q. Do you know whether there was an event in connection with fund-raising for a legal defense fund involving the Ocean Beach Police Department the night before? 14:40:08 14:40:12 14:40:15 14:40:18**

A. No, I don't. 14:40:19

**Q. To your knowledge, has the Ocean Beach Police Department ever participated in any fund-raising activities for any legal defense fund that you are aware of? 14:40:21 14:40:23 14:40:24 14:40:28**

MR. WELCH: Objection. Do you have 14:40:30

Loeffler

a time frame? 14:40:30

**Q. During the period of your service as mayor of Ocean Beach. 14:40:31 14:40:34**

A. There is -- there is a legal defense fund that's not -- it's not associated with the Police Department, that was set up to raise money for the defense of certain police officers. 14:40:35 14:40:37 14:40:40 14:40:42 14:40:45

**Q. And was it set up to serve for the defense of certain specific police officers? 14:40:45 14:40:48**

A. No. 14:40:50

**Q. Who administers that fund? 14:40:50**

A. I believe George Rehn, who is a CPA, is the administer of that fund. He has an office in Ocean Beach. 14:40:53 14:41:01 14:41:04

**Q. Do you know when that fund was created? 14:41:05 14:41:07**

A. '07, I'd say. 14:41:07

**Q. Have you ever contributed to that fund? 14:41:12 14:41:14**

A. Yes, I have. 14:41:15

**Q. How many different contributions have you made to that fund? 14:41:17 14:41:20**

MR. WELCH: Objection to form. 14:41:21

Loeffler

You can answer. 14:41:22

A. Two contributions. 14:41:24

**Q. And what was the amount of the first contribution? 14:41:25 14:41:27**

A. I am trying to think. I'd have to check my checkbook to make sure. 14:41:27 14:41:36

**Q. Could you say whether it was more than a thousand dollars? 14:41:38 14:41:40**

A. No, it was not more than a thousand dollars. 14:41:41 14:41:42

**Q. What about the second contribution? 14:41:42**

A. Neither one were more than a thousand dollars. 14:41:44 14:41:45

**Q. And do you know who has received funds from the legal defense fund for legal defense? 14:41:46 14:41:48 14:41:51**

A. No, I don't. 14:41:52

**Q. Do you know whether there is any video surveillance system within the Ocean Beach Police Department facility? 14:41:52 14:42:01 14:42:05**

MR. WELCH: Today? Or at any time? 14:42:06

**Q. At any time during your service as mayor. 14:42:09 14:42:11**

MR. WELCH: As mayor. 14:42:12

Loeffler

A. Absolutely, yes. 14:42:14

**Q. And what about during your service as trustee? 14:42:15 14:42:17**

A. I don't know. 14:42:18

**Q. Have you ever seen any video surveillance footage recorded by a camera in the Ocean Beach Police Department? 14:42:20 14:42:22 14:42:25**

A. Yes, I have. 14:42:26

**Q. And what area of the Police Department was depicted in that video? 14:42:27 14:42:29**

A. The station house, the desk area, the cell area and the squad room. 14:42:32 14:42:39

**Q. Were you able to determine how many cameras were -- strike that. 14:42:41 14:42:44**

**Why did you review video from the surveillance camera in the Ocean Beach Police Department? 14:42:52 14:42:54 14:42:57**

A. Because I had the Police Department purchase it. 14:42:57 14:42:59

**Q. And why did you have it purchased? 14:42:59**

A. Because the equipment that they had prior to this I was told was not functioning properly, so I had to -- I authorized the Police Department to buy all new equipment. 14:43:02 14:43:04 14:43:08 14:43:10

Loeffler

**Q. And when did they -- when did you authorize that? 14:43:13 14:43:14**

A. 2006. 14:43:15

**Q. And do you recall any specific conduct that was depicted in the video that you reviewed? 14:43:19 14:43:21 14:43:25**

A. No, I just reviewed its set-up. 14:43:25

**Q. Did George Hesse ever show you any video that had been recorded from the surveillance cameras inside the -- 14:43:33 14:43:36 14:43:38**

A. Yes. 14:43:38

**Q. What video did George Hesse show you? 14:43:39 14:43:41**

A. I saw some video of -- in one Memorial Day someone stole the memorial wreaths that were delivered to the Village to be put at the memorial site and they had surveillance cameras in the waiting area for the ferry terminal now and those cameras depicted the person stealing those items and I saw that video. 14:43:41 14:43:46 14:43:50 14:43:52 14:43:56 14:43:59 14:44:04 14:44:06

**Q. Did George Hesse show you any other videos? 14:44:09 14:44:11**

A. No, I haven't seen any other videos. 14:44:11

Loeffler

**Q. Do you have any information at all concerning a video recording that depicts George Hesse in a cell with a detainee? 14:44:23 14:44:24 14:44:27**

MR. WELCH: Objection. 14:44:30

A. I've never seen any. 14:44:31

**Q. Have you heard anything like that discussed? 14:44:33 14:44:35**

A. I have not. 14:44:35

**Q. Okay. Do you know who -- strike that. 14:44:36 14:44:42**

A. Could you speak up just a little bit. 14:44:42 14:44:44

**Q. Sure. Do you know a former police officer at Ocean Beach by the name of Dave Gerdon? 14:44:44 14:44:46 14:44:48**

A. Yes. 14:44:49

**Q. And when did you first hear the name Dave Gerdon? 14:44:49 14:44:53**

A. I have known Dave for twenty years. 14:44:54

**Q. And is he currently a police officer at Ocean Beach? 14:44:56 14:44:58**

A. No, he is not. 14:44:59

**Q. Do you know when his employment ended? 14:45:00 14:45:01**

**Loeffler**

A. No, I'm not sure. 14:45:02

**Q. Do you know why it ended? 14:45:03**

A. I believe he was taking materials from the police station, unauthorized materials from the police station. 14:45:04 14:45:12 14:45:15

**Q. And what is the basis for that belief? 14:45:16 14:45:18**

A. I believe it was on video surveillance tape. 14:45:18 14:45:21

**Q. Did you ever see that video surveillance tape? 14:45:22 14:45:23**

A. No, I did not. 14:45:23

**Q. Did anyone report to you that that surveillance tape existed? 14:45:24 14:45:26**

A. Yes. 14:45:27

**Q. Who reported that to you? 14:45:28**

A. George Hesse. 14:45:28

**Q. Did George Hesse communicate to you what the nature of the materials that Mr. Gerdon had taken without authorization were? 14:45:29 14:45:31 14:45:33 14:45:34**

A. No, he did not. 14:45:34

**Q. Did you ask? 14:45:35**

A. No, I did not. 14:45:35

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler
**Q. Do you know whether -- strike that. 14:45:37**
**Did you learn about this incident 14:45:38**
**prior to the ending of Mr. Gerdon's employment 14:45:45**
**as a police officer? 14:45:48**
A. Yes. 14:45:49
MR. WELCH: Objection to the form. 14:45:49
A. Yes. 14:45:50
**Q. Did you direct that any action 14:45:51**
**should be undertaken in response to that 14:45:53**
**incident? 14:45:55**
A. Yes. 14:45:55
MR. WELCH: Objection to the form. 14:45:55
**Q. What action did you direct should be 14:45:57**
**undertaken? 14:45:59**
A. All the videotapes were turned over 14:46:00
to the District Attorney's office for their 14:46:02
investigation. 14:46:07
**Q. Do you know whether that 14:46:08**
**investigation ever reached any conclusions? 14:46:09**
MR. WELCH: Objection. To your 14:46:11
knowledge. 14:46:12
A. No, I don't know. 14:46:13
**Q. Do you know whether any charges were 14:46:14**
**ever brought against Mr. Gerdon? 14:46:15**

**Loeffler**
A. I do not. 14:46:17
**Q. Did anyone ever describe to you the 14:46:18**
**nature of the materials that Mr. Gerdon 14:46:20**
**purportedly had taken from the police office? 14:46:22**
A. No. 14:46:24
**Q. Did you ever ask anyone? 14:46:25**
A. No. 14:46:27
**Q. Did you ever discuss it with anyone? 14:46:27**
A. I was instructed not to. 14:46:29
**Q. And who instructed you not to? 14:46:30**
A. The District Attorney's office. 14:46:32
**Q. When did you get that instruction? 14:46:33**
A. When the District Attorney said that 14:46:35
they were going to conduct the investigation. 14:46:36
**Q. And who specifically in the District 14:46:38**
**Attorney's office? 14:46:40**
A. It came through our attorney's 14:46:41
office from ADA -- what's his name? 14:46:42
MR. WELCH: If you don't recall, you 14:46:42
don't recall. 14:46:49
**Q. Could it be ADA Spoda? 14:46:53**
A. No. It was Bian -- 14:46:56
**Q. Biancavilla? 14:47:10**
A. Biancavilla. 14:47:13

Loeffler
**Q. Earlier today you had indicated that 14:47:21**
**you had communications with members of the news 14:47:23**
**media concerning this lawsuit. Do you recall 14:47:26**
**what I am referring to? 14:47:28**
MR. WELCH: Objection. 14:47:30
You can answer. 14:47:31
A. Yes. 14:47:32
**Q. On how many occasions did you speak 14:47:32**
**with the news media about this lawsuit? 14:47:34**
A. On one specific day I spoke to 14:47:35
two -- I spoke to Newsday and I spoke to the 14:47:44
AP. 14:47:47
**Q. And did you speak to them 14:47:47**
**simultaneously? 14:47:49**
A. No. 14:47:49
**Q. Did a reporter from Newsday request 14:47:50**
**to speak to you? 14:47:56**
A. Yes. 14:47:57
**Q. And did you have an in-person 14:47:57**
**conversation with the reporter for Newsday? 14:48:01**
A. Excuse me? 14:48:03
**Q. Did you have an in-person 14:48:03**
**conversation? 14:48:05**
A. No. 14:48:05

Loeffler
**Q. What about the reporter from AP, did 14:48:06**
**that reporter request to speak with you? 14:48:08**
A. Yes. 14:48:09
**Q. And did you have an in-person 14:48:10**
**conversation with that reporter? 14:48:12**
A. No. 14:48:12
**Q. Do you remember who the reporter was 14:48:13**
**from the AP? 14:48:14**
A. No. 14:48:15
**Q. Do you remember who the reporter was 14:48:15**
**from Newsday? 14:48:16**
A. Sandra Peddie. 14:48:18
**Q. In substance, do you recall what was 14:48:23**
**communicated between you and Sandra Peddie on 14:48:25**
**that occasion? 14:48:28**
A. I think the conversation was that we 14:48:30
would have no comment on the ongoing litigation 14:48:33
and refer them to our attorneys. 14:48:35
**Q. Did you ever make any comments to 14:48:37**
**any reporter for Newsday to the effect that you 14:48:40**
**vowed to create a kinder and gentler Ocean 14:48:45**
**Beach police force? 14:48:50**
MR. WELCH: Objection to form. 14:48:51
You can answer. 14:48:54

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

A. I had made that announcement at a board meeting that a Newsday reporter was present at, but I didn't make that presentation to the Newsday reporter. 14:48:54 14:48:56 14:48:58 14:49:00

**Q. Okay. And what was the substance of that announcement? 14:49:01 14:49:03**

A. It was that the crux of the -- or the demeanor of the Police Department was going to change to more of a service-oriented Police Department as opposed to an enforcement-oriented Police Department. 14:49:04 14:49:09 14:49:11 14:49:16 14:49:19

**Q. Did you have any conversations with any members of the Village Board of Trustees concerning the subject of that statement prior to your making it at that meeting? 14:49:20 14:49:23 14:49:25 14:49:29**

A. Yes. 14:49:30

**Q. And who did you discuss it with? 14:49:31**

A. With the entire board before I made the comment. 14:49:33 14:49:34

**Q. And did anyone on the board express any opinions as to the appropriateness of that comment? 14:49:35 14:49:38 14:49:40**

A. They thought it was appropriate. 14:49:41

**Q. Did every member of the board 14:49:42**

**Loeffler**

**express that they thought it was appropriate? 14:49:43**

A. Yes. 14:49:45

**Q. Do you recall whether Trustee Einig has at any point during your service as mayor or trustee expressed any views as to the enforcement practices of the Ocean Beach Police Department? 14:49:45 14:49:47 14:49:50 14:49:53 14:49:55**

MR. WELCH: Object to the form. Do you understand the question? 14:49:55 14:49:57

THE WITNESS: No, I don't. 14:49:58

**Q. Has Trustee Einig ever expressed any views that you are aware of during your service as mayor or trustee concerning the strictness of the enforcement policies of the Ocean Beach Police Department? 14:49:59 14:50:01 14:50:04 14:50:11 14:50:14**

MR. WELCH: Object to the form. You can answer, if you understand it. 14:50:14 14:50:16 14:50:17

A. Yes, he has. 14:50:17

**Q. And what has he said about that subject? 14:50:18 14:50:20**

A. Trustee Einig believes that we should take a stronger position with reference to enforcement than we do at the present time. 14:50:20 14:50:23 14:50:26

Loeffler

**Q. And has he expressed that view in meetings at the Board of Trustees? 14:50:28 14:50:30**

A. Yes, he has. 14:50:31

**Q. Have other members of the Board of Trustees indicated that they share that view? 14:50:32 14:50:34**

MR. WELCH: To the extent that these conversations were had in executive session and were -- and counsel was present and counsel was present for the purposes of providing legal advice and legal advice was sought during those conversations, then I would direct you not to answer those questions, but if they weren't, then you can answer. 14:50:36 14:50:38 14:50:41 14:50:43 14:50:47 14:50:49 14:50:50 14:50:52 14:50:54

A. He has made it known at public meetings. 14:50:55 14:50:58

**Q. Have any other members of the Board of Trustees indicated at those meetings that they shared his view? 14:51:00 14:51:02 14:51:04**

A. No. 14:51:06

**Q. Do you recall having any discussions individually with Trustee Einig about his view on the subject? 14:51:08 14:51:15 14:51:18**

A. Yes. 14:51:19

Loeffler

**Q. And do you recall in substance what you discussed with Trustee Einig? 14:51:19 14:51:23**

A. No, not really. 14:51:25

**Q. Did you share Trustee Einig's view on the subject? 14:51:27 14:51:30**

MR. WELCH: I am going to object. There is no foundation, and also it's a totally irrelevant line of questioning, but to the extent that you can answer that question, feel free. 14:51:31 14:51:35 14:51:38 14:51:40 14:51:42

A. I don't share his feelings. 14:51:44

**Q. Did you explain ever to Trustee Einig why you did not share his view on that subject? 14:51:46 14:51:49 14:51:52**

A. Yes. 14:51:52

**Q. And what did you express? 14:51:52**

A. That I don't share his feelings. 14:51:54

**Q. Did you give any reasons why? 14:51:55**

A. No. 14:51:57

**Q. Does Trustee Einig still a member of the Board of Trustees at the time that you made the statement that was reported by Newsday at the board meeting concerning a kinder and gentler police force? 14:51:58 14:52:04 14:52:06 14:52:09 14:52:11**

9e28f7aa-4e93-4641-9524-8529961356c8

Page 229

Loeffler

MR. WELCH: I am going to object to the form. There has been absolutely no evidence or foundation laid as to when this time frame was, whether he was the mayor or as the trustee. Can you just establish when the time frame was of this? 14:52:12 14:52:14 14:52:15 14:52:16 14:52:19 14:52:25

