**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
EDWARD CARTER, FRANK FIORILLO, KEVIN  :
LAMM, JOSEPH NOFI, and THOMAS SNYDER,  :
                                                                Plaintiffs,   :

                             v.                     :     Case No. 07-Civ-1215 (SJF)(ETB)

INCORPORATED VILLAGE OF OCEAN BEACH;  :
MAYOR JOSEPH C. LOEFFLER, JR., individually  :
and in his official capacity; former mayor NATALIE K.  :
ROGERS, individually and in her official capacity,  :
OCEAN BEACH POLICE DEPARTMENT; ACTING  :
DEPUTY POLICE CHIEF GEORGE B. HESSE,  :
individually and in his official capacity; SUFFOLK  :
COUNTY; SUFFOLK COUNTY POLICE  :
DEPARTMENT; SUFFOLK COUNTY DEPARTMENT  :
OF CIVIL SERVICE; and ALISON SANCHEZ,  :
individually and in her official capacity,  :
                                               Defendants.   :
-----------------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THOMPSON WIGDOR & GILLY LLP

85 Fifth Avenue
New York, NY 10003
Tel: (212) 257-6800
Fax: (212) 257-6845

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF FACTS ................................................................................................................. 2

ARGUMENT ....................................................................................................................................... 5

    I.   DEFENDANTS HAVE FAILED TO SATISFY THE STANDARDS FOR SUMMARY JUDGMENT AND THEIR MOTION SHOULD BE DENIED ......................................... 5

   II.   PLAINTIFFS' CLAIMS FOR CONSPIRACY UNDER SECTION 1985, 1986 AND NEW YORK COMMON LAW MUST BE RESOLVED AT TRIAL ............................................. 6

  III.   COUNTY DEFENDANTS DO NO CHALLENGE THE SUFFICIENCY OF PLAINTIFFS' WHISTLEBLOWER CLAIMS UNDER CIVIL SERVICE LAW § 75-b ....................................... 9

  IV.   COUNTY DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS UNDER CIVIL SERVICE LAW § 75 ................................................. 9

   V.   SUFFOLK COUNTY IS LIABLE FOR COUNTY DEFENDANTS' VIOLATIONS OF PLAINTIFFS' RIGHTS UNDER § 1983 ...........................................................................13

CONCLUSION ..................................................................................................................................16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abrahams v. Inc. Village of Hempstead*,
   No. 08 Civ. 02584 (SJF)(WDW), 2009 U.S. Dist. LEXIS 46725 (E.D.N.Y. June 2,
   2009) .................................................................................................................................... 14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................................ 6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................................ 6

*Ciambriello v. County of Nassau*,
   292 F.3d 307 (2d Cir. 2002) .................................................................................................... 6

*Cine SK8, Inc. v. Town of Henrietta*,
   507 F.3d 778 (2d Cir. 2007) .................................................................................................... 6

*Clark v. Mercado*,
   No. 98 Civ. 7934, 1999 U.S. App. LEXIS 11845 (2d Cir. May 28, 1999) ........................... 13

*Cleveland Board of Education v. Loudermill*,
   470 U.S. 532 (1985) .............................................................................................................. 10

*Engquist v. Oregon Department of Agriculture*,
   128 S. Ct. 2146 (2008) .......................................................................................................... 16

*Kessler v. Westchester Cty. Department of Social Services*,
   461 F.3d 199 (2d Cir. 2006) .................................................................................................... 6

*Locurto v. Safir*,
   264 F.3d 154 (2d Cir. 2001) .................................................................................................. 10

*Monell v. Department of Social Services of City of New York*,
   436 U.S. 658 (1978) ........................................................................................................ 14, 15

*O'Neill v. City of Auburn*,
   23 F.3d 685 (2d Cir. 1994) .................................................................................................... 10

*Russell v. Hodges*,
   470 F.2d 212 (2d Cir. N.Y. 1972) ................................................................................... 11, 12

*Todaro v. Norat*,
   112 F.3d 598 (2d Cir. 1997) .................................................................................................. 10

