**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
EDWARD CARTER, FRANK FIORILLO, KEVIN        :
LAMM, JOSEPH NOFI, and THOMAS SNYDER,       :
                                            :
                        Plaintiffs,         :
                                            :
        v.                                  :   Case No. 07 CV 1215 (SJF)(ETB)
                                            :
INCORPORATED VILLAGE OF OCEAN BEACH;        :
MAYOR JOSEPH C. LOEFFLER, JR., individually :
and in his official capacity; former mayor NATALIE K. :
ROGERS, individually and in her official capacity; :
OCEAN BEACH POLICE DEPARTMENT; ACTING       :
DEPUTY POLICE CHIEF GEORGE B. HESSE,        :
individually and in his official capacity; SUFFOLK :
COUNTY; SUFFOLK COUNTY POLICE               :
DEPARTMENT; SUFFOLK COUNTY DEPARTMENT       :
OF CIVIL SERVICE; and ALISON SANCHEZ,       :
individually and in her official capacity,  :
                                            :
                        Defendants.         :
------------------------------------------------------------------------x

**PLAINTIFFS' RULE 56.1 COUNTER-STATEMENT OF MATERIAL FACTS IN DISPUTE
IN RESPONSE TO COUNTY DEFENDANTS' RULE 56.1 STATEMENT**

Pursuant to Rule 56.1 of the Local Civil Rules and in response to the Rule 56.1 Statement of Defendants Suffolk County, Suffolk County Police Department, Suffolk County Department of Civil Service ("Civil Service"), and Alison Sanchez ("Sanchez"), (collectively, "County Defendants"), Plaintiffs Edward Carter, Frank Fiorillo, Kevin Lamm, Joseph Nofi, and Thomas Snyder, (collectively, "Plaintiffs"), by their attorneys, Thompson Wigdor & Gilly LLP, submit the following statement of material facts in dispute, which demonstrates that there are genuine issues of material facts that require a trial in this matter:

1.       Admit for the purpose of this motion.[1]

2.       Dispute.  Plaintiffs also worked as Part-Time Police Officers for the Ocean Beach Police Department ("OBPD") during the non-summer months of calendar years 2002 through 2006.  (*See* Carter Tr. 114:4-10, Fiorillo Tr. 11:6-10; Lamm Tr. 218:7-14; Nofi 161:15-17; Snyder 30:7-21).

3.       Dispute.  Plaintiffs all worked as Part-Time OBPD Officers during the non-summer months of calendar years 2002 through 2006.  (*See* Carter Tr. 114:4-10, Fiorillo Tr. 11:6-10; Lamm Tr. 218:7-14; Nofi Tr. 161:15-17; Snyder Tr. 30:7-21).

4.       Deny.  Plaintiff Carter's employment as a Part-Time/Seasonal OBPD Officer ended on April 2, 2006, when Defendant Hesse unlawfully terminated his employment in retaliation for his complaints of, *inter alia*, OBPD Officers drinking on duty, and about Hesse's cover-up of an assault against civilians by uncertified OBPD officer Gary Bosetti on Halloween night 2004. (*See*, *e.g.*, Carter Aff. ¶ 4).

5.       Dispute.  Plaintiff Lamm's employment as a Part-Time/Seasonal OBPD Officer ended on April 2, 2006, when Defendant Hesse unlawfully terminated his employment in retaliation for his complaints of *inter alia*, OBPD Officers drinking on duty, and about Hesse's cover-up of an assault against civilians by uncertified OBPD officer Gary Bosetti on Halloween night 2004. (*See*, *e.g.*, Lamm Aff. ¶ 5).

6.       Dispute.  Plaintiff Fiorillo's employment as a Part-Time/Seasonal OBPD Officer ended on April 2, 2006, when Defendant Hesse unlawfully terminated his employment in retaliation for his complaints of, *inter alia*, OBPD Officers drinking on duty,

---

[1]      All admitted statements herein are admitted solely for the purpose of providing this Rule 56.1 Counter-Statement and responding to any motions by Defendants for summary judgment.

and about Hesse's cover-up of an assault against civilians by uncertified OBPD officer Gary Bosetti on Halloween night 2004.  (*See* Fiorillo Tr. 89:10-93:9; Carollo Tr. 42:19-43:3; Bacon Tr. 225-26; G. Bosetti Tr. 160:17-23).

