**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

EDWARD CARTER, FRANK FIORILLO, KEVIN      :
LAMM, JOSEPH NOFI, and THOMAS SNYDER,     :
                                          :
                          Plaintiffs,     :
                                          :
            v.                            :    Case No. 07 CV 1215 (SJF)(ETB)
                                          :
INCORPORATED VILLAGE OF OCEAN BEACH;      :
MAYOR JOSEPH C. LOEFFLER, JR., individually    :
and in his official capacity; former mayor NATALIE K.    :
ROGERS, individually and in her official capacity;    :
OCEAN BEACH POLICE DEPARTMENT; ACTING     :
DEPUTY POLICE CHIEF GEORGE B. HESSE,      :
individually and in his official capacity; SUFFOLK    :
COUNTY; SUFFOLK COUNTY POLICE             :
DEPARTMENT; SUFFOLK COUNTY DEPARTMENT     :
OF CIVIL SERVICE; and ALISON SANCHEZ,     :
individually and in her official capacity,    :
                                          :
                          Defendants.     :

------------------------------------------------------------------------x

**PLAINTIFFS' RULE 56.1 COUNTER-STATEMENT OF MATERIAL FACTS IN DISPUTE**
**IN RESPONSE TO OCEAN BEACH DEFENDANTS' RULE 56.1 STATEMENT**

Pursuant to Rule 56.1 of the Local Civil Rules for the Eastern District of New York

and in response to the Rule 56.1 Statement of Defendants Incorporated Village of Ocean

Beach ("Ocean Beach"), Mayor Joseph C. Loeffler, Jr. ("Defendant Loeffler"), former mayor

Natalie J. Rogers ("Defendant Rogers"), and Ocean Beach Police Department ("OBPD"),

(collectively, "Ocean Beach Defendants"), Plaintiffs Edward Carter ("Officer Carter"), Frank

Fiorillo ("Officer Fiorillo"), Kevin Lamm ("Officer Lamm"), Joseph Nofi ("Officer Nofi"), and

Thomas Snyder ("Officer Snyder"), (collectively, "Plaintiffs"), by their attorneys, Thompson

Wigdor & Gilly LLP, submit the following statement of material facts in dispute, which

demonstrates that there are genuine issues as to material facts that require a trial in this matter:

1.      Admit for the purpose of this motion.

2.      Dispute.  The Mayor of Ocean Beach is also the Police Commissioner of Ocean Beach.  (Rogers Tr. 64:19-65:15; Loeffler 61:2-7).

3.      Admit for the purpose of this motion.

4.      Dispute.  Ocean Beach reported to Civil Service that it had two full-time police officers.  (*See* Ex. 69).  In fact, one of those Officers, Edward Paradiso, served as "Chief of Police."  (*Id*).  The second "full time officer" reported by Ocean Beach, Defendant Hesse, served as Police Sergeant, despite having twice failed the qualifying Civil Service examination for Police Sergeant, and, in fact, never having passed such qualifying examination or any civil service examination that would qualify him for a supervisory position in a police department in Suffolk County (Hesse Tr. 125:6-11).  By official resolution of the Ocean Beach Board of Trustees, pursuant to a motion proposed by Defendant Trustee Loeffler, Defendant Hesse was designated as "Acting Police Chief" on January 26, 2006.  (*See* Ex 65).  However, outgoing Chief Paradiso warned Defendant Mayor Rogers that Defendant Hesse was not qualified to serve as Chief (Rogers Tr. 84:19-85:6).  Nevertheless, Defendant Hesse continues to serve in this capacity, notwithstanding a letter from Civil Service to the Mayor and Village Administrator of Ocean Beach warning that Defendant Hesse is not authorized to serve in a supervisory capacity.  (*See* Ex. 46; Distefano Tr. 188:16-189:21).

5.      Dispute.  Ocean Beach hires part-time police officers for its force throughout the year, including summer and non-summer seasons.  (*See*, *e.g.*, OB-Defs.' 56.1 ¶ 24).

6.      Dispute.  Ocean Beach employed approximately 35 police officers during this period.  However, only nine of these officers were "hired" during 2005, while the remaining officers were hired in prior years, and continued their tenure with Ocean Beach in 2005. (*See* Ex. 71, at 010186).

7.      Dispute.  The Civil Service position "Part Time/Seasonal" includes employment during the summer season and throughout the year.  (*See* Ex. 26).

8.      Dispute.  Defendant Loeffler also began serving as "Police Commissioner" upon his election to Mayor.  (*See* Loeffler Tr. 61:2-7).

9.      Dispute.  On April 2, 2006, Defendant Loeffler was also the official "Police Liaison" to the Village Board of Trustees (*see* Hesse Tr. 44:5-13, 45:12-19), and an emergency medical services driver for OB Village Rescue. (Loeffler Tr. 231:21-232:4). Defendant Loeffler also was a 19-year veteran Suffolk County Detective with the Suffolk County First Police Precinct. (*See* Loeffler Tr. 11:19-22, 325:11-22).

10.      Dispute.  In 2002, at Defendant Rogers' initiative, the Village Board also appointed her as Ocean Beach Police Commissioner, although she admittedly had no prior law enforcement experience or qualification to serve as Police Commissioner.  (Rogers Tr. 63:15-17, 65:22-24).

11.      Dispute.  Chief Paradiso supervised the Officers assigned to his shifts, and Defendant Hesse, in his capacity as "Sergeant" – notwithstanding failure to pass the qualifying Civil Service Sergeant's exam (*see* Hesse Tr. 125:6-11) – supervised officers on his shift.  In fact, Chief Paradiso made clear that Officers serving on Defendant Hesse's shifts were to report any problems or concerns about the OBPD to Defendant Hesse.  (*See* Cherry Tr. 197:17-23; Moran Tr. 52:3-23; Carollo Tr. 40:15-41:18; Paradiso Tr. 307:21-308:9).

12.     Dispute.  Only Defendant Rogers (March 3, 2003 through July 18, 2006), former Village Administrator F. Ethan Repp (March 2003 to November 2004), and former Village Clerk Nancy J. Balarezo (March through Nov. 2003), had power to hire and fire employees in their capacities as the designated "Appointing Authorities" authorized by Civil Service.  (*See* Ex. 68; Distefano Tr. 289:9-290:10; Minerva Tr. 32-39, 43-46).

13.     Admit for the purpose of this motion.

14.     Dispute.  Defendant Hesse had been "informally" serving in that capacity prior to official appointment by Village Board.  (*See* Rogers Tr. 73:13-17).

15.     Dispute with respect to the term "hire."  Plaintiffs had each been hired by Chief Paradiso and were employed as Part-Time/Seasonal OBPD police officers in 2006 until their unlawful termination by Defendant Hesse on April 2, 2006.  (Paradiso Tr. 408:23-409:22; Nofi Tr. 229:21-230:25; Snyder Tr. 83:7-12; Fiorillo Tr. 370:6-13; Carter Tr. 16:7-12; Carter Aff ¶ 10).

16.     Dispute.  Plaintiff's were employed as Part-Time/Seasonal Police officers throughout calendar years 2002, 2003, 2004 and 2005, not only for "summer seasons." (*See*, *e.g.*, OB-Defs.' 56.1 ¶ 24; Lamm Tr. 218:7-14; Fiorillo Tr. 11:6-10; Nofi Tr. 229:21-230:25).

17.     Admit for the purpose of this motion.

18.     Admit for the purpose of this motion.

19.     Admit for the purpose of this motion.

20.     Admit for the purpose of this motion.

21.     Admit for the purpose of this motion.

22.     Admit for the purpose of this motion.

23.     Dispute.  In addition to hiring new part-time police officers to work during the non-summer seasons, Ocean Beach assigned previously hired Part-Time/Seasonal Police Officers, include Plaintiffs, to work shifts during the non-summer seasons.  (*See*, *e.g.*, OB-Defs.' 56.1 ¶ 24-25).

24.     Dispute.  Plaintiffs worked throughout the year as "Part-Time/Seasonal Police Officers." (*See*, *e.g.*, OB-Defs.' 56.1 ¶ 24; Lamm Tr. 218:7-14; Fiorillo Tr. 11:6-10; Nofi Tr. 229:21-230:25).

25.     Dispute.  Hesse assigned shift schedules to Part-Time/Seasonal Police Officers beginning in Fall 2005.  (*See*, *e.g.*, OB-Defs.' 56.1 ¶ 25).

26.     Admit for the purpose of this motion.

27.     Admit for the purpose of this motion.

28.     Admit for the purpose of this motion.

29.     Admit for the purpose of this motion.

30.     Admit for the purpose of this motion.

31.     Admit for the purpose of this motion.

32.     Admit for the purpose of this motion.

33.     Admit for the purpose of this motion.

34.     Admit for the purpose of this motion.

35.     Admit for the purpose of this motion.

36.     Admit for the purpose of this motion.

37.     Admit for the purpose of this motion.

38.     Admit for the purpose of this motion.

39.     Admit for the purpose of this motion.

40.     Dispute.  Officer Fiorillo was employed by LLC Maintenance Corporation as the full-time personal driver for the CEO of non-party Cantor Fitzgerald, L.P.  (*See* Ex. __).

41.     Dispute.  Officer Snyder is employed by the Town of Islip in a law enforcement position as a Park Ranger.  (*See* Ex. 38, at P 397).

42.     Dispute.  Officer Carter is employed by the Town of Islip in a law enforcement position as a Park Ranger II, a sergeant-level Civil Service classification.  (Carter Tr. 12:5-11).

43.     Admit for purposes of this motion.

44.     Dispute.  Officer Lamm was employed as an Officer with Suffolk County Park Police in 2000, and the New York State Park Police in 2002.  (*See* exhibit -Lamm resume).

45.     Admit for the purpose of this motion.

46.     Admit for the purpose of this motion.

47.     Dispute.  As of April 2, 2006, Officer Carter was 40-year-old.  (*See* Ex __, OB 169).

48.     Admit for the purpose of this motion.

49.     Admit for the purpose of this motion.

50.     Admit for the purpose of this motion.

51.     Dispute.  Officers Fiorillo and Snyder each applied to work as Park Rangers with the Town of Brookhaven during the summer of 2007.  (*See* Fiorillo Tr. 347:4-9).

52.     Dispute.  As of April 2, 2006, the 2006 "*Summer* Season" had not commenced (rather than "2006 season").  (The fact that April 2, 2006 falls during the season of "spring" is properly subject to Judicial Notice under Fed. R. Evid. 201).

53.     Dispute.  As of April 2, 2006, Plaintiffs were employed as Part-Time/Seasonal OBPD Police Officers, but, like all other Part-Time/Seasonal OBPD Police Officers, had not been assigned shifts for the Summer 2006 season.  (See Ex. 54, 002662).  Part-Time/Seasonal OBPD officers who worked continuously from year-to-year were not required to "reapply" for their positions and continued to serve without any change in employment status. (*See* Carollo Tr. 42:19-43:3; Bacon Tr. 225-26; G. Bosetti Tr. 160:17-23).  Part-Time/Seasonal OBPD officers did not have to fill out any paperwork to be "re-hired" from year-to-year and never received paperwork regarding such "re-hiring."  (R. Bosetti 184:2-24; Bacon Tr. 225-26; G. Bosetti Tr. 160:17-23).  The only annual employment-related paperwork that Part-Time/Seasonal OBPD Officers received was the letter inviting them to annual pre-season meetings. (Bacon Tr. 226-28).

54.     Dispute.  On April 2, 2006, Defendant Hesse told Officer Carter that he was being fired from his employment as a Part-Time/Seasonal Police Officer for failing to comply with unspecified directives.  (Carter Tr. 16:7-12).  When Officer Carter challenged this purported reason, Hesse refused to specify which "directive" he was referring to. (Carter Tr. 220:17-221:3; Carter Aff. ¶ 10).  Defendant Hesse informed Defendant Rogers and the Village Board of Trustees of Plaintiffs' terminations by letter dated April 4, 2006, with subject line "Termination of Employment." (*See* Ex. 64).

55.     Dispute.  On April 2, 2006, Defendant Hesse told Officer Nofi that he was being terminated as a Part-Time/Seasonal OBPD Police Officer due to budget cuts. (Nofi Tr. 229:21-230:18; Nofi Aff. ¶ 13).  When Officer Nofi asked if he could stay on for just one day a week because he needed the money, Defendant Hesse said no.  (Nofi Tr. 229:21-230:25). Defendant Hesse informed Defendant Rogers and the Village Board of Trustees of Plaintiffs'

terminations by letter dated April 4, 2006, with subject line "Termination of Employment." (*See* Ex. 64).

56.     Dispute.  On April 2, 2006, Defendant Hesse told Officer Lamm that he was being fired from his employment as a Part-Time/Seasonal Police Officer for budget cuts, and because Officer Lamm purportedly wrote "too many summonses" and Defendant Hesse purportedly wanted to make Ocean Beach into a "kinder and gentler" place.  (Lamm Aff. ¶ 13).  Defendant Hesse informed Defendant Rogers and the Village Board of Trustees of Plaintiffs' terminations by letter dated April 4, 2006, with subject line "Termination of Employment." (*See* Ex 64).

57.     Dispute.  Defendant Hesse told Officer Fiorillo that he was being fired from his employment as a Part-Time/Seasonal Police Officer because of budget cuts and because Officer Fiorillo purportedly wrote "too many summonses."  (Fiorillo Tr. 370:6-13; Fiorillo Aff. ¶13).  Defendant Hesse informed Defendant Rogers and the Village Board of Trustees of Plaintiffs' terminations by letter dated April 4, 2006, with subject line "Termination of Employment." (Ex. 64).

58.     Dispute.  Defendant Hesse informed Officer Snyder that he was "fired" on or about April 20, 2006 because he was the "civil service rat."  (Snyder Tr. 83:7-12-84:23). Defendant Hesse informed Defendant Rogers and the Village Board of Trustees of Plaintiffs' terminations by letter dated April 4, 2006, with subject line "Termination of Employment." (*See* Ex 64).  However, Defendant Hesse testified he never actually stated to Officer Snyder that he was being terminated, and that Officer Snyder simply just "faded away."  (*See* Hesse Tr. 634:12-24, 635:11-14, 636:13-22).

59.     Dispute.  Defendant Hesse terminated Officer Snyder in reprisal for his complaints about misconduct by Defendant Hesse and other OBPD Officers, as well as his refusal to amend his statement about a fight in a bar involving off duty OBPD Gary Bosetti and Richard Bosetti.  (The "Halloween Incident") (*See* Snyder Tr. 259:21-262:8, 264:19-265:11, 277:6-278:23, 278:24-279:8, 281:5-23)

60.     Dispute.  Defendant Hesse told Officer Carter that he was being terminated for failure to comply with unspecified "directives."  (Carter Tr. 16:7-12).  Defendant Hesse later prevented Officer Carter from obtaining a promotion to the position of Park Ranger III by providing false, defamatory and stigmatizing information, specifically, that Officer Carter was terminated for chronically sleeping on the job, to Greg Decanio, who was responsible for evaluating Officer Carter's application for promotion.  (*See* Ex. 21; Ex. 14 at 3:8-21).