MR. GRAFF: Sure. 14:52:27

**Q. When did you make that statement that was reported in Newsday? 14:52:27 14:52:28**

A. I don't remember. 14:52:29

**Q. What position did you hold at Ocean Beach at the time? 14:52:30 14:52:32**

A. I was the mayor. 14:52:32

MR. WELCH: So this was after then you became mayor? 14:52:34 14:52:36

THE WITNESS: Yes, after. 14:52:36

MR. WELCH: After '07. 14:52:37

THE WITNESS: '06. 14:52:39

**Q. Was Trustee Einig then a member of the Board of Trustees? 14:52:42 14:52:44**

A. Yes, he was. 14:52:45

**Q. Did he express support for the statement that you made about the kinder and gentler police force? 14:52:46 14:52:53 14:52:55**

Page 230

Loeffler

MR. WELCH: Objection. Asked and answered. 14:52:57 14:52:57

You can answer it again. 14:52:57

A. For that statement he did. He may not have totally agreed with my position, but he believed that -- he did support me in that statement. 14:52:59 14:53:02 14:53:05 14:53:08

**Q. Was George Hesse present at that meeting? 14:53:09 14:53:11**

A. I don't believe so. 14:53:11

**Q. Do you recall whether there was a point in time during your service as trustee when George Hesse was transferred either to or from the day shift to the night shift? 14:53:14 14:53:19 14:53:23 14:53:32**

A. No, I don't remember that. 14:53:35

**Q. On the occasion when you advised Frank Fiorillo not to arrest or serve a citation to Mike Loeffler, did you know how Frank Fiorillo -- strike that. 14:53:37 14:53:47 14:53:50 14:53:58**

**Do you know if there was a report to the Police Department that the barbecue in question had been stolen? 14:54:07 14:54:08 14:54:10**

A. I don't know. 14:54:11

**Q. Did you ever have any conversation 14:54:12**

Page 231

Loeffler

**with Frank Fiorillo, whether or not others were present, did you ever speak with Frank Fiorillo about Richard Bosetti? 14:54:19 14:54:22 14:54:25**

MR. WELCH: Objection. Asked and answered. 14:54:26 14:54:27

You can answer it again. 14:54:27

A. No. 14:54:28

**Q. Did you ever speak with Frank Fiorillo about Gary Bosetti? 14:54:29 14:54:30**

A. No. 14:54:31

**Q. Did you ever speak with any of the plaintiffs in this lawsuit about either of those individuals? 14:54:32 14:54:34 14:54:36**

A. No. 14:54:36

**Q. Other than your service as mayor and police commissioner, have you ever served in any other capacity in Ocean Beach, whether as a volunteer or for pay? 14:54:37 14:54:55 14:54:57 14:55:00**

A. No. 14:55:01

**Q. Do you ever drive an Ocean Beach rescue vehicle? 14:55:02 14:55:06**

A. Absolutely. You just said for pay, didn't you? 14:55:07 14:55:10

**Q. Whether or not for pay. 14:55:10**

Page 232

Loeffler

A. I didn't hear you say "whether or not." I'm sorry. Yes, I'm a member of the Fire Department. 14:55:11 14:55:13 14:55:14

MR. WELCH: Is that a volunteer position? 14:55:15 14:55:17

THE WITNESS: It's a volunteer position. 14:55:18 14:55:19

**Q. Do you recall ever responding in the Ocean Beach rescue vehicle to an incident involving domestic violence wherein the male and the female and a small baby were in the Ocean Beach police station together? 14:55:19 14:55:24 14:55:27 14:55:33 14:55:36**

MR. WELCH: Object to the form. Compound. 14:55:38 14:55:39

You can answer. 14:55:39

A. No, I don't recall. 14:55:40

MR. GRAFF: I'd like to ask the court reporter to please mark as Exhibit Loeffler 13 a one-page document produced to us by Ocean Beach bearing Bates number 5419. 14:55:53 14:55:55 14:55:59 14:56:01 14:56:03

(Loeffler Exhibit 13, letter dated April 6, 2007, Bates stamped 005419, marked for identification.) 14:56:21 14:56:21 14:56:39

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**Q. After your counsel is finished 14:56:39 comparing your version and his version of the 14:56:41 document, if you could please take a look at 14:56:43 the document and tell me if this is something 14:56:45 you have seen before. 14:56:47**

MR. WELCH: Have you seen this 14:56:48 before, yes or no? 14:56:49

(Document review.) 14:56:54

A. Yes, I have. 14:57:04

**Q. And when did you first see the 14:57:07 document? 14:57:10**

A. I guess in April of '07. 14:57:11

**Q. The document is dated April 6, 2007? 14:57:18**

A. Yes. 14:57:21

**Q. The document states: "Dear Officer 14:57:22 Hardman, due to the impending litigation and 14:57:30 under advice of counsel, the Village cannot 14:57:32 rehire you for the 2007 summer season." 14:57:34**

**Do you know what the impending 14:57:36 litigation referenced in this document is? 14:57:39**

A. I wouldn't -- I don't know. I don't 14:57:41 want to guess at it. 14:57:50

**Q. And would you be guessing between 14:57:52 multiple possibilities that you believe it 14:57:56**

**Loeffler**

**could be, or is there only one that you think 14:57:57 it could? 14:57:59**

MR. WELCH: Well, he said he is 14:58:00 going to be guessing. He is not going to 14:58:01 guess at any possibility, so... 14:58:03

A. I'm not gonna guess. I don't know. 14:58:05

**Q. Okay. I will continue reading. "All 14:58:06 department equipment must be secured and turned 14:58:07 in by April 20th, 2006. All contact must be 14:58:10 through officer Paul Trosko. He will give you 14:58:12 a detailed receipt for all equipment. I 14:58:15 apologize for any inconvenience this has caused 14:58:17 and if there is anything I can do, please call. 14:58:18 Keep the faith, respectfully, George B. Hesse." 14:58:20 CC Joseph Loeffler, Mayor/Police Commissioner, 14:58:24 Mary Anne Minerva, Kenneth Gray, Village 14:58:25 Attorney. 14:58:27**

**Did you have any conversations with 14:58:28 George Hesse concerning what's set forth in 14:58:31 this document? 14:58:33**

A. Yes, I did, but those conversations 14:58:34 were during executive session with the presence 14:58:39 of counsel that we used to advise us on the 14:58:42 issue. 14:58:45

Loeffler

**Q. Then I won't ask you to testify to 14:58:46 those matters. 14:58:49**

**If you look up to the top right-hand 14:58:49 corner of the document in the header it says 14:58:51 George B. Hesse, Chief of Police. 14:58:54**

**Was George Hesse ever the chief of 14:58:55 police in Ocean Beach? 14:58:57**

A. No, he was not. 14:58:57

**Q. What was George Hesse's position in 14:59:02 the Ocean Beach Police Department on April 6, 14:59:04 2007? 14:59:06**

A. I don't know if that was after that 14:59:06 letter I wrote or not. 14:59:06

THE COURT REPORTER: I can't hear 14:59:06 you. 14:59:06

THE WITNESS: Oh, I'm sorry. 14:59:06

A. I don't know if that was after the 14:59:27 order that I gave to him removing him from duty 14:59:29 or not. 14:59:32

**Q. Are you referring to Loeffler 8? 14:59:33 Maybe if I could put that in front of you to -- 14:59:35 is that the order you are referring to? 14:59:41**

A. Yes. 14:59:43

**Q. And that order is dated March 26, 14:59:43**

**Loeffler**

**2007? 14:59:45**

A. Yes, it is. 14:59:45

**Q. And April 6, 2007 is obviously 14:59:46 subsequent to March 26, 2007; correct? 14:59:49**

A. Yes, it is. 14:59:51

**Q. Does George Hesse having written 14:59:52 this letter concerning Officer Hardman's 14:59:56 employment under the heading George B. Hesse, 14:59:58 Chief of Police, does that in any way violate 15:00:01 the terms of Loeffler 8, as you understand 15:00:03 them? 15:00:06**

MR. WELCH: Objection to the extent 15:00:07 that it calls for a legal conclusion, and 15:00:09 also there is no foundation whatsoever and 15:00:12 that this witness didn't actually draft 15:00:15 this document and -- but to that extent you 15:00:18 can answer the question. 15:00:22

A. I believe the document was drafted 15:00:25 by George at the direction of counsel and the 15:00:27 board. 15:00:31

**Q. Do you recall whether George Hesse 15:00:31 obtained board approval before sending this 15:00:34 document? 15:00:36**

A. It was done at the direction of the 15:00:37

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

board, so I would assume that meant it must be approved. 15:00:38 15:00:41

**Q. Have any of the things that we have been discussing in the last several minutes refreshed your recollection as to the nature of the impending litigation that's referenced in Loeffler 13? 15:00:54 15:00:56 15:00:58 15:01:00 15:01:01**

MR. WELCH: Objection to the form. And I don't know what you are referring to, but if the witness was referring to, as far as the last several minutes of your conversation, you can answer the question. If you don't, then you can ask him to rephrase it. 15:01:02 15:01:09 15:01:10 15:01:12 15:01:14 15:01:16 15:01:18

Is your recollection refreshed by your prior conversation this past few minutes? 15:01:22 15:01:24 15:01:24

**Q. You know what, to avoid any ambiguity, do you, as you sit here now, recall what the nature of the impending litigation referenced in Loeffler 13 is? 15:01:25 15:01:27 15:01:30 15:01:33**

A. It was the -- 15:01:35

MR. WELCH: Objection. Asked and answered. 15:01:36 15:01:37

Loeffler

You can answer it. 15:01:37

A. Probably -- I don't want "probably." It was the arrest of certain police officers within the Police Department. 15:01:38 15:01:47 15:01:50

**Q. Which police officers? 15:01:52**

A. Hardman and Hesse. 15:01:53

**Q. Were any other officers arrested as part of that impending litigation? 15:01:56 15:01:59**

A. Emburey and Carollo. 15:02:00

MR. GRAFF: I am going to ask the court reporter to please mark as Exhibit Loeffler 14 a one-page document produced by Ocean Beach bearing Bates number 4431. 15:02:14 15:02:15 15:02:17 15:02:19 15:02:21

(Loeffler Exhibit 14, letter dated August 6, 2007, Bates stamped 004431, marked for identification.) 15:02:50 15:02:50 15:02:59

**Q. Mayor Loeffler, when your counsel is finished reviewing the document, if you could please review the document yourself and let me know if this is a document you have seen before? 15:02:59 15:03:01 15:03:02 15:03:04 15:03:06**

MR. WELCH: Have you seen this before? 15:03:06 15:03:07

Loeffler

(Document review.) 15:03:08

A. Yes, sir. 15:03:08

**Q. Is this a letter that you wrote? 15:03:22**

A. Yes, it is. 15:03:24

**Q. Why did you write this letter? 15:03:25**

MR. WELCH: To the extent that it may call for privilege with counsel, attorney/client privilege. If it doesn't, you can answer. If it does, to the extent that you drafted this as a result of conversations with counsel, then I direct you not to answer the question. 15:03:27 15:03:28 15:03:32 15:03:35 15:03:37 15:03:38 15:03:40

A. This was done under advice of counsel. This letter was written under the advice of counsel. 15:03:41 15:03:43 15:03:47

**Q. Was Paul Carollo arrested, to your knowledge, at the same time as Officer Hardman? 15:03:48 15:03:52**

A. Yes. 15:03:54

**Q. And, to your knowledge, was Paul Carollo rehired in the 2007 season? 15:03:56 15:04:00**

A. I don't know. 15:04:04

**Q. When you write: "Dear Officer Carollo, Civil Service rules and regulations require you to work at least one tour during 15:04:08 15:04:10 15:04:13**

**Loeffler**

**the calendar year," what is the source of your knowledge about those civil service rules and regulations? 15:04:15 15:04:18 15:04:20**

MR. WELCH: To the extent you did not learn it -- to the extent you learned that outside of conversations with counsel, you can answer. 15:04:21 15:04:22 15:04:23 15:04:24

Do you have an independent -- 15:04:26

A. I would think it came from counsel. I would believe it came from counsel. I'm not versed on Civil Service law. 15:04:28 15:04:32 15:04:33

**Q. When you wrote: "You may work one tour for the Village under modified duty assignment to fulfill the requirement and maintain your status," what status were you referring to? 15:04:35 15:04:40 15:04:42 15:04:44 15:04:46**

A. Police officer. 15:04:47

**Q. And when you refer to modified duty assignment, what was the nature of the modified duty assignment? 15:04:48 15:04:50 15:04:53**

A. It would be without your weapon, it would be of a clerical nature, no weapon, no badge, civilian clothes. The same restrictions that were put onto Patrolman Hesse. 15:04:54 15:04:57 15:05:01 15:05:04

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

THE COURT REPORTER: "Put onto" -- 15:05:04

THE WITNESS: Police Officer Hesse. 15:05:09

**Q. When you wrote: "Hopefully you will take advantage of this opportunity. Upon the successful completion of court actions, we would like to reinstate you to your previous assignment," what were the court actions that you are referring to? 15:05:09 15:05:11 15:05:13 15:05:14 15:05:16 15:05:18**

A. The arrest. 15:05:19

**Q. Do you know what charges, if any, were brought against Paul Carollo? 15:05:25 15:05:27**

A. Paul Carollo was arrested, but I don't know what the charges were. 15:05:30 15:05:32

**Q. Do you know -- strike that. 15:05:33**

**Do you know why this letter to Paul Carollo was from you rather than from George Hesse? 15:05:50 15:05:52 15:05:54**

MR. WELCH: Objection. To the extent it calls for conversations you may have had with counsel or at the direction of counsel or on advice of counsel, I direct you not to answer, but to the extent that it is outside of that, those caveats, you can answer. 15:05:55 15:05:55 15:05:57 15:05:59 15:06:01 15:06:03 15:06:05

Loeffler

A. I would -- obviously I was directed by counsel to do this and that's what I did. 15:06:07 15:06:09

**Q. Do you know whether Officer Carollo worked one tour under modified duty assignment subsequent to your drafting of this letter? 15:06:14 15:06:17 15:06:20**

A. I don't know that. 15:06:22

**Q. Did you ever have any conversations with Paul Carollo about this letter? 15:06:24 15:06:25**

A. No, sir. 15:06:27

**Q. Did you have any conversations with Paul Carollo subsequent to August 6, 2007? 15:06:27 15:06:29**

A. No. 15:06:32

**Q. None at all? 15:06:32**

A. None at all. 15:06:33

**Q. What about Officer Hardman, did you have any conversations with him subsequent to April 6, 2007? 15:06:38 15:06:40 15:06:42**

A. No. 15:06:43

**Q. Did you have any conversations with George Hesse about his arrest? 15:06:44 15:06:59**

A. Yes. 15:07:00

**Q. How many times have you spoken with George Hesse about his arrest? 15:07:06 15:07:08**

A. I don't know. 15:07:12

Loeffler

**Q. Can you recall anything that was discussed between the two of you about his arrest? 15:07:17 15:07:20 15:07:21**

MR. WELCH: Just the arrest? Is that all you are asking about? 15:07:23 15:07:24

MR. GRAFF: The arrest and any charges that were brought against him. 15:07:26 15:07:28