## STATE CASES

*Igneri v. Town of Brookhaven*,
   232 A.D.2d 638 (2d Dep't 1996) .................................................................................. 12, 13

*Litras v. Litras*,
   254 A.D.2d 395 (2d Dep't 1998) ......................................................................................... 7

*Saunders v. N.Y. City Health & Hosps. Corp.*,
   6 A.D.3d 241, 242 (1st Dep't 2004) ..................................................................................11

*Wood v. New York*,
   274 N.Y. 155 (N.Y. 1937) ...................................................................................................15

## FEDERAL STATUTES

Fed. R. Civ. P. 56(c) ........................................................................................................................ 5

Plaintiffs Edward Carter, Frank Fiorillo, Kevin Lamm, Joseph Nofi, and Thomas Snyder, (collectively, "Plaintiffs"), by their attorneys, Thompson Wigdor & Gilly LLP, respectfully submit this Memorandum in Opposition to the Motion for Summary Judgment by Defendants Suffolk County, Suffolk County Department of Civil Service ("County Civil Service") and Alison Sanchez ("Defendant Sanchez") (collectively, "County Defendants").

## PRELIMINARY STATEMENT

Plaintiffs are five police officers who had the courage to overcome the "blue wall of silence" and fulfill their duty to protect the public by speaking out in opposition to the regime of endemic corruption within the Ocean Beach Police Department ("OBPD" or the "Department"). Ultimately, when confronted by Plaintiffs' refusal to become complicit in the OBPD's rampant lawlessness and betrayal of the public trust, the Ocean Beach Defendants and Defendant Hesse not only terminated Plaintiffs' employment as police officers, but also undertook a concerted effort to defame Plaintiffs and destroy their law enforcement careers.

In the wake of their retaliatory and stigmatizing terminations by Defendant Hesse, Plaintiffs met with Defendant Sanchez, the Suffolk County Department of Civil Service official responsible for overseeing compliance with Civil Service Law in Ocean Beach to attempt to enforce their rights. Although Plaintiffs knew that Defendant Hesse had boasted about having "hooks" with Suffolk County Civil Service based on his sexual relationship with Defendant Sanchez, Plaintiffs trusted that Defendant Sanchez would faithfully carry out her professional responsibilities. Moreover, Defendant Sanchez promised Plaintiffs that their meeting with her would remain confidential. However, recognizing that Plaintiffs were attempting to "blow the whistle" on Defendant Hesse and the Ocean Beach

Defendants, Defendant Sanchez deliberately deceived Plaintiffs by insisting that they had no rights whatsoever, and that they "wouldn't have a leg to stand on" if they attempted to challenge the misconduct of Defendant Hesse and the Ocean Beach Defendants. Defendant Sanchez also broke her explicit promise of confidentiality to Plaintiffs by calling Defendant Hesse to report on the substance of their meeting.

## STATEMENT OF FACTS[1]

Defendant Sanchez was the County Civil Service Personnel Analyst assigned to the Incorporated Village of Ocean Beach ("Ocean Beach") from December 2002 to April 2007. (Pl 56.1-County ¶ 37). In her role as the Civil Service Personnel Analyst for Ocean Beach, it was Defendant Sanchez's duty to "review personnel transactions that were submitted by [her] assigned jurisdictions to make sure that they were in compliance with Civil Service Law with regards [sic] to hiring and maintaining personnel." (*Id.*). When Defendant Sanchez first began overseeing Civil Service Compliance at Ocean Beach, she determined "[t]hat they were negligent in reporting as they were supposed to." (*Id.* ¶ 38). Nevertheless, Defendant Sanchez failed to bring Ocean Beach into compliance with Civil Service requirements at any point during her tenure. (*Id.* ¶ 39). This was because Defendant Sanchez failed to take any action beyond regularly informing Ocean Beach that it was maintaining employees on its payroll illegally. (*Id.*) Moreover, she did absolutely nothing to ensure that Ocean Beach was hiring police officers who were certified or