7.      Dispute.  Plaintiff Nofi's employment as Part-Time/Seasonal OBPD Officer ended on April 2, 2006, when Defendant Hesse unlawfully terminated his employment in retaliation for his complaints of, *inter alia*, OBPD Officers drinking on duty, and about Hesse's cover-up of an assault against civilians by uncertified OBPD officer Gary Bosetti on Halloween night 2004.  (*See*, *e.g.*, Nofi Affidavit).

8.      Dispute.  Plaintiff Snyder's employment as a Part-Time/Seasonal OBPD Officer ended on April 20, 2006, when Defendant Hesse unlawfully terminated his employment in retaliation for his complaints of, *inter alia*, OBPD Officers drinking on duty, and about Hesse's cover-up of an assault against civilians by uncertified OBPD officer Gary Bosetti on Halloween night 2004.  (*See*, *e.g.*, Snyder Affidavit).

9.      Admit for the purpose of this motion.

10.     Admit for the purpose of this motion.

11.     Admit for the purpose of this motion.

12.     Admit for the purpose of this motion.

13.     Dispute.  County Defendants fail to support this statement by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d).  As such, no responsive counterstatement is possible or required pursuant to Local Civil Rule 56.1(b) and (c).  Notwithstanding the same, Defendant Sanchez was the County Civil Service Personnel Analyst assigned to Ocean Beach from December 2002 to April 2007 and testified that her duties as a Personnel Analyst were: "To review

3

personnel transactions that were submitted by my assigned jurisdiction *to make sure that they were in compliance with Civil Service Law with regard[] to hiring and maintaining personnel.*" (*See* Sanchez Tr. 26:5-11 (emphasis added)). Additionally, Civil Service possesses subpoena power for the purpose of investigating the enforcement and effect of the provisions of Civil Service Law within covered jurisdictions pursuant to NY Civil Service Law Section 21. *See* N.Y. Civ. Serv. § 21. Civil Service also has the authority, pursuant to NY Civil Service Law Section 100, to direct the authority responsible for disbursing funds in a municipality within its jurisdiction to not pay salary or compensation to any person employed in violation of Civil Service Law. *See* N.Y. Civ. Serv. § 100. It is a misdemeanor to pay salary or compensation to any person in the classified service with the knowledge that Civil Service has refused to certify the payroll with respect to a jurisdiction's employment of such person. *See* N.Y. Civ. Serv. § 101. Moreover, the Civil Service Department may maintain an action in New York State Supreme Court to enjoin any such violation of Civil Service Law. *See* N.Y. Civ. Serv. § 102.

   14.  Dispute. Civil Service possesses subpoena power for the purpose of investigating the enforcement and effect of the provisions of Civil Service Law within covered jurisdictions pursuant to NY Civil Service Law Section 21. *See* N.Y. Civ. Serv. § 21. Civil Service also has the authority, pursuant to NY Civil Service Law Section 100, to direct the authority responsible for disbursing funds to not pay salary or compensation to any person employed in violation of Civil Service Law. *See* N.Y. Civ. Serv. § 100. It is a misdemeanor to pay salary or compensation to any person in the classified service with the knowledge that Civil Service has refused to certify the payroll with respect to a jurisdiction's employment of such person. *See* N.Y. Civ. Serv. § 101. Moreover, the Civil

Service Department may maintain an action in New York State Supreme Court to enjoin any such violation of Civil Service Law. *See* N.Y. Civ. Serv. § 102.

15. Dispute. Civil Service possesses subpoena power for the purpose of investigating the enforcement and effect of the provisions of Civil Service Law within covered jurisdictions pursuant to NY Civil Service Law Section 21. *See* N.Y. Civ. Serv. § 21. Civil Service also has the authority, pursuant to NY Civil Service Law Section 100, to direct the authority responsible for disbursing funds to not pay salary or compensation to any person employed in violation of Civil Service Law. *See* N.Y. Civ. Serv. § 100. It is a misdemeanor to pay salary or compensation to any person in the classified service with the knowledge that Civil Service has refused to certify the payroll with respect to a jurisdiction's employment of such person. *See* N.Y. Civ. Serv. § 101. Moreover, the Civil Service Department may maintain an action in New York State Supreme Court to enjoin any such violation of Civil Service Law. *See* N.Y. Civ. Serv. § 102.