61.     Dispute.  Defendant Hesse told Officer Nofi that he was being terminated from the OBPD because of budget cuts. (*See* Nofi Tr. 229:21-230:25).  However, this pretextual explanation was false, as Ocean Beach made no budget cuts in 2006 whatsoever that affected OBPD personnel.  (Minerva Tr. 246:13-21).  Rather, Defendant Hesse terminated Officer Nofi in reprisal for Officer Nofi's complaints about misconduct by Defendant Hesse and other OBPD Officers who were friends with Defendant Hesse.  (*See* Nofi Tr. 194:13-202:6, 204:23-205:9, 299:9-23).

62.     Dispute. Defendant Hesse told Officer Lamm that he was being fired from his employment as a Part-Time/Seasonal Police Officer for budget cuts, and because Officer Lamm purportedly wrote "too many summonses" and Defendant Hesse wanted to make Ocean Beach into a "kinder and gentler" place.  (Lamm Aff. ¶ 13).  However, Hesse's reference to "budget cuts" was a false, pretextual explanation, as Ocean Beach made no

9

budget cuts in 2006 whatsoever that affected OBPD personnel.  (Minerva Tr. 246:13-21).

Defendant Hesse informed Defendant Rogers and the Village Board of Trustees of Plaintiffs'

terminations by letter dated April 4, 2006, with subject line "Termination of Employment."

(Ex. 64) (*See* Lamm Tr. 194:12-196:25, 204:6-15, 207:25-210:4, 241:23-242:5, 249:10-

250:8, 256:17-25).

      63.     Dispute.  Defendant Hesse told Officer Fiorillo that he was being terminated

from the OBPD because of budget cuts. Defendant Hesse told Officer Fiorillo that he was

being fired from his employment as a Part-Time/Seasonal Police Officer because of budget

cuts and because Officer Fiorillo purportedly wrote "too many summonses."  (Fiorillo Tr.

370:6-13; Fiorillo Aff ¶ 13).  However, Hesse's reference to "budget cuts" was a false,

pretextual explanation, as Ocean Beach made no budget cuts whatsoever that affected

OBPD personnel.  (Minerva Tr. 246:13-274:2).  Defendant Hesse terminated Officer Fiorillo

in reprisal for his complaints about misconduct by Defendant Hesse and other OBPD

Officers who were friends with Defendant Hesse, as well as Officer Fiorillo's refusal to

amend his statement about the Halloween Incident, and because he was resentful of Officer

Fiorillo's productivity as a police officer, which reflected poorly on Defendant Hesse and his

friends on the force.  (Carollo Tr. 93:6-94:21; Fiorillo Tr. 89:10-93:9, 115:17-20; 119:9-11,

138:14-18).

      64.     Dispute.  Plaintiffs were directed to appear for the April 2, 2006 preseason

meeting, together with all other OBPD officers.  (*See* Ex. 54, 02262).  Plaintiffs were

terminated by Defendant Hesse immediately prior to the official start of the meeting, while

all other OBPD officers in attendance were assembled and waiting for the meeting to begin.

(Moran Tr. 16:21-17:9). The assembled officers were aware that Plaintiffs had been

terminated when Plaintiffs walked towards a waiting water taxi while the officers were still

assembled outside, prior to the start of the pre-season meeting.  (Carollo Tr. 269:5-23;

Moran Tr. 16:24-17:9).  The assembled officers mocked and jeered at Plaintiffs as they

departed, while Defendant Hesse stood on a balcony "giggling."  (Carollo Tr. 270:9-271:20).

65.     Dispute.  During his deposition testimony on August 6, 2009, Hesse denied

having made defamatory statements about Plaintiffs at the April 2, 2006 preseason

meeting.  (Hesse Tr. 643:13-644:21).  However, the record demonstrates that Defendant

Hesse stated at that meeting, among other things, that Plaintiffs' were terminated because

they were "rats" and because Defendant Hesse suspected that Officers Carter and Snyder

were to wear a "wire" for the Suffolk County D.A. in connection with an investigation into a

highly publicized act of police brutality involving Hesse and other OBPD officers. **(**Ex. 16.

2:4-3:5)

66.     Dispute.  OBPD Dispatcher Chris Moran, who was present for the April 2,

2006 pre-season meeting, told Officer Lamm that Defendant Hesse had informed the

remaining officers that the Plaintiffs were terminated in connection with a rumor that one

or more of the Plaintiffs had worn, or was scheduled to wear, a "wire" for the Suffolk

County District Attorney in connection with its investigation of brutality and corruption in

the OBPD.  (*See* Ex. 16 at 2:4-3:5).  Former OBPD Officer Paul Carollo, who also was present

at the April 2, 2006 preseason meeting, testified that, after advising Plaintiffs of their

termination and directing Plaintiffs to depart Ocean Beach on a waiting water taxi, Hesse

stood on a balcony above the other officers who were gathered outside the meeting room

and waiting for the meeting to begin, and, while the gathered officers jeered and laughed at

11

Plaintiffs, stood above them all "giggling" as he and the assembled officers watched

Plaintiffs depart on the water taxi.  (Carollo Tr. 270:9-271:20).

67.     Dispute.  In addition to the *Schwartz Report* entries that Defendant Hesse

acknowledged authoring, Hesse falsely denied having authored at least 47 additional

entries.  (*See*, *infra*, Posts Nos. 2, 7, 18, 51, 52, 60, 61, 62, 64, 67, 76, 86, 87, 93, 95, 230, 233,

236, 238, 270, 273, 276, 288, 300, 304, 324, 347, 349, 368, 381, 382, 394, 435, 491, 497,

500, 526, 532, 533, 534, 537, 555, 558, 561, 565, 573, 578.  (*See* Ex. 20; Ex. 23 at

Cablevision 0020; Ex. 22; Ex. 8).

68.     Dispute.  Defendant Hesse identified one or more Plaintiffs by name in at

least 27 different defamatory entries that he authored on the Schwartz Report.  (*See*, *infra*,

Nos. 22, 25, 26, 52, 60, 61, 87, 93, 95, 125, 220, 233, 250, 255, 270, 281, 282, 291, 294, 304,

381, 397, 413, 435, 497, 502, 526.  (*See* Ex. 20; Ex. 23, at Cablevision 0020; Ex. 22; Ex. 8).

69.     Dispute.  Defendant Hesse referred to himself as "Chief" in blog entries that

he posted on the Schwartz Report.  Moreover, as senior-most OBPD employee with

authority to set internal policy for the OBPD (*see*, e.g., Hesse 56.1 ¶ 24; Ex. 23 ("My name is

George Hesse and [I] Run things for the police department here in Ocean Beach.")),

Defendant Hesse advised other officers that posting on the blog would constitute a

terminable offense.  (*See* Ex. 60).  However, Defendant Hesse suspended this policy in his

capacity as OBPD policy-maker, and authorized himself, as well as his friend Patrick Cherry

to post on the blogs to "set the record" straight regarding, among other things, the grounds

for Plaintiffs' dismissal.  (Cherry Tr. 467; Cherry Posts, *infra*).

70.     Dispute.  Plaintiffs raised complaints with Hesse about a wide-range of

unlawful misconduct, which posed a threat to public safety and the safety of other OBPD

officers, including officers drinking on duty in local bars and in the OBPD station, having to chauffeur intoxicated officers and their friends while on duty leaving the Village short on officer personnel, being told to not issue summonses to certain bars, businesses, and friends of Defendant Hesse, officers associating with a known drug dealer, being told to look away when a woman was battered by a drunken off-duty Ocean Beach police officer, officers not being certified by civil service, officers not knowing the proper radio codes, officers leaving beer cans in the station, officers drinking and driving in the OBPD vehicles, the department's failure to secure and properly supervise firearms, Hesse's cover up of Gary Bosetti's assault of a civilian on the night of Halloween 2004, and on duty-officers leaving the Village short-staffed while they spent their tours drinking in local bars.  (Carter Tr. 35:7-40:12, 45:5-8, 51:4-9, 279:25-280:20, 313:16-314:20, 320:15-321:9, 321:10-323:2, 326:18-328:4, 336:17 340:3; Nofi Tr. 194:13-202:6, 204:23-205:9, 299:9-23; Snyder Tr. 259:21-262:8, 264:19-265:11, 277:6-278:23, 278:24-279:8, 281:5-23; Lamm Tr. 194:12-196:25, 204:6-15, 207:25-210:4, 241:23-242:5, 249:10-250:8, 256:17-25; Fiorillo Tr. 115:17-20; 119:9-11).

71.    Dispute.  Plaintiffs raised complaints with former OBPD Chief Ed Paradiso about, *inter alia*: Gary Bosetti and Richard Bosetti becoming intoxicated and throwing an OBPD evidence locker containing police surveillance videos and other police equipment into the Great South Bay; OBPD officers who were not certified by County Civil Service, and were not familiar with County police radio codes, which was a threat to public safety; about certain OBPD officers drinking on duty.  (Fiorillo Tr. 193; 202-204; Snyder Tr. 259:21-262:8, 264:19-265:11, 277:6-278:23, 281:5-23; Lamm Tr. 251:14-252:7; Nofi Tr. 206:4-8) Paradiso, however, directed Plaintiffs to address the complaints to Defendant Hesse.  (*Id.*).

72.     Dispute.  Plaintiffs raised complaints with the Village Board of Trustees and the Suffolk County District Attorney's Office about, *inter alia*, OBPD Officers drinking on duty, and about Hesse's cover-up of an assault against civilians by uncertified OBPD officer Gary Bosetti on Halloween night 2004.  (Nofi Tr. 208:24-211:10, Fiorillo Tr. 89:10-93:9, 138:14-18; Lamm Aff. ¶ 5; Fiorillo Aff. ¶ 6; Nofi Aff. ¶ 5; Carter Aff. ¶ 4; Snyder Aff. ¶ 5).

73.     Dispute. Plaintiffs raised complaints with Hesse Plaintiffs complained to Hesse and Paradiso about a wide-range of unlawful misconduct, which posed a threat to public safety and the safety of other OBPD officers, including officers drinking on duty in local bars and in the OBPD station, having to chauffeur intoxicated officers and their friends while on duty leaving the Village short on officer personnel, being told to not issue summonses to certain bars, businesses, and friends of Defendant Hesse, officers associating with a known drug dealer, being told to look away when a woman was battered by a drunken off-duty Ocean Beach police officer, officers not being certified by civil service, officers not knowing the proper radio codes, officers leaving beer cans in the station, officers drinking and driving in the OBPD vehicles, the department's failure to secure and properly supervise firearms, Hesse's cover up of Gary Bosetti's assault of a civilian on the night of Halloween 2004, and on duty-officers leaving the Village short-staffed while they spent their tours drinking in local bars.  (Carter Tr. 35:7-40:12, 45:5-8, 51:4-9, 279:25-280:20, 313:16-314:20, 320:15-321:9, 321:10-323:2, 326:18-328:4, 336:17 340:3; Nofi Tr. 194:13-202:6, 204:23-205:9, 299:9-23; Snyder Tr. 259:21-262:8, 264:19-265:11, 277:6-278:23, 278:24-279:8, 281:5-23; Lamm Tr. 194:12-196:25, 204:6-15, 207:25-210:4, 241:23-242:5, 249:10-250:8, 256:17-25; Fiorillo Tr. 115:17-20; 119:9-11).  Plaintiffs also raised complaints with the Village Board of Trustees and the Suffolk County District

Attorney's Office about, *inter alia*, OBPD Officers drinking on duty, and about Hesse's cover-up of an assault against civilians by uncertified OBPD officer Gary Bosetti on Halloween night 2004.  (Nofi Tr. 208:24-211:10, Fiorillo Tr. 89:10-93:9, 138:14-18; Lamm Aff. ¶¶ 5,9; Fiorillo Aff. ¶ 6; Nofi Aff. ¶¶ 5, 9; Carter Aff. ¶ 4; Snyder Aff. ¶¶ 5,7).

74.    Dispute.  Plaintiffs raised complaints with the Village Board of Trustees and the Suffolk County District Attorney's Office about, *inter alia*, OBPD Officers drinking on duty, and about Hesse's cover-up of an assault against civilians by uncertified OBPD officer Gary Bosetti on Halloween night 2004.  (Nofi Tr. 208:24-211:10, Fiorillo Tr. 89:10-93:9, 138:14-18; Lamm Aff. ¶¶ 5,9; Fiorillo Aff. ¶ 6; Nofi Aff. ¶¶ 5, 9; Carter Aff. ¶ 4; Snyder Aff. ¶¶ 5,7).

75.    Dispute.  Plaintiffs raised complaints with the Village Board of Trustees and the Suffolk County District Attorney's Office about, *inter alia*, OBPD Officers drinking on duty, and about Hesse's cover-up of an assault against civilians by uncertified OBPD officer Gary Bosetti on Halloween night 2004.  (Nofi Tr. 208:24-211:10, Fiorillo Tr. 89:10-93:9, 138:14-18; Dispute.  Plaintiffs raised complaints with the Village Board of Trustees and the Suffolk County District Attorney's Office about, *inter alia*, OBPD Officers drinking on duty, and about Hesse's cover-up of an assault against civilians by uncertified OBPD officer Gary Bosetti on Halloween night 2004.  (Nofi Tr. 208:24-211:10, Fiorillo Tr. 89:10-93:9, 138:14-18; Lamm Aff. ¶¶ 5,9; Fiorillo Aff. ¶ 6; Nofi Aff. ¶¶ 5, 9; Carter Aff. ¶ 4; Snyder Aff. ¶¶ 5,7).

76.    Dispute.  Plaintiffs raised complaints with the Village Board of Trustees and the Suffolk County District Attorney's Office about, *inter alia*, OBPD Officers drinking on duty, and about Hesse's cover-up of an assault against civilians by uncertified OBPD officer Gary Bosetti on Halloween night 2004.  (Nofi Tr. 208:24-211:10, Fiorillo Tr. 89:10-93:9,

138:14-18; Lamm Aff. ¶¶ 5,9; Fiorillo Aff. ¶ 6; Nofi Aff. ¶¶ 5, 9; Carter Aff. ¶ 4; Snyder Aff.

¶¶ 5,7).