A. The charges were false and he was going to be exonerated. That's what he believed. 15:07:29 15:07:31 15:07:31

THE COURT REPORTER: I'm sorry? 15:07:31

A. That the charges were false and he would be fully exonerated. That was his belief. That's what he expressed to me. 15:07:34 15:07:35 15:07:38

**Q. Did he communicate to you what those charges were? 15:07:40 15:07:43**

A. No. 15:07:43

**Q. Do you have any understanding of what those charges are, as you sit here today? 15:07:43 15:07:45**

MR. WELCH: Objection. 15:07:49

You can answer. 15:07:50

A. He was charged with an assault. 15:07:50

**Q. Did you have any conversations with George Hesse concerning the incident that was 15:07:52 15:07:55**

**Loeffler**

**charged as an assault? 15:07:57**

A. No. 15:07:58

MR. WELCH: Objection. 15:07:59

A. No, I did not. 15:08:00

**Q. Did you ever learn from anyone other than your counsel any information about the events that were charged as an assault? 15:08:07 15:08:09 15:08:13**

A. I don't understand the question. 15:08:15

**Q. Well, presumably something happened and on the basis of that George Hesse was charged with an assault. I'm asking now if you are aware of what it was that happened that led him to be charged with an assault. 15:08:18 15:08:23 15:08:25 15:08:28 15:08:30**

MR. WELCH: Objection. Form. Foundation. Why don't you just ask him if he is aware of whatever incident was the underlying result of the indictment of George Hesse. Just ask him. 15:08:32 15:08:34 15:08:35 15:08:37 15:08:39

**Q. Are you aware? 15:08:41**

A. Yes. 15:08:41

**Q. What is the underlying incident? 15:08:42**

A. There is an allegation that there was an assault that took place within the police station and George Hesse was the 15:08:43 15:08:45 15:08:47

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

perpetrator of that assault. 15:08:50

**Q. Did you ever discuss the purported assault with George Hesse? 15:08:53**

A. No, I have not. 15:08:55

**Q. Did you ever discuss it with any officers at the Ocean Beach Police Department? 15:08:57**

A. No, I have not. 15:08:57

**Q. Did you ever discuss it with any employee of Ocean Beach? 15:09:00**

A. No, I have not. 15:09:01

**Q. Is that incident the first incident that you are aware of wherein George Hesse has been accused of assaulting a civilian in the course of his duties as an employee of the Ocean Beach Police Department? 15:09:24**

MR. WELCH: Objection to the form. 15:09:25

You can answer. 15:09:26

A. No, it's not. 15:09:30

**Q. How many prior incidents are you aware of? 15:09:33**

A. One. 15:09:33

**Q. And what incident are you referring to? 15:09:36**

A. Prisco V Ocean Beach, there is a 15:09:36

Loeffler

pending lawsuit. 15:09:40

**Q. Did you ever have any discussions with George Hesse about that lawsuit? 15:09:43**

A. Nope. 15:09:44

**Q. Do you know what's alleged in that lawsuit? 15:09:47**

A. I am trying to think if I read the allegations. No, I don't think I ever read that one. 15:09:58

**Q. When George Hesse expressed to you that the charges in the more recent lawsuit were without merit and he would be exonerated, do you believe that they are without merit and will be -- and he will be exonerated? 15:10:14**

MR. WELCH: Objection. 15:10:17

MR. CONNOLLY: Objection. 15:10:18

MR. WELCH: Why don't you ask him if he has any personal knowledge of the incident. That would be an appropriate question. Otherwise it's an entirely irrelevant line of inquiry as to what he believes as far as the legitimacy or merit to the allegations as against Mr. Hesse. 15:10:27

MR. GRAFF: Let me ask a different 15:10:29

Loeffler

question. 15:10:30

MR. WELCH: Is that question withdrawn? Are you withdrawing that question? 15:10:32

MR. GRAFF: I am asking a different question than that question. 15:10:33

MR. WELCH: So then withdrawn. You can answer his next question. 15:10:36

MR. GRAFF: Presumably you will want to wait to hear it, but... 15:10:38

MR. WELCH: We are all waiting. 15:10:41

**Q. Did you ever make any statements to anyone else to the effect that the charges against George Hesse were without merit and that he would be exonerated? 15:10:53**

MR. WELCH: Objection. 15:10:55

You can answer. 15:10:56

A. Yeah, I did. 15:10:58

**Q. And who did you make such statements -- 15:11:00**

A. Everybody I know. 15:11:01

**Q. Did you ever make such statements to the press? 15:11:05**

A. I don't recall. 15:11:05

Loeffler

**Q. When you made those statements, did you believe them to be true? 15:11:11**

A. Yes, I did. 15:11:12

**Q. As you sit here today, do you believe them to be true? 15:11:15**

A. Yes, I do. 15:11:16

MR. WELCH: Objection. 15:11:17

You can answer. 15:11:17

**Q. Mayor Loeffler, just to go back very quickly to something that we had touched on earlier, did you ever accidentally shoot your brother, Alan Loeffler? 15:11:43**

MR. WELCH: Objection. 15:11:44

You can answer. 15:11:45

A. Yes. 15:11:45

**Q. So when I asked you earlier today if you had ever shot anyone inadvertently, why didn't you tell me that you had accidentally shot your brother, Alan Loeffler? 15:11:56**

A. I was five years old. I forgot about that. 15:12:00

**Q. You were five years old at the time of that shooting? 15:12:03**

A. Uh-huh. 15:12:03

9e28f7aa-4e93-4641-9524-8529961356c8

Page 249

Loeffler

MR. WELCH: Is that a yes? 15:12:04

A. Yes, I was five years old. Six. He was five. 15:12:05 15:12:07

**Q. Do you know whether your brother, Alan Loeffler, sustained any permanent injuries from -- 15:12:08 15:12:09 15:12:14**

MR. WELCH: Objection. Ari, what is the relevance of this line of inquiry? This is palpably improper and now you are harassing Mr. Loeffler. 15:12:14 15:12:15 15:12:17 15:12:20

MR. GRAFF: This is really my last question on that -- 15:12:20 15:12:22

MR. WELCH: That's your only question, because I am not going to allow him to answer that question. 15:12:22 15:12:23 15:12:25

MR. GRAFF: You are instructing him not to -- 15:12:25 15:12:25

MR. WELCH: I am instructing him not to answer that question. You can call the court right now if you want to ask him when he may have shot his brother accidentally when his brother was five years old, when he was five years old, which was what, how many years, fifty years ago approximately? 15:12:25 15:12:26 15:12:28 15:12:29 15:12:30 15:12:32 15:12:32

Page 250

Loeffler

THE WITNESS: Fifty-five years ago. 15:12:36

MR. WELCH: Fifty-five years ago. 15:12:36

MR. GRAFF: I can ask a more specific question. 15:12:37 15:12:38

**Q. Do you know whether as a result of being shot on that occasion there was any impact on Alan Loeffler's ability to serve as a police officer as an adult? 15:12:39 15:12:40 15:12:42 15:12:46**

A. No. 15:12:49

MR. WELCH: Objection to form. 15:12:49

A. No. 15:12:50

**Q. Are you aware that the Complaint in this lawsuit includes certain allegations about an incident that occurred at Houser's Bar on Halloween 2004? 15:12:58 15:12:59 15:13:02 15:13:04**

A. Yes. 15:13:06

MR. WELCH: Objection. 15:13:07

You can answer. 15:13:08

**Q. If I refer to the Halloween incident, will you understand what I am referring to? 15:13:09 15:13:11 15:13:12**

A. Yes. 15:13:13

**Q. When did you first learn any information about any events involved in the 15:13:14 15:13:19**

Page 251

Loeffler

**Halloween incident? 15:13:22**

A. The night of the incident. 15:13:23

**Q. And how did you come to learn of the incident on that night? 15:13:28 15:13:30**

A. I was driving the Ocean Beach volunteer Fire Department ambulance. We were toned out by Yaphank fire central to respond to the Ocean Beach police station referencing an assault. So I responded to the firehouse, I'm a chauffeur for the ambulance, and I drove the ambulance to the police station. 15:13:31 15:13:34 15:13:37 15:13:42 15:13:49 15:13:54 15:13:57

**Q. Did you get out of the ambulance? 15:13:58**

A. Yes. 15:14:00

**Q. Did you go into the police station? 15:14:00**

A. Yes. 15:14:02

**Q. Could you describe as much as you remember of what happened from the time you entered the police station until you exited it. 15:14:02 15:14:04 15:14:06**

A. I carried in -- I parked the vehicle in front of the police station. The paramedics got out of the vehicle. I carried in the jump bag or the paramedic bag. I was greeted at the entrance to the squad room by Kevin Lamm. Kevin Lamm said to me "we've got a guy here hit 15:14:10 15:14:14 15:14:18 15:14:21 15:14:25 15:14:29

Page 252

Loeffler

in the head with a pool cue." I said to Kevin, Officer Lamm, "sounds like you might have an assault 2, you should call a third squad." I put the bag done and I went outside. 15:14:35 15:14:39 15:14:42 15:14:46

**Q. Do you recall where you were standing when you made the comment to Officer Lamm about assault 2? 15:14:49 15:14:50 15:14:52**

A. Right in the doorway. 15:14:53

**Q. Were you leaning on the doorway? 15:14:55**

A. No. He was. 15:14:57

**Q. And what happened when you left the police station? 15:15:03 15:15:07**

A. I went out in the ambulance and sat in the ambulance. 15:15:07 15:15:09

**Q. And at a certain point did you do something else? 15:15:10 15:15:13**

MR. WELCH: Objection to the form. 15:15:14

You can answer. 15:15:16

A. I wait -- I waited for the paramedics to complete their assignment and the -- they placed the subject on a police boat for transportation to the mainland and we packed up the rig and went home. 15:15:16 15:15:19 15:15:27 15:15:29 15:15:32

**Q. Other than the brief communication 15:15:34**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**with Officer Lamm that you have already testified to, did you speak with anybody else that night? 15:15:37 15:15:39 15:15:41**

A. No. 15:15:41

**Q. The next day did you speak to anybody else -- to anybody at all about the events of the night before? 15:15:42 15:15:48 15:15:51**

A. No. 15:15:52

**Q. When was the first time, if at all, that you spoke to anybody about the events of that night? 15:15:52 15:15:56 15:15:57**

A. Maybe Monday or Tuesday. 15:15:58

**Q. What day of the week was the Halloween incident? 15:16:03 15:16:04**

A. I believe it was a Saturday. 15:16:05

**Q. And who is the first person who you spoke to about that incident? 15:16:08 15:16:10**

A. Mary Anne Minerva. 15:16:11

**Q. What did you say to Mary Anne Minerva? 15:16:12 15:16:14**

A. She told me that there was an incident that took place at the Halloween -- at Houser's Hotel and it involved the Bosetti brothers. 15:16:14 15:16:16 15:16:19 15:16:22

Loeffler

**Q. On the night of the incident, were you aware that it involved the Bosetti brothers? 15:16:22 15:16:24 15:16:27**

A. No. 15:16:27

**Q. Did you have any information on the night of the incident as to who was involved? 15:16:27 15:16:30**

A. No. 15:16:33

**Q. Were you then serving as a member of the Village Board of Trustees? 15:16:33 15:16:39**

A. Yes. 15:16:40

**Q. And the mayor at that time was Mayor Rogers? 15:16:41 15:16:47**

A. Yes. 15:16:47

**Q. Did you ever have any conversations with Mayor Rogers about the Halloween incident? 15:16:48 15:16:49**

A. Not that I recall. 15:16:52

**Q. After your conversation with Mary Anne Minerva, do you recall who you spoke to next about the Halloween incident? 15:16:58 15:17:00 15:17:02**

MR. WELCH: If anyone. 15:17:04

A. Yes. 15:17:06

**Q. Who is the next person you spoke to? 15:17:11**

A. George Hesse. 15:17:13

**Q. And when did you have that 15:17:16**

Loeffler

**conversation with George Hesse? 15:17:19**

A. A couple of days later. 15:17:20

**Q. In substance, what was discussed between you and George Hesse? 15:17:22 15:17:24**

A. I asked him what was going on and he said that Chief Paradiso had instructed him to conduct an investigation, that the investigation that was done that night was improper, and that Chief Paradiso had instructed him to conduct an investigation to find out exactly what happened, and that's what he was going to do. 15:17:25 15:17:28 15:17:33 15:17:34 15:17:36 15:17:38 15:17:41 15:17:43

**Q. Did you ask him in what way the investigation conducted on the night of was improper? 15:17:44 15:17:46 15:17:49**

A. No, I did not. 15:17:49

**Q. Did you think you understood what he was talking about? 15:17:50 15:17:51**

MR. WELCH: Objection. 15:17:52

You can answer. 15:17:53

A. No, I don't know what he was talking about. 15:17:54 15:17:55

**Q. Were you a detective with the Suffolk County Police Department at that time? 15:17:55 15:17:57**

Loeffler

A. Yes, I was. 15:17:58

**Q. Other than what you have already testified to about that conversation with George Hesse, was anything else communicated between the two of you in that conversation? 15:17:59 15:18:08 15:18:09 15:18:11**

A. No. 15:18:13

**Q. Who, if anyone, did you speak to about the Halloween incident following that conversation with George Hesse? 15:18:13 15:18:16 15:18:18**

A. I don't recall who I spoke to, if anybody. 15:18:23 15:18:30

**Q. Did you ever speak to anybody about the Halloween incident for the purpose of obtaining further information about what happened that night? 15:18:31 15:18:35 15:18:37 15:18:38**

MR. WELCH: Object to the form. 15:18:39

You can answer. 15:18:40

A. No. 15:18:42

**Q. Between the conversation with George Hesse that you testified to and today, have you had any conversations that you can recall with anybody about the Halloween incident other than your counsel? 15:18:43 15:18:47 15:18:52 15:18:54 15:18:56**

A. Yes. 15:18:57

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**Q. And who can you recall having conversations with about that incident? 15:18:57 15:18:59**

A. The Suffolk County District Attorney's office. 15:19:00 15:19:02

**Q. Who specifically? 15:19:02**

A. ADA Biancavilla. 15:19:03

**Q. And did you speak with that ADA on more than one occasion? 15:19:08 15:19:12**

A. No, just once. 15:19:12

**Q. And did he initiate that communication? 15:19:13 15:19:16**

A. Yes, he did. 15:19:16

**Q. Did he call you? 15:19:17**

A. He called my counsel. 15:19:18

**Q. And did you ever speak with him directly? 15:19:20 15:19:22**

A. Yes. 15:19:23

**Q. Did you understand why he was seeking to speak with you? 15:19:23 15:19:28**

MR. WELCH: Objection as to what his understanding is, your knowledge of his understanding of why he was speaking to you, but if you know, you can answer. 15:19:29 15:19:30 15:19:32 15:19:34