---

[1] Plaintiffs respectfully refer this Court to the facts presented in: Plaintiffs' 56.1 Counter-Statement of Material Facts in Dispute in Response to County Defendants' 56.1 Statement ("Pl 56.1-County"); Plaintiffs' 56.1 Counter-Statement of Material Facts in Dispute in Response to Ocean Beach Defendants' 56.1 Statement ("Pl. 56.1-OB"); Plaintiffs' 56.1 Counter-Statement of Material Facts in Dispute in Response to Defendant Hesse's 56.1 Statement ("Pl 56.1-Hesse"); and the Declaration of Andrew S. Goodstadt in Support of Plaintiffs' Opposition to Ocean Beach Defendants' Motion for Summary Judgment ("Goodstadt Decl."), together with the exhibits attached thereto ("Ex.").

2

qualified to work in Suffolk County. Under her oversight, Defendant Hesse, Ocean Beach officials, and the Ocean Beach Board of Trustees determined that Ocean Beach police offers who were working in violation of Civil Service requirements "wouldn't disqualify them from working." (*Id.* ¶ 41).

However, when Defendant Sanchez began to "interact" with then Sergeant Defendant George Hesse ("Hesse"), who himself was uncertified to work in a supervisory position after twice failing the Civil Service examination to qualify as a Police Sergeant, with respect to personnel issues at Defendant Ocean Beach Police Department ("OBPD") in 2004, she informed him that the continued employment of OBPD officers who were not in compliance with Civil Service requirements was prohibited. (*Id.* ¶ 42). Although Defendant Sanchez recognized from her first interactions with Defendant Hesse that Defendant Hesse was exercising supervisory authority within the OBPD – despite having failed the requisite Civil Service examinations for employment in a supervisory capacity – she never informed anyone at Ocean Beach that Defendant Hesse was not permitted to continue serving in a supervisory capacity because it was a violation of Suffolk County Civil Service Law. (*Id.* ¶ 43). Instead, Defendant Sanchez continued to meet and speak with Defendant Hesse throughout her tenure. (*Id.* ¶ 44). Despite devoting such time to Defendant Hesse, the OBPD continued to violate Civil Service law for several years, and continues to do so today. (*Id.*).

When Defendant Hesse contacted Defendant Sanchez to confirm that Civil Service would not interfere with his plan to summarily terminate Plaintiffs' employment as OBPD Officers, without any pre- or post-termination hearing or another other due process, while at the same time retain officers who were not certified to work in Suffolk County,

3

Defendant Sanchez assured him that it would not. (*Id.* ¶ 45). And, approximately two days after Defendant Hesse terminated Plaintiffs in retaliation for their refusal to cooperate with Defendant Hesse's attempt to cover-up an incident of police brutality by an intoxicated OBPD officer, Plaintiffs' opposition to his selective enforcement of the laws of Ocean Beach, as well as Plaintiffs repeatedly complaining about other instances of unlawful conduct by Defendant Hesse that threatened public safety, Plaintiffs Nofi, Lamm and Fiorillo met with Defendant Sanchez in her role as the Civil Service Administrator for Ocean Beach in an attempt to exercise their rights. (*Id.* ¶ 46).

Defendant Sanchez then deceived Plaintiffs into believing that her meeting with them would be maintained in confidence, despite her intent to divulge their "whistleblower" complaints to Defendant Hesse. (*Id.* ¶ 47). Defendant Sanchez lied to Plaintiffs by claiming that they were entitled to no whistleblower protections whatsoever, and that, irrespective of their complaints about Defendant Hesse, the termination of Plaintiffs' employment was entirely lawful and beyond reproach. (*Id.* ¶ 49). Defendant Sanchez admitted that her meeting with Plaintiffs Nofi, Lamm and Fiorillo was "what I interpreted as a whistle blowing type of conversation where they tried like to tell on George Hesse and the Village for allowing other officers who worked there who had not completed all of their qualifying exams." (*Id.* ¶ 48). When asked whether Plaintiffs had attempted to "blow the whistle" regarding other conduct by Defendant Hesse, Sanchez testified: "Not that I can recall, and *if they did I probably tuned it out anyway* because it is not relevant. What they told me about I already knew, and if they were – *if there were other complaints about him personally I couldn't care less, it didn't matter. . . .* If there *was I probably wasn't paying attention.*" (*Id.* ¶ 50).