16. Dispute. Additionally, Civil Service possesses subpoena power for the purpose of investigating the enforcement and effect of the provisions of Civil Service Law within covered jurisdictions pursuant to NY Civil Service Law Section 21. *See* N.Y. Civ. Serv. § 21. Civil Service also has the authority, pursuant to NY Civil Service Law Section 100, to direct the authority responsible for disbursing funds to not pay salary or compensation to any person employed in violation of Civil Service Law. *See* N.Y. Civ. Serv. § 100. It is a misdemeanor to pay salary or compensation to any person in the classified service with the knowledge that Civil Service has refused to certify the payroll with respect to a jurisdiction's employment of such person. *See* N.Y. Civ. Serv. § 101. Moreover, the Civil

Service Department may maintain an action in New York State Supreme Court to enjoin any such violation of Civil Service Law. See N.Y. Civ. Serv. § 102.

17. Dispute. County Defendants fail to support this statement by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d). As such, no responsive counterstatement is possible or required pursuant to Local Civil Rule 56.1(b) and (c).

18. Dispute. Additionally, Civil Service possesses subpoena power for the purpose of investigating the enforcement and effect of the provisions of Civil Service Law within covered jurisdictions pursuant to NY Civil Service Law Section 21. See N.Y. Civ. Serv. § 21. Civil Service also has the authority, pursuant to NY Civil Service Law Section 100, to direct the authority responsible for disbursing funds to not pay salary or compensation to any person employed in violation of Civil Service Law. See N.Y. Civ. Serv. § 100. It is a misdemeanor to pay salary or compensation to any person in the classified service with the knowledge that Civil Service has refused to certify the payroll with respect to a jurisdiction's employment of such person. See N.Y. Civ. Serv. § 101. Moreover, the Civil Service Department may maintain an action in New York State Supreme Court to enjoin any such violation of Civil Service Law. See N.Y. Civ. Serv. § 102.

19. Dispute. County Defendants fail to support this statement by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d). As such, no responsive counterstatement is possible or required pursuant to Local Civil Rule 56.1(b) and (c).

20. Qualify. Among possible forms of "corrective action" is the subpoena power that Civil Service possesses for the purpose of investigating the enforcement and effect of

6

the provisions of Civil Service Law within covered jurisdictions pursuant to NY Civil Service Law Section 21. *See* N.Y. Civ. Serv. § 21. Civil Service also has the authority, pursuant to NY Civil Service Law Section 100, to direct the authority responsible for disbursing funds to not pay salary or compensation to any person employed in violation of Civil Service Law. *See* N.Y. Civ. Serv. § 100. It is a misdemeanor to pay salary or compensation to any person in the classified service with the knowledge that Civil Service has refused to certify the payroll with respect to a jurisdiction's employment of such person. *See* N.Y. Civ. Serv. § 101. Moreover, the Civil Service Department may maintain an action in New York State Supreme Court to enjoin any such violation of Civil Service Law. *See* N.Y. Civ. Serv. § 102.

21. Admit for the purpose of this motion.

22. Deny. Civil Service's efforts to guide and advise the Ocean Beach Defendants "as to how to rectify and remediate civil service reporting deficiencies" were grossly inadequate. (*See* Minerva Tr. 127:16-129:23 and Sanchez Tr. 117:14-121:25; Distefano Tr. 100:12-18, 128:3-131:10, 178:12-181:20).

23. Admit for the purpose of this motion.

24. Admit for the purpose of this motion.

25. Dispute. County Defendants fail to support this statement by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d). As such, no responsive counterstatement is possible or required pursuant to Local Civil Rule 56.1(b) and (c).

26. Deny. Plaintiffs Fiorillo, Nofi and Lamm met with Sanchez at her office at Civil Service to complain about Defendant Hesse's unlawful, retaliatory termination of their employment as Part-Time/Seasonal Police Officers in response to their refusal to

7

participate in a "cover up" of the "Halloween Incident," as well as their complaints about Defendant Hesse's hiring and retention of employees who were not authorized by Civil Service to work as police officers, and who violated police procedures and drank in local bars while on duty, and to inquire as to their legal rights in light of the same. (Fiorillo Tr. 58:11-59:21; Nofi Tr. 129:23-134:18) (Sanchez Tr. 245). "And then at that point they turned the conversation into what I interpreted as a whistle blowing type of conversation where they tried like to tell on George Hesse and the Village for allowing other officers who worked there who had not completed all of their qualifying exams." (Sanchez Tr. 245:10-16). When asked whether Plaintiffs had attempted to "blow the whistle" regarding other conduct by Defendant Hesse, Sanchez testified: "Not that I can recall, and *if they did I probably tuned it out anyway* because it is not relevant. What they told be about I already knew, and if they were – *if there were other complaints about him personally I couldn't care less, it didn't matter. . . .* If there *was I probably wasn't paying attention*." (Sanchez Tr. 252:4-22) (emphasis added).