77.     Dispute.  Defendant Hesse advised the Collier County, Florida, Sheriff

Department Investigator who was responsible for reviewing Officer Nofi's application for

employment as a Police Officer that he had terminated Officer Nofi's employment, in a

manner and context that was calculated to, and did, necessarily and falsely imply that the

termination was for valid cause, and that Officer Nofi had initiated a lawsuit in connection

with his termination (which was false at that time), in a manner and context that that was

calculated to, and did, necessarily and falsely imply that Officer Nofi's lawsuit was devoid of

merit and that Officer Nofi was a litigious and unfit police officer.  (Hesse Tr. 662:18-

663:13; Ex. 55, at 0149-0150).  Defendant Hesse also falsely advised Sergeant Foster, the

investigator assigned to review Officer Fiorillo's application for employment as a Part Time

Police Officer with the Southampton Town Police Department, that he had "written [Officer

Fiorillo] up" for unspecified disciplinary infractions, and that Officer Fiorillo was unfit to

serve as a Police Officer.  (Ex. 24, at STPD 013).  Defendant Hesse also falsely advised Greg

Decanio, who was responsible for evaluating Officer Carter's application for promotion to

the position of Park Ranger III, that Officer Carter was unfit to serve as a law enforcement

officer, and that he had purportedly terminated Officer Carter's employment for "coming to

work tired and sleeping the tour away."  (See Ex. 21; Ex. 14 at 3:8-21).  Defendant Hesse

also provided a false and defamatory reference that prevented Officer Lamm from

obtaining new employment with the Suffolk County Police Department.  (Ex. 15, at 2).

Defendant Hesse also stated orally and in writing that Plaintiffs' careers in law enforcement

were over.  (Ex. 13, at 4:23-5:18, Ex. 17).  Furthermore, more than 74,000 persons viewed

stigmatizing and defamatory statements about Plaintiffs by Hesse.  (*See* Ex. 19).

78.     Dispute.  Defendant Hesse advised the Collier County, Florida, Sheriff

Department Investigator who was responsible for reviewing Officer Nofi's application for

employment as a Police Officer that he had terminated Officer Nofi's employment, in a

manner and context that was calculated to, and did, necessarily and falsely imply that the

termination was for valid cause, and that Officer Nofi had initiated a lawsuit in connection

with his termination (which was false at that time), in a manner and context that that was

calculated to, and did, necessarily and falsely imply that Officer Nofi's lawsuit was devoid of

merit and that Officer Nofi was a litigious and unfit police officer.  (Hesse Tr. 662:18-

663:13; Ex. 55, at 0149-0150). Defendant Hesse also falsely advised Sergeant Foster, the

investigator assigned to review Officer Fiorillo's application for employment as a Part Time

Police Officer with the Southampton Town Police Department, that he had "written [Officer

Fiorillo] up" for unspecified disciplinary infractions, and that Officer Fiorillo was unfit to

serve as a Police Officer.  (Ex. 24, at STPD 013).  Defendant Hesse also falsely advised Greg

Decanio, who was responsible for evaluating Officer Carter's application for promotion to

the position of Park Ranger III, that Officer Carter was unfit to serve as a law enforcement

officer, and that he had purportedly terminated Officer Carter's employment for "coming to

work tired and sleeping the tour away." (*See* Ex. 21; Ex. 14 at 3:8-21).  Defendant Hesse also

stated orally and in writing that Plaintiffs' careers in law enforcement were over.  (Ex. 13,

at 4:23-5:18, Ex. 17). Defendant Hesse also provided a false and defamatory reference that

prevented Officer Lamm from obtaining new employment with the Suffolk County Police

Department.  (Ex. 15, at 20).  Furthermore, more than 74,000 persons viewed stigmatizing
and defamatory statements about Plaintiffs by Hesse.  (Ex. 19).

79.     Dispute.  This assertion fails to cite any record-evidence.  As such, no
responsive counterstatement based on record evidence is possible or required.  Moreover,
this assertion constitutes a legal conclusion, rather than fact, to which no responsive factual
counterstatement based on record evidence is possible or required.  Notwithstanding the
foregoing, Plaintiffs were informed by Defendant Hesse, as well as Defendant Sanchez, her
capacity as personnel analyst for Suffolk County Civil Service assigned to monitor Ocean
Beach compliance with civil service law, that they were not entitled to any post-
termination process or other relief, and that "they didn't have a leg to stand on" regarding
their desire to pursue to such relief.  (Fiorillo Tr. 72:10-16, 73:4-10, 439:21-440:2; Nofi Tr.
142:6-16; Sanchez Tr 326:10-327:14).

80.     Dispute.  Defendant Hesse was never qualified to serve in a supervisory
capacity, having failed the required Civil Service exam for Sergeant at least two, and
possibly three different times.  (*See* Hesse Tr., 124:25-125:8; Distefano Tr. 128:3-131:10,
178:12-181:20; Ex. 46).  Moreover, Defendant Rogers willfully ignored outgoing-Chief
Paradiso's warning that Defendant Hesse was unqualified for the position.  (Rogers Tr.
85:2-6).  Similarly, Defendant Rogers and the Village Board negligently failed to supervise
Hesse's management of the OBPD, despite facts constituting actual and constructive notice
of his propensity for misconduct.  (*Id.*; Ex. 25, 27, 66; Hesse Tr., 124:25-125:8; Distefano Tr.
128:3-131:10, 178:12-181:20; Ex. 46).  Plaintiffs suffered loss of employment,
stigmatization based on defamation in connection with loss of employment, and were
defamed with respect to their personal and professional reputation by acting Chief Hesse.

18

## ADDITIONAL MATERIAL FACTS IN DISPUTE

In addition to the material facts enumerated above that are in dispute, among the issues of material fact to be tried include:

81.     Plaintiffs were each hired as Ocean Beach Police Officers by Police Chief Edward Paradiso.  (Paradiso Tr. 409; Fiorillo Tr. 197; Snyder Tr. 31-32)

82.     Officer Snyder is a graduate of the Suffolk County Police Academy ("SCPA"), having successfully completed a law-enforcement training program sanctioned by the Municipal Bureau of Police.  (Snyder Tr. 382:18-383:4).  Officer Snyder was duly certified to serve as a police officer in Suffolk County in or around May 1991, having satisfied an array of medical, physical agility, psychological, and mandatory polygraph examinations, as required, as well as comprehensive backgrounds checks.  (Ex. 26 and 29) (Snyder Tr. 382:18-383:4).

83.     Officer Carter is a graduate of the Suffolk County Police Academy ("SCPA"), having successfully completed a law-enforcement training program sanctioned by the Municipal Bureau of Police.  Officer Carter was duly certified to serve as a police officer in Suffolk County in or around May 1991, having satisfied an array of medical, physical agility, psychological, and mandatory polygraph examinations, as required, as well as comprehensive backgrounds checks.  (Ex. 26 and 29); (Carter Tr. 367:23-25).

84.     Officer Nofi is a graduate of the Suffolk County Police Academy ("SCPA"), having successfully completed a law-enforcement training program sanctioned by the Municipal Bureau of Police.  Officer Nofi was duly certified to serve as a police officer in Suffolk County in or around May 5, 2000, having satisfied an array of medical, physical

agility, psychological, and mandatory polygraph examinations, as required, as well as comprehensive backgrounds checks.  (EX. 26 AND 29); (Nofi Tr. 380:8-10)

85.    Officer Lamm is a graduate of the Suffolk County Police Academy ("SCPA"), having successfully completed a law-enforcement training program sanctioned by the Municipal Bureau of Police.  Officer Lamm was duly certified to serve as a police officer in Suffolk County in or around May 8, 1998, having satisfied an array of medical, physical agility, psychological, and mandatory polygraph examinations, as required, as well as comprehensive backgrounds checks.  (Ex. 26 and 29; Lamm Tr. 101:5-14).

86.    Officer Fiorillo is a graduate of the Suffolk County Police Academy ("SCPA"), having successfully completed a law-enforcement training program sanctioned by the Municipal Bureau of Police. (Fiorillo Tr 311:5-7).  Officer Fiorillo was duly certified to serve as a police officer in Suffolk County in or around June 3, 2002, having satisfied an array of medical, physical agility, psychological, and mandatory polygraph examinations, as required, as well as comprehensive backgrounds checks.  (Fiorillo Tr. 346:12-14).  Officer Fiorillo was the valedictorian of his Police Academy Class.  (Ex. 35).

87.    OBPD Chief Ed Paradiso, who held his position through 2005, testified that Plaintiffs were outstanding police officers.  (Paradiso Tr. 345:3-6, 358:3-10).  Paradiso provided letters of recommendation for Plaintiffs Nofi and Fiorillo, and even attempted to intercede when he learned that Defendant Hesse had provided false and defamatory statements to a potential employer of Plaintiff Nofi.  (*See* Ex. 55)

88.    Hesse was vested with the authority of Police "Sergeant" in or around 2000, despite the fact that Hesse twice failed, and never passed, the required Suffolk County Civil Service Examination to qualify for the position of Sergeant.  (*See* Hesse Tr., 124:25-125:8;

Distefano Tr. 128:3-131:10, 178:12-181:20; Ex. 46).  At the time of this improper appointment in violation of Civil Service rules, the members of the Village Board, including Defendants' Loeffler and Rogers, knew that Hesse was not certified to act as a "sergeant" or any other supervisory law enforcement position.  (*See* Ex. 44, 45, 46).

89.     In his capacity as Sergeant, Hesse exercised direct supervisory authority over officers assigned to his tour of duty, including Plaintiffs. (*See* Cherry Tr. 197:17-23; Moran Tr. 52:3-23; Carollo Tr. 40:15-41:18; Paradiso Tr. 307:21-308:9).

90.     Officers who had complaints or concerns about matters occurring on their assigned tour(s) of duty were directed by Chief Paradiso to address those matters with the officer in charge of that tour, *i.e.*, Hesse or Paradiso.  (*See* Cherry Tr. 197:17-23; Moran Tr. 52:3-23; Carollo Tr. 40:15-41:18; Paradiso Tr. 307:21-308:9).  It would be improper for an officer to raise such matters with the officer in charge of a different tour.  (Paradiso Tr. 307:21-308:9).

91.     As of Plaintiffs' termination on April 2, 2006, Ocean Beach employed a total of 33 Part-Time/Seasonal Police Officers. (Ex. 28, 71).  Only 20 of those Part-Time/Seasonal Police Officers were duly certified to work as police officers by Civil Service.  (*Id*).

92.     Although Chief Paradiso, and his predecessor, Chief Joseph Loeffler, Sr., prohibited OBPD Officers from drinking in bars in Ocean Beach – on or off duty – Defendant Hesse rescinded this policy and allowed officers to do so.  (*See* Hesse Tr. 329:9-18).

93.     Defendant Hesse also allowed officers to drink alcoholic beverages in the OBPD station, including, among other things, beer that OBPD officers confiscated from civilians for their own consumption, and "rocket fuel," a mixed alcoholic beverage

containing 160 proof vodka, tequila and rum, delivered by a local bartender to the station. (Hesse 334:2-335:22, 350:23-351:17).

94.     Defendant Hesse also allowed officers, who were not duly certified by Suffolk County Civil Service, to assign civilian dock masters to "cover" their shifts at the OBPD, blithely entrusting law enforcement power and responsibility to untrained and unsupervised civilians.  (Moran Tr. 57:11-58:4)

95.     Defendant Hesse made repeated references to his sexual relationship with Defendant Sanchez as well as his desire to include Defendant Sanchez's female partner in that sexual relationship.  (Snyder 379:21-380:5; Carter 372:10-373:14).

96.     Officers Snyder, Fiorillo and Lamm were the only on-duty OBPD Officers in Ocean Beach on Halloween night, October 30, 2004, and the morning of October 31, 2004. (Snyder Tr. 351).

97.     While on patrol together in an OBPD Police Vehicle early on the morning of October 31, the on-duty Officers received a call on the OBPD emergency cell-phone.  (Lamm Tr. 277).  When Officer Lamm answered the call, the caller informed him that there was a fight at Houser's Bar in Ocean Beach, and that officers should responds quickly to the scene. (Lamm Tr. 277).

98.     While *en route* to Houser's Bar, the Officers received a second call, which Officer Snyder answered. (Snyder Tr. 350).  The caller informed Officer Snyder that "the Bosettis," two uncertified OBPD Officers, were in a fight.  (Lamm Tr. 283).

99.     When the officers arrived at Houser's Bar and exited their vehicle, they approached uncertified OBPD Officer Richard Bosetti, who was standing outside the bar,

along with a group of people who were shouting and yelling at Officer Bosetti and bouncer, Sean O'Rourke. (Lamm Tr. 285; Snyder Tr. 398:15-399:8).

100.    The Officers noted that Richard Bosetti smelled like he had been drinking. (Lamm Tr. 287; Snyder Tr. 398:15-399:8).

101.    Richard Bosetti informed the on-duty Officers that someone was being choked inside the bar, but he would not identify the victim.  (Lamm Tr. 288).  When the on-duty Officers tried to obtain further information from Richard Bosetti, he walked away from them. (Lamm Tr. 290; Snyder Tr. 398:15-399:8).

102.    A civilian standing outside the bar, Chris Schalick, informed the Officers that it was his friend who was being choked in the bar.  (Lamm Tr. 290).

103.    Officer Lamm continued to speak to Schalick outside of Houser's Bar.  (Lamm Tr. 299).  Schalick informed Officer Lamm that he had been hit with a pool cue, and that one of his assailants had identified himself as a police officer. (*Id.*).

104.    John Tesoro, another civilian standing outside of Houser's Bar, informed Officer Lamm that he too had been struck by an assailant with a pool cue. (Lamm Tr. 301).

105.    Officers Snyder and Lamm attempted to enter Houser's Bar together with Schalick and Tesoro, but Sean O'Rourke, the bouncer on-duty at Houser's Bar that evening, attempted to prevent them from entering.  (Snyder Tr. 358; Lamm Tr. 304).  Officer Snyder informed O'Rourke that he was impeding an investigation, an arrestable offense, at which point O'Rourke finally allowed Officer Lamm and Officer Snyder to enter.  (*Id.*).

106.    When the on-duty Officers entered Houser's Bar, Officers Snyder and Lamm asked Schalick and Tesoro to identify the person who hit them. (Lamm Tr. 307).

107. Officer Lamm then asked Richard Bosetti, who had returned to the bar, where his brother, Gary Bosetti was, but Richard Bosetti refused to answer Officer Lamm's questions. (Lamm Tr. 311).

108. Schalick and Tesoro then informed Officers Snyder and Lamm that their assailant bore a strong resemblance to Richard Bosetti. (Lamm Tr. 317).

109. Officers Snyder and Lamm then asked the approximately ten remaining patrons in the bar if they had witnessed anything in connection with the fight, but everyone present declined to respond to Officers' questions. (Lamm Tr. 318).

110. Gary Bosetti had left the scene of the assault, and did not provide a statement to the on-duty Officers. Nor did he disclose the fact that he was involved in the fight and allegedly had to use police force. (G. Bosetti Tr. 310-12; 318-20).

111. Recognizing that Schalick and Tesoro required medical attention, Officers Snyder, Fiorillo and Lamm then escorted them to the OBPD station, arriving at approximately 3:00 a.m. (Lamm Tr. 320; 324).

112. Officer Lamm gave Schalick ice for his injured arm, as well as incident statement forms, which Schalick completed. (Lamm Tr. 325). Schalick expressed concern that because their assailant was apparently a police officer, the OBPD would "cover-up" the incident. (Lamm Tr. 322). Officer Lamm spoke with Schalick to obtain further details about the attack. (Lamm Tr. 296:19-22). Schalick informed him that he had been struck with a pool cue while trying to pull an assailant off of Vankoot. (Lamm Tr. 299:9-11). Schalick was unable to provide information as to what may have precipitated the attack. (Lamm Tr. 333).