A. The reason for the conference was 15:19:36

Loeffler

not that particular incident. 15:19:38

**Q. Was that incident discussed in that conference? 15:19:42 15:19:44**

A. Yes, it was. 15:19:44

**Q. And in substance what was discussed -- actually, strike that. What did -- 15:19:45 15:19:48 15:19:50**

MR. JEMAL: I need to take a quick break to speak with Mike. 15:19:52 15:19:54

MR. GRAFF: Is this for privilege purposes? 15:19:56 15:19:57

MR. JEMAL: It is for privilege purposes. 15:19:57 15:19:59

MR. WELCH: It is to discuss privilege. 15:19:59 15:19:59

MR. GRAFF: Let's go off the record 15:19:59

THE VIDEOGRAPHER: Going off the record. The time is 3:20 p.m. 15:20:01 15:20:02

(Recess was taken from 3:20 to 3:24.) 15:20:04 15:20:04

THE VIDEOGRAPHER: We are back on the record. The time is 3:24 p.m. This is the beginning of the tape labeled number 4. 15:22:56 15:23:38 15:23:41 15:23:43

Loeffler

BY MR. GRAFF: 15:23:45

**Q. Mayor Loeffler, was the Halloween incident discussed in that conference with ADA Biancavilla? 15:23:45 15:23:48 15:23:51**

A. Yes, it was. 15:23:51

**Q. And what do you recall ADA Biancavilla saying about the Halloween incident in that conversation? 15:23:52 15:23:54 15:23:56**

A. He asked me what I knew about it. 15:23:56

**Q. And what did you say in response? 15:23:58**

A. The same sum and substance that I told you already. 15:24:00 15:24:02

**Q. Was anything else about the Halloween incident discussed in that conversation? 15:24:03 15:24:04 15:24:06**

A. No, there was not. 15:24:06

**Q. Did he ask you any follow-up questions? 15:24:07 15:24:08**

A. With reference to -- 15:24:09

**Q. The Halloween incident. 15:24:10**

A. No. 15:24:12

**Q. What else, if anything, was discussed in that conference? 15:24:13 15:24:14**

A. There were some questions -- he 15:24:17

Loeffler

asked me questions about the Gilberd incident and he asked me questions -- general questions about Village government and how it was run. 15:24:22 15:24:28 15:24:34

**Q. Do you recall any of the specific questions he asked you about how the Village government is run? 15:24:38 15:24:41 15:24:43**

A. He just asked me, you know, when I became mayor, when I was a trustee, what, in fact, was my role with the Police Department. That was about it. 15:24:44 15:24:46 15:24:51 15:24:54

**Q. And in substance what did you say in response to those questions about the Village government? 15:24:55 15:24:57 15:24:59**

MR. WELCH: Why don't we break it down into which parts of the questions he responded to. 15:24:59 15:25:01 15:25:03

**Q. About your role in the Police Department, what did you say in response to his question on that subject? 15:25:04 15:25:06 15:25:08**

A. That my role with the Police Department only started when I became mayor in 2006. Before that I had no -- limited involvement with the Police Department. 15:25:09 15:25:10 15:25:12 15:25:16

**Q. Did ADA Biancavilla ask you 15:25:17**

Page 261

Loeffler

**questions about any other employees of Ocean Beach in that conference?** 15:25:27 15:25:28

A. No. 15:25:30

**Q. And what, if anything, did ADA Biancavilla ask you about the Gilberd incident in that conference?** 15:25:32 15:25:39 15:25:41

A. He asked me what I knew about it. 15:25:43

**Q. And what did you say in response to that?** 15:25:47 15:25:49

A. I said I didn't know very much about it. That there was someone who was hurt in the police station and that George Hesse was arrested for that incident. 15:25:49 15:25:51 15:25:55 15:25:56

**Q. And I think the Gilberd incident hadn't been identified yet in your testimony.** 15:26:04 15:26:06

**Just to be clear, there is the Prisco incident that you referred to, the Gilberd incident and the Halloween incident, three separate incidents?** 15:26:08 15:26:10 15:26:12 15:26:14

A. Yes. 15:26:15

**Q. What else, if anything, was discussed in that conference with ADA Biancavilla?** 15:26:16 15:26:19 15:26:20

A. That was all. 15:26:21

Page 262

Loeffler

**Q. Did you have any further discussions with ADA Biancavilla after that?** 15:26:22 15:26:24

A. No, I have not. 15:26:26

**Q. Have you had any further discussions with anyone from the District Attorney's office?** 15:26:27 15:26:29 15:26:31

A. No, I have not. 15:26:31

**Q. Prior to that conversation with ADA Biancavilla had you had any conversations with anyone from the District Attorney's office?** 15:26:32 15:26:33 15:26:36

A. No, I have not. 15:26:38

**Q. After that conference with ADA Biancavilla, did you have any discussions with anybody else about that conference?** 15:26:39 15:26:46 15:26:49

A. Yes. 15:26:51

**Q. Who did you speak with about that conference?** 15:26:54 15:26:55

MR. WELCH: Aside from counsel. 15:26:56

A. My attorneys, counsel. 15:26:57

**Q. Other than counsel, did you --** 15:26:58

A. Oh, no. 15:26:58

**Q. -- discuss it with anyone else?** 15:26:59

A. No. 15:27:00

**Q. After that conversation with ADA** 15:27:00

Page 263

Loeffler

**Biancavilla, who else, if anyone, did you thereafter speak with about the Halloween incident?** 15:27:09 15:27:13 15:27:14

MR. WELCH: Objection. Asked and answered. 15:27:14 15:27:14

You can answer it again. 15:27:15

A. No one. I haven't spoken to anybody about that. 15:27:16 15:27:18

**Q. Did you ever review any statements that were taken in the course of any investigation into the Halloween incident?** 15:27:20 15:27:23 15:27:24

A. No, I have not. 15:27:26

**Q. Did you take any notes during that conference with ADA Biancavilla?** 15:27:29 15:27:31

A. No, I did not. 15:27:33

**Q. Other than what you have already testified to today, is there any other information that you can think of that you have concerning the Halloween incident?** 15:27:34 15:27:39 15:27:42 15:27:44

MR. WELCH: Objection to the form. 15:27:46

You can answer to the extent you haven't already. 15:27:48 15:27:51

A. What information are you talking about? 15:27:52 15:27:55

Page 264

Loeffler

**Q. Did you ever obtain from any other source any further information about the Halloween incident?** 15:27:55 15:27:58 15:27:59

A. No. 15:28:00

**Q. How did you first learn about the Gilberd incident?** 15:28:02 15:28:04

A. I believe it was a newspaper article. 15:28:05 15:28:12

**Q. Do you recall what that newspaper was?** 15:28:13 15:28:15

A. It would either be Newsday or the Daily News, because those are the two papers that I read every day. 15:28:15 15:28:20 15:28:22

**Q. Do you subscribe to those newspapers?** 15:28:23 15:28:26

A. No. 15:28:26

**Q. Do you purchase them?** 15:28:27

A. Yes. 15:28:28

**Q. Do you read them online ever?** 15:28:28

A. No. 15:28:30

**Q. Do you use the Internet personally?** 15:28:31

A. Yes. 15:28:34

**Q. Do you have an e-mail address in your capacity as mayor of Ocean Beach?** 15:28:34 15:28:35

9e28f7aa-4e93-4641-9524-8529961356c8

Page 265

Loeffler

A. Yes, I do. 15:28:37

**Q. Is that an official e-mail address? 15:28:38**

A. Yes, it is. 15:28:40

**Q. What is that address, please? 15:28:40**

A. J-L-O-E-F-F-L-E-R at Village of Ocean Beach, all one word, dot-org. 15:28:42 15:28:46

**Q. Did you have an e-mail address at the Village of Ocean Beach during any of the time that you served as trustee at Ocean Beach? 15:28:50 15:28:52 15:28:54**

A. No. 15:28:56

**Q. To your knowledge, does anybody else have an e-mail address that ends in Village of Ocean Beach dot-org? 15:28:57 15:29:00 15:29:03**

A. Yes. 15:29:05

**Q. Who else? 15:29:06**

A. There are numerous people in the Village that have that. 15:29:07 15:29:09

**Q. Do you know when those e-mail addresses were first created or assigned? 15:29:10 15:29:14**

MR. WELCH: Objection to the form. 15:29:17

You can answer. 15:29:20

A. No, I don't know exactly when. 15:29:20

**Q. Do you know whether Ed Paradiso -- do you know approximately when, like if you 15:29:25 15:29:28**

Page 266

Loeffler

**could approximate by year? 15:29:31**

A. It was after we developed our website, so I don't know when that was. 15:29:33 15:29:34

**Q. Was that during your service as trustee? 15:29:37 15:29:39**

A. I'm not sure when the website was developed. 15:29:40 15:29:46

**Q. Do you know whether Ed Paradiso had an official Ocean Beach e-mail address? 15:29:47 15:29:49**

A. No, I do not. 15:29:51

**Q. Do you know whether anyone at the Ocean Beach Police Department had at any point an official Ocean Beach e-mail address? 15:29:52 15:29:54 15:29:56**

A. No, I do not. 15:29:58

**Q. Do you know whether today anybody at the Ocean Beach Police Department has an official Ocean Beach e-mail address? 15:29:59 15:30:00 15:30:02**

A. No, I do not. 15:30:03

**Q. Do you know whether George Hesse ever had an official Ocean Beach e-mail address? 15:30:04 15:30:06 15:30:08**

MR. WELCH: Objection. Asked and answered. 15:30:08 15:30:09

You can answer again. 15:30:09

Page 267

Loeffler

A. No, I don't. 15:30:09

**Q. Have you ever exchanged e-mail with George Hesse? 15:30:10 15:30:12**

A. No. 15:30:12

**Q. Are there any policies that you are aware of governing the use of official Ocean Beach e-mail accounts? 15:30:12 15:30:22 15:30:29**

A. Yes. 15:30:30

**Q. And what are the nature of those policies? 15:30:30 15:30:33**

MR. WELCH: Objection. 15:30:33

You can answer. 15:30:34

A. There is a written directive that all employees were given with reference to the use of the internet and Village equipment. 15:30:34 15:30:36 15:30:38

**Q. Do you know whether there is any rule or policy concerning the use of personal e-mail addresses in connection with any official business for Ocean Beach? 15:30:43 15:30:46 15:30:50 15:30:54**

MR. WELCH: Objection to the form. 15:30:57

You can answer. 15:30:58

A. I don't have the -- I don't know if you have a copy of the Village's Internet policy. 15:30:59 15:31:01 15:31:04

Page 268

Loeffler

**Q. Unless was that in the handbook perhaps? 15:31:04 15:31:06**

A. No, there is a policy. I'm not familiar -- without reading it to you right here, I couldn't answer that question. I don't know exactly what it says, but there is an Internet policy that's in place in the Village of Ocean Beach. 15:31:06 15:31:09 15:31:11 15:31:13 15:31:15 15:31:18

**Q. After reading about the Gilberd incident in the newspaper, who, if anyone, did you speak to about that incident? 15:31:20 15:31:22 15:31:26**

A. George Hesse. 15:31:28

**Q. Was he the first person you spoke to after reading about it in the newspaper? 15:31:31 15:31:34**

A. Uh-huh. 15:31:37

**Q. How long after reading about it -- 15:31:37**

THE COURT REPORTER: You have to answer verbally. 15:31:37 15:31:37

THE WITNESS: Oh, I'm sorry. 15:31:37

A. Yes. 15:31:37

**Q. How long after reading about it did you speak with George Hesse? 15:31:37 15:31:39**

A. A couple days after I read it, I believe. 15:31:40 15:31:43

Page 269

Loeffler

**Q. Why did you wait a couple of days to speak to him? 15:31:43 15:31:46**
A. I don't believe -- 15:31:46
MR. WELCH: Objection. 15:31:46
You can answer. 15:31:47
A. I don't believe he was working. 15:31:47
**Q. Have you ever called George Hesse on his cell phone? 15:31:49 15:31:52**
A. Yes, I have. 15:31:57
**Q. Have you ever called George Hesse on his home phone? 15:32:00 15:32:02**
A. No, I have not. 15:32:02
**Q. What did you say to George Hesse when you first communicated with him about the Gilberd incident? 15:32:04 15:32:08 15:32:11**
A. I asked him what happened. 15:32:12
**Q. Did he respond to that question? 15:32:15**
A. Yes. 15:32:17
**Q. What did he say? 15:32:17**
A. He said a guy got hurt in the police station. 15:32:18 15:32:20
**Q. Did he give any further detail than what you just stated? 15:32:21 15:32:23**
A. No. 15:32:24

Page 270

Loeffler

**Q. Did you ask him for any further information? 15:32:24 15:32:26**
A. The only information I did say to him was, you know, that "I think that you should look to see if there is film for that." 15:32:26 15:32:28 15:32:32
**Q. And by "film," you mean video surveillance footage? 15:32:38 15:32:40**
A. Video surveillance footage. 15:32:41
**Q. And do you know whether there was film from it? 15:32:43 15:32:48**
A. There was not. 15:32:49
**Q. Was that -- did the Gilberd incident take place prior to the upgrade of the department's electronic surveillance? 15:32:49 15:32:52 15:32:54**
A. Yes. 15:32:56
**Q. Do you know who is responsible for maintaining video surveillance footage from the Ocean Beach Police Department? 15:32:58 15:33:00 15:33:04**
MR. WELCH: Objection to the form. 15:33:05
You can answer. 15:33:07
A. Right now today? 15:33:07
**Q. Let's start with today, please, yes. 15:33:09**
A. The officer on duty every day checks the cameras to make sure that they are 15:33:12 15:33:14

Page 271

Loeffler

operational and logs that into a log, as he does the phone record. There is a phone recorder also on the -- that's logged in every day to make sure it's operational. There is a logbook for that as well. 15:33:16 15:33:19 15:33:21 15:33:23 15:33:26
**Q. When did the phone -- when was the -- excuse me. 15:33:28 15:33:28**
**When was the phone recorder installed? 15:33:28 15:33:32**
A. I'm not sure. 15:33:33
**Q. Do you know whether there was a phone recorder in place during your service as trustee? 15:33:36 15:33:39 15:33:42**
A. I don't believe there was. 15:33:42
**Q. Have you ever heard any phone recordings from that phone recorder? 15:33:44 15:33:46**
A. No, I have not. 15:33:48
**Q. Do you know whether the video surveillance footage is saved on those tapes that it's recorded on or are they recorded over again? 15:33:50 15:33:55 15:34:01 15:34:04**
A. It's not on tape. 15:34:04
**Q. How -- and what medium are -- 15:34:06**
A. Digital. 15:34:08

Page 272

Loeffler

MR. CONNOLLY: Ari, just so we are clear, we are talking about the system as it exists today? 15:34:11 15:34:11 15:34:11
THE WITNESS: As exists today. 15:34:11
MR. GRAFF: As exists today. 15:34:12
**Q. Prior to the upgrade of the system, do you know in what medium the surveillance footage was stored? 15:34:15 15:34:18 15:34:20**
A. VHS tapes. 15:34:21
**Q. And were those VHS tapes kept in a library or were they reused? 15:34:23 15:34:26**
A. I don't know. 15:34:28
**Q. Have you ever seen any video library from those -- consisting of those VHS tapes? 15:34:28 15:34:31**
A. No, I have not. 15:34:35
**Q. Do you know how many hours of video footage can be stored on the DVR that's part of the current system? 15:34:38 15:34:43 15:34:46**
MR. WELCH: Objection to the form. 15:34:47
Is it a DVR system or is it something else? 15:34:49
A. It's a DVR system. Well, it's a surveillance camera system. 15:34:52 15:34:54
**Q. And by DVR, just so it's clear for the record, I was referring to digital video 15:34:56 15:34:59**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**recording. 15:35:00**