4

Despite having explicitly promised Plaintiffs Nofi, Lamm and Fiorillo that their meeting with her would remain confidential, Defendant Sanchez immediately called Defendant Hesse and disclosed the substance of Plaintiffs' failed attempt to "blow the whistle." (*Id.* ¶ 47, 51). Moreover, within days of her meeting with Plaintiffs Nofi, Lamm and Fiorillo, Sanchez posted the following derogatory and defamatory statements on the *Schwartz Report* public message board:

> You guys just feed into this crap. You want all "the dirt"... <u>what a bunch of wash women</u>!! . . . . I dont even know anyone involved, and it seems pretty clear that this revenge posting is all crap. How can you believe a word the guy says?? Anyone can say anything!!! Bottom line, he obviously is deficient in many ways which is WHY HE WAS PROBABLY CANNED IN THE FIRST PLACE!!! Get it?????
>
> You guys wanna make up stories so bad, then pick up your fired asses and go apply for a job on Days of Our Lives, I hear they are hiring - **bitch**!

(*Id.* ¶ 52) (emphasis in original).

Defendant Hesse did not hesitate to warn other officers that, in light of his sexual relationship with Defendant Sanchez, he had "hooks" with County Civil Service, and would therefore be immediately alerted to any officer's attempt to "blow the whistle" against him. (*Id.* ¶ 53).

### ARGUMENT

**I.   Defendants Have Failed To Satisfy the Standards for Summary Judgment and Their Motion Should be Denied**

Summary judgment may not be granted unless the submissions of the parties "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Here, the County Defendants bear the burden of making this showing, and the Court must view all facts in the light most favorable to the non-moving party, and resolve all ambiguities and inferences in favor of the non-

5

moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Here the record demonstrates both that genuine factual disputes exist, and that the disputed facts are material to Plaintiffs' claims, thus precluding summary judgment. Indeed, the County Defendants' arguments for summary judgment, which are based on unsupported, rebutted, and/or internally inconsistent claims, fail to take into account that "at the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Kessler v. Westchester Cty. Dep't of Social Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (internal citation omitted). As such, there are genuine issues for trial on all claims, and thus, the County Defendants are not entitled to summary judgment.

## II. **Plaintiffs' Claims for Conspiracy Under Sections 1985, 1986 and New York Common Law Must be Resolved at Trial**

To prevail on their claims for unlawful conspiracy under federal civil rights statutes and New York State Law, Plaintiffs must establish that Defendant Sanchez or the County Defendants: (i) entered into an agreement with Defendant Hesse or the Ocean Beach Defendants; (ii) for the purpose of depriving Plaintiffs of their legal rights; (iii) and engaged in an over act in furtherance of their conspiracy; (iv) resulting in damages to Plaintiffs. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324-24 (2d Cir. 2002) (To state a claim for conspiracy to violate § 1983, a plaintiff must "allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."); *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 791 (2d Cir. 2007) ("In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the

6

laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."); *Litras v. Litras*, 254 A.D.2d 395, 396 (2d Dep't 1998) ("Although an independent cause of action for civil conspiracy is not recognized in this State a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme.") (citation omitted).  As set forth below, County Defendants' motion for summary judgment on Plaintiffs' claims for conspiracy must be denied, as Plaintiffs have satisfied each element of their claims.