27. Deny. County Defendants fail to support this statement by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d). As such, no responsive counterstatement is possible or required pursuant to Local Civil Rule 56.1(b) and (c). Notwithstanding the same, Defendant Sanchez falsely advised Plaintiffs Nofi, Fiorillo, and Lamm that their conversation with her would be kept confidential, but failed to maintain the confidentiality of that conversation. (Fiorillo Tr. 54:24-55:11; Nofi Tr. 131:24-132:5; Lamm Tr. 141:23-142:13). Indeed, Plaintiff Nofi is a full-time employee of Suffolk County and Defendant Sanchez disclosure of his complaints jeopardized his full time employment.

8

28. Qualify. Notwithstanding the same, Sanchez falsely and willfully deceived Plaintiffs by assuring them that the substance of their post-termination meeting with her would be maintained in confidence. (Fiorillo Tr. 54:24-55:11; Nofi Tr. 131:24-132:5; Lamm Tr. 141:23-142:13).

29. Deny. Sanchez's conversation with Plaintiffs about their complaints regarding their unlawful termination of employment by Defendant Hesse was the only incident of "whistle blowing" by municipal employees that she experienced during her employment, and, indeed, one of only two such instances during the 30-year career of her senior supervisor, Cynthia Distefano. (*See* Distefano Tr. 158:17-24).

30. Deny. Defendant Sanchez falsely represented to Plaintiffs that they "didn't have a leg to stand on" with respect to any form of recourse for Hesse's unlawful termination of their employment. (*See* Fiorillo Tr. 72:10-16, 73:4-10, 439:21-440:2; Nofi Tr. 142:6-16). Moreover, within days of her meeting with Plaintiffs, Sanchez posted the following on the *Schwartz Report* public message board:

> You guys just feed into this crap. You want all "the dirt"... what a bunch of wash women!! Dont you see this guy gets canned for doing a CRAP job, of course he is mad and wants to lash out, you are gonna actually believe anything this moron says??? I dont even know anyone involved, and it seems pretty clear that this revenge posting is all crap. How can you believe a word the guy says?? Anyone can say anything!!! Bottom line, he obviously is deficient in many ways which is WHY HE WAS PROBABLY CANNED IN THE FIRST PLACE!!! Get it?????
>
> You guys wanna make up stories so bad, then pick up your fired asses and go apply for a job on Days of Our Lives, I hear they are hiring - **bitch**!

(*See* Ex. 17, at P00964 (emphasis in original); Ex. 12 (Sanchez's Supplemental Response to Plaintiffs' Interrogatories, at 1)).

9

31. Deny. Defendant Hesse made repeated references to his sexual relationship with Defendant Sanchez as well as his desire to include Defendant Sanchez's female partner in that sexual relationship. (Snyder Tr. 379:21-380:5; Carter Tr. 372:10-373:14).

32. Admit for the purpose of this motion.

33. Deny. County Defendants fail to support this statement by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d). As such, no responsive counterstatement is possible or required pursuant to Local Civil Rule 56.1(b) and (c).

34. Deny. County Defendants fail to support this statement by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d). As such, no responsive counterstatement is possible or required pursuant to Local Civil Rule 56.1(b) and (c).

35. Deny. County Defendants fail to support this statement by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d). As such, no responsive counterstatement is possible or required pursuant to Local Civil Rule 56.1(b) and (c).

36. Deny. Defendant Sanchez unlawfully conspired with Defendant Hesse to violate Plaintiff's rights, in furtherance of their mutual objective of allowing Defendant Hesse to exercise unlawful control over the OBPD.