113.    Shortly thereafter, Richard Bosetti entered the OBPD station, and Schalick pointed at him, reiterating that he resembled the assailant, and again stated his concern about a police "cover up."  (Lamm Tr. 328; Fiorillo Tr. 422:5-15).

114.    Officer Fiorillo then arrived at the OBPD station with the third victim of the attack at Houser's Bar, Brian Vankoot.  Vankoot had sustained injuries to his face and neck, and informed Officer Lamm that he had been held in a "choke hold." (Lamm Tr. 325:23-326:3).  Officer Lamm took pictures of Vankoot's injuries.  (Lamm Tr. 325:20-328:19).

115.    Officer Fiorillo took a statement from Vankoot, who was later transported to the hospital.  (*See* Forillo Tr. 248:3-8).

116.    Officer Snyder completed an OBPD Field Report, took pictures of the victim's injuries and left these materials in a package for Defendant Hesse.  (*Snyder* Tr. 412:17-25)

117.    Other than for Schalick, Tesoro, and Vankoot, no one present at Houser's Bar provided a statement to police that night.  (*See*, *e.g.*, Lamm Tr. 313:13-318:18).

118.    When Officer Snyder returned home early on the morning of October 31, 2004, he returned Chief Paradiso's phone call to the OBPD station and spoke to Officer Fiorillo, who informed him that Chief Paradiso was searching for Gary Bosetti.  (Snyder Tr. 414).

119.    Officer Snyder spoke to Chief Paradiso later that day.  (Snyder Tr. 415:5-11). Chief Paradiso informed him that the victims had returned to the OBPD station to file a complaint.  (Snyder Tr. 415:21-22).  He explained that upon entering the OBPD station, the victims saw a picture of Gary Bosetti on the wall, and immediately identified Gary Bosetti as the assailant who struck them with a pool cue. (Snyder Tr. 415-416).

120.    Chief Paradiso informed Officer Snyder that he intended to fire Gary Bosetti, but that he was unable to locate Gary Bosetti and believed that he had departed the island by boat.  (Snyder Tr. 417:16-418:3).  Chief Paradiso also stated that he had promised the victims that he would terminate Gary Bosetti, as he does not condone that type of conduct from his police officers in the village (Snyder Tr. 416:5-11), and that he expected Richard Bosetti to quit in response, since the two were "tied at the hip." (Snyder Tr. 417-418).

121.    Defendant Hesse called Officer Lamm and told him that Chief Paradiso terminated Bosetti for hitting someone with a pool cue and that he was taken off the island by Matt Bellows in a private boat and taken to his vehicle park at the lighthouse, which is the OBPD relief point for officers coming on and off duty.  (Lamm Tr. 348:12-18).

122.    Approximately four days later on November 4, 2004 Defendant Hesse asked Officer Lamm to provide a statement concerning the incident.  (Lamm Tr. 336:23-337:7).  Although Officer Lamm complied with this request, he thought it was unusual for Defendant Hesse to request that OBPD Officers provide typewritten versions of their contemporaneous hand-written statements. (Lamm Tr. 337:23-338:3).  It was also unusual that Hesse requested a 2042, or interoffice correspondence form, rather than an official statement form.  (*Id.*).

123.    Later that week, Defendant Hesse demanded Officer Fiorillo submit a new amended statement concerning the October 31 incident at Houser's Bar and adopt Defendant Hesse's protection of uncertified OBPD officers Gary and Richard Bosetti, by falsely claiming that the Bosettis had intervened when the actual victims of their attack purportedly attempted to choke Jean Jaeger, an Ocean Beach resident.  (*See* Fiorillo Tr. 209:20-211:3).

124.     Jaeger had departed Houser's Bar when the on-duty Officers arrived, and she did not seek or receive any medical assistance. (R. Bosetti Tr. 329:3-16). To the contrary, she went to CJ's, another bar in Ocean Beach, with her husband and had at least one drink there with Richard Bosetti.  (*Id.*).  CJ's is located across the street from the Ocean Beach Police headquarters, and an Ocean Beach rescue ambulance, driven by Loeffler, was parked in front at the time.  (*See* Loeffler Tr. 250:24-251:16).  Richard Bosetti never instructed Jaeger to go to the police station to provide a statement.  (R. Bosetti Tr. 311:13-21).

125.     Officer Fiorillo refused to participate in the cover-up being perpetrated by Defendant Hesse, and refused to rewrite the report to conceal the Bosettis' criminal, vicious and brutal attack on three civilians.  (*See* Fiorillo Tr. 214:15-21).

126.     Shortly thereafter, Defendant Hesse again demanded that Officer Fiorillo rewrite his statement, in an effort to cover-up Gary and Richard Bosetti's involvement in the fight. (*See* Fiorillo Tr 220:14-221:22).  Officer Fiorillo again refused the request because his investigation on the night of the fight led to the conclusion that Officer Gary Bosetti had attacked the victims with a pool cue.  (*Id.*; Exs. 47-53)

127.     In June, after the case was over, Hesse later handed a folder to Officers Lamm and Fiorillo and said "this is what really happened."  (Lamm Tr. 345:2-348:7).  Hesse also insisted that Officer Lamm's report concerning the Halloween Incident "was no good" and told Officer Lamm that the incident described in his report "is not what happened."  (*Id.*). Officer Lamm refused to adopt Hesse's plainly inaccurate version of the Halloween Incident or to cover-up Gary and Richard Bosetti's involvement in the fight.  (*See* Lamm Tr. 343:6-25; Exs. 47-53).

128.    Hesse later stated to Officers Fiorillo and Carter that Officer Snyder's report of the fight, "makes me sick," and indicated that he believed Officer Snyder "ha[d] it in for Gary Bosetti," implying that Officer Snyder had willfully submitted a false report implicating the Bosettis.  (*See* Fiorillo Tr. 414:7-415:7).

129.    Hesse appointed a civilian personal friend, Patrick Cherry – who had ended his employment as an OBPD officer based on his failure to satisfy Civil Service requirements for the position – to lead a new investigation of the Halloween incident, designed to support a conclusion contrary to Plaintiffs' investigation.  (*See* Cherry Tr. 25:14-19, 190:20-191:15; Snyder Tr. 423:10-15; Lamm Tr. 339:19-340:2 ).

130.    Cherry did not try to speak to the on-duty officers, Plaintiffs Snyder, Fiorillo and Lamm, as part of his purported investigation, nor had he even reviewed their incident reports in the course of his own purported "investigation."  (Cherry Tr. 436:7-21).

131.    Although Cherry testified that he believed that a supervisor should have interviewed Gary and Richard Bosetti as part of the investigation, he did not discuss the issue with Defendant Hesse, and does not know if anyone even interviewed the Bosettis in connection with any "investigation" of the Halloween Incident.  (Cherry Tr. 471:11-472:17).

132.    Cherry also has no information about whether Gary Bosetti or Richard Bosetti had been drinking or were intoxicated at the time of the Incident.  (Cherry Tr. 434:21-435:5).

133.    Cherry interviewed a total of four witnesses in the course of his investigation into the Halloween Incident, including Jeanne Jaeger (the alleged choke victim who received no treatment (*see* Cherry Tr. 342:18-22)), Elyse Myller (a personal friend of Defendant Hesse, who also had a sexual relationship with Gary Bosetti (*see* Hesse Tr.

549:24-550:5; G. Bosetti Tr. 430:4-9), Sean O'Rourke (who had been convicted of drug

charges in Ocean Beach (*see* Cherry Tr. 314:14-17)), and Ian Levine (former employer of

Defendant Hesse (*see* Hesse Tr. 106:3-17). These interviews took place in November 2004.

(Cherry Tr. 307:17-313:11).

134. Cherry interviewed Sean O'Rourke, the bouncer at Houser's Bar who had

impeded Snyder and Lamm's entry into the bar when they arrived at the bar in response to

calls about a fight. (Cherry Tr. 314:14-17; Snyder Tr. 358; Lamm Tr. 304).).

135. Cherry knew that Sean O'Rourke had previously been arrested for cocaine

possession, but he did not consider this factor into his determination of O'Rourke's

credibility. (Cherry Tr. 406:6-12; *see also* Hesse Tr. 556:11-21).

136. As part of Cherry's purported "investigation" into the Halloween Incident, he,

without explanation, did not even ask O'Rourke if he had been drinking the night of the

Halloween Incident, although he acknowledged that alcohol could have influenced

O'Rourke's memory or perception of the incident. (Cherry Tr. 406:6-407:15).

137. Although Cherry testified that O'Rourke called the police, he does not know

why he believed that O'Rourke called the police on night of the Halloween Incident, and

acknowledged that the investigation file made no reference to him doing so. (Cherry Tr.

415:10-25).

138. O'Rourke did not provide a statement to the police on the night of the

Halloween incident, and Cherry failed to ask O'Rourke why he failed to provide such a

timely statement. (Cherry Tr. 417:21-24).

139.    Cherry also interviewed Elyse Myller, who had been present in Houser's Bar at the time of the Incident. (Cherry Tr. 307:17-23). The interview lasted approximately 10 minutes. (Cherry Tr. 331:15-17).

140.    George Hesse and Elyse Myller are personal friends, and were even "Facebook friends." (Hesse Tr. 549:24-550:5).

141.    Gary Bosetti and Richard Bosetti were houseguests of Elyse Myller on the night of Halloween incident.  (G. Bosetti Tr. 254).  The Bosetti brothers were good friends with Myller and Richard Bosetti thought that Gary Bosetti had a sexual relationship with her. (R. Bosetti Tr. 430:4-9).

142.    Elyse Myller initially provided a handwritten statement addressed to Defendant Hesse "as per [his] request."  The statement made no mention of any pool cue used by Gary Bosetti. Cherry did not ask her what prior request or discussions with Defendant Hesse her statement referred to.  (Cherry Tr. 319:14-320:7).

143.    Cherry did not ask Elyse Myller if she had been drinking or if she was intoxicated at the time of the Incident. (Cherry Tr. 320:8-12).

144.    Although Cherry noted that Myller's statement indicated that her memory of the Incident was "sketchy," Cherry did not ask her to clarify or elaborate at all on this representation, nor did he consider it relevant to his investigation.  (Cherry Tr. 335:5-17).

145.    Although Myller's handwritten statement implied a prior relationship with the Bosettis, Cherry did not ask her any questions about the nature of that relationship. (Cherry Tr. 342:18-22).

146.    Although Myller's oral and written statement made no reference to anyone being struck with a pool cue, Cherry did not ask her if she recalled Gary Bosetti using a pool cue during the Incident.  (Cherry Tr. 340:4-9, 345:16-19).

147.    Although Myller claimed that Gary Bosetti had assisted her when a stranger attacked her while waiting in line for the restroom at Houser's Bar, Cherry did not ask her to identify any of the other patrons, and potential witnesses who had been in line with her. (Cherry Tr. 326:19-327:17).  Myller did not provide a statement to police on the night of the incident.  (*See* Cherry Tr. 350-53).

148.    Defendant Hesse had worked for Ian Levine from 1997-2000 installing cable television.  (Hesse Tr. 106:3-17).  Levine paid Hesse in cash and Defendant Hesse did not pay taxes on that income.  (Hesse Tr. 106:9-107:5).

149.    Doug Wyckoff is the father of Marissa Wyckoff, who worked for Hesse at the police department. (Hesse Tr. 131:17-132:13, 463:25-464:6).

150.    Cherry failed to ask Jeanne Jaeger, the purported "choking victim," whether she had been drinking, or how much she had to drink before allegedly being choked near Houser's Bar's bathroom.  (Cherry Tr. 425:15-20).

151.    Cherry failed to even try to determine why Jaeger failed to file a police report or statement on the night of the alleged chocking, and admits that his investigation included no information on this subject.  (Cherry Tr. 429:19-430:8).

152.    Cherry was not aware that Jaeger, in fact, proceeded to CJ's bar following the Incident at Houser's Bar, rather than seeking medical treatment.  (Cherry Tr. 431:24-432:10).

153.     Cherry did not interview Dan McKenna, the bartender who purportedly witnessed a problem near the bathroom on the night of the Halloween Incident, as part of his investigation.  (Cherry Tr. 414:12-17).  McKenna refused to provide a statement to the on-duty officers who entered Houser's Bar.  (*see* Lamm Tr. 317:14-23).

154.     Cherry failed to ask any of the witnesses he interviewed about a pool cue being used in the fight at Houser's Bar, and none of those witnesses even mentioned having seen a pool cue at all, not to mention seeing Gary Bosetti use one to strike Schalick or Vankoot.  (Cherry Tr. 420:8-20).  However, the purported "witnesses'" failure to mention Gary Bosetti's admitted use of a pool cue to strike a civilian did not affect Cherry's assessment of their credibility.  (Cherry Tr. 420:8-20).

155.     Gary Bosetti could not recall whose local party he stopped at on his way to Houser's Bar.  (G. Bosetti Tr. 257:14-22).  Nor could Gary Bosetti recall where he went, if anywhere, between the locals' party and Houser's Bar.  (G. Bosetti Tr. 262:7-9).  Nor could he recall how many hours passed that night from his arrival on the island to his ultimate arrival at Houser's Bar.  (G. Bosetti Tr. 263:6-11).

156.     Gary Bosetti testified that he "probably" went to Houser's Bar with his brother Richard and Bosetti and Elyse Myller.  He could not recall how many people were at Houser's Bar when he arrived.  (G. Bosetti Tr. 263:23-264:2).

157.     Gary Bosetti testified that he did not know what, or how much, Elyse Myller drank that night, nor could he recall whether he bought her any drinks, nor whether Myller wearing a costume.  (G. Bosetti Tr. 266:6-15; 259).

158.     Gary Bosetti testified that after initially arriving at Houser's Bar, he left at some point in time, which he could not recall, nor could he recall how long he was away

32

from Houser's Bar, although he admitted that he may have stopped to drink alcohol at another bar.  (G. Bosetti Tr. 268:9-270:8).

159.    Cherry learned from Hesse at some point during Summer 2005 (the first "summer season" following the Halloween Incident) that the three Plaintiffs who were on duty and initially investigated the Halloween Incident were alleging a cover up.  (Cherry Tr. 437:19-439:8).

160.    Cherry could not recall whether Hesse referred to one or more of the Plaintiffs as "rat" at the April 2, 2006 meeting.  (Cherry Tr. 458:2-10).

161.    On May 27, 2008, Patrick Cherry posted the following statement on the publicly accessible internet message board entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> Ok, Ok I want to know who it is that is so angry because they aren't cops any more??? I am guessing that Kevin Lamm I wearing an Eddie Carter red clown wig while getting banged by Frank Fiorello, Tom Snyder is pushing from behind like the angry bitch that he is. The retard Joe Noffi is laughing while jeking off to the whole circus act!!! One thing still hasnt changed,,, Bitches. You still aren't cops, you never were. See you in court assholes!!!