A. Uh-huh. 15:35:00

THE COURT REPORTER: You have to answer verbally. 15:35:00

A. Yes. 15:35:05

**Q. Do you recall whether when you read about the Gilberd -- 15:35:08**

A. Do you want me to answer the question? You asked me a question. I didn't answer it. You asked me how many days it was stored there. 15:35:12

**Q. Oh. Do you know how many? 15:35:13**

A. Yes, I do. 15:35:14

**Q. How many? 15:35:15**

A. Ninety days. 15:35:15

**Q. Other than checking to make sure that the system is working and logging that it is, do you know whether anyone actually reviews the recordings on a routine basis? 15:35:26**

A. No, I don't. 15:35:29

**Q. When you read about the Gilberd incident for the first time in the newspaper, could you describe for us now what you recall of the description of that incident? 15:35:54**

Loeffler

MR. WELCH: You want him to describe now an article that he read about the incident? Do you want him to describe to you an article that essentially involves a hearsay statement from what reporters, whomever is writing about this incident? 15:36:07

MR. GRAFF: Yes. 15:36:07

MR. WELCH: What he recalls about that? 15:36:10

MR. GRAFF: About the information that he read about in that article. 15:36:12

MR. WELCH: Okay. From whatever sources they got it from, whatever he recalls from that newspaper? 15:36:16

MR. GRAFF: I am asking about what he recalls from what he read in the newspaper. 15:36:20

MR. CONNOLLY: Okay, that's fine. 15:36:21

Go ahead. You can answer. 15:36:21

Can you recall reading from that newspaper article? 15:36:25

A. No, I can't -- I don't recall the sum and substance of what I read. It's a couple years ago. 15:36:31

Loeffler

**Q. After that conversation with George Hesse about the Gilberd incident that you referred to -- well, first of all, was anything further communicated between the two of you in that conversation? 15:36:49**

A. No. 15:36:49

**Q. Did you ever follow up with George Hesse to find out whether there was video of the incident? 15:36:54**

A. Not with George Hesse, no. 15:36:56

**Q. Did you ever follow up with anyone to find out? 15:36:59**

A. Yes. 15:37:00

**Q. Who did you follow up with? 15:37:00**

A. Chief Ed Paradiso. 15:37:02

**Q. And what did chief Ed Paradiso say when you asked him about that? 15:37:05**

A. The system was malfunctioning. 15:37:05

**Q. Other than the conversation with George -- well, strike that. Excuse me. 15:37:13**

**Other than discussing the video malfunction with Ed Paradiso, did you have any other conversation with Ed Paradiso about the Gilberd incident? 15:37:23**

Loeffler

A. No. 15:37:24

**Q. Other than the conversation that you have already referred to with George Hesse, did you have any further conversations with George Hesse about the Gilberd incident? 15:37:31**

A. No. 15:37:33

MR. WELCH: Objection. Asked and answered. 15:37:34

MR. CONNOLLY: Objection. 15:37:34

A. No. 15:37:35

**Q. Other than the fact that there was an injury in the police station, as you sit here today do you have any other information as to the facts involved in the Gilberd incident? 15:37:46**

MR. WELCH: Objection. 15:37:48

You can answer. 15:37:49

A. No, I don't. 15:37:49

**Q. Did George Hesse ever indicate to you that the injury to Mr. Gilberd was sustained when a clock hit him on the head? 15:37:54**

A. No. 15:37:57

**Q. Do you know what the nature of the injuries sustained by Mr. Gilberd were? 15:38:00**

MR. WELCH: Do you have personal 15:38:03

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

knowledge of what the injuries to 15:38:09
Mr. Gilberd are? 15:38:11
A. I believe it was a lacerated 15:38:13
bladder, but I'm not positive. 15:38:15
**Q. Do you know what the nature of the 15:38:23**
**injuries sustained by Mr. Prisco were? 15:38:24**
A. No, I do not. 15:38:26
MR. WELCH: Objection to the form of 15:38:30
that question. 15:38:31
**Q. Do you know the names of any of the 15:38:32**
**civilians who were involved in the Halloween 15:38:36**
**incident are? 15:38:38**
A. No, I do not. 15:38:39
**Q. Do you know the nature of the 15:38:41**
**injuries sustained by anyone in connection with 15:38:42**
**that incident? 15:38:45**
A. No, I do not. 15:38:45
**Q. After the Halloween incident what is 15:38:50**
**the first time that you can recall having any 15:38:51**
**communication with either Gary or Richey 15:38:53**
**Bosetti? 15:38:56**
A. I never spoke to them about that 15:38:58
incident. 15:38:59
**Q. Did you ever learn that either of 15:39:00**

**Loeffler**

**them were or were not involved in the incident 15:39:05**
**either way? 15:39:08**
A. I believe I did -- I'm not -- I am 15:39:08
trying to think how I learned. I did learn 15:39:25
that they were involved in the incident, but it 15:39:27
wasn't from George Hesse. I am trying to 15:39:29
think. I don't know. I don't know. I don't 15:39:34
recall. 15:39:37
**Q. Do you recall if not who 15:39:37**
**communicated to you that you were involved, do 15:39:42**
**you recall what the nature of their involvement 15:39:45**
**was that was communicated? 15:39:47**
A. No, that they were involved. That's 15:39:48
all I remember. 15:39:50
**Q. And do you recall learning that 15:39:50**
**anyone else in particular was involved in the 15:39:51**
**incident? 15:39:55**
A. No. 15:39:56
**Q. Other than the conversations with Ed 15:39:56**
**Paradiso and George Hesse that you have already 15:40:00**
**referred to, can you recall any other 15:40:03**
**conversations that you had with anyone other 15:40:05**
**than counsel about the Halloween incident? 15:40:06**
MR. WELCH: Objection. Asked and 15:40:08

Loeffler

answered. 15:40:09
You can answer it again. 15:40:09
A. No. 15:40:10
**Q. Did you discuss the Halloween 15:40:10**
**incident with any of your children? 15:40:12**
A. No. 15:40:13
**Q. Did you ever make a statement to 15:40:14**
**George Hesse to the effect of "we have to turn 15:40:36**
**this around" with reference to the Halloween 15:40:38**
**incident? 15:40:40**
A. No. 15:40:42
**Q. Did you ever make a statement to 15:40:43**
**that effect to anyone with reference to the 15:40:44**
**Halloween incident? 15:40:49**
A. No. 15:40:50
**Q. Do you recall whether the events 15:41:07**
**that led to Officer Gerdon's termination were 15:41:10**
**captured by any video surveillance system? 15:41:14**
A. Yes, they were. 15:41:18
**Q. And did you ever review that video? 15:41:21**
MR. WELCH: Objection. Asked and 15:41:23
answered. 15:41:23
A. No, I did not. 15:41:24
**Q. And I may have already asked the 15:41:25**

**Loeffler**

**question -- 15:41:29**
A. You did. 15:41:30
**Q. Yes. At this point do you recall 15:41:31**
**anything of the specific conduct that led to 15:41:32**
**Officer Gerdon's termination? 15:41:35**
MR. WELCH: Objection. 15:41:39
A. I already answered that. 15:41:40
MR. WELCH: He answered that 15:41:40
question. 15:41:45
**Q. Do you know an individual by the 15:41:45**
**name of Jean Jaeger is? 15:41:47**
A. Yes, I know who Jean Jaeger is. 15:41:56
**Q. Who is Jean Jaeger? 15:41:59**
A. She was married to Bud Jaeger, who 15:42:00
is deceased now, and they ran the movie 15:42:03
theater. 15:42:07
**Q. Do you know Mr. Jean Jaeger was 15:42:07**
**involved in any way in the Halloween incident? 15:42:14**
A. No, I don't. 15:42:15
**Q. Have you ever had any conversations 15:42:16**
**with Jean Jaeger concerning the Halloween 15:42:19**
**incident? 15:42:22**
A. No. 15:42:23
**Q. Other than running the movie 15:42:23**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**theater, do you know if Bud Jaeger held any other employment?** 15:42:26 15:42:28

A. He was a New York City fireman. 15:42:30

**Q. Do you know what position he held at the New York City Fire Department?** 15:42:32 15:42:34

A. He was a lieutenant. 15:42:36

**Q. Do you know whether he was ever a captain?** 15:42:37 15:42:39

A. Oh, maybe he was. I don't -- could have been. 15:42:39 15:42:42

**Q. Is Bud Jaeger ever referred to as Steven Jaeger? Is that the same person?** 15:42:42 15:42:46

A. Yes. 15:42:48

**Q. What was the nature of your relationship with Jean Jaeger?** 15:42:49 15:42:51

MR. WELCH: Objection. 15:42:53

To the extent you have one. 15:42:54

A. She is Bud's wife. No relationship. They worked the movie theater. 15:42:57 15:43:00

**Q. Were you ever -- were you friends with Bud Jaeger when he was living?** 15:43:02 15:43:05

A. No. 15:43:06

**Q. Do you know an individual by the name of Sean O'Rourke?** 15:43:07 15:43:09

Loeffler

A. Sean O'Rourke? Yes. 15:43:12

**Q. And who is Sean O'Rourke?** 15:43:13

A. He is resident of the Village. 15:43:16

**Q. Do you know where he works?** 15:43:19

A. In construction. In construction. 15:43:21

**Q. And do you know whether his construction work is based in Ocean Beach?** 15:43:26 15:43:27

A. Fire Island, yes. 15:43:29

**Q. And what, if any, relationship do you have with Sean O'Rourke?** 15:43:31 15:43:36

A. He is a captain of the Fire Department. I saw him last night at a fire. 15:43:37 15:43:39

**Q. Do you know whether Sean O'Rourke had any involvement in the Halloween incident?** 15:43:41 15:43:42

A. No, I don't. 15:43:45

**Q. Did you ever discuss the Halloween incident with Sean O'Rourke?** 15:43:46 15:43:48

A. No. 15:43:50

**Q. Have you ever heard of an individual named Ian Levine?** 15:43:51 15:43:56

A. Yes. 15:43:57

**Q. Who is Ian Levine?** 15:43:58

A. Resident of the Village of Ocean Beach. 15:43:59 15:44:01

Loeffler

**Q. Do you know where Ian Levine works?** 15:44:01

A. He runs the community garden center business in the Village of Ocean Beach. 15:44:05 15:44:10

**Q. And what, if any, relationship do you have with Ian Levine?** 15:44:11 15:44:14

A. I saw him last night at the fire too. He is a member of the Fire Department. 15:44:15 15:44:18

**Q. And when you are referring to seeing people last night at the Fire Department, can you explain what the context of that was?** 15:44:20 15:44:21 15:44:24

A. We had a fire alarm last night and they showed up. 15:44:25 15:44:28

**Q. Do you know whether Ian Levine had any involvement in the Halloween incident?** 15:44:29 15:44:31

A. No, I do not. 15:44:32

**Q. Did you ever discuss it with Ian Levine?** 15:44:33 15:44:34

A. No, I have not. 15:44:34

**Q. Do you know an individual by the name of Elyse Miller?** 15:44:36 15:44:38

THE COURT REPORTER: I'm sorry? 15:44:38

MR. GRAFF: Elyse Miller. 15:44:40

E-L-Y-S-E. 15:44:42

A. No, I don't know that name. 15:44:42

Loeffler

**Q. Do you know an individual by the name of Douglas Wykoff?** 15:44:44 15:44:51

A. Yes. 15:44:53

**Q. Who is Douglas Wykoff?** 15:44:54

A. A resident of the Village of Ocean Beach. 15:44:55 15:44:58

**Q. How long have you known Doug Wykoff?** 15:44:58

A. Thirty years, forty year. I don't know how old Doug is. Forty years. 15:45:01 15:45:05

**Q. And how would you describe your relationship with Doug Wykoff?** 15:45:06 15:45:09

A. He was my kid's kindergarten teacher. 15:45:11 15:45:15

**Q. And were you friendly with Doug Wykoff's family?** 15:45:15 15:45:20

A. Yes. 15:45:22

**Q. Does he live with his family in Ocean Beach?** 15:45:23 15:45:25

A. Yes. 15:45:25

**Q. What is Doug Wykoff's wife's name?** 15:45:25

A. This is a question and answer. Dale. Dale Wykoff. 15:45:31 15:45:33

**Q. With a D?** 15:45:34

A. With a D, yes. 15:45:36

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**Q. And what is Dale Wykoff's employment in Ocean Beach, if any? 15:45:37 15:45:42**

A. She is employed by the U.S. Postal Service. 15:45:42 15:45:45

**Q. Do you know whether the Wykoffs have any children? 15:45:45 15:45:53**

A. Yes. 15:45:54

**Q. How many children do they have? 15:45:55**

A. They had two. One is living. One is deceased. 15:45:56 15:46:03

**Q. What's the name of the child who is living? 15:46:04 15:46:08**

A. Marissa. 15:46:09

MR. WELCH: I don't know if this is relevant, Ari. 15:46:10 15:46:12

A. She is a New York City police officer. 15:46:15 15:46:16

**Q. Do you recall that earlier today I had asked you about any investigations or about certain investigation concerning Ed Paradiso's dual employment? 15:46:17 15:46:18 15:46:21 15:46:25**

A. Yes. 15:46:25

**Q. Do you know whether Dale Wykoff played any role in that investigation? 15:46:26 15:46:30**

Loeffler

MR. WELCH: Objection to the form. Objection to the use of the term "investigation." That wasn't your question earlier today. Your earlier question involved Mayor Rogers' investigation. 15:46:32 15:46:34 15:46:35 15:46:39 15:46:41

So to the extent that you can answer the question, I am noting my objection, you can. 15:46:43 15:46:46 15:46:48

A. Ask the question again. 15:46:49

**Q. Do you know whether Dale Wykoff played any role in the investigation by Mayor Rogers involving Ed Paradiso's dual employment? 15:46:52 15:46:54 15:46:59**

MR. WELCH: Objection. The question is did you play a role in the investigation. 15:47:01 15:47:02 15:47:05

A. No, I don't know that. 15:47:06

**Q. Do you know whether Dale Wykoff ever conducted her own investigation into that matter? 15:47:07 15:47:10 15:47:12**

A. No, I do not. 15:47:12

**Q. How old is Marissa Wykoff? 15:47:14**

A. She has got to be in her thirties. 15:47:23

**Q. And what was the name of Wykoffs' child that passed away? 15:47:26 15:47:28**

**Loeffler**

MR. WELCH: Objection. Ari, this is very irrelevant. 15:47:29 15:47:31

A. Douglas Junior. 15:47:32

**Q. And how old was Douglas -- when did Douglas Junior pass away? 15:47:34 15:47:37**

A. Let's see. He was 18. My son is 25. About seven, eight years ago maybe. Maybe eight years ago. 15:47:39 15:47:54 15:47:57

**Q. Was Douglas Junior, to your knowledge, friends with Mike Loeffler? 15:47:57 15:48:04**

A. Yes. They were Boy Scouts together. 15:48:05

**Q. What, if anything, do you know about the circumstances of Doug Wykoff Junior's death? 15:48:18 15:48:21 15:48:23**

MR. WELCH: Objection. Ari, what is the relevance of this to any of the allegations in this Complaint? Unless you can articulate that to me, I am going to direct the witness not to answer that question. And you can take it up with the judge, if you want. You can call the judge right now. We have time. 15:48:23 15:48:25 15:48:26 15:48:28 15:48:30 15:48:32 15:48:35 15:48:37