By her own admission, Defendant Sanchez informed Defendant Hesse that his exercise of supervisory authority over the OBPD was in violation of Civil Service Law, and that the continued employment of uncertified OBPD officers in violation of Civil Service Law was prohibited.  (Pl 56.1-County ¶ 42-43).  *See generally* N.Y. Civ. Serv. § 101 ("Misdemeanor to pay salary or compensation for which certification has been refused").  However, neither Suffolk County Civil Service, nor Defendant Sanchez communicated this information to Ocean Beach at any time during her employment.  (Pl 56.1-County ¶ 43).  Although Defendant Sanchez denies that she struck a corrupt bargain with Defendant Hesse, and insists that her relationship with Defendant Hesse was non-sexual, Defendant Hesse's contrary statements demonstrate the existence of, at the very least, a material dispute of fact on this question.[2]

---

[2]   The County Defendants emphasize that Defendant Sanchez divorced her husband and later married a woman in a ceremony in Massachusetts.  (*See, e.g.*, County Mem. at 2).  However, these facts are neither probative nor dispositive as to the existence of a sexual relationship between Defendant Sanchez and Defendant Hesse, and certainly have no bearing on her conspiracy with Defendant Hesse.

7

After Defendant Hesse described his proposed summary termination of Plaintiffs, without a hearing or other due process, to Defendant Sanchez, Defendants Sanchez and Hesse agreed that Hesse should feel free to proceed as planned, notwithstanding Plaintiffs' rights. (*Id.* ¶ 45). Defendant Sanchez then deceived Plaintiffs into believing that her meeting with them would be maintained in confidence, despite her intent to immediately divulge their "whistleblower" complaints to Defendant Hesse. (*Id.* ¶ 47).

Moreover, Defendant Sanchez undertook additional overt acts in furtherance of her conspiracy with Defendant Hesse to preserve his unlawful supervisory authority over the OBPD. By way of example, she permitted him to continue acting in a supervisory capacity notwithstanding the fact that he was uncertified for such a role due to his failure to ever pass the qualifying Civil Service examination to serve as Police Sergeant. (*Id.* ¶ 43). In addition, she allowed him to maintain his cadre of uncertified officers without any penalty. (*Id.* ¶¶ 39-43). Moreover, and most egregious, Defendant Sanchez lied to Plaintiffs by claiming that they were entitled to no whistleblower protections whatsoever, and that, irrespective of their complaints about Defendant Hesse, the termination of Plaintiffs' employment was entirely lawful and beyond reproach. (*Id.* ¶¶ 49-51). *But see* N.Y. Civ. Serv. § 106 ("Misdemeanor to obstruct civil service rights"); and 75-b(1)(b) ("'employee' shall mean any person holding a position by appointment or employment in the service of a public employer," irrespective of civil service classification); § 75-b(2)(a)(ii) (prohibiting retaliation against employee who reports information "*which the employee reasonably believes to be true and reasonably believes constitutes an improper government action.*").

---

Indeed, the record clearly demonstrates that Defendant Sanchez had a close enough relationship with Defendant Hesse to call him and disclose the confidential meeting she had with Plaintiffs Nofi, Lamm and Fiorillo, as well as defaming Plaintiffs on the *Schwartz Report* to support Defendant Hesse. (cite___).

8

Finally, Defendant Sanchez joined with Defendant Hesse's retaliatory smear-campaign against Plaintiffs, posting an invective-filled message on an online message board devoted to Ocean Beach Police Corruption, and claiming Plaintiffs were terminated for incompetence. (Pl 56.1-County ¶ 52).

County Defendants' motion for summary judgment fails to address any of the foregoing. Instead, County Defendants argue that they are entitled to summary judgment because, in their own personal view, the Court must accept that Defendant Sanchez's self-serving denials are credible and dispositive representations of fact (notwithstanding the dispositive evidence of her perjury set forth above). (*See* County Mem. 9-11). As Defendants' arguments hinge on a fundamental misapplication of the Court's role in determining a motion for summary judgment, which is not to weigh the credibility of witnesses, and to construe all inferences and in favor of the non-moving party, Defendants' motion must be denied.

### III. County Defendants Do Not Challenge the Sufficiency of Plaintiffs' Whistleblower Claims Under Civil Service Law § 75-b

Plaintiffs Eighth Cause of Action is brought against all Defendants in this case for violation of the whistleblower provisions set forth at New York Civil Service Law § 75-b. County Defendants do not move for summary judgment on Plaintiffs' Eight Cause of Action. Accordingly, Plaintiffs' claims against County Defendants under § 75-b must proceed to trial.