## **ADDITIONAL MATERIAL FACTS IN DISPUTE**

In addition to the material facts enumerated above that are in dispute, among the issues of material fact to be tried include:

37. Defendant Sanchez was the County Civil Service Personnel Analyst assigned to Ocean Beach from December 2002 to April 2007 and testified that her duties as a Personnel Analyst were: "To review personnel transactions that were submitted by my assigned jurisdiction *to make sure that they were in compliance with Civil Service Law with regard[] to hiring and maintaining personnel*."  (*See* Sanchez Tr. 26:5-11 (emphasis added)).

38. When Defendant Sanchez first began overseeing Civil Service Compliance at Ocean Beach, she determined "[t]hat they were negligent in reporting as they were supposed to." (*See* Sanchez Tr. 119:7-12).

39. Nevertheless, Defendant Sanchez failed to bring Ocean Beach into compliance with Civil Service requirements at any point during her tenure. This was because Defendant Sanchez failed to take any action beyond informing Ocean Beach that it was maintaining uncertified employees on its payroll illegally. (*See* Sanchez Tr. 121:17-25).

40. Defendant Sanchez never even suggested to Ocean Beach that it could face any consequences for continuing to ignore her reports of unlawful employment practices, and she never communicated to anyone at Ocean Beach that the failure to remedy identified violations of Civil Service Law was a problem.  (Sanchez Tr. 122:25-123:9).

41. Under Defendant Sanchez's oversight, the determination that Ocean Beach employees were working in violation of Civil Service requirements "wouldn't disqualify them from working." (*See* Sanchez Tr. 124:5-19).

42. When Defendant Sanchez began to "interact" with Hesse with respect to personnel issues at Defendant Ocean Beach Police Department in 2004, she informed him that the continued employment of OBPD officers who were not in compliance with Civil Service requirements was prohibited.  (*See* Sanchez Tr. 178:25-181:6).

11

43. Defendant Sanchez recognized from her first interactions with Hesse that Hesse was exercising supervisory authority within the OBPD – despite having failed the requisite Civil Service examinations for employment in a supervisory capacity on at least two occasions – she never informed anyone at Ocean Beach that Defendant Hesse was not permitted to continue serving in a supervisory capacity. (*See* Sanchez Tr. 206:24-207:13; 212:13-23).

44. Defendant Sanchez continued to meet and speak with Defendant Hesse throughout her tenure, and despite devoting such time to Defendant Hesse, the OBPD continued to violate Civil Service law. (*See* Sanchez Tr. 121:17-25; 162:12-19).

45. When Defendant Hesse contacted Defendant Sanchez to confirm that Civil Service would not interfere with his plan to unlawfully terminate Plaintiffs' employment as OBPD Officers, Defendant Sanchez assured him that it would not. (*See* Sanchez Tr. 234:24-236:13, 243:11-245:4; Hesse Tr. 610:3-9).

46. After being terminated by Defendant Hesse in retaliation for their refusal to cooperate with Hesse's attempt to cover-up an incident of police brutality by an intoxicated OBPD officer, and for repeatedly complaining about other instances of unlawful conduct by Defendant Hesse that threatened public safety, Plaintiffs met with Defendant Sanchez in an attempt to complain about Defendant Hesse's unlawful termination as well as to obtain information about their rights. (Sanchez Tr. 242:2-14).

47. Defendant Sanchez then deceived Plaintiffs into believing that her meeting with them would be maintained in confidence, despite her intent to divulge their "whistleblower" complaints to Defendant Hesse. (Fiorillo Tr. 54:24-55:11; Nofi Tr. 131:24-132:5; Lamm Tr. 141:23-142:13; Ex. 13, at 4:23-5:18).

12

48.     Defendant Sanchez testified that her meeting with Plaintiffs was "what I interpreted as a whistle blowing type of conversation where they tried like to tell on George Hesse and the Village for allowing other officers who worked there who had not completed all of their qualifying exams." (Sanchez Tr. 245:10-16.)

49.     Defendant Sanchez lied to Plaintiffs by claiming that they were entitled to no whistleblower protections whatsoever, and that, irrespective of their complaints about Defendant Hesse, the termination of Plaintiffs' employment was entirely lawful and beyond reproach. (Sanchez Tr. 243:22-24; 244:5-246:5). Thus, Defendant Sanchez falsely represented to Plaintiffs that they "didn't have a leg to stand on" with respect to any form of recourse for Hesse's unlawful termination of their employment. (*See* Fiorillo Tr. 72:10-16, 73:4-10, 439:21-440:2; Nofi Tr. 142:6-16).