(*See* Ex. 17, at P01130; Ex. 20, at No. 344; Cherry Tr. 464:19-21).

162.    On May 31, 2008, Patrick Cherry posted the following statement on the publicly accessible internet message board entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> Ed Carter & Tom Snyder Islip Town Park Rangers, Kevin Lamm Islip MacArthur Airport Security Guard, Joe Nofie Smithtown Park Ranger and Frank Fiorello Square Badge Store Detective. Be careful of what you wish for. You see all of you are screw ups in your daily lives. That is why you are no longer cops. But when you make bogus allegations an investigation will be conducted. Now your past present and futures are all up for review. That will all come out if your case ever goes to trial. Your life of lies will come to light. You will be the ones paying the price in the end and you did it all to

yourselves! You could could have just walked away like gentleman, but no. Remember, the truth is the truth!!!

(*See* Ex. 17, at P01130; Ex. 20., at No. 345; Cherry Tr. 464:19-21).

163.    On June 1, 2008, Patrick Cherry posted the following statement on the publicly accessible internet message board entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> Hey jerk off, maybe the case hasn't gone to trial yet because the Suffolk DA has gotten himself into a pickle. This case and the Martin Tankleff case and many others are being reviewed by the department of justice because of improprieties with in the Suffolk DA's office with many of it's cases therein. Do you remember the Duke Lacross team case??? Trust me when the DOJ gets done the duke case will look like nursery school. Besides why isnt the DA's office pushing to go to trial. They anounced ready at the arraignment. Oh thats right one of the indictments have already been tossed by the judge. The others will get tossed soon. So Kevin Lamm, Frank Fiorello, Joe Noffi, Ed Carter and Tom Snyder, why dont you all go back to your circle jerk and tell each other how good it feels not to be cops anymore! Cant wait to see you in court!

(*See* Ex. 17, at P01131; Ex. 20, at No. 348; Cherry Tr. 464:19-21).

164.    On September 25, 2008, Patrick Cherry posted the following statement on the publicly accessible internet message board entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:  "Joe Nofi, Yes you are an idiot and soon the whole world will know!!!"  (*See* Ex. 17, at P 01148-01149; Ex. 20, at No. 375; Cherry Tr. 464:19-21).

165.    On May 4, 2009, Patrick Cherry posted the following statement on the publicly accessible internet message board entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> Who is the blowjob complaining about exercising their right to remain silent. He or she has no idea how our legal system is set up. ADA Biancavilla had no case. In fact his own experts cleared the officers of any wrong doing by their expert testimony. These were the DA's own witnesses. But it was The DA investigators under the direction of Pete Tartaglia who wanted to make something of nothing. It was his cancer crew Investigator Burk and

34

Walkinthien, aka Gorbichev who tried their best to intimidate all the winesses into telling it the way they wanted. Then lets not forget the discraced piece of shit Dave Gerdon who purgered himself the get back at the acting chief for firing him. He was fired for stealing. He was useless anyway as a cop back then as he is today. The hated him in the 3rd and now he is looked upon as a piece of shit rat. Oh and lets not forget Court Officer/ ex Police Officer Paul Carolo. The best thing he can do now is hang himself in his garage. But is is to cowardly to do that. So the next best thing is to leave the state and get a job elsewhere. But he will always be a rat and that will follow him wherever he goes. To bad you didnt have balls you lying fuck! Good luck getting your gun back with the courts! Then we have the 5 jerk offs who went running to the DA after they too were fired for incompetence and misconduct. Then they have the audacity to sue claiming they were wrongly terminated. When in fact they were the ones who had committed all the misconduct and that was the reason for their termination. With all the depositions nearly done you attorney knows you all haned him a bag of shit. There will be no pay day. So Kevin Lamm, Joe Nofi, Tom Snyder, Ed Carter and Frank Fiorillo... No pay day for you. What will happen when a slander suite is brought against you 5 and you are all found personally liable??? Oh and Kevin, it is only a matter of time before one of your roid rages get you in trouble elsewhere. And did the town send you for a drug test yet? The only losers here are the taxpayers who footed the bill for this persecution. This cost thousands of dollars only to prove that Sam Gilbard was an obnoxious drunk who was out of control that night. In fact this wasnt the first time he has done that. There were at least 2 other times he has had run ins with the law because of his drinking and drug abuse problem. So Kevin Lamm and Frank Fiorillo, get over yourselves and move on. If you insist upon attacking anyone be man enough to sign your name to it. Oh thats right you arent even men! You are rats and will always be rats!!!

(*See* Ex. 17, at P 01203-01204; Ex. 20, at No. 498; Cherry Tr. 464:19-21).

166.   Cherry reviewed the blog from home and from the OBPD station.  (Cherry Tr. 463:2-21).  He informed Hesse of his numerous derogatory and disparaging postings about Plaintiffs, and admitted that Hesse did not admonish him at all (Cherry Tr. 467:10-18), notwithstanding that Defendant Hesse had advised other officers that posting on the blog would constitute a terminable offense (*see* Ex. 60).

167.   Plaintiff Carter complained to Hesse on at least seven different occasions regarding OBPD officers drinking on duty, but Defendant Hesse always laughed, walked

away, or told Carter to "just cut the shit" in response to these complaints.  (Carter 35:7-40:12, 45:5-8, 51:4-9).

168.    Plaintiff Carter also complained to Defendant Hesse on at least six different occasions about being required to chauffeur intoxicated officers and their friends while on duty.  Defendant Hesse either ignored these complaints, or ordered Carter to "just do it." (*See* Carter Tr. 313:16-314:20, 320:15-321:9, 321:10-323:2, 326:18-328:4).

169.    Plaintiff Carter complained to Hesse on at least two different occasions in 2005 after Hesse ordered him to selectively enforce the law and not issue summons to two bars in Ocean Beach whose owners were friends of Hesse – CJ's and Maguire's.  (Carter 336:17-340:3).

170.    Plaintiff Nofi complained to Defendant Hesse on at least 20 different occasions about officers drinking in bars, officers drinking in bars with a known drug dealer, about Hesse requiring Plaintiff Fiorillo to stand under a streetlight for 2-3 days without moving, and about Defendant Hesse forcing Plaintiffs Nofi and Fiorillo to look away when a woman was battered by a drunken off-duty Ocean Beach police officer.  (*See* Nofi Tr. 194:13-202:6, 204:23-205:9, 299:9-23).

171.    Plaintiff Nofi also complained repeatedly about the hiring and retention of uncertified OBPD Officers Moller and Hardman.  (*See* Nofi Tr. 246:17-251:15).

172.    Plaintiff Snyder complained repeatedly to Defendant Hesse about officers drinking while on duty, but was ignored continuously. (*See* Snyder Tr. 259:21-262:8).

173.    After the Halloween incident, Plaintiff Snyder complained to Chief Ed Paradiso about certain OBPD officers drinking on duty. (*See* Snyder 264:19-265:11).

Paradiso responded that the subject of his complaint was Defendant Hesse's problem because he was the superior officer on Plaintiff Snyder's shift.  (*See id.*).

174.   Plaintiff Snyder complained repeatedly to Defendant Hesse regarding OBPD officers who were not certified by County Civil Service, and were not familiar with County police radio codes. (Snyder Aff. ¶ 4). Defendant Hesse reassured Snyder that he would address these complaints, but never took any action in response.  (*See* Snyder Tr. 277:6-278:23).

175.   Plaintiff Snyder complained to Chief Ed Paradiso regarding OBPD officers who were not certified by County Civil Service, and were not familiar with County police radio codes.  (*See* Snyder Tr. 281:5-23).In response, Paradiso informed Snyder that Defendant Hesse is responsible for his tour, and that Snyder should address his complaints to Defendant Hesse.  (*Id*).

176.   Plaintiff Snyder complained to Defendant Hesse regarding uncertified OBPD officers Gary Bosetti, Richard Bosetti and Walter Moeller ignoring his police radio calls. (Snyder Tr. 278:24-279:8).

177.   Plaintiff Snyder complained to Defendant Hesse about officers leaving beer cans in the station and in the police vehicle.  (*See* Carter Tr. 279:25-280:20).

178.   Plaintiff Lamm complained to Defendant Hesse about officers drinking, and about Defendant Hesse delegating his supervisory authority to Ken Bockelman, another OBPD Officer who did not have the requisite certification for a supervisory position.  (*See* Lamm Tr. 194:12-196:25).

179.   Plaintiff Lamm complained to Defendant Hesse about uncertified OBPD officer Richard Bosetti drinking and driving the OBPD vehicles.  (*See* Lamm Tr. 204:6-15)

180.    Plaintiff Lamm complained to Defendant Hesse about OBPD officers' failure to secure and properly supervise OBPD department firearms.  (Lamm 207:25-210:4)

181.    Plaintiff Lamm complained to Defendant Hesse regarding Hesse's attempted cover-up of Gary Bosetti's assault of a civilian on the night of Halloween 2004.  (Lamm 241:23-242:5).

182.    Plaintiff Lamm complained to Defendant Hesse about leaving the Village short-staffed of Officers when he was required to chauffer intoxicated OBPD officers Gary and Richard Bosetti to the checkpoint after they spent the night drinking in Ocean Beach bars.  (See Lamm Tr. 249:10-250:8).

183.    Plaintiff Lamm complained to Defendant Hesse about on duty-officers leaving the Village short-staffed while they spent their tours drinking in local bars.  (See Lamm Tr. 256:17-25).

184.    Plaintiff Fiorillo complained to Defendant Loeffler in July 2005 about the Bosetti brothers running amuck in the village. Defendant Loeffler informed Plaintiff Fiorillo that he was aware of the problems at the OBPD, and would address them immediately upon beginning elected to serve as Mayor.  (See Fiorillo Tr. 89:10-93:9).

185.    Plaintiff Fiorillo complained to Defendant Hesse about uncertified OBPD officers drinking in local bars.  (See Fiorillo Tr. 115:17-20; 119:9-11).

186.    Plaintiff Fiorillo complained to Chief Paradiso about Gary Bosetti and Richard Bosetti becoming intoxicated and throwing an OBPD evidence locker containing police surveillance videos and other police equipment into the Great South Bay.  (Fiorillo Tr. 193-194).

187.    Prior to April 2, 2006, Plaintiff Fiorillo complained to the Suffolk County District Attorney's office regarding Hesse's apparent cover-up of an assault against a civilian by uncertified OBPD officer Gary Bosetti on the night of Halloween 2004.  (*See* Fiorillo Tr. 138:14-18).

188.    Gary Bosetti admitted that he drank alcoholic beverages on more than one occasion while on-duty and in uniform at Ocean Beach.  (*See* G. Bosetti Tr. 233).

189.    Gary Bosetti testified that sometime prior to the Halloween incident, Chief Paradiso advised him to refrain from drinking in bars in Ocean Beach, even off duty.  (*See* G. Bosetti Tr. 235-26).

190.    Gary Bosetti admitted that officers on duty on the next shift, including Plaintiffs, had to retrieve the OBPD emergency cell phone from him in local bars.  (*See* G. Bosetti Tr. 238-29).

191.    Gary Bosetti testified that Plaintiffs, while on duty, chauffeured him from local bars where he had been drinking on multiple occasions.  (*See* G. Bosetti Tr. 247-48).

192.    Uncertified OBPD officer Tyree Bacon testified that he would drive Gary and Richard Bosetti to the checkpoint after they had been drinking in local bars in the Village, and that they would drive away in their vehicles without a sobriety check.  (*See* Bacon Tr. 162).

193.    Tyree Bacon worked as an uncertified OBPD Officer in 2004 and 2005, knowing that he had not passed the required civil service tests.  (Bacon Tr. 186).

194.    Gary and Richard Bosetti "had a reputation of being very laid back" with respect to law enforcement in Ocean Beach.  (Bacon Tr. 209).

195.    Bacon testified that it is important for officers to know the emergency police "10-codes," and that "it could be" a safety risk if OBPD officers did not know the codes. (Bacon Tr. at 367; *see also* Cherry Tr. 207:21-208:18).

196.    Bacon testified that Chief Hesse regularly instructed him and other officers to issue more summons; "that was a routine mantra." (Bacon Tr. 452).

197.    Both Paradiso and Defendant Hesse directed Gary Bosetti to write more summonses, and Gary Bosetti's failure to do so is reflected in his written performance review. (G. Bosetti Tr. 201:9-206:23).

198.    At the time of Plaintiffs' unlawful termination as OBPD Officers, Defendant Rogers had no reason to doubt that Plaintiffs were good police officers. (Rogers Tr. 27-29).

199.    In fact, Defendant Rogers was a guest of honor at the commencement ceremonies for Mr. Fiorillo's graduation from Suffolk County Police Academy in 2001, during which Mr. Fiorillo was honored as the valedictorian of his class. (Ex. 35).

200.    Rogers had previously commended Plaintiff Fiorillo for rendering assistance to the daughter of a Village Resident who became ill during a prior Memorial Day celebration and parade at the Village. (Rogers Tr. 27:2-10).

201.    Part-Time/Seasonal OBPD officers who worked continuously from year-to-year were not required to "reapply" for their positions and continued to serve without any change in employment status. (*See* Carollo Tr. 42:19-43:3; Bacon Tr. 225-26; G. Bosetti Tr. 160:17-23).

202.    Part-Time/Seasonal OBPD officers did not have to fill out any paperwork from year-to-year and never received paperwork regarding any such purported "re-hiring." (R. Bosetti 184:2-24; Bacon Tr. 225-26; G. Bosetti Tr. 160:17-23).

203.    The only annual employment-related paperwork that Part-Time/Seasonal OBPD officers received was the letter inviting them to the annual pre-season meeting. (Bacon Tr. 226-28; R. Bosetti Tr. 184:11-13; G. Bosetti Tr. 70:15-19; Carollo Tr. 43:21-44:5).

204.    Although Defendant Loeffler did not assume the role of Mayor of Ocean Beach until July 2006, he was a Trustee of Ocean Beach's 5-member Board of Trustees beginning in 2002.  (Loeffler Tr. 89:22-90:11).

205.    From 2002 through Plaintiffs' termination on April 2, 2006, Defendant Loeffler, a 19-year veteran Suffolk county detective, was the only member of Village Board of Trustees with law enforcement experience.  (Loeffler Tr. 89:22-90:11, 325:11-20)

206.    As a veteran Suffolk County Police Detective, Loeffler had the most law-enforcement related experience of any trustee. (Loeffler Tr. 325:11-20).

207.    Moreover, Defendant Loeffler's father was former chief of the OBPD, which afforded Defendant Loeffler a unique connection to the operations of the OBPD. (Loeffler Tr. 30:3-8).

208.    Accordingly, he served as the Board of Trustees' Liaison to the OBPD, and Defendant Hesse relied on him as the *de facto* authority within Ocean Beach government issues pertaining to the OBPD.  (Hesse Tr. 45:12-19, 170:25-171:8).