**Q. Do you know whether Michael Loeffler was ever questioned at all by any member of the 15:48:43 15:48:53**

**Loeffler**

**Ocean Beach Police Department in connection with the circumstances of Doug Wykoff Junior's death? 15:48:58 15:49:00 15:49:03**

MR. WELCH: Objection. I am going to direct the witness not to answer that question. Next question. 15:49:03 15:49:04 15:49:05

**Q. Did you ever have any communications with any of the plaintiffs in this lawsuit concerning the circumstances of Doug Wykoff Junior's death? 15:49:06 15:49:08 15:49:10 15:49:12**

A. No. 15:49:13

**Q. Did you have any conversations with any Ocean Beach police officers concerning the circumstances of Doug Wykoff Junior's death? 15:49:13 15:49:17 15:49:19**

A. No. 15:49:21

**Q. Did you have any communications ever with Mike Loeffler concerning the circumstances of Doug Wykoff Junior's death? 15:49:22 15:49:25 15:49:26**

MR. WELCH: Objection. I am going to direct the witness not to answer the question. 15:49:28 15:49:29 15:49:30

**Q. Do you know an individual by the name of Mitch Burns? 15:49:31 15:49:33**

A. No. 15:49:33

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**Q. Have you heard that name prior to today? 15:49:34 15:49:36**

A. Yes. 15:49:37

**Q. When did you first hear that name? 15:49:38**

A. It was mentioned -- I believe it's in the lawsuit. 15:49:40 15:49:41

**Q. Other than any reference to it in the lawsuit, do you recall ever hearing Mitch Burns' name in another context? 15:49:45 15:49:48 15:49:53**

A. Never met the man. Never met the man. 15:49:54 15:49:58

**Q. Did you ever hear his name other than in connection with this lawsuit? 15:49:58 15:50:00**

A. No. 15:50:01

**Q. And what reference is there to Mitch Burns in this lawsuit? 15:50:02 15:50:14**

MR. WELCH: Objection. Ari, why don't you show him the Complaint and ask him if he recalls the specific allegation. 15:50:15 15:50:16 15:50:18

**Q. Do you recall any allegations involving Mitch Burns? 15:50:18 15:50:20**

A. No, I don't recall the allegation. I just remember -- I remember the name. 15:50:20 15:50:24

**Q. And you remember the name from 15:50:25**

**Loeffler**

**reviewing the Complaint in this lawsuit? 15:50:33**

A. Yeah, I think so. 15:50:34

**Q. If I showed you the Complaint, do you think you could find the spot? 15:50:43 15:50:45**

A. No, I probably couldn't. 15:50:46

**Q. Did you ever review the answer that was filed to this Complaint in federal court, that is, these Plaintiffs' Complaint? 15:50:49 15:50:53 15:50:56**

A. Is that the one you showed me today? 15:50:59

**Q. No. The Answer to the Complaint, not to the Interrogatories. 15:51:01 15:51:07**

A. Well, I'm not an attorney, so I don't know exactly what you are asking me. 15:51:09 15:51:11

**Q. Do you have any information concerning an incident involving one of the Bosettis and an evidence locker on the Great South Bay? 15:51:21 15:51:22 15:51:24 15:51:28**

A. No. 15:51:28

**Q. Do you recall reading an allegation involving those three matters in the Complaint? 15:51:29 15:51:31**

MR. WELCH: Objection. Did you say "three matters"? Maybe I misunderstood the question. Can you repeat the question. 15:51:34 15:51:36 15:51:40

(Record read.) 15:51:54

Loeffler

MR. WELCH: So I am going to object to the form. It's compound. If you could just break down those three matters so we can get a clear record, I'd appreciate it. 15:51:56 15:51:58 15:52:00 15:52:01

**Q. Do you recall any allegation in the Complaint that involved all three of those matters? 15:52:02 15:52:03 15:52:05**

A. What matters is that? 15:52:05

**Q. An evidence locker, a Bosetti, and the Great South Bay. 15:52:07 15:52:09**

A. No. 15:52:10

**Q. Would your answer be the same if I changed evidence locker to file cabinet? 15:52:11 15:52:25**

MR. WELCH: Objection to the form. His answer is his answer. What he testified to earlier -- 15:52:29 15:52:31 15:52:32

A. I don't know what you are talking about, so I'm sorry. 15:52:33 15:52:34

**Q. When George Hesse communicated to you that there was going to be a follow-up or a second investigation of the Halloween incident, do you recall what I am referring to? 15:53:07 15:53:10 15:53:15 15:53:16**

MR. WELCH: I am going to object to the form of the question. It's 15:53:18 15:53:19

Loeffler

mischaracterizing the testimony. 15:53:21

If you can answer it, go ahead. 15:53:22

A. Would you ask that again, please. 15:53:24

**Q. I believe you had earlier indicated that George Hesse had communicated to you that the investigation of the Halloween incident conducted on the night of the incident was improper and that another investigation would be conducted. 15:53:27 15:53:29 15:53:31 15:53:33 15:53:35 15:53:36**

A. He was instructed by Ed Paradiso to do that, yes. 15:53:37 15:53:40

**Q. Did you ever speak about that subject with Ed Paradiso? 15:53:41 15:53:43**

MR. WELCH: Objection. Asked and answered. 15:53:46 15:53:46

You can answer it again. 15:53:46

A. No, I never did. 15:53:47

**Q. And did you ever have any further conversations with George Hesse about that investigation that you referred to? 15:53:49 15:53:50 15:53:51**

MR. WELCH: Objection. Asked and answered. 15:53:53 15:53:54

You can answer it again. 15:53:54

A. No. 15:53:55

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

MR. GRAFF: How much time, if I could ask the videographer, is left on this tape? 15:53:55 15:54:02 15:54:04

THE VIDEOGRAPHER: 59 minutes. 15:54:04

MR. GRAFF: I'd like to take a brief break. 15:54:10 15:54:12

MR. WELCH: Five minutes? 15:54:14

MR. GRAFF: Yes. 15:54:15

THE VIDEOGRAPHER: Going off the record. The time is 3:54 p.m. 15:54:16 15:54:17

(Recess was taken from 3:54 to 4:04.) 15:54:19 15:54:20

THE VIDEOGRAPHER: We are back on the record. The time is 4:04 p.m. 16:02:20 16:03:53

BY MR. GRAFF: 16:03:58

**Q. When I left earlier, I had asked you if you knew who Mitch Burns is. 16:03:58 16:04:01**

A. Yes. 16:04:03

**Q. And your answer was you do not know who Mitch Burns is? 16:04:04 16:04:05**

A. No, I don't. 16:04:06

**Q. The Complaint makes reference to a known drug dealer. Is that the reference to Mitch Burns that you were referring to earlier? 16:04:07 16:04:09 16:04:12**

**Loeffler**

MR. WELCH: Objection to the form. 16:04:14

You can answer. 16:04:15

A. I don't know. I don't know who Mitch -- I've heard the name, but I don't know who he is. I have never met the man. 16:04:17 16:04:18 16:04:20

**Q. Have you heard what his employment, if any, is? 16:04:24 16:04:26**

A. No. I don't know him. I just said I never met the man, never spoke to the man. I don't know who he is. 16:04:27 16:04:28 16:04:31

**Q. Other than possibly reading his name in the Complaint, do you have any idea where else you would have heard the name? 16:04:32 16:04:33 16:04:35**

A. No. No, I don't. 16:04:38

**Q. Do you know if Ed Paradiso has ever sued the Incorporated Village of Ocean Beach? 16:04:48 16:04:52**

A. Yes. Yes, he has. 16:04:54

**Q. And has he sued Ocean Beach on more than one occasion? 16:04:56 16:05:00**

A. One that I'm aware of. 16:05:01

**Q. And what was -- what were the nature of the allegations against Ocean Beach that Ed Paradiso made on that occasion that you are aware of? 16:05:04 16:05:07 16:05:09 16:05:11**

**Loeffler**

A. It's ongoing litigation with reference to a wage dispute. 16:05:12 16:05:14

**Q. So that litigation has not been resolved? 16:05:17 16:05:21**

A. No, it has not. 16:05:22

**Q. And when did Ed Paradiso initiate that litigation? 16:05:23 16:05:25**

A. While he was out injured in the line of duty. 16:05:26 16:05:28

**Q. And what is he alleging in connection with the wage dispute? 16:05:29 16:05:32**

MR. WELCH: That you are aware of. Objection to form, but you can answer. 16:05:34 16:05:36

A. He is alleging that he is entitled to certain benefits that we don't feel he is entitled to. 16:05:37 16:05:39 16:05:43

**Q. And what benefits? 16:05:43**

A. Monetary benefits. 16:05:45

**Q. And how much money is at issue? 16:05:46**

A. I don't know. 16:05:49

**Q. Do you know if you were named as an individual defendant in that lawsuit? 16:05:52 16:05:54**

A. No, I was not. 16:05:55

**Q. And who is representing the Village 16:05:57**

**Loeffler**

**in connection with that lawsuit? 16:06:00**

A. Bee Ready Fishbein Hatter Donovan. 16:06:01

**Q. Other than this lawsuit, is the law firm -- has the law firm of Rivkin Radler represented the Village of Ocean Beach in any other case that you are aware of? 16:06:04 16:06:06 16:06:08 16:06:10**

MR. WELCH: I am going to object to the form. 16:06:13 16:06:14

If you know. Do you know? 16:06:16

A. I'm not sure. I'm not sure. Because I think you guys might represent us in another case. You do. That's -- the Gilberd case. I think you have that now. 16:06:17 16:06:23 16:06:25 16:06:29

MR. WELCH: Do you know? If you don't know, you don't know. 16:06:31 16:06:32

A. Yes, you do. Rivkin Radler does represent us in another case. 16:06:33 16:06:37

MR. JEMAL: Just by Village counsel, that's something that was recently transferred to this firm, representation of the Village on the Samuel Gilberd case against the Incorporated Village of Ocean Beach. 16:06:39 16:06:41 16:06:42 16:06:44 16:06:47 16:06:50

**Q. And the Samuel Gilberd case against 16:06:50**

Loeffler

**the Incorporated Village of Ocean Beach, that's a civil lawsuit? 16:06:53**

A. Yes, it is. 16:06:54

**Q. Do you know -- have you reviewed the Complaint that was filed in that lawsuit? 16:06:57**

A. Yes, I have, but I don't remember when or where. I have read it. 16:07:06

**Q. And can you describe as best you can recall what Samuel Gilberd's allegations against Ocean Beach are? 16:07:13**

MR. WELCH: As he remembers from reading the Complaint? 16:07:16

MR. GRAFF: From any source. 16:07:16

MR. WELCH: Or any personal knowledge of, which he has already testified to? Not any source. I am asking you to clarify the question, please. He has already testified to his knowledge of the Gilberd incident, his personal knowledge of it, which he didn't have. So now you are asking for knowledge that he gained from reading somebody else's Complaint? 16:07:32

MR. GRAFF: Yes. 16:07:32

Loeffler

MR. WELCH: Do you have any knowledge about the incident from reading about somebody else's Complaint? 16:07:35

A. He -- to the best of my recollection, he makes an allegation that he was injured while in custody. That's the sum and substance of what I can remember the Complaint to be. 16:07:49

**Q. Do you know if you are an individual defendant in that lawsuit? 16:07:51**

A. I don't believe I am. 16:07:52

**Q. Do you know whether you have been named as an individual defendant in any lawsuits other than this lawsuit in connection with your service at Ocean Beach? 16:08:06**

MR. WELCH: Objection. Asked and answered about five hours ago, but you can answer it again. 16:08:11

A. No. 16:08:11

**Q. Do you know whether former Mayor Rogers has been named as an individual defendant in any other lawsuit other than this lawsuit in connection with her service at Ocean Beach? 16:08:21**

Loeffler

A. No, I do not. 16:08:21

**Q. Do you know whether Alan Loeffler has been named as an individual defendant in any lawsuit in connection with carrying out any law enforcement duties that he has? 16:08:39**

MR. WELCH: Objection to the form, and Alan Loeffler it's been established he is not working for the Village anymore, so he doesn't have any continuing duties. 16:08:50

MR. GRAFF: I said any law enforcement duties that he has. 16:08:53

MR. WELCH: That he has. He doesn't work for the Village anymore. You are saying if he is still employed in a law enforcement capacity? 16:08:57

MR. GRAFF: Yes. 16:08:59

MR. WELCH: You need to establish that foundation if he is still employed in law enforcement. I don't think you have. 16:09:04

MR. GRAFF: Okay. I am asking now if Mayor Loeffler knows whether his brother, Alan Loeffler, has been named as an individual defendant in connection with the execution of any law enforcement duties

Loeffler

that he may have in his capacity as an employee of any employer. 16:09:17

MR. WELCH: Ever? Or right now? If he is still employed is there a lawsuit pending against him or is he a defendant in a lawsuit? 16:09:24

MR. GRAFF: Has he ever been a defendant in a lawsuit in connection with his execution of law enforcement duties that Mayor Loeffler is aware of. 16:09:30

MR. WELCH: Ever. 16:09:32

MR. GRAFF: Yes. 16:09:32

A. Yes. 16:09:33

**Q. Has he been involved in more than one such lawsuit that you are aware of? 16:09:35**

A. I don't know. 16:09:37

**Q. And the one lawsuit that you are aware of, is that still pending? 16:09:42**

A. Yes. 16:09:44

**Q. And do you know who the plaintiff is in that lawsuit? 16:09:45**

A. No. 16:09:46

**Q. And do you know what the nature of the allegations against Alan Loeffler are in 16:09:48**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**that lawsuit? 16:09:49**

A. No, I do not. 16:09:50

**Q. Do you know whether it's alleged that Alan Loeffler -- 16:09:51 16:09:53**

A. I just said I didn't know. So it doesn't matter. 16:09:54 16:09:56

**Q. You don't know any of the allegations? 16:09:56 16:09:57**

A. No, I don't know any of the allegations. 16:09:57 16:09:57

**Q. Have you ever discussed it with Alan Loeffler? 16:09:58 16:09:59**

A. I know he has a pending lawsuit. That's all I know. 16:10:00 16:10:01

**Q. Do you know when that lawsuit was commenced? 16:10:02 16:10:04**

A. No. 16:10:04

**Q. Do you know whether that lawsuit was commenced prior to Alan Loeffler's retirement? 16:10:05 16:10:12**

A. Retirement from where? 16:10:18

**Q. From Ocean Beach. 16:10:22**

A. No. I don't -- he didn't -- I don't -- no, I don't know that. 16:10:26 16:10:30

**Q. Did Alan Loeffler ever work at Ocean 16:10:31**

Loeffler

**Beach? 16:10:33**

A. He absolutely did. 16:10:33

**Q. As a police officer? 16:10:34**

A. Absolutely did. 16:10:35

**Q. Do you know when he retired from that position? 16:10:36 16:10:37**

A. He never retired from that position. 16:10:38

**Q. Is he still working as a police officer? 16:10:39 16:10:43**

A. No. 16:10:43

**Q. But his employment as a police officer at Ocean Beach is not ongoing; is that correct? 16:10:46 16:10:48 16:10:50**

A. That's correct. 16:10:51

**Q. Okay. Mayor Loeffler, are you aware that plaintiffs' allegations in this case include the claims against George Hesse for defamation? 16:10:52 16:11:03 16:11:05 16:11:12**