### IV. County Defendants Are Not Entitled to Summary Judgment on Plaintiffs' Claims Under Civil Service Law § 75

A tenured public employee within the scope of N.Y. Civ. Serv. § 75 is entitled to pre-termination "oral or written notice of the charges against him, an explanation of the

9

employer's evidence, and an opportunity to present his side of the story." *Id.* at 545; *see also Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001) ("when [a tenured] public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination"); *O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir. 1994) ("when a governmental employee is found to have a 'property interest' in continuation of his or her employment, the Due Process Clause of the Fourteenth Amendment forbids discharge unless the employee is afforded a pre-termination hearing").

Here, County Defendants' claim that Plaintiffs' continuous employment as Part-Time/Seasonal OBPD Officers falls outside the scope of § 75(1)(c), which extends full civil service disciplinary protections to "an employee holding a position in the non-competitive class . . . who since his last entry into service has completed at least five years of continuous service in the non-competitive class position." (County Mem. at 17-18); N.Y. Civ. Serv. § 75. *See also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (requiring "some form of pretermination hearing" before tenured employee may be terminated); *Todaro v. Norat*, 112 F.3d 598, 599 (2d Cir. 1997) (same).

Although it is undisputed that the position of Part-Time/Seasonal OBPD officer is a "non-competitive class position," County Defendants cite to the self-serving deposition testimony of Suffolk County Civil Service employees for the proposition that the beginning, and the end, of each "summer season" at Ocean Beach constituted a "break in service." From this premise, County Defendants argue that Part-Time/Seasonal OBPD officers who work year-round at Ocean Beach for five or more consecutive years are thus precluded from attaining § 75 protection based on five years of "continuous" service. (County Mem. at

10

17).  However, such unsupported positions have been flatly rejected by courts that have addressed this issue.  *See*, *e.g.*, *Saunders v. N.Y. City Health & Hosps. Corp.*, 6 A.D.3d 241, 242 (1st Dep't 2004) ("We reject respondent's argument that the reference to 'continuous' in Civil Service Law § 75(1)(c) limits the protections of that statute to full-time employees."); *Russell v. Hodges*, 470 F.2d 212, 219 (2d Cir. N.Y. 1972) ("[T]he passage of §75 (1)(c) in 1965 reflected a laudable decision of the legislature that employees in the non-competitive class should not be forever barred from the protection afforded persons in the competitive class merely because it was impracticable to devise an examination for their positions.  The requirement of five years of service was intended to provide a probationary period to evaluate the performance of these employees.").

County Defendants cite no law or precedent that supports their counterintuitive definition of "continuous service" for purposes of § 75(1)(c) as excluding the continuous service of Part-Time/Seasonal Police Officers.  (*See* County Mem. at 18).  Moreover, County Defendants claim that the "continuity" of Plaintiffs' service is broken by default at the beginning and end of each summer season is contrary to the definition of "continuous service" set forth in the official Civil Service Rules that have been duly promulgated by the Suffolk County Department of Civil Service (the "County Rules").  To the extent that the County Rules define what constitutes a "break" in an employee's "continuous" service, they provide, among other things, that a resignation "followed by a reinstatement *more than one year after resignation* constitutes a break in service." *See* COUNTY RULE 21(2)(A)(3) (2004) (emphasis added) (*At* Ex. 74).  Similarly, the explicit definition of "continuous service" set forth at 1930 NY Atty. Gen. Op. 301 provides that: "'Continuous service' means such service

11

as is not broken or interrupted by a period of more than one year, two years or four years, dependent upon the circumstances or reason for such interruption." (*Id. at* Ex. 75).