50.     When asked whether Plaintiffs had attempted to "blow the whistle" regarding other conduct by Defendant Hesse, Sanchez admitted: "Not that I can recall, and *if they did I probably tuned it out anyway* because it is not relevant. What they told me about I already knew, and if they were – *if there were other complaints about him personally I couldn't care less, it didn't matter. . . .* If there *was I probably wasn't paying attention*." (Sanchez Tr. 252:13-22).

51.     Despite having explicitly promised Plaintiffs that their meeting with her would remain confidential, Defendant Sanchez immediately called Defendant Hesse and disclosed the substance of Plaintiffs' failed attempt to "blow the whistle." (Ex. 8, Ex. 13, at 4:23-5:18)

52.     Moreover, within days of her meeting with Plaintiffs, Defendant Sanchez joined with Defendant Hesse's unlawful retaliatory smear-campaign against Plaintiffs,

13

posting an invective-filled message on an online message board devoted to Ocean Beach Police Corruption, and claiming Plaintiffs were terminated for incompetence.

> You guys just feed into this crap. You want all "the dirt"... <u>what a bunch of wash women</u>!! Dont you see this guy gets canned for doing a CRAP job, of course he is mad and wants to lash out, you are gonna actually believe anything this moron says??? I dont even know anyone involved, and it seems pretty clear that this revenge posting is all crap. How can you believe a word the guy says?? Anyone can say anything!!! Bottom line, he obviously is deficient in many ways which is WHY HE WAS PROBABLY CANNED IN THE FIRST PLACE!!! Get it?????
>
> You guys wanna make up stories so bad, then pick up your fired asses and go apply for a job on Days of Our Lives, I hear they are hiring - **bitch**!

(*See* Ex. 17, at P00964 (emphasis in original); Ex. 12 (Sanchez's Supplemental Response to Plaintiffs' Interrogatories, at 1)).

53. Defendant Hesse did not hesitate to warn other officers that, in light of his sexual relationship with Defendant Sanchez, he had "hooks" with County Civil Service, and would therefore be immediately alerted to any officer's attempt to "blow the whistle" against him. (*See* Ex. 13, at 4:23-5:18; Carter Aff. ¶ 8).

54. Defendant Hesse made repeated references to his sexual relationship with Defendant Sanchez as well as his desire to include Defendant Sanchez's female partner in that sexual relationship. (Snyder 379:21-380:5; Carter 372:10-373:14).

55. Part-Time/Seasonal OBPD officers who worked continuously from year-to-year were not required to "reapply" for their positions and continued to serve without any change in employment status. (*See* Carollo Tr. 42:19-43:3; Bacon Tr. 225-26; G. Bosetti Tr. 160:17-23).

56. Part-Time/Seasonal OBPD officers he did not have to fill out any paperwork to be re-hired from year-to-year and never received paperwork regarding such "re-hiring." (R. Bosetti 184:2-24; Bacon Tr. 225-26; G. Bosetti Tr. 160:17-23).

14

57. The only annual employment-related paperwork that Part-Time/Seasonal OBPD officers received the letter inviting to pre-season meeting. (*See* Bacon Tr. 226-28).

58. County Civil Service has *no* policy or practice with respect to providing notice to municipal employees regarding the whistleblower protections available to them under Civil Service Law § 75-b, nor does it require or expect that any County Civil Service employees have any knowledge or understanding of the existence or implications of these whistleblower protections. (Distefano Tr. 151:4-158:24).

59. Officer Snyder is a graduate of the Suffolk County Police Academy ("SCPA"), having successfully completed a law-enforcement training program sanctioned by the Municipal Bureau of Police. (Snyder Tr. 382:18-383:4). Officer Snyder was duly certified to serve as a police officer in Suffolk County in or around May 1991, having satisfied an array of medical, physical agility, psychological, and mandatory polygraph examinations, as required, as well as comprehensive backgrounds checks. (Ex. 26 and 29; Snyder Tr. 382:18-383:4).

60. Officer Carter is a graduate of the Suffolk County Police Academy ("SCPA"), having successfully completed a law-enforcement training program sanctioned by the Municipal Bureau of Police. Officer Carter was duly certified to serve as a police officer in Suffolk County in or around May 1991, having satisfied an array of medical, physical agility, psychological, and mandatory polygraph examinations, as required, as well as comprehensive backgrounds checks. (Ex. 26 and 29); (Carter Tr. 367:23-25).