209.    Although Plaintiffs approached Defendant Loeffler in his capacity as police liaison and candidate for mayor of OBPD, in or around 2005, to complain about the unlawful and dangerous conduct of OBPD officers, as well as Defendant Hesse's refusal to take any action in response to Plaintiffs' prior complaints, Defendant Loeffler assured Plaintiffs that he was already aware of the dysfunctional condition of the OBPD, and that he

would take action to correct those problems after Ocean Beach completed its elections for municipal office. (Fiorillo Tr. 89:10-96:6; Nofi Tr. 226:7-19).

210.   Moreover, despite receiving formal notice from the Civil Service Department regarding its prohibition against Defendant Hesse's exercise of supervisory authority over any municipal employees, Defendant Loeffler continues – to this day – to allow Hesse to unlawfully exercise the authority of OBPD Chief.  (Hesse Tr. 187:15-188:5).

211.   Moreover, Defendant Loeffler flatly denied that he had returned to the OBPD to obtain further information about the attack later that morning, after transporting the victims to the hospital, although this testimony was contradicted by Chief Paradiso. (compare Loeffler Tr. 252:25-253:9, with Paradiso Tr. 251:17-255:14).

212.   Finally, despite his express claim to Plaintiffs regarding prior knowledge of the dysfunction of the OBPD under Hesse's supervision, Defendant Loeffler allowed the OBPD to operate without any written procedural manual or policies, except in response to Defendant Hesse's criminal indictment in or around 2006.  (Loeffler Tr. 156:22-158:25).

213.   Defendant Loeffler, together with the Ocean Beach Board of Trustees and Suffolk County Civil Service Department, were responsible for hiring OBPD officers. (Loeffler 84:8-22).

214.   In 2002, after Trustee Andrew Miller, who had served contemporaneously as OB Police Commissioner, lost his bid for reelection, Defendant Rogers proposed that the Board of Trustees appoint her as Police Commissioner.  (Rogers Tr. 64:21-65:15).  Rogers testified that she did so because she believed it would be "appropriate," notwithstanding that she had no prior law enforcement experience of any kind.  (Rogers Tr. 65:3-65:21).

215. Rogers claimed that Hesse's elevation to Acting Chief was made at her initiative, because she discounted Paradiso's representation that Hesse was unsuitable for the position – and made no inquiries, to anyone, regarding the basis for Paradiso's warning. (Rogers Tr. 73:4-17, 85:2-11, 94:9-95:9).

216. Rogers discussed her desire for Hesse to be promoted to Acting Chief with Loeffler. (Rogers Tr. 75:22-76:4, 82:17-25).

217. Prior to being elected as a Trustee, and later Mayor of Ocean Beach, Rogers had served for nine-years as a Commissioner for the New York Civil Service Commission. (Rogers Tr. 50:11-52:17).

218. Rogers believes that the OB Police Chief had authority to hire and fire OBPD officers. (Rogers Tr. 127:14-21). Rogers failed to supervise Hesse's hiring and firing practices. (Rogers Tr. 128:21-25, 145:6-11).

219. Between July 2006 and July 2008, Rogers actively destroyed the files from her tenure as mayor concerning the OBPD, and made no effort to preserve such documents for any reason, including this litigation. (Rogers Tr. 147:24-150:3).

220. Ocean Beach was *never* in full compliance with applicable Civil Service requirements at any time during Rogers' tenure as Mayor. (Rogers Tr. 167:9-14).

221. Rogers testified that, in her view, it was permissible to employ OBPD officers in violation of Civil Service law unless Civil Service "caught" the unlawful employment. (*See* Rogers Tr. 255:24-256:9).

222. Although Defendant Rogers exercised her supervisory authority over the OBPD by participating in regular informational meetings with former Chief Paradiso, Defendant Rogers willfully disregarded Paradiso's representation that Hesse was unsuited

for promotion to Acting Police Chief when Paradiso was forced to retire due to injury. (Rogers Tr. 84:19-85:6).

223.    Despite being warned by County Civil Service that Hesse was unqualified to exercise supervisory authority over any employees in Ocean Beach, Rogers allowed him to do so.  (Rogers Tr. 158:19-159:19).

224.    Although Rogers admitted that she had a duty to conduct at least some inquiry into allegations of police brutality by Hesse, she failed to do so on the advice of counsel, and willfully walled herself off from any information at all concerning potential criminal brutalization of civilians by Defendant Hesse. (Rogers Tr. 225:16 -231:4).

225.    And, despite knowing that OBPD officers were being hired in violation of Civil Service Law, Rogers took no steps to ensure that the Village brought itself into compliance with those requirements. (Rogers Tr. 167:9-14).

226.    Defendant Hesse was resentful of Plaintiff Fiorillo's productivity, which reflected poorly on Defendant Hesse and his allies on the force.  (Carollo Tr. 93:6-94:21).

227.    OBPD officers were not provided copies of an employee handbook nor otherwise informed or directed to comply with any of the provisions therein.  (Carollo Tr. 136:14-21; Cherry Tr. 218:14-17).

228.    On April 8, 2006, Defendant Hesse also posted the following false, defamatory and stigmatizing statements concerning Officer Carter, as well as Officer Snyder, on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> And lets not forget the 2 town clowns from Islip. Ed and Tom. They too got canned for not doing their jobs. Do we need to brinng up the Halloween

incident. They are lucky that they didn't get charged with official misconduct
and falsely reporting an incident

(*See* Ex. 17, at P00968; Ex. 20, at no. 18; Ex. 22, at FB 0160, 0170, 0172, 0174, 0183, 0186,

0191, 0205, 0211, 0232, 0245. )

229.    Bacon testified that he assumed that reference to "the two clowns from Islip.

Ed and Tom" was a reference to Plaintiffs Edward Carter and Tom Snyder.  (Bacon Tr. 347).

230.    On April 17, 2006, Defendant Hesse posted the following statement on the

publicly accessible internet message board entitled "Ocean Beach Police Corruption" on

"The Schwartz Report" website:

> What a great post Still employed. Thats so funny i remember that night. Hes
> resisting Hes resisting!!!! I cant wait to find out who you are so i can shake
> your hand. The "twins" are awesome. Everyone loves them. The rat pack is
> just jealous because the twins actually have a personality and are actually
> able to make friends and as far as the acting chief goes, there are no word to
> describe. Hes the cops cop. He knows how to take care of his men even the
> jerkoffs

(*See* Ex. 17, at P00972; Ex. 20, at no. 26; Ex. 8).

231.    On May 10, 2006, Defendant Hesse posted the following statement on the

publicly accessible internet message board entitled "Ocean Beach Police Corruption" on

"The Schwartz Report" website:

> Kevin Lamm and Frank Fiorello, Why don't you 2 take your lumps like real
> men and move on. The Deputy Chief let you go because you guys abuse the
> public. That is not how we do bussiness in this department. He was a
> gentleman about it and assured you guys he would give favorable references.
> You were well with in your right to go to civil service to inquire about yout
> rights, and if you could be let go. But when you started to throw accusations
> around that was yet another case of you guys crossing the line. Just like so
> many times in the past. And now you wonder why you are on the outside
> looking in. You are at will employees, well I mean were. Now you have even
> less credibility than you did before. Congratulations for truely earning the
> title "**RAT**" Niether of you will ever work another law enforcement job here
> in the United States. Maybe if you are lucky you can get a job working in Iraq,

I hear they will take anyone over there. But you may become canon fodder! Good luck you rat bastards!"

(*See* Ex. 17, at P00986, Ex. 20, at No. 60; Ex. 22, at FB 0149, 0171, 0206, 0238, 0251, 0252, 0255).

232.    On May 27, 2006, Defendant Hesse also posted the following false, defamatory and stigmatizing statements concerning Officer Nofi, as well as Officers Carter, Snyder, Lamm and Fiorillo, on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

Kevin Lamm, are you still a half a fag? Or are you sucking dick out in the open now as an out of the closet fag? No matter how you look at it you will always be a rat!

(*See* Ex. 17, at P00999; Ex. 20, at No. 87; Ex. 22, at FB 0161, 0173, 0191, 0192, 0202, 0223, 0233, 0237, 0238, 0239, 0240, 0241, 0242, 0244, 0245, 0246, 0249, 0251, 0252, 0253, 0254, 0255, 0259, 0265, 0266, 0273).

233.    On May 30, 2006, Defendant Hesse posted the following statement on the publicly accessible internet message board entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

The only slander here is what you did to the chief and his wife. You started this scumbag. no one else. You talk about someone selling X. How would you know, you never made an arrest unless it was someone peeing. Nice one.  So, whats wrong? Only doing this to scare the chief?..lol like was scared. Whats wrong? your balls creeping up into your throat? oh thats right, you don't have any balls. Let me ask you this. How does it feel knowing you will never be a cop?...ha ha ha ha ha"

(*See* Ex. 17, at P01001, Ex. 20, at No. 95; Ex. 22, at FB 0166, 0197, 0221, 0223, 0224, 0239, 240, 0242, 0245, 0247, 0248, 0249, 0250, 0255, 0260, 0264, 0265).

234.    On May 30, 2006, Defendant Hesse also posted the following false, defamatory and stigmatizing statements concerning Officer Lamm, on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> First, you couldn't handle being in Iraq. Second, you would be shot by your own men. Third, It was the Seargeant, now Chief that had to restrain you, Kevin Lamm, From beating the marine you talk about. He never touched the guy. HOMO!!!! Hows the airport square badges treating you these days you RAT!

(*See* Ex. 17, at P01000, Ex. 20, at No. 93; Ex. 22, at FB 0166, 0197, 0221, 0223, 0224, 0239, 240, 0242, 0245, 0247, 0248, 0249, 0250, 0255, 0260, 0264, 0265).

235.    On June 22, 2006, Defendant Hesse posted the following statement on the publicly accessible internet message board entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> The funny thing is that no one is scared. you're out of a job, get over it already loser...i want them to look in to the so called Holoween incident. It will show them how pethetic your police officer skills are. Thats why it had to be taken over and investigated by someone else. The case was reviewed and prosecuted by the DA and the adjudicated. The defendants plead out. What else is there. What, you think they will find a cover up you moron. Once again the only thing that was covered up was how poorly you investigated the incident. You can try and attack the chief and his men all you want. It will get you no where...well it did get you some where out of lawenforcement...NICCCE

(*See* Ex. 17, at P01013; Ex. 20, at No. 125; Hesse Tr. 294:20-25; Ex. 8).

236.    On May 9, 2007, Defendant Hesse posted the following false, defamatory and stigmatizing statements concerning Officer Fiorillo on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

Frankie, Frankie, Frankie (Frank Fiorello) why are you so angry? Is it that you cant abuse the public anymore? What are you doing with all that pent up rage? are you brutalizing some poor helpless animals in your in your back yard?

(*See* Ex. 17, at P01081; Ex. 20, at No. 250; Hesse Tr. 383:7-8).

237.    On September 6, 2007, Defendant Hesse posted the following false, defamatory and stigmatizing statements concerning Officer Carter on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

Ed Carter, You fat readheaded clown f**ck! Your next, what are you going to do when the DA looks into your time sheets from both the Town of Islip and Ocean Beach. Boy I sure hope you signed out and werent double dipping. The same goes for you you lying bald headed prick Tom Snyder. Lets see what happens when the DA squad crawls up your ass with a microscope. Burn in hell you lying scumbags!!! Cant wait to see what other photos show up. After all it is a public safety issue right???

(*See* Ex. 17, at P01109; Ex. 20, at No. 304; Ex. 22, at FB 0158, 0162, 0196, 0198, 0206, 0213, 0215, 0216, 0217, 0223, 0224, 0225, 0247, 0248).

238.    On April 12, 2007, Defendant Hesse posted the following false, defamatory and stigmatizing statements concerning Officer Fiorillo on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

"Hi Frank" That is you posting the 'Heeeessssssssseeeee!!!!!!' responses, isn't it you sly devil??? Say how-do-you-spell your last name Frank? F-E-L-L-A-I-T-O ? I thought so.  What's with the attacks on George's wife? Did you forget to get your rabies shot? Or are you hot for her? Never did see you hanging out with any ladies at the beach, figured that were because you must have been hanging out with Keven Lamm, so I don't think that you were hot for her, or any GIRLS...lol.Even the Mafia dosen't attack families.  Guess getting bumped up from an auxiliary cop to a seasonal/rent-a-cop was pretty heady for you...must have cost you a fortune to pass the psychological test. You looked pretty sharp writing all of those tickets though, your version of COMSTAT? Keeping OB safe from grime? Guess that you were working on getting

bumped up to 'meter maid?' I figure that they forgot to tell you in the academy that being the top producer in a police department doesn't give you any validation to be insubordinate to your boss (Sgt. Hesse) even though you surely did display this type of behavior. Yep, Georgie did make some mistakes; he should have documented your behavior and started a supervisor's paper trail then.  You guys weren't fired, but not asked back (big difference). Had you applied for other part time positions at other police agencies you would have receive a letter of reference from OB...don't think so now,. Must have been tough not getting that position with the FBI. What was it again...'truck driver?'  You looked smoking on TV being interviewed. Seems that you accused your brother officers of (to use you words)..."Cops were drinking at night and going to work the next morning." ...yep, sounds very much like you were accusing them of having "Hangovers!!!" And the part where you stated that..."They were carrying guns around little kids." ??? So were you for that matter. But as one wag remarked "at least the guns weren't loaded!" We all know where YOU want to unload your gun after that statement, don't we?  Too bad that you don't get it, thanks to the fearless five corruption fighters, who only brought their complainants to the surface after they were not asked back (they worked at OB forever, and never noticed corruption before this?) have played into the hands of the DA. He does have complaints going back a number of years, but none of those officers work at OB anymore, the new guys are going to pay for the sins of the past so that the DA can put a few notches on his gun. The only cops that were here then are you guys and the chief, E.P., Sgt George The fat, bald guy Lonnie, and Andy. That was some bachelors party...never saw sp many girls ? On the beach that is.  I'd be careful about saying that George hung around with a known drug dealer...who's that, everyone in town? OK we all know who the DD allegedly is, don't we? Problem is that he's been over there forever, he's never been arrested and he has no convictions as a druggie. Leaving yourself open for a libel suit there Frankie if you try to name, names. Gee Frank all those people who ever got a ticket, or hate cops or even 'Fulltime' cops who hate part timers for stealing their over time are watching and laughing their heads off. Never thought that one malcontent could bring so much discredit down on the heads of his co-workers who are trying to accomplish a difficult job, Wow. We'll see you later, can't wait to see more of your writings...

(*See* Ex. 17, at P01070-1071; Ex. 20, at No. 233; Ex. 22, at FB 0162, 0166, 0181, 0206, 0239, 0240, 0266).