A. Yes. 16:11:13

**Q. And do you know what plaintiffs have -- in what way plaintiffs have alleged that George Hesse defamed them? 16:11:14 16:11:17 16:11:19**

A. No, I don't. 16:11:21

**Q. Have you ever discussed those 16:11:21**

Loeffler

**allegations with George Hesse? 16:11:23**

A. No, I have not. 16:11:24

**Q. Have you ever discussed those allegations with anyone other than your counsel? 16:11:25 16:11:26 16:11:27**

A. No, I have not. 16:11:27

MR. GRAFF: I am going to ask the court reporter to please mark as Exhibit Loeffler 15 a three-page document bearing Bates number 10182 through 10184. 16:11:33 16:11:35 16:11:36 16:11:48

(Loeffler Exhibit 15, Pending Claims, Bates stamped 010182 through 010184, marked for identification.) 16:11:59 16:11:59 16:12:01

**Q. Mayor Loeffler, while your counsel is looking at those documents, geographically, what is the distance between the Town of Islip and Ocean Beach? That is, how would one -- strike that. 16:12:29 16:12:30 16:12:37 16:12:44 16:12:48**

**How would one travel from the Town of Islip to Ocean Beach? 16:12:49 16:12:51**

A. Ocean Beach is in the Town of Islip. 16:12:52

**Q. Okay. And the Town of Islip Harbor Police, do you know what their jurisdiction is? 16:12:57 16:13:02**

A. The Town of Islip. 16:13:04

Loeffler

**Q. And does that include Ocean Beach? 16:13:05**

A. The waters in front of -- yes, the waters in Ocean Beach, yes, it would. 16:13:08 16:13:11

**Q. And just so I'm clear, does the Town of Islip have overlapping jurisdiction with Ocean Beach Police Department or are they separate? 16:13:13 16:13:20 16:13:21 16:13:24**

MR. WELCH: Objection to the form of the question. To the extent it also calls for a legal conclusion. 16:13:24 16:13:25 16:13:27

You can answer the question. 16:13:28

A. I don't know exactly what their jurisdiction is. 16:13:30 16:13:31

**Q. Do you know who the chief or head of the Town of Islip Harbor Police Department is? 16:13:32 16:13:37**

A. Robert Sgroi. 16:13:42

**Q. And do you know who preceded him in that position? 16:13:43 16:13:45**

A. My brother, Alan Loeffler. 16:13:45

**Q. And what position does Alan Loeffler currently hold with the Town of Islip Harbor Police? 16:13:48 16:13:51 16:13:54**

A. None. 16:13:54

**Q. Is Alan Loeffler currently employed 16:13:56**

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

**by any employer? 16:13:59**

A. No. 16:14:00

**Q. Do you know why he stopped serving as chief of the Harbor -- Town of Islip Harbor Police? 16:14:01 16:14:03 16:14:09**

A. Yes. 16:14:09

**Q. And why? 16:14:09**

A. Because he spent thirty years there and he retired. 16:14:10 16:14:12

**Q. Mayor Loeffler, when you have had a chance to review the document that's been marked Loeffler 15, could you tell me, please, if you have ever seen it before? 16:14:16 16:14:23 16:14:25 16:14:27**

MR. WELCH: The question is have you seen this before. 16:14:29 16:14:30

(Document review.) 16:14:48

A. I've never seen this document. 16:14:48

**Q. Let's put it aside. 16:14:50**

**Have you ever heard of a person named Harriet Beizer before, B-E-I-Z-E-R? 16:14:52 16:14:54**

A. Yes. 16:14:57

**Q. And who is Harriet Beizer? 16:14:58**

A. She is a resident of the Village of Ocean Beach. 16:14:59 16:15:01

Loeffler

**Q. And when did you first meet Harriet Beizer? 16:15:02 16:15:04**

A. I've never met Harriet Beizer. 16:15:05

**Q. How do you know who she is? 16:15:06**

A. She filed a lawsuit against the Village. 16:15:08 16:15:09

**Q. And what is she alleging as a basis for her lawsuit? 16:15:10 16:15:13**

A. I believe the lawsuit has been settled and there is a confidentiality agreement on that lawsuit, so I don't know if I could pierce that. 16:15:13 16:15:16 16:15:19 16:15:21

MR. WELCH: Do you need to step outside and speak with counsel about it? 16:15:23 16:15:24

MR. GRAFF: I would like to follow up on that. If you guys need to confer, please do. 16:15:26 16:15:28 16:15:30

MR. WELCH: Yes, we will take a minute. 16:15:30 16:15:32

THE VIDEOGRAPHER: Going off the record. The time is 4:16 p.m. 16:15:32 16:15:33

(Recess was taken from 4:16 to 4:29.) 16:15:35 16:15:36

THE VIDEOGRAPHER: We are back on 16:23:00

Loeffler

the record. The time is 4:29 p.m. This is the beginning of the tape labeled number 5. 16:28:47 16:28:51

(Mr. Novikoff enters.) 16:28:51

MR. GRAFF: If the court reporter could please read back my last question before the break. 16:28:56 16:28:57 16:28:59

(Record read.) 16:29:12

MR. NOVIKOFF: Yeah, the position we are going to take is that to Mr. -- Mayor Loeffler's recollection and belief the confidentiality provision prevents him from testifying in this -- on this issue without a court order, so if it's something you want to take up with the judge at a later date and the judge rules that it's relevant, then Mr. Loeffler has to testify or otherwise produce a copy of the confidentiality agreement, then obviously we will comply with any court order, but -- 16:29:13 16:29:14 16:29:18 16:29:21 16:29:24 16:29:27 16:29:29 16:29:32 16:29:34 16:29:36 16:29:38 16:29:40

MR. GRAFF: Okay, and without reference to the confidentiality agreement, is your position that he can't answer questions about the allegations at all in that case? 16:29:43 16:29:44 16:29:46 16:29:47 16:29:49

Loeffler

MR. NOVIKOFF: I think they are palpably irrelevant and I don't know the scope of the confidentiality agreement, quite frankly, and I don't know how far it goes. I don't know if it says you can't discuss anything about the lawsuit. I would think it would, because it's presumably, I don't know, a settlement agreement, and I think the safer approach would be to mark it and take it up with the judge and if the judge finds it, one, relevant and, two, that he could testify pursuant to the confidentiality agreement, then we will do it. 16:29:49 16:29:51 16:29:52 16:29:54 16:29:56 16:29:58 16:30:00 16:30:02 16:30:04 16:30:08 16:30:11 16:30:15 16:30:17 16:30:19

RL MR. GRAFF: Let's just mark the transcript for ease at this point. 16:30:20 16:30:21

MR. NOVIKOFF: Yes. 16:30:21

MR. GRAFF: I won't press on that issue if you haven't seen the confidentiality -- 16:30:23 16:30:25 16:30:26

MR. NOVIKOFF: Yeah, I haven't seen it. I would suggest perhaps in the future, not in this case, in another case, if you think you are going to go into a line of 16:30:27 16:30:29 16:30:31 16:30:34

9e28f7aa-4e93-4641-9524-8529961356c8

Page 309

Loeffler

questioning where there was a settlement agreement with a municipality, you give us some notice and we could then find a confidentiality agreement and maybe avoid this issue, but... 16:30:34 16:30:36 16:30:38 16:30:40 16:30:42

MR. GRAFF: Counsel, I didn't know that the case had been settled until -- 16:30:44 16:30:45

MR. NOVIKOFF: No, I understand. I understand. 16:30:47 16:30:48

BY MR. GRAFF: 16:30:51

**Q. Mayor Loeffler, are you familiar with a business in Ocean Beach called the Island Mermaid Corporation? 16:30:51 16:30:53 16:30:56**

A. Yes. 16:30:58

**Q. And what is the nature of that business? 16:30:59 16:31:00**

A. It's a bar/restaurant. 16:31:00

**Q. And, to your knowledge, has the Island Mermaid Corporation brought any lawsuit against Ocean Beach during your service as trustee or mayor? 16:31:02 16:31:03 16:31:05 16:31:07**

A. Yes. 16:31:08

**Q. And do you know what the nature of the allegations in that lawsuit are? 16:31:08 16:31:10**

Page 310

**Loeffler**

A. No, I'm not familiar with it. 16:31:11

**Q. Mayor Loeffler, how many properties do you own in the Village of Ocean Beach? 16:31:13 16:31:33**

A. One. 16:31:36

**Q. And what address is that property located at? 16:31:37 16:31:39**

A. 68 Ocean Road. 16:31:40

**Q. And is there an address 69 Ocean Road? 16:31:42 16:31:44**

A. It's 68-69. It's two lots. 16:31:44

**Q. Other than that property, do you own any other properties? 16:31:49 16:31:50**

A. Not in the Village of Ocean Beach, no, I do not. 16:31:51 16:31:53

**Q. What about outside the Village of Ocean Beach? 16:31:53 16:31:55**

A. Yes, I do. 16:31:55

**Q. And how many properties do you own outside of the Village of Ocean Beach? 16:31:56 16:31:57**

A. One. 16:31:59

**Q. And where is that property located? 16:31:59**

A. In Seaview. 16:32:02

**Q. And is that a rental property? 16:32:03**

A. Yes, it is. 16:32:07

Page 311

Loeffler

**Q. And where is that property located? 16:32:08**

A. 29 Beachwold Walk, Seaview. 16:32:11

**Q. Do you own any properties in the state of Florida? 16:32:21 16:32:23**

A. Yes, I do. 16:32:24

**Q. And how many properties do you own in Florida? 16:32:25 16:32:28**

A. I own one. 16:32:29

**Q. And where is that property located? 16:32:30**

A. 2921 South Ocean Boulevard, Highland Beach, Florida. 16:32:32 16:32:37

**Q. And do you know what the assessed value of that property is? 16:32:38 16:32:39**

A. No, I do not. 16:32:41

**Q. Do you know what the assessed value of the property that you own in Ocean Beach is? 16:32:41 16:32:42**

A. No, I do not. 16:32:44

**Q. Do you know what the assessed value of the property that you referenced outside of Ocean Beach that you own? 16:32:45 16:32:46 16:32:51**

A. No, I don't. 16:32:52

**Q. Other than those three properties, do you own any other properties? 16:32:52 16:32:54**

A. I own a piece of property, a lot, in 16:32:56

Page 312

Loeffler

Crystal River, Florida, a piece of vacant land. 16:33:01

**Q. And when did you acquire that land? 16:33:07**

A. 25 years ago. 16:33:09

**Q. Do you know what the current assessed value of that land is? 16:33:12 16:33:13**

A. The taxes are $28, so I don't know what the assessment is. It wasn't one of my best deals. 16:33:15 16:33:19 16:33:26

**Q. And was that the property at 2921 -- 16:33:30**

A. No. No. It's a lot in Crystal River, Florida. I don't even know what the address is. 16:33:33 16:33:37 16:33:39

**Q. Other than the properties that you have already identified, do you own any other properties? 16:33:40 16:33:48 16:33:50**

A. No. 16:33:50

**Q. Have you sold any properties that you owned within the last five years? 16:33:51 16:33:58**

A. Yes. 16:34:01

**Q. And how many properties have you sold? 16:34:02 16:34:04**

A. One. 16:34:04

**Q. Where is that property located? 16:34:04**

A. In the incorporated Village of Ocean 16:34:06

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

Beach. 16:34:08

**Q. And what's the address? 16:34:08**

A. 31 Ocean Road. 16:34:09

**Q. Are there any other properties that you own that you haven't identified today? 16:34:16**

A. No. 16:34:18

**Q. Are there any other properties that you are a part owner of? 16:34:19**

A. No. 16:34:22

**Q. Are there any properties that your wife owns in her name? 16:34:27**

A. Yes. 16:34:29

**Q. How many such properties? 16:34:31**

A. I don't know. 16:34:32

MR. NOVIKOFF: I think I may stop you talking about his wife's properties unless they are jointly owned. 16:34:52

**Q. Other than the one boat that you referenced earlier today, do you own any other boats? 16:35:03**

A. No. 16:35:03

**Q. Other than the property that you referenced earlier today that the mortgage was secured through Trustee Wingate, have you 16:35:11**

**Loeffler**

**acquired any other properties through private lenders? 16:35:20**

A. No. 16:35:20

**Q. Has the mortgage on the property where the mortgager was Trustee Wingate, has that mortgage been repaid? 16:35:32**

A. Yes. 16:35:33

**Q. When was that mortgage repaid? 16:35:34**

A. Around ten years ago. 16:35:36

**Q. Do you own any businesses? 16:36:00**

A. No. 16:36:02

MR. GRAFF: If I could ask the court reporter to please mark as Exhibit Loeffler 16 a copy of the Complaint in this case. 16:36:14

(Loeffler Exhibit 16, Complaint and Jury Demand, marked for identification.) 16:36:25

MR. NOVIKOFF: Okay. Do you want him to look at it and see if he recognizes it? 16:36:50

MR. GRAFF: Yes. 16:36:50

**Q. If you could look at it as much as you need to to tell me if this is the document that you recognize as the federal Complaint in this lawsuit that you reviewed. 16:36:56**

**Loeffler**

**(Document review.) 16:37:02**

MR. NOVIKOFF: We will stipulate that it's the Complaint. I mean, do you want him to -- 16:37:18

A. Do you want me to go through this page by page? 16:37:21

MR. NOVIKOFF: If you want to go page by page, he will. I am trying to short -- okay. Go ahead. 16:37:23

**Q. And as you are flipping, Mayor Loeffler, if you could please let me know if you find the point in the Complaint where it references Mitch Burns. 16:37:32**

MR. NOVIKOFF: Well, you know what, this is not a hunt and peck process. Why don't you tell him what paragraph to look at, because I gotta tell you, I'd probably take five, ten minutes trying to find Mitch Burns in there. So, you know, again, if there is a paragraph number you want to refer him to, then by all means, do so. 16:37:50

MR. GRAFF: There is not. 16:37:50

MR. NOVIKOFF: There is not? Does the name Mitch Burns appear in there? 16:37:53

Loeffler

MR. GRAFF: Mayor Loeffler indicated that he heard the name. He believed he saw it in the Complaint. 16:37:59

MR. NOVIKOFF: Okay, you know what, then look through and see if Mitch Burns appears in the Complaint. He has got seven hours. 16:38:18

(Document review.) 16:38:47

MR. NOVIKOFF: Ari, I have no problem while the mayor is looking page by page for Mitch Burns' name, but if the end result of this is that the mayor is going to say he was mistaken, that Mitch Burns' name does not appear in the Complaint, where does that get you other than wasting five minutes of time? But it's your deposition. I just... 16:39:03

(Document review.) 16:39:22

**Q. Mayor Loeffler, rather than taking the time now, why don't we mark the transcript and if on your review of the transcript you do remember where you saw the name Mitch Burns, you can just fill it in there. 16:39:38**

A. So what does that mean? 16:39:40

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

MR. NOVIKOFF: That means you don't have to read any more of the Complaint. 16:39:41 16:39:43