Indeed, the only authority that the County Defendants cite in their Memorandum of Law in support of their claim that Plaintiffs' "continuous" employment was broken at the start and end of each summer season – notwithstanding the year-round nature of their employment as Part-Time/Seasonal Police Officers – is the testimony of County Civil Service Department employees. (*See* County Mem. at 18). But the testimony of County employees cannot be conflated with Civil Service Law itself. *See generally* N.Y. Civ. Serv. § 20 (setting forth procedure for establishment of civil service rules by municipal commission).

The only case that County Defendants cite in connection with the purportedly non-continuous nature of Plaintiffs' employment at Ocean Beach is completely inapposite and, in fact, supports Plaintiffs' position. (*See* County Mem. at 18) (*Igneri v. Town of Brookhaven*, 232 A.D.2d 638 (2d Dep't 1996). More specifically, *Igneri*, held that a seasonal life guard did not maintain continuous, year-to-year employment where "evidence indicates that the [lifeguard] filed a new summer employment application and new tax forms each year, was required to elect whether to participate in the retirement system each year, and that each year the Town sent him a letter of appointment which specified that the petitioner was employed for that season only." *Id.* at 639.

The court's discussion in *Igneri* reinforces the fact that Plaintiffs' employment as Part-Time/Seasonal OBPD Officers was "continuous" within the meaning of § 75(1)(c). In marked contrast to the seasonal lifeguard in *Igneri*, who only worked during summers, Plaintiffs each worked-year round in their capacity as Part-Time/Seasonal Police Officers.

12

(Pl. 56.1-County ¶¶ 55-57). Moreover, neither Plaintiffs, nor any other OBPD officers who maintained employment from year-to-year, were ever required to "reapply" for their positions, nor did they receive annual notices of "termination." (*Id.*). To the contrary, Plaintiffs and non-party OBPD officers alike uniformly attested to procedures and mutually explicit understanding that Part-Time/Seasonal OBPD officers who worked consecutive "summer seasons," or continuously from year-to-year, maintained their employment status as OBPD officers without interruption. (Pl. 56.1-County ¶¶ 55-57); *see also Clark v. Mercado*, No. 98-7934, 1999 U.S. App. LEXIS 11845, at *6 (2d Cir. May 28, 1999) ("A property interest arising out of public employment may result from an explicit or implicit understanding between the employer and the employee, a contract, formal or informal rules, policies and practices of the employer, or the course of dealing between the employer and the employee.") (citing *Perry v. Sindermann*, 408 U.S. 593, 599-603 (1972)).

Accordingly, Plaintiffs Lamm, Nofi and Carter were continuously employed as Part-Time/Seasonal OBPD Police Officers for five or more consecutive years (*see* Pl. 56.1-Hesse ¶¶ 3, 7, 9, 11, 13) and are therefore entitled to the full panoply of protections afforded to tenured public employees pursuant to § 75(1)(c). *See* N.Y. Civ. Serv. § 75(1)(c). Because County Defendants have failed to demonstrate any basis for their conclusory assertions that Plaintiffs were outside the scope of § 75(1)(c), their motion for summary judgment on Plaintiffs' claims for violation of their right to full procedural process under § 75 must be denied.

V. **Suffolk County is Liable for County Defendants' Violations of Plaintiffs' Rights Under § 1983**

Suffolk County may be held liable under § 1983 for unlawful conduct undertaken by its employees "pursuant to 'a policy statement, ordinance, regulation, or decision officially

13

adopted and promulgated by the municipal officers, or governmental 'custom' even though such a custom has not received formal approval through the municipality's official decisionmaking [sic] channels.'" *See Abrahams v. Inc. Village of Hempstead*, No. 08-cv-02584 (SJF)(WDW), 2009 U.S. Dist. LEXIS 46725, at *14-15 (E.D.N.Y. June 2, 2009) (quoting *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)).  The existence of a "municipal policy or custom" can be demonstrated by "(1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiffs' civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Id.* (citations omitted).