61. Officer Nofi is a graduate of the Suffolk County Police Academy ("SCPA"), having successfully completed a law-enforcement training program sanctioned by the Municipal Bureau of Police. Officer Nofi was duly certified to serve as a police officer in

15

Suffolk County in or around May 5, 2000, having satisfied an array of medical, physical agility, psychological, and mandatory polygraph examinations, as required, as well as comprehensive backgrounds checks. (Ex. 26 and 29; Nofi Tr. 380:8-10).

62. Officer Lamm is a graduate of the Suffolk County Police Academy ("SCPA"), having successfully completed a law-enforcement training program sanctioned by the Municipal Bureau of Police. Officer Lamm was duly certified to serve as a police officer in Suffolk County in or around May 8, 1998, having satisfied an array of medical, physical agility, psychological, and mandatory polygraph examinations, as required, as well as comprehensive backgrounds checks. (Ex. 26 and 29; Lamm Tr. 101:5-14).

63. Officer Fiorillo is a graduate of the Suffolk County Police Academy ("SCPA"), having successfully completed a law-enforcement training program sanctioned by the Municipal Bureau of Police. (Fiorillo Tr 311:5-7). Officer Fiorillo was duly certified to serve as a police officer in Suffolk County in or around June 3, 2002, having satisfied an array of medical, physical agility, psychological, and mandatory polygraph examinations, as required, as well as comprehensive backgrounds checks. (Fiorillo Tr. 346:12-14). Officer Fiorillo was the valedictorian of his Police Academy Class. (Ex. 35).

64. Ocean Beach was *never* in full compliance with applicable Civil Service requirements at any time during Rogers' tenure as Mayor. (Rogers Tr. 167:9-14).

65. Defendant Hesse terminated Officer Nofi in reprisal for Officer Nofi's complaints about misconduct by Defendant Hesse and other OBPD Officers who were friends with Defendant Hesse. (*See* Nofi Tr. 194:13-202:6, 204:23-205:9, 299:9-23).

66. Defendant Hesse terminated Officer Snyder in reprisal for his complaints about misconduct by Defendant Hesse and other OBPD Officers, as well as his refusal to

16

amend his statement about a fight in a bar involving off duty OBPD Gary Bosetti and Richard Bosetti. (The "Halloween Incident") (*See* Snyder Tr. 259:21-262:8, 264:19-265:11, 277:6-278:23, 278:24-279:8, 281:5-23; Ex. 13, at 4:23-5:18)

67. Defendant Hesse terminated Officer Fiorillo in reprisal for his complaints about misconduct by Defendant Hesse and other OBPD Officers who were friends with Defendant Hesse, as well as Officer Fiorillo's refusal to amend his statement about the Halloween Incident, and because he was resentful of Officer Fiorillo's productivity as a police officer, which reflected poorly on Defendant Hesse and his friends on the force. (Carollo Tr. 93:6-94:21; Fiorillo Tr. 89:10-93:9, 115:17-20; 119:9-11, 138:14-18; Ex. 13, at 4:23-5:18).

68. Defendant Hesse terminated Officer Carter in reprisal for his complaints about misconduct by Defendant Hesse and other OBPD Officers who were friends with Defendant Hesse. (Carter Tr. 35:7-40:12, 45:5-8, 51:4-9, 313:16-314:20, 320:15-321:9, 321:10-323:2, 326:18-328:4, 336:17-340:3; Ex. 13, at 4:23-5:18).

69. The "investigation" conducted by County Defendants in response to Plaintiffs' allegations in this case did not include any inquiry regarding the existence of a conspiracy between Defendants Hesse and Sanchez. (*See* Distefano Tr. 292:5-23).

Dated: December 29, 2009    Respectfully submitted,
       New York, NY

                              THOMPSON WIGDOR & GILLY LLP

                              By: _____
                              Douglas H. Wigdor
                              Andrew Goodstadt
                              Ariel Y. Graff
                              85 Fifth Avenue
                              New York, New York 10003
                              Telephone: (212) 257-6800
                              Facsimile: (212) 257-6845

                              *Counsel for Plaintiffs*