239.    On May 17, 2007, Defendant Hesse posted the following false, defamatory and stigmatizing statements concerning Officer Fiorillo and Officer Lamm on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> Kevin Lamm and Frank Fiorello,  Just think about it, you have much more at stake here than the accused four. You seey our lies and half truths will come home to roost. While the accused will eventually be free when the truth comes out. You guys will be held accountable for you lies. It is called perjury, it is a crime and punishable by jail time. Not to forget the civil suit that will follow. Oh and the whistle blower act that you are trying to hide behind. That may work if you came forward with anything of subtsance. But you decieded come forward with allegations that were non existant. This was after you were not invited back for your gross incompitence.  There are plenty credible people who will shoot holes through you nonsensical story of non belief.

(*See* Ex. 17, at P01083; Ex. 20, at No. 255; Hesse Tr. 383:7-8).

240.    On August 27, 2007, Defendant Hesse posted the following false, defamatory and stigmatizing statements concerning Officer Nofi, as well as Officers Carter, Lamm, Snyder and Fiorillo, on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> Oh well, Kevin the fag, Ed the fat basterd, Tom the angry man, Joe the moron and Frank the abuser. I bet you are all upset to see that justice is finally being served. I know it is going to break your little blood thirsty, cock sucking hearts when George is finally cleared. It is just a matter of time. And lets see if you lying pricks will just have to sit back and watch the money roll in. What are you going to do when you finally have your day in court. You know you wont be able to keep lying under oath. That is called perjury. And yes it is a crime. I cant wait for you all to face everyone who will come in as witnesses to all of your nonsense. Trust me there is a line a mile long.  I cant wait to see you all named in counter suits!!! LOL

(*See* Ex. 17, at P01097; Ex. 20, at No. 281; Ex. 22, at FB 0158, 0162, 0196, 0198, 0206, 0213, 0215, 0216, 0217, 0223, 0224, 0225, 0247, 0248; Hesse Tr. 383:7-8).

241.    On September 4, 2007, Defendant Hesse posted the following false, defamatory and stigmatizing statements concerning Officer Nofi and Officer Fiorillo, on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> Your F***ing retard Joe nofi, werent you the one who was quoted as saying the the Chief and is boys act like its Marti Gras??? Hmmm Looks like you were the one acting like that. And you F***ing scumbag Frank Fiorello, you were quoted as saying that they placed the public at risk by drinking and carrying guns around children. Well looks like you were the guilty on. Good luck with your civil suite as for being fired with out merrit and for being wistle blowers!

(*See* Ex. 17, at P01102; Ex. 20, at No. 291; Ex. 22, at FB 0158, 0162, 0196, 0198, 0206, 0213, 0215, 0216, 0217, 0223, 0224, 0225, 0247, 0248; Hesse Tr. 383:7-8).

242.    On April 22, 2009, Defendant Hesse posted the following false, defamatory and stigmatizing statements concerning Officer Fiorillo on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> I think fiorillo has been unemployed since ocean beach. He's waiting for the big pay day...

(*See* P01203; Ex. 20 at no. 497; Ex. 8; Ex. 22, at FB 0167, 0168, 0169, 0176, 0177, 0178, 0179, 0181, 0182, 0188, 0189, 0190, 0193, 0194, 0196, 0197, 0203, 0204, 0206, 0207, 0208, 0217, 0218, 0220, 0225, 0226, 0227, 0228, 0229, 0230, 0232, 0233, 0234, 0235, 0236, 0237, 0239, 0240, 0241, 0244, 0246, 0247, 0248, 0249, 0251, 0252, 0254, 0255, 0256, 0257, 0258, 0259, 0260, 0261, 0262, 0263, 0264, 0265, 0266, 0267, 0268, 0269, 0271, 0272, 0273, 0275; Ex. 23 at Cablevision 0020.

243.    On April 29, 2006, Defendant Hesse posted the following statement on the publicly accessible internet message board entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> here's a rat, there's a rat, everyone goes rat rat, old mcdonald had a farm, E I, E I....OOOOOOO

(*See* Ex. 17, at P00984; Ex. 20, at no. 52; Ex. 8).

244.    On April 16, 2006, Defendant Hesse posted the following statement on the publicly accessible internet message board entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

Hey VillageIdiot, you got one part right, you are an IDIOT... Why would you want to bring the EnCon Police in to this? Do you need more cops to rat on? Haven't you done enough of that already... Oh thats right, once a rat always a rat...So, you want to bring up the holloween incident...hmmm, lets talk about it...the only cover up there was how bad a job you did investigating it. Did you ever wonder why no one would talk to you guys during your shitty investigation. Everyone hates you. Everyone knew then you were a rat. Did you know that when the case was ran through the DAs office they wanted to investigate you and your rat partners? Did you know that it was the sergeant who protected you from being investigated? How about the time you and your asshole partner beat up those 3 girls and 1 of them got away in handcuffs...that was real funny you moron...what a lawsuit that was going to be, but wait, it was the sergeant once again who protected your asses, amazing, truly amazing. This sergeant i talk of is currently the acting chief. Do you know why he's the acting chief? Its because he knows how to protect his men, the department and the village and cares enough to do so. The previous administration (Chief) doesn't care about you, the police department or the village. so suck up the fact that your were let go and get on with yourself... see you around, oh wait, no i wont

(*See* Ex. 17, at P00970; Ex. 20, at No. 22; Hesse Tr. 294:20-25; Ex. 8).

245.    On April 17, 2006, Defendant Hesse posted the following statement on the

publicly accessible internet message board entitled "Ocean Beach Police Corruption" on

"The Schwartz Report" website:

Just so you know IDIOT, this is not the chief. He would not stoop this low to entertain anything you had to say so lets get that straight. I'll do it for him and since you are a chicken shit and refuse to identify yourself, i will do the same for the time being. We all know how hard it is for you to come out of the closet. Whoops, did i let that slip out. Thats why you BEAT those girls isn't it. you were jealous of them, they were prettier then you, awwwwww.. Now lets talk about the so called "TWINS" again. They we fired because of the previous chiefs incompetence to investigate anything, and for what its worth he believed the incompitence of you 3 morons. I mean really, did you read the paperwork you put together, i know i did. what a joke. and as far as cronies go, if you want to call the DA a cronie of the chief, i'm sure he'll take that as a compliment. They cleared the case stupid. So you want to talk about known drug dealers. What would you know about that? when was the last time or if ever you made an arrest for drugs? do you even know what cocaine looks like? i doubt you would. Any one that writes as many summonses as you and comes into contact with as many people as you and never made an arrest. but watch out, someone is eating peanuts on the beach, i better get her. oh my!!, look a red gatorade, i better kick his ass. LOSER!!! did you you write your

mother a ticket yet? WAIT!! someones pissing, theres the felon. OH 10-1, 10-1 i maced myself again... HA HA HA HA HA HA HA HA....HE's RESISTING!!!!! and lets get another thing straight, the only walls that are closing in are the ones around your short feeble law enforcement career....

(*See* Ex. 17, at P00971; Ex. 20, at No. 25; Hesse Tr. 294:20-25; Ex. 8).

246.    On May 10, 2006, Defendant Hesse posted the following statement on the

publicly accessible internet message board entitled "Ocean Beach Police Corruption" on

"The Schwartz Report" website:

you guys are all done....pathetic little men... Watching you leave with your head between your legs from the meeting..amazing..watching you get on the water taxi with your head between your legs.. funny going to civil service to be a rat and getting no play.. hysterical..trying to get a job with another law enforcement agency and not getting one.. pricless

(*See* Ex. 17, at P00988, Ex. 20, at No. 61, Ex. 22, at FB 0160; 0170, 0172, 0174, 0183, 0186,

0191, 0205, 0211, 0232, 0245).

247.    On July 22, 2007, Defendant Hesse posted the following statement on the

publicly accessible internet message board entitled "Ocean Beach Police Corruption" on

"The Schwartz Report" website:  "Go suck a dick Kevin".

(*See* Ex. 17, at P01090; Ex. 20, at No. 270; Ex. 22, at FB 0170, 0172, 0238, 0241, 0250, 0253,

0274).

248.    On August 27, 2007, Defendant Hesse posted the following statement on the

publicly accessible internet message board entitled "Ocean Beach Police Corruption" on

"The Schwartz Report" website:

Just remember, the truth is the truth. No matter how you try to pervert it. F**k you 5 losers. Lets see what Dave the deaf guy with the wire has to say now??? Oh thats right he will flip flop again I am sure!!!

(*See* Ex. 17, at P01098, Ex. 20, at No. 282; Ex. 22, at FB 0158, 0162, 0196, 0198, 0206, 0213,

0215, 0216, 0217, 0223, 0224, 0225, 0247, 0248; Hesse Tr. 383:7-8).

249.    On September 4, 2007, Defendant Hesse posted the following statement on the publicly accessible internet message board entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> hiring an attorney (per dium), civil law suit (325mil), having a picture of the men accusing you of what they're doing in the picture for the world to see (PRICELESS)!!!!  my god frank. you must be joking. and poor retarded joe was stupid enough to follow you and have his photo taken. hey joe, how sick are you now? i watched all your press conferences again today on your lawyers web site. you are all pathetic. the lies all the lies. hey ed, you talk about it being a public safety issue. must have been tuff patroling from your bunk. what was going on in the village while joe and frank were with all these women drinking. and you all want to know why you dont have a job. you crack me up.  i love how you all say the chief made you change reports to cover other police officers. whenever you're ready to read all your embarassing original reports let the boss know. oh wait. hes not your boss anymore. well FOIL them when you're ready. see you in hell!!

(*See* Ex. 17, at P01103-1104; Ex. 20, at No. 294; Ex. 22, at FB 0156; Ex. 8).

250.    On April 11, 2009, Defendant Hesse posted the following false, defamatory and stigmatizing statements concerning Officer Nofi and Officer Lamm on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> this was either written by joe nofi or kevin lamm.. the both of you are illiterate bastards. hey kev.. hows the steroid use going.. you look like a swollen tick.. when are you guys going to give this up.. you lost.. thats it.. bye bye

(*See* Ex. 17, at P01153; Ex. 20, at No. 381; Ex. 22, at FB 0262, 0263).

251.    On April 14, 2009, Defendant Hesse posted the following statement on the publicly accessible internet message board entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

> Good point... the prosecutor turned white when the defense called no witnesses. there was no evidence, therefor no case. How pathetic. This should

never have gone this far. I can see the dollar signs now. Kevin, Frank, Joe, Ed, and Tom you're next.. signed DIRTY!!!

(*See* Ex. 17, at P01160; Ex. 20, at No. 397; Hesse Tr. 294:20-25; Ex. 23, at 0020).

252.    On April 15, 2003, Defendant Hesse posted the following statement on the

publicly accessible internet message board entitled "Ocean Beach Police Corruption" on

"The Schwartz Report" website:

> Listen.. its one of 5 asses writing this stuff.. they started with the slander 3 days after they were fired from ocean beach and then blamed george for starting the blog. They are the chicken shiits hiding behind this blog. They will never giver their names because they already perjured themselves at depositions saying they never read or wrote on the blog. This is all they have left. It really is pathetic when you think about it. Their case is in the gutter.. they've been begging for a settlement and the ocean beach side wont give them one. They lost and they know it. What a shame and they are a sham..

(*See* Ex. 17, at P01168-1169; Ex. 20, at No. 413; Hesse Tr. 294:20-25; Ex. 23, at 0020).

253.    On May 5, 2009, Defendant Hesse posted the following statement on the

publicly accessible internet message board entitled "Ocean Beach Police Corruption" on

"The Schwartz Report" website:

> According to the 11 other people on the jury, it didn't happen either.. sorry to disappoint you...oh and ah..he didn't almost die retard...i guess you weren't at the trial.. oh thats right..you asses came on the day they summed up the case.. you fucking losers.. looks like you all go to the same barber.. baldies are us..put your heads together and make a huge ass out of yourself. oh wait, you already did that with all your slanderous remarks about the OBPD.. how does it feel to be begging for a settlement.. I think they should hold out a long time and not give you a cent.. hey, one other thing, sam may not have had drugs in his system that night but he did say to the doctor that he regularly uses coke and marijuana. was in his med report.. i love how you guys stick up for a guy like this when you beat everyone up you came in to contact with. Especially frank, joe and kevin.. how are you guys feeling these days knowing you'll never be cops again... Hey frank, do you even have a job yet?

(*See* Ex. 17, at P01207-1208; Ex. 20, at No. 502; Hesse Tr. 294:20-25; Ex. 22, at FB 0167, 0168, 0169, 0176, 0177, 0178, 0179, 0181, 0182, 0188, 0189, 0190, 0193, 0194, 0196, 0197, 0203, 0204, 0206, 0207, 0208, 0217, 0218, 0220, 0225, 0226, 0227, 0228, 0229, 0230, 0232, 0233, 0234, 0235, 0236, 0237, 0239, 0240, 0241, 0244, 0246, 0247, 0248,

0249, 0251, 0252, 0254, 0255, 0256, 0257, 0258, 0259, 0260, 0261, 0262, 0263, 0264, 0265, 0266, 0267, 0268, 0269, 0271, 0272, 0273, 0275; Ex. 23, at 0020).

254.   On May 6, 2009, Defendant Hesse posted the following false, defamatory and stigmatizing statements concerning Officer Nofi, Officer Carter, Officer Lamm, Officer Snyder and Officer Fiorillo, on the publicly accessible internet message board thread viewed by more than 70,000 internet users, and entitled "Ocean Beach Police Corruption" on "The Schwartz Report" website:

First off Sam Gilbard stated on the record he had aprox 18 drinks that night. When EMS got on sceene the administered Narcan and got a positive response. That means he had taken some kind of narcotic based drug. His friend on sceene told EMS that he is a recreational drug user. Oh and lets not forget that his blood alcohol level was .30 at 7:30am in the hospital.  But lets not pick on poor Sammie. Oh and his 2 other run ins with the law were 6 days apart. That all came out during the sandoval hearing. the judges ruling was that it couldnt be brought out during the trial unless he or the DA opened the door. But lets not pick on poor Sammie  Now his ruptured bladder may or may not have happened in police custody. According to the DA's own medical experts it could have even happened if he fell of a bar stool with his bladder being so distended from all his drinking. And the Suffolk County Medical Examiner also stated that he may have even happened in the ER when they were inserting the foley cathater with him being so drunk and combative. But lets not pick on poor Sammie  Then you complain about about the jury's verdict. Well it was all 12 of them. Not just one of them. The fact that a cop was on the jury. means nothing. The DA courd have exercised a challenge to have him removed. But he didn't. Remember a jury of your peers. That means anyone and everyone serves these days. No exemptions. But lets not pick on poor Sammie. As for the civil suit. He will get paid and paid well. But he will also be assessed a percentage of responsibility for his own actions. So his pay day certainly will not be anyware near 22 million. Or are you really talking about the your own civil suit? The bogus suit filed by the 5 losers who got fired. I know you all had high hopes that the Deputy Chief would get convicted. That would only bolster your own suit. But as your own attorney is seeing he was sold a box of rocks by you guys. No pay day sorry!!!  Now you ask if OBPD hires women. Why yes they do. But they fired 5 of them in one shot for being cunts! Their names are Ed Carter, Tom Snyder, Kevin Lamm, Frank Fiorillo and Joe Nofi. They werent fired for being women or females. They were fired for incompetence and misconduct. But they have the audacity to claim it was the Chief and other members of the department who were guilty of misconduct. Grow some balls and take responsibility for your own actions!  Now don't take my word for it, or the word of any of the

> officers who work there. Maybe they should ask officers who worked with the the 5 clowns and have left for other police jobs. NYPD, NYSP, MTAPD, SCPD and so on. They will only confirm what your own lawyer had found out after hundreds of billable hours that he will never get paid for.  So Ed, Tom, Kevin, Frank and Joe. Keep your circle jerk going. Because when it is all over. The only thing you will have is each others dicks in your hands!!!  But lets not pick on poor Sammie!