TO BE FURNISHED:______________________________. 16:39:44

**Q. If I could turn, please, to paragraph 60 of the Complaint. 16:39:44 16:39:46**

MR. NOVIKOFF: Okay. Is there anything you would like the mayor to do with paragraph 60? 16:39:58 16:39:59 16:40:01

MR. GRAFF: If he could read it, please. 16:40:02 16:40:03

MR. NOVIKOFF: Read the whole paragraph to himself? Okay. 16:40:03 16:40:04

MR. GRAFF: Yes. 16:40:05

MR. NOVIKOFF: Sure. 16:40:06

(Document review.) 16:40:21

A. Okay. 16:40:46

**Q. Did you discuss the allegations in paragraph 60 of the Complaint with anyone other than counsel? 16:40:47 16:40:50 16:40:52**

A. I don't remember that, reading that, but -- 16:40:53 16:40:56

MR. NOVIKOFF: So that's your answer. 16:40:57 16:40:58

**Q. After reading that do you recall 16:40:59**

**Loeffler**

**whether other than in the context of this Complaint you have any information concerning any of the allegations set forth in paragraph 60? 16:41:02 16:41:04 16:41:06 16:41:08**

MR. NOVIKOFF: Whoa, counselor, there is a lot going on in paragraph 60. You got paragraph 60 saying that Fiorillo was en route to the police station. So that's one issue. And that Fiorillo observed Bosetti drinking. That's another issue. That then Bosetti approaching -- I mean, you have 25 issues in paragraph 60 that you are asking this witness to opine about. 16:41:08 16:41:11 16:41:13 16:41:16 16:41:18 16:41:20 16:41:22 16:41:24 16:41:27 16:41:29

**Q. Let me -- 16:41:29**

MR. NOVIKOFF: Be more specific. 16:41:31

**Q. Do you have any information concerning the incident involving a cabinet thrown into the Great South Bay that's alleged in this paragraph? 16:41:32 16:41:34 16:41:38 16:41:40**

A. I do not have any information with reference to this incident. 16:41:41 16:41:43

**Q. If you could turn, please, to page 16, paragraph 63. 16:41:44 16:41:49**

**Loeffler**

MR. NOVIKOFF: Would you like the witness to read paragraph 63 to himself? 16:41:55 16:41:56

MR. GRAFF: Let me first ask the question and then he can read as much as he needs to to answer it. 16:41:59 16:42:00 16:42:02

MR. NOVIKOFF: Okay. 16:42:02

**Q. The allegations under the subheading The Halloween Incident run from paragraph 63 and end before the next subheading in paragraph 70. 16:42:03 16:42:05 16:42:08 16:42:10**

MR. NOVIKOFF: I will stipulate to that. 16:42:11 16:42:12

**Q. My question is whether, Mayor Loeffler, you discussed any of the allegations in these paragraphs with anyone other than counsel? 16:42:13 16:42:15 16:42:16 16:42:18**

MR. NOVIKOFF: You know -- okay. You are talking -- you are asking the witness without even reading -- 16:42:18 16:42:22 16:42:24

MR. GRAFF: No. 16:42:24

MR. NOVIKOFF: -- the paragraph. So you want him now to read 63 through 70 and then ask the question whether or not he read -- he had discussed any issues that 16:42:26 16:42:26 16:42:29 16:42:31

Loeffler

could possibly have been referred to in these eight, nine paragraphs with anyone other than counsel? If that's what you want him to do, I will provide -- fine. Read 63 through 70 and then I will ask the court reporter to repeat the question so it's absolutely clear and in case I need to make an objection. 16:42:34 16:42:37 16:42:38 16:42:41 16:42:44 16:42:47 16:42:48 16:42:52

THE WITNESS: Do you want me to read it out loud? 16:42:52 16:42:52

MR. NOVIKOFF: No, to yourself. 16:43:09

(Document review.) 16:43:09

MR. NOVIKOFF: Once you have read it, tell me when you are done. 16:43:27 16:43:28

(Document review.) 16:43:28

MR. NOVIKOFF: Okay. Stop. You want him to just read up to paragraph 70; right? 16:44:49 16:44:50 16:44:53

MR. GRAFF: Yes. 16:44:53

MR. NOVIKOFF: Okay, now, can the court reporter please read the question that Mr. Graff is asking the witness. 16:44:53 16:44:55 16:44:56

(Record read.) 16:45:09

MR. NOVIKOFF: I am going to object 16:45:11

9e28f7aa-4e93-4641-9524-8529961356c8

Loeffler

to the form, because there are a number of 16:45:12
allegations in all of these and I will go 16:45:16
sentence by sentence then. 16:45:19

**Q. Were there any sentences in these 16:45:21 paragraphs that you can recall specifically 16:45:23 discussing with anyone? 16:45:25**

A. Yes, one. 16:45:26

**Q. Which sentence? 16:45:28**

A. Paragraph 69, Defendant Loeffler, 16:45:29 then serving in his capacity as Village board 16:45:40 member, and I don't know what official police 16:45:43 liaison is, was present in the station house 16:45:44 and said that he believed the injuries to 16:45:47 Vankoot constituted assault in the second 16:45:52 degree with a dangerous instrument. I already 16:45:56 testified that that's exactly what I said. 16:45:59

**Q. And did you discuss that statement 16:46:00 with anyone other than your counsel? 16:46:02**

A. No. Well, I did with you. 16:46:03

**Q. Thank you. And have you ever heard 16:46:05 the term in any of your law enforcement 16:46:09 positions "official police liaison"? 16:46:11**

A. No. 16:46:14

**Q. Is the first time you encountered 16:46:14**

Loeffler

**that term in this Complaint? 16:46:18**

A. Yes. 16:46:19

**Q. Mayor Loeffler, I know this is a 16:46:30 sensitive topic and I don't want to keep 16:46:32 returning to it, but very briefly, did Dale or 16:46:34 Doug Wykoff Senior ever indicate to you that 16:46:39 they blamed Ed Paradiso in any way for the 16:46:41 death of their son? 16:46:44**

MR. NOVIKOFF: No. Ari, I mean, 16:46:45 what possible relevance -- and I don't even 16:46:51 know what the answer is, but what possible 16:46:54 relevance could that have to this lawsuit 16:46:56 about apparently Mr. Wykoff's son -- 16:47:00

THE WITNESS: Committed suicide. 16:47:03

MR. NOVIKOFF: -- committed suicide? 16:47:03

MR. GRAFF: Could I perhaps just 16:47:05 speak to you off the record privately? 16:47:06

MR. NOVIKOFF: Sure, I would be 16:47:07 happy to. 16:47:08

THE VIDEOGRAPHER: Going off the 16:47:09 record. The time is 4:47 p.m. 16:47:10

(Recess was taken from 4:47 to 16:47:13 4:57.) 16:47:13

THE VIDEOGRAPHER: We are back on 16:56:39

Loeffler

the record. The time is 4:57 p.m. 16:56:44

MR. GRAFF: Could the court reporter 16:56:50 please read back my last question to the 16:56:51 witness. 16:56:53

(Record read.) 16:57:18

A. No. 16:57:20

**Q. Mayor Loeffler, do you know whether 16:57:35 Mike Loeffler was in the company of Doug Wykoff 16:57:36 Junior on the night that he passed away? 16:57:39**

A. I don't know that. I don't know 16:57:42 whether he was or not. They are cousins, you 16:57:49 know. He is related to me, Douglas. 16:57:51

**Q. I didn't know that. What's the 16:57:53 relation? 16:57:54**

A. It's kind of involved, but Dale's -- 16:57:55 Dale's mother and Doug's -- Dale's mother 16:58:00 and -- Dale's mother was sister to my 16:58:08 brother-in-law's who married my -- it gets very 16:58:10 involved, but they are second cousins, Doug and 16:58:15 my son. 16:58:18

**Q. But you don't know if he was 16:58:21 specifically with his company in -- 16:58:23**

A. I don't know that. 16:58:24

**Q. Do you know whether Mike Loeffler 16:58:25**

Loeffler

**had consumed drugs or narcotics on the night of 16:58:36 Doug Junior's death? 16:58:41**

A. I don't know that. 16:58:42

**Q. Did you ever have any conversations 16:58:43 with anyone at Ocean Beach Police Department 16:58:49 concerning that subject? 16:58:51**

A. No, I did not. That investigation 16:58:53 was handled by the Suffolk County Homicide 16:58:57 Division, Doug's death. 16:58:59

**Q. And were you ever a part of that 16:59:02 division as the Suffolk County detective? 16:59:03**

A. Yes, I was. 16:59:07

**Q. Were you involved at all in that 16:59:07 investigation? 16:59:09**

A. No, I was not. 16:59:10

**Q. Mayor Loeffler, prior to your 16:59:36 election as mayor, did you ever state to anyone 16:59:37 in substance that you intended to terminate 16:59:42 either of the Bosettis' employment as police 16:59:46 officers in the event that you were elected 16:59:49 mayor? 16:59:50**

A. No, I did not. 16:59:50

**Q. Do you know whether the Suffolk 16:59:56 County Police Department has jurisdiction over 16:59:59**

**Loeffler**

**to enforce law in the Incorporated Village of Ocean Beach?** 17:00:08 17:00:10

A. They have concurrent jurisdiction, yes, they do. 17:00:11 17:00:13

**Q. And in practice do they ever carry out law enforcement activities that you are aware of in Ocean Beach?** 17:00:14 17:00:16 17:00:18

A. Some investigative activities, but not day-to-day law enforcement activities. 17:00:19 17:00:21

**Q. As a Suffolk County detective have you ever carried out any of your duties within the territory of the Incorporated Village --** 17:00:23 17:00:25 17:00:28

A. I was not -- I was not assigned to the precinct that handles that jurisdiction. 17:00:31 17:00:32

**Q. What precinct were you assigned to?** 17:00:35

A. The first precinct. 17:00:36

**Q. And have you been assigned to the first precinct --** 17:00:37 17:00:39

A. As a detective for 19 years. 17:00:41

**Q. And that would be throughout your service as mayor and police commissioner?** 17:00:43 17:00:45

A. Yes. 17:00:47

MR. GRAFF: Mayor Loeffler, thank you very much for your time and answering 17:00:54 17:00:56

Loeffler

my questions today. I am concluded for today, although I would note that we would reserve our right to reopen, if necessary, upon production of the financial statements. 17:00:57 17:01:00 17:01:03 17:01:07 17:01:10

MR. NOVIKOFF: I don't know if I necessarily agree with that, but you have stated your position on the record. Okay. 17:01:11 17:01:13 17:01:15

MR. GRAFF: Does anyone have cross? 17:01:17

MR. NOVIKOFF: No. Kevin? 17:01:20

MR. CONNOLLY: No. 17:01:20

MR. GRAFF: Thank you. 17:01:22

THE VIDEOGRAPHER: We are now going off the record. The time is 5:01 p.m. This is the end of the tape labeled number 5 to this videotaped deposition. 17:01:22 17:01:24 17:01:27 17:01:28

(Time noted: 5:01 p.m.) 17:01:32

17:01:32

---------------------

JOSEPH C. LOEFFLER, JR.

Subscribed and sworn to before me this day of 2009.

--------------------------------------

C E R T I F I C A T E

STATE OF NEW YORK )
) ss.:
COUNTY OF NASSAU )

I, KRISTIN KOCH, a Notary Public within and for the State of New York, do hereby certify:

That JOSEPH C. LOEFFLER, JR., the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage; and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 9th day of March, 2009.

-------------------------

KRISTIN KOCH, RPR, RMR, CRR, CLR

--------------------I N D E X------------------

| WITNESS | EXAMINATION BY | PAGE |
|---|---|---|
| JOSEPH C. LOEFFLER, JR. | MR. GRAFF | 7 |

RULING: 308

--------------------EXHIBITS-------------------

| LOEFFLER | PAGE | LINE |
|---|---|---|
| | 6 | 2 |
| Exhibit 1 Confidential Wage/Salary History..... | 6 | 5 |
| Exhibit 2 Ocean Beach Defendants' Response to Plaintiffs' First Set of Interrogatories..................... | 91 | 18 |
| Exhibit 3 Incorporated Village of Ocean Beach Board of Trustees Meeting Held January 28, 2006, Bates stamped 000028.............................. | 107 | 24 |
| Exhibit 4 Memo dated April 4, 2006, Bates stamped 001005...................... | 147 | 5 |
| Exhibit 5 Letter dated January 4, 2007......... | 161 | 22 |
| Exhibit 6 The Incorporated Village of Ocean Beach Employee Handbook, Bates stamped 000001 through 000025........ | 173 | 20 |
| Exhibit 7 Handwritten document, Bates stamped 003780.............................. | 177 | 10 |
| Exhibit 8 Memo dated March 26, 2007, Bates stamped 003778...................... | | |

--------------------EXHIBITS------------------

| LOEFFLER | PAGE LINE |
|---|---|
| Exhibit 9 Ratification and Approval of Personnel, Bates stamped 005875...... | 186 23 |
| Exhibit 10 Accept the NYS Department of State's Proposed Responses on the Local Waterfront Revitalization Program, Bates stamped 009809........ | 197 13 |
| Exhibit 12 Section 1: Discipline/Charges and Specifications, Bates stamped 2652 through 2661......................... | 203 2 |
| Exhibit 11 Resolution No. 2008-18, Bates stamped 009810....................... | 208 21 |
| Exhibit 13 Letter dated April 6, 2007, Bates stamped 005419....................... | 232 23 |
| Exhibit 14 Letter dated August 6, 2007, Bates stamped 004431....................... | 238 16 |
| Exhibit 15 Pending Claims, Bates stamped 010182 through 010184................ | 303 12 |
| Exhibit 16 Complaint and Jury Demand............ | 314 16 |

-----------------DOCUMENT REQUESTS-------------

PAGE 187 All pages of Loeffler 9 and all pages of Loeffler 3

-----------------DOCUMENT REQUESTS-------------

PAGE 195 Complete manual

198 All pages of Loeffler 10

205 All pages of Loeffler 12

-----------INFORMATION TO BE FURNISHED--------

PAGE 317 Location of Mitch Burns' name

ERRATA SHEET FOR THE TRANSCRIPT OF:

Case Name: Carter v. Ocean Beach

Dep. Date: February 25, 2009

Deponent: Joseph C. Loeffler, Jr.

CORRECTIONS:

| Pg. | Ln. | Now Reads | Should Read | Reason |
|---|---|---|---|---|
| ___ | ___ | ______________ | ______________ | ______ |
| ___ | ___ | ______________ | ______________ | ______ |
| ___ | ___ | ______________ | ______________ | ______ |
| ___ | ___ | ______________ | ______________ | ______ |
| ___ | ___ | ______________ | ______________ | ______ |
| ___ | ___ | ______________ | ______________ | ______ |
| ___ | ___ | ______________ | ______________ | ______ |
| ___ | ___ | ______________ | ______________ | ______ |
| ___ | ___ | ______________ | ______________ | ______ |
| ___ | ___ | ______________ | ______________ | ______ |
| ___ | ___ | ______________ | ______________ | ______ |

____________________

Signature of Deponent

SUBSCRIBED AND SWORN BEFORE ME

THIS____DAY OF____________, 2009.

_______________________________

(Notary Public) MY COMMISSION EXPIRES:_______

9e28f7aa-4e93-4641-9524-8529961356c8