In this case, County Defendants' claim that Plaintiffs somehow have purportedly failed to establish: (i) "that any policy of the County of Suffolk caused their alleged harm;" or (ii) that Plaintiffs were deprived of a "substantive constitutional right to continued employment." (*See* County Mem. at 20).  However, as set forth below, these purported defenses are without merit and should be rejected.  First, with respect to the existence of an impermissible County "policy," County Defendants' Rule 30(b)(6) designee on Civil Service Department practices testified that, although County Civil Service adheres to State Civil Service Law and duly promulgated County Civil Service Rules, County Civil Service has *no* policy or practice with respect to providing notice to municipal employees regarding the whistleblower protections available to them under Civil Service Law § 75-b. (Pl. 56.1-

14

County ¶ 58). Furthermore, County Civil Service has no policy or practice with respect to the application or enforcement of § 75-b, nor does it require or expect that any County Civil Service employees have any knowledge or understanding of the existence or implications of these whistleblower protections.[3] (*Id.*). Similarly, County Defendants' conceded policy and practice of depriving Part-Time/Seasonal OBPD officers who complete five-"continuous" years of service of their rights under § 75(1)(c) is unsupported by law and resulted in the deprivation of Plaintiffs' rights to pre- and post-termination process. *See* N.Y. Civ. Serv. § 75(1)(c).

Furthermore, County Civil Service concededly fails, as a matter of consistent policy and practice, to take any enforcement actions against Ocean Beach (and, presumably, other municipalities within the jurisdiction of County Civil Service) for the routine, chronic and never remedied hiring and retention of employees in violation of Civil Service Law (*e.g.*, permitting Hesse to continue in a supervisory role notwithstanding his lack of certification to do so). (*See* Pl. 56.1-County ¶¶ 39-41, 64). *See generally Wood v. New York*, 274 N.Y. 155, 161 (N.Y. 1937) ("The civil service provisions of the Constitution and of the law were intended as a protection for the public and all the employees in the civil service as well as security for the individual employee."). Indeed, by their own admission, County Defendants' policy and practice is to do nothing more than inform Ocean Beach of its identified violations, without any consideration of further action or the imposition of any consequences whatsoever for Ocean Beach's failure to comply with Civil Service

---

[3]     Defendant Sanchez, however, testified to her willful disregard for the substance of Plaintiffs' reports about misconduct by Defendant Hesse, which Defendant Sanchez recognized as a "whistleblower" event. (*See* Pl. 56.1-County ¶ 48). Defendant Sanchez's knowing violation of Plaintiffs' rights under § 75-b was an overt act in furtherance of her conspiracy with Defendant Hesse. (*See id.* ¶¶ 44-54).

15

requirements. (*See* Pl. 56.1-County ¶¶ 39-41, 64). *Cf.* N.Y. Civ. Serv. § 102(2) ("It shall be the duty of the attorney general or of the appropriate law officer . . . to prosecute such action upon the request of the municipal civil service commission . . . .").

Finally, the "investigation" conducted by County Defendants in response to Plaintiffs' allegations in this case did not include any inquiry regarding the existence of a conspiracy between Defendants Hesse and Sanchez. (*See* Pl. 56.1-County ¶ 69). Rather, County Defendants did nothing to investigate this claim. This confirms the County Defendants' policy and practice of indifference to the misconduct detailed above. In light of all of the foregoing, County Defendants' motion for summary judgment on Plaintiffs' claims against Defendant Suffolk County must be denied.

## **CONCLUSION**

For all the reasons set forth above, County Defendants' motion for summary judgment should be denied in its entirety.[4]

Dated: December 29, 2009  Respectfully submitted,
       New York, NY

**THOMPSON WIGDOR & GILLY LLP**

By: _____
Douglas H. Wigdor
Andrew Goodstadt
Ariel Y. Graff
85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

*COUNSEL FOR PLAINTIFFS*

---

[4] Plaintiffs, however, voluntarily dismiss from this case the: Seventh Cause of Action (brought under the Equal Protection clause of the 14th Amendment) in light of *Engquist v. Oregon Dept. of Agriculture*, 128 S. Ct. 2146 (2008), which the Supreme Court decided during the pendency of this case.

16