(*See* Ex. 17, at P01216-1217; Ex. 20, at No. 526; Ex. 22, at FB 0158, 0162, 0196, 0198, 0206, 0213, 0215, 0216, 0217, 0223, 0224, 0225, 0247, 0248).

255.    As of April 2, 2006, Plaintiffs were employed as Part-Time/Seasonal OBPD Police Officers, but, like all other Part-Time/Seasonal OBPD Police Officers, had not been assigned shifts for the Summer 2006 season.  (See Ex. 54, 002662).

256.    On April 2, 2006, Defendant Hesse told Officer Carter that he was being fired from his employment as a Part-Time/Seasonal Police Officer for failing to comply with unspecified directives.  (Carter Tr. 16:7-12).  When Officer Carter challenged this purported reason, Hesse refused to specify which "directive" he was referring to.  (Carter Tr. 220:17-221:3; Carter Aff. ¶ 10).

257.    On April 2, 2006, Defendant Hesse told Officer Nofi that he was being terminated as a Part-Time/Seasonal OBPD Police Officer due to budget cuts. (Nofi Tr. 229:21-230:18; Nofi Aff. ¶ 13)  When Officer Nofi asked if he could stay on for just one day a week because he needed the money, Defendant Hesse said no.  (Nofi Tr. 229:21-230:25).  However, Hesse's reference to "budget cuts" was a false, pretextual explanation, as Ocean Beach made no budget cuts in 2006 whatsoever that affected OBPD personnel.  (Minerva Tr. 246:13-21).

258.    Defendant Hesse terminated Officer Nofi in reprisal for Officer Nofi's complaints about misconduct by Defendant Hesse and other OBPD Officers who were friends with Defendant Hesse.  (*See* Nofi Tr. 194:13-202:6, 204:23-205:9, 299:9-23).

259.    On April 2, 2006, Defendant Hesse told Officer Lamm that he was being fired from his employment as a Part-Time/Seasonal Police Officer for budget cuts, and because Officer Lamm purportedly wrote "too many summonses" and Defendant Hesse wanted to make Ocean Beach into a "kinder and gentler" place.  (Lamm Aff. ¶ 13).  However, Hesse's reference to "budget cuts" was a false, pretextual explanation, as Ocean Beach made no budget cuts in 2006 whatsoever that affected OBPD personnel.  (Minerva Tr. 246:13-21). (*See* Lamm Tr. 194:12-196:25, 204:6-15, 207:25-210:4, 241:23-242:5, 249:10-250:8, 256:17-25).

260.    Defendant Hesse informed Officer Snyder that he was "fired" on or about April 20, 2006 because he was the "civil service rat."  (Snyder Tr. 83:7-12-84:23).

261.    Defendant Hesse terminated Officer Snyder in reprisal for his complaints about misconduct by Defendant Hesse and other OBPD Officers, as well as his refusal to amend his statement about a fight in a bar involving off duty OBPD Gary Bosetti and Richard Bosetti.  (The "Halloween Incident") (*See* Snyder Tr. 259:21-262:8, 264:19-265:11, 277:6-278:23, 278:24-279:8, 281:5-23)

262.    Defendant Hesse told Officer Fiorillo that he was being fired from his employment as a Part-Time/Seasonal Police Officer because of budget cuts and because Officer Fiorillo purportedly wrote "too many summonses."  (Fiorillo Tr. 370:6-13; Fiorillo Aff. ¶ 13).  However, Hesse's reference to "budget cuts" was a false, pretextual explanation,

as Ocean Beach made no budget cuts whatsoever that affected OBPD personnel.  (Minerva Tr. 246:13-274:2).

263.    Defendant Hesse terminated Officer Fiorillo in reprisal for his complaints about misconduct by Defendant Hesse and other OBPD Officers who were friends with Defendant Hesse, as well as Officer Fiorillo's refusal to amend his statement about the Halloween Incident, and because he was resentful of Officer Fiorillo's productivity as a police officer, which reflected poorly on Defendant Hesse and his friends on the force. (Carollo Tr. 93:6-94:21; Fiorillo Tr. 89:10-93:9, 115:17-20; 119:9-11, 138:14-18).

264.    Defendant Hesse informed Defendant Rogers and the Village Board of Trustees of Plaintiffs' terminations by letter dated April 4, 2006, with subject line "Termination of Employment." (*See* Ex. 64).

265.    Plaintiffs were directed by Defendant Hesse to appear for the April 2, 2006 preseason meeting, together with all other OBPD officers.  (*See* Ex. 54, 02262).

266.    Plaintiffs were terminated by Defendant Hesse immediately prior to the official start of the meeting, while all other OBPD officers in attendance were assembled and waiting for the meeting to begin.  (Moran Tr. 16:21-17:9).

267.    The assembled officers were aware that Plaintiffs had been terminated when Plaintiffs walked towards a waiting water taxi while the officers were still assembled outside, prior to the start of the pre-season meeting.  (Carollo Tr. 269:5-23; Moran Tr. 16:24-17:9). OBPD Dispatcher Chris Moran, who was present for the April 2, 2006 pre-season meeting, told Officer Lamm in a recorded conversation that Defendant Hesse had informed the remaining officers that the Plaintiffs were terminated in connection with a rumor that one or more of the Plaintiffs had worn, or was scheduled to wear, a "wire" for

the Suffolk County District Attorney in connection with its investigation of brutality and corruption in the OBPD.  (*See* Ex. 16 at 2:4-3:5).

268.  **F**ormer OBPD Officer Paul Carollo, who also was present at the April 2, 2006 preseason meeting, testified that, after advising Plaintiffs of their termination and directing Plaintiffs to depart Ocean Beach on a waiting water taxi, Hesse stood on a balcony above the other officers who were gathered outside the meeting room and waiting for the meeting to begin, and, while the gathered officers jeered and laughed at Plaintiffs, stood above them all "giggling" as he and the assembled officers watched Plaintiffs depart on the water taxi.  (Carollo Tr. 270:9-271:20).

269.  Defendant Hesse advised the Collier County, Florida, Sheriff Department Investigator who was responsible for reviewing Officer Nofi's application for employment as a Police Officer that he had terminated Officer Nofi's employment, in a manner and context that was calculated to, and did, necessarily and falsely imply that the termination was for valid cause, and that Officer Nofi had initiated a lawsuit in connection with his termination (which was false at that time), in a manner and context that that was calculated to, and did, necessarily and falsely imply that Officer Nofi's lawsuit was devoid of merit and that Officer Nofi was a litigious and unfit police officer.  (Hesse Tr. 662:18-663:13; Ex. 55, at 0149-0150).

270.  Defendant Hesse also falsely advised Sergeant Foster, the investigator assigned to review Officer Fiorillo's application for employment as a Part Time Police Officer with the Southampton Town Police Department, that he had "written [Officer Fiorillo] up" for unspecified disciplinary infractions, and that Officer Fiorillo was unfit to serve as a Police Officer.  (Ex. 24, at STPD 013).

271.    Defendant Hesse also falsely advised Greg Decanio, who was responsible for evaluating Officer Carter's application for promotion to the position of Park Ranger III, that Officer Carter was unfit to serve as a law enforcement officer, and that he had purportedly terminated Officer Carter's employment for "coming to work tired and sleeping the tour away."  (*See* Ex. 21; Ex. 14, at 3:8-21).

272.    Defendant Hesse also provided a false and defamatory reference that prevented Officer Lamm from obtaining new employment with the Suffolk County Police Department.  (Ex. 15, at 2).

273.    Defendant Hesse referred to himself as "Chief" in blog entries that he posted on the Schwartz Report.  Moreover, as senior-most OBPD employee with authority to set internal policy for the OBPD (*see*, e.g., Hesse 56.1 ¶ 24; Ex. 23 ("My name is George Hesse and [I] Run things for the police department here in Ocean Beach.")), Defendant Hesse advised other officers that posting on the blog would constitute a terminable offense.  (*See* Ex. 60).  However, Defendant Hesse suspended this policy in his capacity as OBPD policy-maker, and authorized himself, as well as his friend Patrick Cherry to post on the blogs to "set the record" straight regarding, among other things, the grounds for Plaintiffs' dismissal.  (Cherry Tr. 467; Cherry Posts, *infra*).

274.    When Defendant Sanchez first began overseeing Civil Service Compliance at Ocean Beach, she determined "[t]hat they were negligent in reporting as they were supposed to." (*See* Sanchez Tr. 119:7-12).

275.    Nevertheless, Defendant Sanchez failed to bring Ocean Beach into compliance with Civil Service requirements at any point during her tenure. This was

because Defendant Sanchez failed to take any action beyond informing Ocean Beach that it was maintaining uncertified employees on its payroll illegally. (*See* Sanchez Tr. 121:17-25).

276.    Defendant Sanchez never even suggested to Ocean Beach that it could face any consequences for continuing to ignore her reports of unlawful employment practices, and she never communicated to anyone at Ocean Beach that the failure to remedy identified violations of Civil Service Law was a problem.  (Sanchez Tr. 122:25-123:9).

277.    Under Defendant Sanchez's oversight, the determination that Ocean Beach employees were working in violation of Civil Service requirements "wouldn't disqualify them from working." (*See* Sanchez Tr. 124:5-19).

278.    When Defendant Sanchez began to "interact" with Hesse with respect to personnel issues at Defendant Ocean Beach Police Department in 2004, she informed him that the continued employment of OBPD officers who were not in compliance with Civil Service requirements was prohibited.  (*See* Sanchez Tr. 178:25-181:6).

279.    Defendant Sanchez recognized from her first interactions with Hesse that Hesse was exercising supervisory authority within the OBPD – despite having failed the requisite Civil Service examinations for employment in a supervisory capacity on at least two occasions – she never informed anyone at Ocean Beach that Defendant Hesse was not permitted to continue serving in a supervisory capacity.  (*See* Sanchez Tr. 206:24-207:13; 212:13-23).

280.    Defendant Sanchez continued to meet and speak with Defendant Hesse throughout her tenure, and despite devoting such time to Defendant Hesse, the OBPD continued to violate Civil Service law.  (*See* Sanchez Tr. 121:17-25; 162:12-19).

281.     When Defendant Hesse contacted Defendant Sanchez to confirm that Civil Service would not interfere with his plan to unlawfully terminate Plaintiffs' employment as OBPD Officers, Defendant Sanchez assured him that it would not.  (*See* Sanchez Tr. 234:24-236:13, 243:11-245:4; Hesse Tr. 610:3-9).

282.     After being terminated by Defendant Hesse in retaliation for their refusal to cooperate with Hesse's attempt to cover-up an incident of police brutality by an intoxicated OBPD officer, and for repeatedly complaining about other instances of unlawful conduct by Defendant Hesse that threatened public safety, Plaintiffs met with Defendant Sanchez in an attempt to complain about Defendant Hesse's unlawful termination as well as to obtain information about their rights.  (Sanchez Tr. 242:2-14).

283.     Defendant Sanchez then deceived Plaintiffs into believing that her meeting with them would be maintained in confidence, despite her intent to divulge their "whistleblower" complaints to Defendant Hesse.  (Fiorillo Tr. 54:24-55:11; Nofi Tr. 131:24-132:5; Lamm Tr. 141:23-142:13; Ex. 13, at 4:23-5:18).

284.     Defendant Sanchez testified that her meeting with Plaintiffs was "what I interpreted as a whistle blowing type of conversation where they tried like to tell on George Hesse and the Village for allowing other officers who worked there who had not completed all of their qualifying exams."  (Sanchez Tr. 245:10-16.)

285.     Defendant Sanchez lied to Plaintiffs by claiming that they were entitled to no whistleblower protections whatsoever, and that, irrespective of their complaints about Defendant Hesse, the termination of Plaintiffs' employment was entirely lawful and beyond reproach.  (Sanchez Tr. 243:22-24; 244:5-246:5)

286.   When asked whether Plaintiffs had attempted to "blow the whistle" regarding other conduct by Defendant Hesse, Sanchez admitted: "Not that I can recall, and *if they did I probably tuned it out anyway* because it is not relevant.  What they told me about I already knew, and if they were – *if there were other complaints about him personally I couldn't care less, it didn't matter. . . .*  If there *was I probably wasn't paying attention*." (Sanchez Tr. 252:13-22).

287.   Despite having explicitly promised Plaintiffs that their meeting with her would remain confidential, Defendant Sanchez immediately called Defendant Hesse and disclosed the substance of Plaintiffs' failed attempt to "blow the whistle."  (Ex. 8; Ex. 13, at 4:23-5:18)

288.   Moreover, within days of her meeting with Plaintiffs, Defendant Sanchez joined with Defendant Hesse's unlawful retaliatory smear-campaign against Plaintiffs, posting an invective-filled message on an online message board devoted to Ocean Beach Police Corruption, and claiming Plaintiffs were terminated for incompetence.

> You guys just feed into this crap. You want all "the dirt"... <u>what a bunch of wash women</u>!! Dont you see this guy gets canned for doing a CRAP job, of course he is mad and wants to lash out, you are gonna actually believe anything this moron says??? I dont even know anyone involved, and it seems pretty clear that this revenge posting is all crap. How can you believe a word the guy says?? Anyone can say anything!!! Bottom line, he obviously is deficient in many ways which is WHY HE WAS PROBABLY CANNED IN THE FIRST PLACE!!! Get it????? You guys wanna make up stories so bad, then pick up your fired asses and go apply for a job on Days of Our Lives, I hear they are hiring - **bitch**!

(*See* Ex. 17, at P00964 (emphasis in original); Ex. 12).

289.   Defendant Hesse did not hesitate to warn other officers that, in light of his sexual relationship with Defendant Sanchez, he had "hooks" with County Civil Service, and

would therefore be immediately alerted to any officer's attempt to "blow the whistle"

against him. (*See* Ex. 13, at 4:23-5:18; Carter Aff. ¶ 8).

Dated:     December 29, 2009          Respectfully submitted,
           New York, NY

                                       THOMPSON WIGDOR & GILLY LLP

                                      By: _____

                                          Douglas H. Wigdor
                                          Andrew Goodstadt
                                          Ariel Y. Graff
                                          85 Fifth Avenue
                                          New York, New York 10003
                                          Telephone: (212) 257-6800
                                          Facsimile: (212) 257-6845

                                          *Counsel for Plaintiffs*