**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X
EDWARD CARTER, FRANK FIORILLO,  KEVIN    :
LAMM, JOSEPH NOFI, and THOMAS SNYDER,    :
   :
                 Plaintiffs,    :
   :
       v.    :    Case No. 07-Civ-1215 (SJF)(ETB)
   :
INCORPORATED VILLAGE OF OCEAN BEACH;    :
MAYOR JOSEPH C. LOEFFLER, JR., individually    :
and in his official capacity; former mayor NATALIE K.    :
ROGERS, individually and in her official capacity,    :
OCEAN BEACH POLICE DEPARTMENT; ACTING    :
DEPUTY POLICE CHIEF GEORGE B. HESSE,    :
individually and in his official capacity; SUFFOLK    :
COUNTY; SUFFOLK COUNTY POLICE    :
DEPARTMENT; SUFFOLK COUNTY DEPARTMENT    :
OF CIVIL SERVICE; and ALISON SANCHEZ,    :
individually and in her official capacity,    :
   :
                 Defendants.    :
---------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THOMPSON WIGDOR & GILLY LLP

85 Fifth Avenue
New York, NY 10003
Tel: (212) 257-6800
Fax: (212) 257-6845

*Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 1

ARGUMENT ......................................................................................................................... 1

  I.  DEFENDANTS HAVE FAILED TO SATISFY THE STANDARDS FOR SUMMARY
    JUDGMENT AND THEIR MOTION SHOULD BE DENIED ....................................... 1

  II.  THE OCEAN BEACH DEFENDANTS'' MOTION FOR SUMMARY JUDGMENT ON
    PLAINTIFFS' CLAIMS FOR DEPRIVATION OF PROPERTY INTEREST IN
    CONTINUED EMPLOYMENT WITHOUT DUE PROCESS MUST BE DENIED .................... 2

      A.  Plaintiffs Were Employed As OBPD Officers Until Defendant Hesse
        Unlawfully Terminated Their Employment on April 2, 2006 ................................. 2

      B.  CPLR Article 78 Did Not Afford Plaintiffs Potential Constitutionally
        Sufficient Post-Deprivation Relief ......................................................................... 6

  III.  THE OCEAN BEACH DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' "STIGMA
    PLUS" CLAIMS FOR DEFENDANTS' DEPRIVATION OF THEIR LIBERTY INTEREST
    IN CONTINUED LAW ENFORCEMENT CAREERS WITHOUT DUE PROCESS MUST
    BE DENIED ....................................................................................................................... 9

      A.  Defendant Hesse Made Stigmatizing Statements About Plaintiffs ......................10

      B.  Defendant Hesse's Stigmatizing Statement Were Made Public ...........................11

      C.  A Proper Nexus Exists to Demonstrate that Hesse's Stigmatizing
        Statements Constituted a Deprivation of Plaintiffs' Protected Liberty
        Interest Under the Due Process Clause of the Constitution ..................................12

      D.  Defendants' Remaining Arguments are Irrelevant and Without Merit ............13

  IV.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S
    SUBSTANTIVE DUE PROCESS AND TERMINATION IN VIOLATION OF PUBLIC
    POLICY CLAIMS MUST BE DENIED ...........................................................................15

  V.  THE OCEAN BEACH DEFENDANTS ARE NOT ENTITLED TO SUMMARY
    JUDGMENT ON PLAINTIFFS' FIRST AMENDMENT RETALIATION CLAIMS .................16

      A.  Plaintiffs' Protected Complains .............................................................................17

B.   Plaintiff's Complaints Were Made "as Citizens" ........................................................18

C.   Plaintiffs' Complaints Addressed Matters of "Public Concern" ...........................19

D.   Plaintiffs Were Terminated Because of their Protected Complains .................21

VI.   DEFENDANTS LOEFFLER AND ROGERS ARE PERSONALLY LIABLE ON ALL CLAIMS AGAINST OCEAN BEACH DEFENDANTS AND THEIR MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED .................................................................23

A.   Defendant Mayor Rogers ..........................................................................................24

B.   Defendant Mayor Loeffler ........................................................................................26

VII.   WHISTLEBLOWER CLAIMS UNDER CIVIL SERVICE LAW § 75-B.........................29

VIII.   THE OCEAN BEACH DEFENDANTS ARE LIABLE FOR DEFENDANT HESSE DEFAMATION OF PLAINTIFFS.........................................................................................30

IX.   THE OCEAN BEACH DEFENDANTS ARE LIABLE FOR PLAINTIFFS' CLAIMS OF NEGLIGENT HIRING AND SUPERVISION OF UNFIT EMPLOYEES.....................32

CONCLUSION .................................................................................................................................33

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abrahams v. Inc. Village of Hempstead*,
  No. 08 Civ. 02584 (SJF)(WDW), 2009 U.S. Dist. LEXIS 46725 (E.D.N.Y. June 2,
  2009) ...................................................................................................................................... 9, 10

*Alexandre v. Cortes*,
  140 F.3d 406 (2d Cir. 1998) ............................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................................... 2

*Anderson v. New York*,
  614 F. Supp. 2d 404 (S.D.N.Y. Apr. 27, 2009) .............................................................. 23

*Back v. Hastings on Hudson Union Free School District*,
  365 F.3d 107 (2d Cir. 2004) ............................................................................................ 23

*Benedict v. Town of Newburgh*,
  125 F. Supp. 2d 675 (S.D.N.Y. 2000) ............................................................................. 22

*Board of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972) ............................................................................................ 3, 4, 5, 14

*Brandt v. Bd. of Coop. Educ. Servs.*,
  820 F.2d 41 (2d Cir. 1987) ............................................................................................... 11

*Brink's, Inc. v. New York*,
  717 F.2d 700 (2d Cir. N.Y. 1983) .............................................................................. 32, 33

*Butler v. Castro*,
  896 F.2d 698 (2d Cir. 1990) ............................................................................................... 7

*Byrnie v. Town of Cromwell Board of Education*,
  243 F.3d 93 (2d Cir. 2001) .............................................................................................. 25

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................................... 2

*Chertkova v. Connecticut General Life Insurance Co.*,
  92 F.3d 81 (2d Cir. 1996) ................................................................................................ 22

*City of San Diego v. Roe*,
    125 S. Ct. 521 (2004) .........................................................................................20

*Clark v. Mercado*,
    No. 98 Civ. 7934, 1999 U.S. App. LEXIS 11845 (2d Cir. May 28, 1999) ...............................2, 3

*Connick v. Myers*,
    461 U.S. 138 (U.S. 1983) ....................................................................................21

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998) ..........................................................................................15

*Dalbec v. Gentleman's Companion, Inc.*,
    828 F.2d 921 (2d Cir. N.Y. 1987) ................................................................... 10, 11

*DiBlasio v. Novello*,
    344 F.3d 292 (2d Cir. N.Y. 2003) ....................................................................... 7

*Donato v. Plainview-Old Bethpage Central Sch. District*,
    96 F.3d 623 (2d Cir. 1996)................................................................................14

*Drolett v. Demarco*,
    No. 05 Civ. 1335, 2007 U.S. Dist. LEXIS 46044 (D. Conn. June 22, 2007)..........................19

*Engquist v. Oregan Department of Agriculture*,
    128 S. Ct. 2146 (2008) ......................................................................................33

*Ersek v. Township of Springfield*,
    102 F.3d 79 (3d Cir. 1996)................................................................................15

*Ezekwo v. NYC Health & Hospitals Corp.*,
    940 F.2d 775 (2d Cir. 1991) ................................................................................ 3

*Furlong v. Shalala*,
    156 F.3d 384 (2d Cir. 1998) ................................................................................ 3

*Gangadeen v. City of New York*,
    No. 07 Civ. 10965 (DLC), 2009 U.S. Dist. LEXIS 71079 (S.D.N.Y. Aug. 12, 2009) ...............19

*Gorman-Bakos v. Cornell Coop. Extension*,
    252 F.3d 554 (2d Cir. 2001) ..............................................................................22

*Hayut v. State University of New York*,
    352 F.3d 733 (2d Cir. 2003) ..............................................................24, 26, 29

*Higgins v. Metropolitan-North R.R.*,
    318 F.3d 422 (2d Cir. N.Y. 2003) ................................................................33

*Howard v. Senkowski*,
    986 F.2d 24 (2d Cir. 1993) ..........................................................................21

*Jeffes v. Barnes*,
    20 F. Supp. 2d 404 (N.D.N.Y. 1998) ..........................................................20

*Kaluczky v. City of White Plains*,
    57 F.3d 202 (2d Cir. 1995) ..........................................................................16

*Kessler v. Westchester Cty. Department of Social Services*,
    461 F.3d 199 (2d Cir. 2006) ..........................................................................2

*Konits v. Valley Stream Central High School District*,
    394 F.3d 121 (2d Cir. 2005) ........................................................................17

*Marinaccio v. Boardman*,
    No. 02 Civ. 00831, 2005 U.S. Dist. LEXIS 42417 (N.D.N.Y Apr. 19, 2005) ..............................11

*Meyer v. Nebraska*,
    262 U.S. 390 (1923) ....................................................................................14

*Morgenstern v. County of Nassau*,
    No. 04 Civ. 0058 (JS)(ARL), 2008 U.S. Dist. LEXIS 91746 (E.D.N.Y. Sept. 29, 2008) ..........19

*Mt. Healthy City Sch. District Board of Education v. Doyle*,
    429 U.S. 274 (1977), *rev'd on other grounds*, 208 F.3d 49 (2d Cir. 2000) ..............................20

*Murphy v. New York Racing Association*,
    76 F. Supp. 2d 489 (S.D.N.Y. 1999) ..........................................................28

*Natale v. Town of Ridgefield*,
    170 F.3d 258 (2d Cir. 1999) ........................................................................16

*Neu v. Corcoran*,
    869 F.2d 662 (2d Cir. 1989) ........................................................................13

*Owen v. City of Independence, Missouri*,
    445 U.S. 622 (1980) ....................................................................................13

*Patterson v. City of Utica*,
    370 F.3d 322 (2d Cir. 2004) ............................................................ 9, 12, 15

*Perks v. Town of Huntington*,
    251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ......................................................... 30, 31

*Perry v. Burger King Corp.*,
    924 F. Supp. 548 (S.D.N.Y. 1996) ...................................................................... 32

*Perry v. Sindermann*,
    408 U.S. 593 (1972) ....................................................................................... 3, 5

*Piesco v. Koch*,
    12 F.3d 332 (2d Cir. 1993) .................................................................................. 23

*Reuland v. Hynes*,
    460 F.3d 409 (2d Cir. 2006) ........................................................................ 19, 20

*Rookard v. Health and Hospital Corp.*,
    710 F.2d 41 (2d Cir. 1983) ............................................................................... 7, 8

*Rosenblatt v. City of New York*, ........................................................................... 18
    No. 05 Civ. 5521, 2007 U.S. Dist. LEXIS 55853 (S.D.N.Y. July 31, 2007)

*Rucci v. Thoubboron*,
    68 F. Supp. 2d 311 (S.D.N.Y. 1999) ................................................................. 22

*Scheiner v. N.Y. City Health & Hospitals Corp.*,
    152 F. Supp. 2d 487 (S.D.N.Y. 2001) ............................................................... 21

*Schwartz v. Mayor's Committee on Judiciary*,
    816 F.2d 54 (2d Cir. 1987) ................................................................................... 5

*Segal v. City of New York*,
    459 F.3d 207 (2d Cir. 2006) .......................................................................... 9, 10

*Skehan v. Kelly*,
    No. 03 Civ. 5977 (CLB), 2005 U.S. Dist. LEXIS 8597 (S.D.N.Y. Apr. 15, 2005) ...................... 28

*Sousa v. Roque*,
    578 F.3d 164 (2d Cir. 2009) ............................................................................... 20

*Stein v. Board of City of New York*,
    792 F.2d 13 (2d Cir. 1986) .................................................................................... 3

*Sullivan v. Town of Salem*,
    805 F.2d 81 (2d Cir. 1986) .................................................................................... 7

*Ulrich v. City and County of San Francisco,*
    308 F.3d 968 (9th Cir. 2002)..................................................................12

*Util. Metal Research, Inc. v. Coleman,*
    No. 03 Civ. 1463 (SLT)(SMG), 2008 U.S. Dist. LEXIS 25095 (E.D.N.Y. Mar. 28,
    2008) ........................................................................................................33

*Vasbinder v. Ambach,*
    926 F.2d 1333 (2d Cir. 1991)..................................................................20

*Velez v. Levy,*
    401 F.3d 75 (2d Cir. 2005) ......................................................................12

*White Plains Towing Corp. v. Patterson,*
    991 F.2d 1049 (2d Cir. 1993)....................................................................2

## STATE CASES

*Boyd v. Fulton Terrace Associate, LLC,*
    819 N.Y.S.2d 846 (1st Dep't 2006) .........................................................31

*Igneri v. Town of Brookhaven,*
    232 A.D.2d 638 (2d Dep't 1996)............................................................5, 6

*Santamarina v. Citrynell,*
    609 N.Y.S.2d 902 (1st Dep't 1994) .........................................................31

*Vincenzino v. Calvosa,*
    572 N.Y.S.2d 611 (N.Y. Sup. Ct. 1991)...................................................32

*Weider v. Skala,*
    80 N.Y.2d 628 (N.Y. 1992) .....................................................................16

*Whittaker v. Delaware and Hudson Canal Co.,*
    126 N.Y. 544 (1891)...............................................................................32

*Wood v. New York,*
    274 N.Y. 155 (N.Y. 1937)...................................................................21, 32

## FEDERAL STATUTES

Fed. R. Civ. P. 8(d)..............................................................................................9

Fed. R. Civ. P. 56(c)............................................................................................2

Plaintiffs Edward Carter, Frank Fiorillo, Kevin Lamm, Joseph Nofi, and Thomas Snyder, (collectively, "Plaintiffs"), by their attorneys, Thompson Wigdor & Gilly LLP, respectfully submit this Memorandum in Opposition to the Motion for Summary Judgment by Defendants Incorporated Village of Ocean Beach (the "Village" or "Ocean Beach"), Mayor Joseph C. Loeffler, Jr. ("Loeffler"), former mayor Natalie J. Rogers ("Rogers") and Ocean Beach Police Department ("OBPD") (collectively, the "Ocean Beach Defendants").

## PRELIMINARY STATEMENT

Plaintiffs are five police officers who had the courage to overcome the "blue wall of silence" and fulfill their duty to protect the public by speaking out in opposition to the regime of endemic corruption within the Ocean Beach Police Department ("OBPD" or the "Department"). Ultimately, when confronted by Plaintiffs' refusal to become complicit in the OBPD's rampant lawlessness and betrayal of the public trust, Defendants not only terminated Plaintiffs' employment as police officers, but also undertook a concerted effort to defame Plaintiffs and destroy their law enforcement careers.

## STATEMENT OF FACTS[1]

## ARGUMENT

**I.    Defendants Have Failed To Satisfy the Standards for Summary Judgment and Their Motion Should be Denied**

Summary judgment may not be granted unless the submissions of the parties "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Here, the Ocean Beach Defendants bear the

---

[1]    Plaintiffs respectfully refer this Court to the facts presented in: Plaintiffs' 56.1 Counter-Statement of Material Facts in Dispute in Response to Ocean Beach Defendants' 56.1 Statement ("Pl. 56.1-OB"); Plaintiffs' 56.1 Counter-Statement of Material Facts in Dispute in Response to County Defendants' 56.1 Statement ("Pl 56.1-County"); Plaintiffs' 56.1 Counter-Statement of Material Facts in Dispute in Response to Defendant Hesse's 56.1 Statement ("Pl 56.1-Hesse"); and the Declaration of Andrew S. Goodstadt in Support of Plaintiffs' Opposition to Ocean Beach Defendants' Motion for Summary Judgment ("Goodstadt Decl."), together with the exhibits attached thereto ("Ex.").

burden of making this showing, and the Court must view all facts in the light most favorable to the non-moving party, and resolve all ambiguities and inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Here the record demonstrates both that genuine factual disputes exist, and that the disputed facts are material to Plaintiffs' claims, thus precluding summary judgment. Indeed, the Ocean Beach Defendants' arguments for summary judgment, which are based on unsupported, rebutted, and/or internally inconsistent claims, fail to take into account that "at the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Kessler v. Westchester Cty. Dep't of Social Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (internal citation omitted). As such, there are genuine issues for trial on all claims, and thus, the Ocean Beach Defendants are not entitled to summary judgment.

**II.     The Ocean Beach Defendants' Motion for Summary Judgment on Plaintiffs' Claims for Deprivation of Property Interest in Continued Employment Without Due Process Must be Denied**

**A.  Plaintiffs Were Employed as OBPD Officers Until Defendant Hesse Unlawfully Terminated Their Employment on April 2, 2006**

To state a due process violation, Plaintiffs must first show a deprivation of a constitutionally protected property interest in their continued employment as OBPD Officers. *See*, *e.g.*, *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1061-62 (2d Cir. 1993); *Clark v. Mercado*, No. 98-7934, 1999 U.S. App. LEXIS 11845, at *6 (2d Cir. May 28, 1999). The Ocean Beach Defendants attempt to evade liability for unlawfully depriving Plaintiffs of their constitutionally protected property interest in continued employment as Part-Time/Seasonal OBPD officers without due process of law by disingenuously asserting that, at the time of their terminations, Plaintiffs were "merely prospective employees hoping to be employed by the Village for the 2006 season and, therefore possessed no protectable property interest [in

'*continued*' employment].'  (OB Mem. at 4).  Defendants also maintain, in the alternative, that

"legitimate claims of entitlement are not found in at will employment" under any

circumstances.  (*Id.* at 4, 5).  As set forth below, Defendants are mistaken on both points.

First, the Ocean Beach Defendants' attempt to mischaracterize Plaintiffs as merely

"prospective" or "at will" employees fails to take into account that "[a] property interest arising

out of public employment may result from an explicit or implicit understanding between the

employer and the employee, a contract, formal or informal rules, policies and practices of the

employer, or the course of dealing between the employer and the employee." *Clark*, 1999 U.S.

App. LEXIS 11845, at *6 (citing *Perry v. Sindermann*, 408 U.S. 593, 599-603 (1972); *Ezekwo v.*

*NYC Health & Hosps. Corp.*, 940 F.2d 775, 782-83 (2d Cir. 1991); *Stein v. Board of City of New*

*York*, 792 F.2d 13, 15-18 (2d Cir. 1986)).  Indeed, like the United States Supreme Court, the

Second Circuit has "embraced this broader approach as to what may constitute a possible

source of a property interest." *See Furlong v. Shalala*, 156 F.3d 384, 395 (2d Cir. 1998)

(citations omitted).  Accordingly, it is undisputed that "[a] person's interest in a benefit is a

'property' interest for due process purposes if there are such rules or mutually explicit

understandings that support his claim of entitlement to the benefit." *See Perry*, 408 U.S. at 602-

03 (citing *Roth*, 408 U.S. at 577).

In this case, the Ocean Beach Defendants' mischaracterization of the continuing

employment status of incumbent Part-Time/Seasonal OBPD officers is flatly refuted by the

uncontroverted testimony of Plaintiffs and non-party OBPD officers alike, who uniformly

attested to procedures and mutually explicit understanding that Part-Time/Seasonal OBPD

officers who worked consecutive "summer seasons," or continuously from year-to-year,

maintained their employment status as OBPD officers without interruption.  (Pl. 56.1-OB ¶¶

201-203).  Specifically, neither Plaintiffs, nor any other OBPD officers who maintained

employment from year-to-year, were ever required to "reapply" for their positions, nor did they receive annual notices of "termination."  (*Id.*).  Indeed, there is no evidence whatsoever regarding the existence of any formal or informal policy or practice of Ocean Beach requiring such officers to reapply for their positions or to be rehired as such.[2]  (*Id.*).

Instead, the only documentation exchanged between incumbent Part-Time/Seasonal OBPD Officers and the Defendants in connection with employment for each consecutive approaching summer season is the correspondence that the OBPD addressed to each returning officer regarding the scheduling of the OBPD's annual, department-wide pre-season meetings. (*Id.* ¶ 203).  Plaintiffs, like all other currently employed Part-Time/Seasonal OBPD officers, received such letters from Defendant Hesse inviting them to the annual pre-season meeting on April 2, 2006 and advising that "new ID cards will be issued to all."  (*Id.* ¶ 265).  Under these circumstances, the claim that Plaintiffs – unlike all other returning OBPD officers who received the April 2, 2006 letter, and exchanged no other applications or correspondence regarding reemployment with the Village (*id.* ¶¶ 201-203, 265) – were, uniquely, "non-employees" on April 2, 2006 is therefore devoid of merit.  In fact, other that Defendant Hesse telling Plaintiffs that they were terminated at the 2006 pre-season meeting, there was nothing different about that "season" from prior "seasons" during which Plaintiffs' employment continued without interruption.  (*Id*).  Thus, the Ocean Beach Defendants' reliance on this non-existent requirement should be rejected.

Without attempting to distinguish the longstanding precedent extending due process "property" interests on the basis "of rules or mutually explicit understandings" that support an entitlement to continued employment, the Ocean Beach Defendants posit that Plaintiffs' claim

---

[2]      To the extent that Suffolk County Civil Service may have had its own purported policies that bear on the continuing employment status of incumbent Part-Time/Seasonal OBPD officers, it is undisputed that Ocean Beach failed to comply with Civil Service procedures applicable to the OBPD.  (*See, e.g.*, County 56.1 ¶ 21).

of entitlement to continued employment as Part-Time/Seasonal OBPD officers "has been flatly rejected" by the Second Circuit's decision in *Schwartz v. Mayor's Comm. on Judiciary*, 816 F.2d 54 (2d Cir. 1987), which rejected a claim of due process property interest in reappointment as a New York City Family Court Judge. *Id.* at 56. However, the Second Circuit's discussion in *Schwartz* emphasized that under explicit statutory provisions for the application and appointment of such Judges, which have absolutely no bearing on Plaintiffs positions as Police Officers in the OBPD, incumbent "Judges seeking reappointment are subject to the same discretionary standards as candidates seeking a judicial appointment for the first time," and nothing in the judicial selections "Committee's procedures or policies establishing a practice to recommend reappointment." *Id.* at 56. Thus, given the formal policy and practice of requiring reapplication by incumbent judges, and the absence of any evidence suggesting that the reapplication process was merely *pro forma* or that judges were entitled to reappointment based on established practices, the Second Circuit concluded that the incumbent judge in *Schwartz* "failed entirely to demonstrate any 'mutually explicit understanding' sufficient to establish a property right." *Id.* (quoting *Perry v. Sindermann*, 408 U.S. 593, 601, (1972)); *see also Igneri v. Town of Brookhaven*, 232 A.D.2d 638, 639 (2d Dep't 1996) (A seasonal life guard did not maintain continuous, year-to-year employment where "evidence indicates that the [lifeguard] filed a new summer employment application and new tax forms each year, was required to elect whether to participate in the retirement system each year, and that each year the Town sent him a letter of appointment which specified that the petitioner was employed for that season only.").

However, the practices and procedures for incumbent Judges seeking reappointment in *Schwartz* are readily distinguishable from the year-to-year continued employment of incumbent OBPD officers, for whom no "reapplication" process exists. (Pl. 56.1-OB ¶¶ 201-203,

265).  Moreover, the uniform practice at Ocean Beach was to continue the appointment of incumbent officers from year-to-year unless affirmatively terminated, which is substantively distinct from the statutory process required for judges who were up for reappointment in the *Schwartz* case.  Accordingly, Defendants' motion for summary judgment on the ground that Plaintiffs purportedly were not "employees" at the time of their terminations should be denied in light of the lack of any process for "rehiring" or "reapplying" for a position as a Part-Time/Seasonal OBPD Officer, as well as the "mutually explicit understandings" as to the continued employment of Part-Time/Seasonal OBPD officers, including Plaintiffs, from year-to-year. (*Id.*).  Indeed, the record is devoid of any evidence to support the Ocean Beach Defendants' *post hoc* claim that Plaintiffs simply were not rehired.  In fact, the record demonstrates that the opposite is true.

### B. CPLR Article 78 Did Not Afford Plaintiffs Potential Constitutionally Sufficient Post-Deprivation Relief

The Ocean Beach Defendants mistakenly assert that even, "[a]ssuming *arguendo* Plaintiffs possessed a protectable property interest, C.P.L.R. Art. 78 afforded Plaintiffs all the post-deprivation process required."  (OB Mem. at 8).  However, notwithstanding that an Article 78 proceeding may constitute a constitutionally sufficient post-deprivation procedural remedy "where a deprivation at the hands of a government actor is 'random and unauthorized,'" this principle "does not apply where the government actor in question is a high-ranking official with final authority over significant matters."  *See DiBlasio v. Novello*, 344 F.3d 292 (2d Cir. N.Y. 2003) (There is no merit to "the proposition that in every case where a deprivation is caused by an 'unauthorized' departure from established practices, state officials can escape § 1983 liability simply because the State provides a post-deprivation review in the form of a tort remedy."); *Alexandre v. Cortes*, 140 F.3d 406, 411 (2d Cir. 1998) ("'An adequate post-deprivation remedy is a defense to a § 1983 due process claim only where the deprivation is

6

random and unauthorized.'") (quoting *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990)).

Similarly, "'the existence of independent state relief does not defeat a § 1983 claim where the deprivation complained of results from the operation of established state procedures'" or official policy. *Id.* at 411 (quoting *Butler*, 896 F.2d at 700); *Sullivan v. Town of Salem*, 805 F.2d 81, 86 (2d Cir. 1986) (explaining that, where deprivation occurs "pursuant to town policy, *Parratt* and its progeny, which apply only to random, unauthorized conduct, are simply inapposite"); *see also Rookard v. Health and Hosp. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983) (finding that where an official has final authority over matters in which he exercises discretion, the choices he makes reflect municipal policy).

In this case, it is undisputed that Defendant Hesse exercised final authority over the decision to terminate Plaintiffs, and that Defendant Hesse effectuated their terminations in accordance with Ocean Beach and Suffolk County policy (notwithstanding that such policies are, themselves unlawful).[3] (*See* Hesse-56.1 ¶ 24; Pl. 56.1-OB ¶ 218). Indeed, the Ocean Beach Defendants do not advance any argument based on record evidence to support their claim that Hesse's termination of Plaintiffs' was "random and arbitrary," and thus capable of being remedied through an Article 78 proceeding. Instead, the Ocean Beach Defendants rest their characterization of Plaintiffs' terminations by Defendant Hesse as "random and arbitrary" on the allegation in Plaintiffs' Complaint that:

> Said acts of defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, wantonly and knowingly.

(OB Mem. at 8 (citing Compl. ¶ 126)). However, Defendants' apparent reliance on this

---

[3] The Ocean Beach Defendants continue to permit Defendant Hesse to exercise supervisory authority over the OBPD, notwithstanding Hesse's multiple, disqualifying failures of the Civil Service test for Police Sergeant, which is a mandatory prerequisite to exercising such authority, or the Civil Service Department's determination of Hesse's ineligibility to do so. (Pl. 56.1-OB ¶ 88). Moreover, Defendant Sanchez informed Plaintiffs that Defendant Hesse apprised her of their terminations both before and after the terminations were effectuated, and that, in her judgment as Civil Service representative with jurisdiction over Ocean Beach, Plaintiffs "did not have a leg to stand on." (*Id.* ¶¶ 282-85).

allegation as a purported "admission" that Defendant Hesse's termination of Plaintiffs' employment was "random and arbitrary" is refuted by Plaintiffs' allegations that:

> Defendants Hesse, Loeffler, OBPD, Ocean Beach, Suffolk County, Suffolk County Civil Service, and Sanchez acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment [(Compl. ¶ 126); and that:] Defendants Hesse and Loeffler were each policy makers acting on behalf of Defendant OBPD and Defendant Ocean Beach with full authority to make policy concerning the treatment of his immediate employees [such that] Defendants' actions in retaliating against Plaintiffs by, among other things, removing Plaintiffs from their position at the OBPD were taken pursuant to official policy, practice and custom. [(*Id.* ¶127)].

To the extent that the Ocean Beach Defendants are claiming that these allegations are somehow "inconsistent," or that any purported "inconsistency" entitles Defendants to bind Plaintiffs to the allegations of Defendants' choice, such a claim fails to recognize that alternative or inconsistent allegations in a pleading are entirely proper and permissible under Fed. R. Civ. P. 8(d)(2)-(3). Moreover, there is, in fact, nothing "inconsistent" in alleging that Plaintiffs' were subjected to unlawful conduct by Defendant-policy-makers acting pursuant to a self-created unlawful official policy, practice and custom. Accordingly, Defendants' motion for summary judgment on Plaintiffs' procedural due process claims must be denied, as Plaintiffs were "employees" at the time of their termination, which was effectuated by Defendant Hesse pursuant to the unlawful, but non-"arbitrary or irrational" policies of the Ocean Beach Defendants.

**III.    The Ocean Beach Defendants' Motion to Dismiss Plaintiffs' "Stigma Plus" Claims for Defendants' Deprivation of their Liberty Interest in Continued Law Enforcement Careers Without Due Process Must be Denied**

In order to prove a constitutional claim for deprivation of a liberty interest without due process, Plaintiffs' must prove "stigma-plus," which "refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' [e.g., the loss of government employment] or property right (the plus), without adequate process."

*Abrahams v. Inc. Village of Hempstead*, No. 08-cv-02584 (SJF)(WDW), 2009 U.S. Dist. LEXIS 46725, at *8 (E.D.N.Y. June 2, 2009) (quoting *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006)) (citations omitted); *see also Patterson*, 370 F.3d at 330 (stating that "[l]oss of one's reputation can . . . invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment") (citation omitted).

To demonstrate the "'stigma' component of a "stigma-plus" claim, a plaintiff must show that (1) the government made stigmatizing statements about [him] – statements that call into question [the] plaintiff's good name, reputation, honor, or integrity; (2) these stigmatizing statements were made public; and (3) the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." *Abrahams*, 2009 U.S. Dist. LEXIS 46725, at *8 (quoting *Segal*, 459 F.3d at 212) (citations and quotation marks omitted).  As set forth below, the record evidence amply demonstrates that Plaintiffs have satisfied each of these elements, precluding the Ocean Beach Defendants' request for summary judgment.

A.     **Defendant Hesse Made Stigmatizing Statements About Plaintiffs**

The Ocean Beach Defendants' purported defense to this element of Plaintiffs stigma-plus claims is utterly devoid of merit.  Specifically, Defendants' specious claim that Defendant Hesse's stigmatizing statements about Plaintiff did not address the "reasons" for Plaintiffs' terminations, or that the stigmatizing statements purportedly fail to identify clearly Plaintiffs[4] and/or Defendant Hesse (*see* OB Mem. at 10-11), are flatly refuted by the record.  Indeed, the litany of stigmatizing statements by Hesse concerning Plaintiffs' terminations include, by way

---

[4]        *See also Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 925 (2d Cir. N.Y. 1987) ("A statement is not libelous unless it is 'of and concerning' the plaintiff.  The test is whether the libel designates the plaintiff in such a way as to let those who knew the plaintiff understand that [he] was the person meant.  It is not necessary that all the world should understand the libel.") (citations and internal quotations omitted).

of examples only:

- Joining together with the assembled OBPD officers in jeering and laughing at Plaintiffs as they departed after being terminated, and stating, immediately after Plaintiffs' terminations, that Plaintiffs were terminated because they were "rats" who had agreed to wear a wire for the Suffolk County D.A. and throw the department "under the bus" (Pl. 56.1-OB ¶¶ 265-68);

- Falsely stating in correspondence to Plaintiff Carter's potential employer that Plaintiff Carter was terminated for sleeping through his shifts at the OBPD (*id.* ¶ 271);

- Misrepresenting to Plaintiffs' potential employers that Plaintiffs had been terminated for unspecified misconduct (*id.* ¶¶ 269-70);

- Falsely claiming, in writing, in connection with the Halloween Incident, that Plaintiffs "are lucky that they didn't get charged with official misconduct and falsely reporting an incident" (*id* ¶ 228); and

- Writing and publically posting the baseless claim that Plaintiffs Fiorillo and Lamm were terminated for "abusing the public," and "earning the title 'RAT,' as a result of which Niether [sic] of you will ever work another law enforcement job here in the United States" (*id* ¶ 231).

(*See also* Pl. 56.1-OB 228, 231-42, 245-52).  In light of the foregoing, it is obvious that Plaintiffs can satisfy the "stigma" element of their "stigma-plus" due process claims.  Any claim to the contrary is absurd and should be rejected.

**B.      Defendant Hesse's Stigmatizing Statements Were Made Public**

The record also amply demonstrates that Plaintiffs can easily demonstrate that Defendant Hesse's numerous stigmatizing statements about them were publically disseminated.  "In determining the degree of dissemination that satisfies the 'public disclosure' requirement, we must look to the potential effect of dissemination on the employee's standing in the community and the foreclosure of job opportunities.  As a result, what is sufficient to constitute 'public disclosure' will vary with the circumstances of each case."  *Marinaccio v. Boardman*, 02-CV-00831 (NPM), 2005 U.S. Dist. LEXIS 42417, at *56-57 (N.D.N.Y Apr. 19, 2005) (citing *Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 44 (2d Cir. 1987)).  Thus, emphasizing

the *"potential* effect of dissemination on the employee's standing in the community and the foreclosure of job opportunities," the Second Circuit has held that even the placement of statements in an employee's personnel file may satisfy the contemporaneous public disclosure elements of a stigma-plus claim.  *See Brandt*, 820 F.2d at 45 (reversing grant of summary judgment based on questions of fact as to whether statements included in plaintiff's personnel file were likely to be disclosed to prospective employers).

In this case, Defendant Hesse engaged in conduct and made statements to other members of the OBPD and dock masters that stigmatized Plaintiffs' reputations, standing and good names within minutes of Plaintiffs terminations.  (Pl. 56.1-OB ¶ 264-68).  Hesse subsequently posted at least 33 written stigmatizing statements concerning false bases for each of Plaintiffs' terminations on publically accessible Internet message boards, on a forum devoted to the specific subject the Ocean Beach Police Department.  (*Id.* ¶¶ 228, 231-42, 245-52).   Indeed, this message board has been accessed over 70,000 times, and currently contains hundreds of separate posts.  (Ex. 19).  Defendant Hesse also made false and stigmatizing statements directly to Plaintiffs' prospective employers.  (Pl. 56.1-OB ¶¶ 264-72).  The evidence of Defendant Hesse's publicization of stigmatizing statements concerning the patently false grounds for Plaintiffs' terminations is therefore overwhelming, precluding Defendant Hesse's entitlement to summary judgment on this element of their stigma plus due process liberty claims.

C.     **A Proper Nexus Exists to Demonstrate that Hesse's Stigmatizing Statements Constituted a Deprivation of Plaintiff's Protected Liberty Interest Under the Due Process Clause of the Constitution**

"When government actors defame a person and -- either previously or subsequently -- deprive them of some tangible legal right or status, . . . a liberty interest may be implicated, even though the 'stigma' and 'plus' were not imposed at precisely the same time."  *Velez v. Levy*,

11

401 F.3d 75, 89 (2d Cir. 2005) (citations omitted); *Patterson v. City of Utica*, 370 F.3d 322, 335

(2d Cir. 2004) (citing with approval *Ulrich v. City and County of San Francisco*, 308 F.3d 968,

983 (9th Cir. 2002) (stating no requirement for strict temporal link between stigmatizing

statements and discharge; instead requirement is that stigmatizing statements be "so closely

related to discharge from employment that the discharge itself may become stigmatizing in the

public eye")).[5] As set forth above, Defendant Hesse made stigmatizing statements at the time of

Plaintiffs' termination and continued to do so in the ensuing months, as the subject of "Ocean

Beach Police Corruption" received extensive coverage in local press.  (*See* Ex. 17).  Accordingly,

the nexus between Defendant Hesse's termination and stigmatization of Plaintiffs precludes

summary judgment on Plaintiffs' stigma-plus claims.

### D.       Defendants' Remaining Arguments are Irrelevant and Without Merit

Notwithstanding the clear evidence supporting each element of Plaintiffs' stigma-plus

due process claim, Defendants raise several, easily disposed of arguments in support of

summary judgment.  (OB Mem. at 12-14).  Thus, the Ocean Beach Defendants repeat their

arguments that "Plaintiffs were no different in status on April 2, 2006 than any other person

seeking employment with the Village for the position of [Part-Time/Seasonal] police officer for

the 2006 [Summer] Season."  (OB Mem. at 13).  However, as set forth in Section II.A., *supra*, this

mischaracterization is simply untenable and contrary to the record evidence.  For the reasons

set forth above, it is clear that Plaintiffs, and all incumbent Seasonal/Part-Time OBPD officers,

were already employed as OBPD Officers as of April 2, 2006.  (Pl. 56.1-OB ¶¶ 201-203).

Accordingly, Plaintiffs have satisfied the "plus" prong of their claim, namely, the loss of

---

[5]       *See also Owen v. City of Independence, Missouri*, 445 U.S. 622, 626-29, 633 (1980) (upholding stigma-plus claim against municipality, where stigmatizing statements were originally made in private by official imposing the "plus" and were actually released to public by another municipal actor who made additional stigmatizing statements; Court held that accusations had "received extensive coverage in the press, and even if they did not in point of fact 'cause' petitioner's discharge, the defamatory and stigmatizing charges certainly 'occurred in the course of the termination of employment.'").

government employment.  *See Neu v. Corcoran*, 869 F.2d 662, 668 (2d Cir. 1989) ("the State, *in declining to re-employ the respondent*, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.") (quoting *Huntley v. Community School Board*, 543 F.2d 979, 986 (2d Cir. 1976), *cert. denied*, 430 U.S. 929 (1977)) (citations omitted).  Thus, the Court should reject this defense.

Equally without merit is the Ocean Beach Defendants' assertion that Plaintiffs were not foreclosed from pursuing jobs "in their chosen profession," because Plaintiffs' employment in other, non-law-enforcement capacities, somehow demonstrates that their chosen profession was not law enforcement.  (*See* OB Mem. at 12).  Although Defendants fail to explain how this conclusion can be reconciled with the fact that Defendant Hesse terminated Plaintiffs' employment as police officers, and made stigmatizing statements that precluded Plaintiffs' from obtaining new law enforcement positions, the assertion that Plaintiffs were not "professional" or "career" law enforcement officers is in all respects irrelevant for purposes of Plaintiffs' stigma plus claims and is nothing more than a red herring, designed to mislead the Court.  As the Second Circuit noted in *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623 (2d Cir. 1996), "[d]ue process protects the freedom to engage in *any* of the common occupations of life."  *Id.* at 630-31 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972) ("A statement carries stigma sufficient to implicate a liberty interest only if it deprives the fired employee of the 'freedom to take advantage of other employment opportunities.'") (quoted in *Cates v. Williams*, No. 08-cv-1529 (HB), 2009 U.S. Dist. LEXIS 23478, at *21-22 (S.D.N.Y. Mar. 18, 2009).  Accordingly, the fact that Defendant Hesse's stigmatizing statements and conduct precluded Plaintiffs from employment in law enforcement, if not in other, unrelated, fields, does not diminish the deprivation of Plaintiffs' due process liberty interests.

Finally, Defendants' claim that the deprivation of Plaintiffs' liberty interest in continued employment in the field of law enforcement could have been corrected had Plaintiffs availed themselves of an Article 78 proceeding is equally without merit.  (*See* OB Mem. at 14).  As set forth in Section II.B., *supra*, Article 78 proceedings are insufficient post-deprivation process where the deprivation was at the hands of a policymaker.  Moreover, it blinks reality to argue, as Defendants apparently do, that an Article 78 proceeding could effectively undo the harm flowing from Defendant Hesse's false public stigmatization of Plaintiffs as grossly incompetent, abusive and corrupt police officers.  *See Patterson*, 370 F.3d at 335 (citing with approval *Ersek v. Township of Springfield*, 102 F.3d 79, 84 n.6 (3d Cir. 1996) ("[A] name-clearing hearing might be insufficient to cure all the harm caused by stigmatizing government comments.  For instance, injury to a plaintiff's reputation might be irreversible.")).  Accordingly, Defendants' motion for summary judgment on Plaintiffs' stigma plus claims should be denied.

**IV.    Defendants' Motion for Summary Judgment on Plaintiffs' Substantive Due Process and Termination In Violation of Public Policy Claims Must be Denied**

An "abuse of executive power so clearly unjustified by any legitimate objective of law enforcement [is] barred by the Fourteenth Amendment."  *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998).  "Substantive due process is an outer limit on the legitimacy of governmental action.  It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action.  Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) (citations omitted); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) ("Substantive due process protects [individuals] against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect' or 'ill-advised.'").

14

As set forth below, Plaintiffs have satisfied these standards.

Plaintiffs were terminated by the Ocean Beach Defendants in reprisal for refusing to become complicit in a cover-up of police brutality by Defendant Hesse, Hesse's fear that they would provide damaging information to the district attorney in Hesse's pending criminal matter, and Plaintiffs' opposition to OBPD practices that represented a threat to public safety. (*See* Ex. 73-77).  *See generally Weider v. Skala*, 80 N.Y.2d 628 (N.Y. 1992) (permitting breach of contract action by attorney who was at-will employee and was fired for forcing his law firm to report disciplinary violations of the attorney's fellow associate, because it was implicit condition of plaintiff's at-will employment that, in conducting the firms legal practice, both plaintiff and firm would do so in compliance with prevailing rules of conduct and ethical standards of profession).  It is beyond cavil that the Ocean Beach Defendants' termination of Plaintiffs' employment as OBPD officers on these grounds was "a gross abuse of governmental authority" and "conscience shocking."  Accordingly, Plaintiffs are entitled to proceed to trial on their claims based on substantive due process and termination in violation of public policy.

**V.      The Ocean Beach Defendants' Are Not Entitled to Summary Judgment on Plaintiffs' First Amendment Retaliation Claims**

"[T]o establish a First Amendment claim of retaliation as a public employee, [a plaintiff] must show that (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action." *Konits v. Valley Stream Cent. High School Dist.*, 394 F.3d 121, 124 (2d Cir. 2005) (internal quotation marks omitted).  Here, the record demonstrates that Plaintiffs have satisfied this burden.

**A.      Plaintiffs' Protected Complaints**

Plaintiffs' claims of First Amendment retaliation are based on Defendant Hesse's retaliatory termination of their employment in reprisal for having raised numerous complaints

during their employment as OBPD Officers concerning, among other things: (i) the unlawful cover-up of an incident of police brutality orchestrated by Defendant Hesse (Pl. 56.1-OB ¶¶ 167-87; Ex. 73-77); (ii) Defendant Hesse's hiring and retention of OBPD officers in violation of County Civil Service law (*id.*) (iii) the direct threat to the public safety resulting from Defendant Hesse's failure to prevent, and condonation and participation in, OBPD officers from drinking in local bars while on-duty and/or in uniform (*id.*) (iv) Defendant Hesse's failure to prevent, and condonation of, OBPD officers from driving while intoxicated (*id.*); (v) Defendant Hesse's failure to properly secure OBPD firearms (*id.*); (vi) Defendant Hesse's failure to discipline OBPD officers for destruction of evidence and OBPD property (*id.*); and (vii) Defendant Hesse's unlawful selective law enforcement, by prohibiting Plaintiffs from issuing (and even tearing up) summonses to favored businesses and individuals within Ocean Beach (*id.*); (viii) Defendant Hesse's failure require uncertified OBPD Officers to become familiar with Suffolk County Police radio codes, resulting in a direct threat to public safety, as well as Plaintiffs' own safety as OBPD Officers.

Contrary to Defendants' misleading and false assertions, Plaintiffs addressed these complaints not only to Defendant Hesse himself (Pl. 56.1-OB ¶¶ 167-72, 174, 176-83, 185), but also to former Police Chief Paradiso (*id.* ¶¶ 173, 175, 186), Village Trustee and Police-Liaison to the Village Board Defendant Loeffler (Pl. 56.1-OB ¶ 184, 201; Ex 73-77), Trustee Einig, and the Suffolk County District Attorney's Office (Pl. 56.1-OB ¶ 187).

### B.    Plaintiffs' Complaints Were Made "as Citizens"

The Ocean Beach Defendants attempt to avoid liability for his unlawful misconduct by claiming that that Plaintiffs complained about these matters pursuant to their duties as OBPD officers, rather than as "citizens."  (OB Mem. 17-20).  However, the record flatly contradicts this allegation.  First, as the senior-most OBPD official who exercised policy-making authority over

16

the OBPD and its employees (*see* Pl. 56.1-OB ¶¶ 220-23; Ex. 23; Hesse 56.1 ¶ 24), Defendant

Hesse's responses to Plaintiffs' repeated complaints of Hesse's misuse of power and threats to

public safety and Plaintiffs' own safety clearly preclude his present attempt to characterize

Plaintiffs' complaints as a matter of their "official duties."  *See Rosenblatt v. City of New York*, 05

Civ. 5521, 2007 U.S. Dist. LEXIS 55853, at *17 (S.D.N.Y. July 31, 2007) (complaint by public

employee about fraud and corruption was not made pursuant to her official duties because her

job duties did not include raising such complaints).  Having been repeatedly berated by

Defendant Hesse for raising such complaints, Plaintiffs' continuing complaints were, at the very

least, outside the scope of their official "duties" as defined by Defendant Hesse, the policy

maker vested with authority over the terms and conditions of employment for OBPD officers.

(*See* Pl. 56.1-OB ¶¶ 220-23; Ex. 23; Hesse 56.1 ¶ 24).  And, notwithstanding that Plaintiffs'

complaints were, in fact, consistent with their position as law-abiding police officers, there is

no evidence that Plaintiffs' "official duties included complaining about all kinds of workplace

mismanagement, whatever the context in which these complaints were made" or that

complaining about such matters "was particularly within the province of plaintiff[s]'

professional duties, more so than that of other [Police Department] employees." *See Drolett v.

Demarco*, 05-cv-1335 (JCH), 2007 U.S. Dist. LEXIS 46044 (D. Conn. June 22, 2007) ("The court

does not construe the Police Department's rules to require Drolett to make complaints, but

only to permit him to do so–that is, there is no evidence that he was employed specifically to

make such reports.") (citing *Garcetti v. Ceballos*, 126 S. Ct. 1952, 1959-60 (2006)).

Moreover, the mere fact that Plaintiffs – like other law-abiding OBPD officers, as well as

citizens of, and visitors to, Ocean Beach – were affected by the misconduct complained of "does

not convert these complaints into a personal employee grievance devoid of a broader public

purpose." *See Gangadeen v. City of New York*, 07 Civ. 10965 (DLC), 2009 U.S. Dist. LEXIS 71079,

at *40-41 (S.D.N.Y. Aug. 12, 2009).  Indeed, "[i]t would be a bizarre result to preclude a First

Amendment retaliation claim based on allegations of health and safety concerns because the

person complaining was also affected by the dangerous condition."  *Id.*  Thus, any claim by

Defendant Hesse to the contrary should be rejected.

      **C.**      **Plaintiffs' Complaints Addressed Matters of "Public Concern"**

Speech "addresses a matter of public concern" if it "relates to any matter of political,

social, or other concern to the community" (*Morgenstern v. County of Nassau*, No. 04-CV-058

(JS)(ARL), 2008 U.S. Dist. LEXIS 91746 (E.D.N.Y. Sept. 29, 2008) (quoting *Reuland v. Hynes*, 460

F.3d 409, 415 n.5 (2d Cir. 2006))), or is a "subject of legitimate news interest; that is, a subject

of general interest and of value and concern to the public at the time of publication" (*id.*

(quoting *City of San Diego v. Roe*, 125 S. Ct. 521, 526 (2004))).  The fact that certain complaints

may align with advancement of a speaker's personal interest does not remove those complaints

from the ambit of First Amendment protections.  *See Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir.

2009) (holding that speaker's personal motivation for complaint is not determinative, so long

as complaint relates to matter of public concern).

Although the Ocean Beach Defendants completely ignore the substance and extent of

Plaintiffs' numerous complaints, and consequently makes no arguments against the

characterization of these unacknowledged complaints as matters of "public concern," it should

be clear that any such arguments cannot be seriously entertained.  Indeed, "[o]ne would be

hard-pressed to find a clearer example of speech that is more appropriately classified as a

matter involving public concern and deserving of First Amendment protection" than Plaintiffs

Snyder, Fiorillo and Lamm's opposition to Defendant Hesse's cover-up of their investigation

into an OBPD officer's assault of a civilian on Halloween night 2004.  *See Jeffes v. Barnes*, 20 F.

Supp. 2d 404 (N.D.N.Y. 1998) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274,

282(1977), *rev'd on other grounds*, 208 F.3d 49 (2d Cir. 2000) ("In the present case, plaintiffs

allege that their supervisors and co-workers retaliated against them for publicly disclosing the

misconduct of their co-workers and cooperating in the federal criminal investigation and

subsequent prosecution.").  Similarly, complaints about OBPD officers failing to properly secure

firearms, destroying police property and evidence, allowing favored business owners to violate

the law with impunity, drinking on duty and/or while in uniform, and driving while intoxicated,

are undoubtedly matters of great concern to every right-thinking citizen, and can scarcely be

dismissed as mere workplace grievances.  *See Vasbinder v. Ambach*, 926 F.2d 1333, 1340 (2d

Cir. 1991) (finding that speech concerning the corrupt practices of public employees is speech

regarding matters of serious public concern).  Moreover, Defendants' willful violation of civil

service requirements for OBPD officers was contrary to a provision of the New York State

Constitution that was enacted for the protection of the public, and is thus also a matter of

"public concern."  *See generally Wood v. New York*, 274 N.Y. 155, 161 (N.Y. 1937) ("The civil

service provisions of the Constitution and of the law were intended as a protection for the

public and all the employees in the civil service as well as security for the individual

employee.").

Finally, there is no merit to Defendants' specious claim that complaints addressed

directly to Defendant Hesse himself are outside the scope of Plaintiffs' First Amendment

protection.  *See, e.g., Connick v. Myers*, 461 U.S. 138, 145 (U.S. 1983) ("First Amendment

protection applies when a public employee arranges to communicate privately with his

employer rather than to express his views publicly.").  Not only is this claim patently false (*see*

Pl. 56.1-OB ¶¶ 173, 175, 184, 186-87; Ex 73-77), but even if true, it is of no consequence to

Plaintiffs' protections under the First Amendment.

**D.     Plaintiffs Were Terminated Because of their Protected Complaints**

19

The causal connection between protected speech and an adverse employment action "must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action." *Scheiner v. N.Y. City Health & Hosps. Corp.*, 152 F. Supp. 2d 487, 496 (S.D.N.Y. 2001).  Causation can be established indirectly, through circumstantial evidence, or directly by evidence of a retaliatory animus.  *See Howard v. Senkowski*, 986 F.2d 24, 26 n.2 (2d Cir. 1993) ("Though pretext analysis was developed in Title VII cases ... it is fully applicable to constitutional claims where the issue is whether an improper motive existed.").  Here, Plaintiffs can easily satisfy both standards.

First, Defendant Hesse *admitted* in writing that he terminated Plaintiffs because they complained about him.  Specifically, Defendant Hesse stated in writing that Plaintiffs' complaints "got you out of law enforcement." (Pl. 56.1-OB ¶ 235; Ex. 14).  This direct evidence, standing alone, is sufficient to establish a causal connection and defeat summary judgment.

Second, it is well settled that the timing of a defendant's conduct, such as where the protected speech was followed closely in time by adverse treatment in employment, may be circumstantial evidence of a retaliatory motive.  *See Gorman-Bakos*, 252 F.3d at 554.  However, the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and allegedly retaliatory action."  *Id.* (citations collecting cases omitted); *see also Benedict v. Town of Newburgh*, 125 F. Supp. 2d 675, 678-79 (S.D.N.Y. 2000). And in cases where an employer's state of mind or motives are relevant, the materials before the court must be carefully scrutinized for circumstantial evidence that could support an inference of retaliatory animus.  *See Rucci v. Thoubboron*, 68 F. Supp. 2d 311, 318 (S.D.N.Y. 1999) (citing *Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996)).

In this case, the circumstantial evidence of Defendant Hesse's retaliatory motivation for

terminating Plaintiffs is also overwhelming.  Specifically, Defendant Hesse terminated Plaintiffs'

employment on April 2, 2006, which was the first summer season that he had the authority to

do fire police officers.  (*See*, *e.g.*, Hesse 56.1 ¶¶ 23-24).  And, after directing Plaintiffs to depart

the Village in front of all remaining OBPD officers, Defendant Hesse noted explicitly that

Plaintiffs were terminated based on his suspicion that they were wearing "a wire" or going to

wear "a wire" for the County District Attorney.  (Ex. 16).  In addition, Defendant Hesse informed

Plaintiff Carter that Plaintiffs Fiorillo, Snyder and Lamm's careers in law enforcement were

over because Plaintiffs refused to comply with his demands to revise their investigation reports

of the Halloween incident so as to exculpate uncertified OBPD officer Gary Bosetti (Pl. 56.1-OB

¶¶ 122-28).  Defendant Hesse confirmed these facts repeatedly over the following months in

defamatory message board postings on the *Schwartz Report* website.  (*See* Ex. 17).

Accordingly, Defendant Hesse's motion for summary judgment on Plaintiffs' First

Amendment retaliation claims is devoid of merit and should be denied.  *See Piesco v. Koch*, 12

F.3d 332, 342 (2d Cir. 1993) ("The second element, the employer's motivation, presents a

question of fact."); *Anderson v. New York*, 614 F. Supp. 2d 404, 430 (S.D.N.Y. Apr. 27, 2009)

(denying summary judgment where there was a question of fact "as to whether plaintiff [had]

shown a causal connection between her protected speech and her discharge").

## VI.   Defendants Loeffler and Rogers Are Personally Liable on All Claims Against the Ocean Beach Defendants and Their Motion for Summary Judgment Should be Denied

For purposes of establishing a supervisory municipal official's personal liability under §

1983, a plaintiff must demonstrate the official's "personal involvement" in the unlawful conduct

of subordinates.  *See Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 122 (2d

Cir. 2004).  And "'[p]ersonal involvement' may be established by evidence of direct

participation by the supervisor in the challenged conduct, or by evidence of a supervisory

21

official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003).

Defendants' motion for summary judgment on Plaintiffs' claims against Defendants Rogers (former Mayor of Ocean Beach) and Loeffler (former Trustee and current Mayor of Ocean Beach) in their respective individual capacitates are baseless, as there is substantial evidence of these individual Defendants' "personal involvement" in the constitutional deprivations that are the basis of Plaintiffs' claims.

### A.     Defendant Mayor Rogers

As mayor and police commissioner of Ocean Beach during Plaintiffs' employment, Defendant Rogers had a duty to supervise the operations of the OBPD.  (Pl. 56.1-OB ¶¶ 214-25). This duty was not merely a function of her status as an elected official, but was also affirmatively undertaken by her.  (*Id.* 214).  For example, despite having no prior law-enforcement experience, Defendant Rogers arrogated to herself the role of "Police Commissioner" when the existing Police Commissioner on the Board of Trustees was voted out of office.  (*Id.*).  Although Defendant Rogers exercised her supervisory authority over the OBPD by participating in regular informational meetings with former Chief Paradiso, Defendant Rogers willfully disregarded Paradiso's representation that Hesse was unsuited for promotion to Acting Police Chief when Paradiso was forced to retire due to injury.  (Pl. *Id.* ¶ 215).  And, despite being warned by County Civil Service that Hesse was unqualified to exercise supervisory authority over any employees in Ocean Beach, Rogers continued to allow him to do so in violation of Civil Service law.  (*Id.* ¶ 223).  Moreover, although Rogers admitted that she

had a duty to conduct at least some inquiry into allegations of police brutality by Hesse and other uncertified OBPD Officers, she failed to take any steps to investigate or discipline Hesse or others on the advice of counsel, and willfully walled herself off from any information at all concerning allegations of Defendant Hesse's criminal brutalization of civilians. (*Id.* ¶ 224). And, despite knowing that numerous OBPD officers were hired in violation of Civil Service Law, putting the Village and other officers at risk, Rogers took no steps to ensure that the Village brought itself into compliance with those requirements.[6] (*Id.* ¶ 225).

Notwithstanding her personal history as a veteran civil service commissioner in New York City, Defendant Rogers testified that it was *not* her understanding that Ocean Beach had a legal obligation to comply with civil service requirements (*id.* 217-221) but rather that it *was* her understanding that those requirements could somehow be flouted with impunity unless/until non-compliance was "caught" by Civil Service (which it was). (*id.* 221). Finally, Defendant Rogers concededly destroyed her records from her tenure as Mayor during this litigation – including records concerning the OBPD – notwithstanding her practice of maintaining those records in her personal residence, without ensuring that copies existed or were ever provided to the Village during her tenure or prior to her destroying the records, and that she continued to do so throughout the course of this litigation. (*id.* 219). *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 110-11 (2d Cir. 2001) (denying summary judgment in part because of spoliation).

The foregoing amply demonstrates the existence of, at the very least, material disputes of fact regarding Defendant Rogers': "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4)

---

[6]     Indeed, the uncertified officers did not even know the police radio codes for Suffolk County and Ocean Beach.

deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *See Hayut*, 352 F.3d at 753.  Accordingly, Defendants' motion for summary judgment on Plaintiffs' claims against Defendant Rogers in her personal capacity should be denied.

### B.    Defendant Mayor Loeffler

Although Defendant Loeffler did not assume the role of Mayor of Ocean Beach until July 2006, he was one of five elected Trustees of Village of Ocean Beach throughout Plaintiffs' employment.  (Pl. 56.1-OB ¶¶ 204-213).  As a veteran Suffolk County Police Detective, Loeffler had the most law-enforcement related experience of any trustee.  (id. ¶ *205*).  Moreover, Defendant Loeffler's father was former chief of the OBPD, which afforded Defendant Loeffler a unique connection to the operations of the OBPD.  (*id.* ¶ 207).  Accordingly, he served in the capacity as the Board of Trustees' Liaison to the OBPD, and Defendant Hesse relied on him as the *de facto* authority within Ocean Beach on matters pertaining to the oversight and administration of the OBPD.  (*Id.* ¶ 208; Ex. 73-77).

Although Plaintiffs Nofi and Fiorillo approached Defendant Loeffler in his capacity as police liaison, and candidate for mayor of OBPD, in or around late Summer 2005, to complain about the unlawful and dangerous conduct of the uncertified OBPD officers and Hesse's refusal to take any action in response to Plaintiffs' prior complaints, Loeffler assured Plaintiffs that he was already aware of the dysfunctional condition of the OBPD, and that he would take action to correct those problems after Ocean Beach completed its elections for municipal office.  (*Id.* ¶ 209).  However, Defendant Loeffler took no action at all in response to Plaintiffs' complaints, either as a Trustee, Police Liaison, or upon being elected to serve as mayor.  Moreover, despite receiving formal notice from the Civil Service Department regarding its prohibition against Defendant Hesse's exercise of supervisory authority over any municipal employees, Defendant

Loeffler continues – to this day – to allow Hesse to unlawfully exercise the authority of OBPD Chief.

In addition to his utter lack of any response to Plaintiffs' claims of misconduct by Hesse and other uncertified officers, Defendant Loeffler also was present at the OBPD on the night of the Halloween Incident, and was the driver of the medical response team that treated the civilians who had been injured by uncertified OBPD officer Gary Bosetti.  Despite stating that the victims injuries appeared to have resulted from "assault second with a dangerous weapon," Defendant Loeffler failed to take any action to confirm that the perpetrators of that assault were brought to justice.  Moreover, in an apparent attempt to escape personal liability for anything pertaining to the Halloween incident, Defendant Loeffler flatly denied that he had returned to the OBPD to obtain further information about the attack later that morning, after transporting the victims to the hospital. Finally, despite his express claim to Plaintiffs regarding prior knowledge of the dysfunction of the OBPD under Hesse's supervision, Defendant Loeffler allowed the OBPD to operate without any written procedural manual or policies, except in response to Defendant Hesse's criminal indictment, and well after Plaintiffs' termination.

There is no merit whatsoever to Defendants' claim that Plaintiffs' cannot establish Defendant Loeffler's personal liability under § 1983 on the basis of his actions, or failure to act, during his tenure as a Trustee of Defendant Ocean Beach.  Indeed, the single case that Defendants' cite for the proposition that Defendant Loeffler, as a Trustee of the Village, had no "duty to prevent or remedy the alleged Constitutional violations" is completely inapposite, as that case merely held that a "trustee" of the New York State-licensed thoroughbred horseracing group was not a "state actor" whose "failure to act [can] be said to have occurred 'under color of law'" pursuant to § 1983.  *See Murphy v. New York Racing Ass'n*, 76 F. Supp. 2d 489, 497 (S.D.N.Y. 1999) (cited in OB Mem. at 25).  Defendants' attempt to equate the elected Trustee of

25

a municipality with the trustee of a non-profit horseracing association is patently frivolous.

Moreover, even if Defendants' brazen claim that Defendant Loeffler's supervisory governmental authority as an elected official was insufficient to establish his personal liability as a "state actor" under § 1983 absent an independent statutory duty to "prevent or remedy the alleged constitutional violations" at the OBPD, the supervisory authority and duties of Village Trustees are, in fact, codified in detail, *inter alia*, at N.Y. Village §§ 4-400 and 8-800; *see also Skehan v. Kelly*, 03 Civ. 5977 (CLB), 2005 U.S. Dist. LEXIS 8597 (S.D.N.Y. Apr. 15, 2005) ("New York law vests clear authority with the Board over the issue of police disciplinary matters"). Accordingly, Defendants' motion for summary judgment on Plaintiffs' claims against Defendant Loeffler in his personal capacity should be denied, based on the substantial evidence set forth above as to his personal "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates."  *Hayut*, 352 F.3d at 753.

**VII.    Whistleblowers Claims Under Civil Service Law § 75-B**

Defendants attempt to argue that he is entitled to summary judgment on Plaintiffs' whistleblower claims under Civil Service Law § 75-b because Plaintiffs purportedly (i) were not "employees" at the time of their terminations, and (ii) purportedly failed to disclose their complaints to a "public body."  (*See* OB Mem. at 26).

Defendants' claim that Plaintiffs' were not employees at the time their employment was unlawfully terminated should be rejected for the reasons set forth at Part II.A., *supra.  See also* N.Y. Civ. Serv. § 75-b(1)(b) ("'employee' shall mean any person holding a position by appointment or employment in the service of a public employer").  As to Defendants' second

argument, N.Y. Civ. Serv. § 75-b(2)(a)(ii) prohibits retaliation against an employee who reports information "*which the employee reasonably believes to be true and reasonably believes constitutes an improper government action*." *Id.* Defendants do not dispute that Plaintiffs' complaints to Defendant Hesse or former OBPD Chief Paradiso fall within this broad category of protected conduct. (*See* OB Mem. at 27). However, Defendants maintain that such complaints did not constitute a "disclosure to a government body" under N.Y. Civ. Serv. § 75-b(2)(b), while apparently conceding that complaints to a Trustee or Village Mayor would satisfy this reporting requirement. (*See* OB Mem. at 27). That said, Defendants ignore the fact that Plaintiffs *did* complain to Defendant Trustee Loeffler, who assured them that he was aware of the matters complained of and would take appropriate remedial action after being elected Mayor. (Pl. 56.1-OB ¶ 209).

Defendants' likewise ignore the plain language of N.Y. Civ. Serv. § 75-b(2)(b), which provides that an employee "shall be deemed to have disclosed information to a governmental body" if the employee makes "a good faith effort to provide the appointing authority or his or her designee the information to be disclosed," *and* "provide[s] the appointing authority or designee a reasonable time to take appropriate action." *Id.* In this case, Plaintiffs' complaints to the Suffolk County DA's Office satisfy the requisite disclosure to a public body. (Pl. 56.1-OB ¶ 187). Moreover, Plaintiffs' complaints to Defendant Loeffler, together with Plaintiffs' reasonable reliance Defendant Loeffler's assurances that he would take action upon beginning service as Mayor (which came to pass in July 2006, shortly after Plaintiffs' termination (Pl. 56.1-OB ¶ 209)), also demonstrates the requisite disclosure to a governmental body, precluding Defendants' entitlement to summary judgment on Plaintiffs' claims under N.Y. Civ. Serv. § 75-b.

**VIII.** **The Ocean Beach Defendants' Are Liable for Defendant Hesse's Defamation of Plaintiffs**

"Under New York law, an employer can be held vicariously liable for a defamatory statement made by one of its employees, but only if the employee made the statement in the course of performance of her duties." *See Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1167 (E.D.N.Y. 2003) (citation collecting cases omitted) (cited in OB Mem. at 28).[7]  However, because "there is no single mechanical test to determine whether at a particular moment an employee is engaged in the employer's business" (*id.*), "[t]he question of whether an employee was acting within the scope of his employment is usually a factual question suitable for determination by the trier of fact and inappropriate for summary judgment." *Santamarina v. Citrynell*, 609 N.Y.S.2d 902, 903-04 (1st Dep't 1994); *Boyd v. Fulton Terrace Associate, LLC*, 819 N.Y.S.2d 846, 846 (1st Dep't 2006).

Defendants correctly note that courts look to an array of instructive, non-dispositive factors to determine whether an employees' action was performed in the scope of employment.[8]  (*See* OB Mem. at 28) (citing *Perks*, 251 F. Supp. 2d at 1166).  However, Defendants' conclusion that Defendant Hesse's defamation of Plaintiffs was outside the scope of his employment fails to address these factors at all, and instead hinges solely on Defendant Hesse's own mischaracterization of his unlawful conduct.  (*Id.*).  Nevertheless, it is inescapable that, as OBPD Police Chief, Defendant Hesse's numerous defamatory postings about Plaintiffs (Pl. 56.1-OB 228, 231-42, 245-52) on an online message board – devoted to the specific subject

---

[7]        Because Defendants' motion for summary judgment assumes that state law standards of *respondeat superior* apply to Plaintiffs' defamation claims against Defendants under state law, Plaintiffs do not address the standards for municipal liability under *Monel*, which would, in any event support a similar result here, namely, that Defendant Hesse, acting in his capacity as a policy-maker for the OBPD, was "personally involved" in his own defamation of Plaintiffs.

[8]        These factors include, *e.g.*, "(1) whether the employee's act fell within the discretion and control of the employer; (2) whether the employee acted under the express or implied authority of the employer; (3) whether the employee's act was in furtherance of the employer's interests; (4) whether the employee's acts were in the discharge of duty to the employer; (5) whether the act was in execution of the employer's orders or part of the work assigned by the employer; and (6) whether the acts were so closely connected with what the employee was hired to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of employment." *See Perks*, 251 F. Supp. 2d at 1166 (E.D.N.Y. 2003) (citations and internal quotations omitted).

of "Ocean Beach Police Corruption" – were: (i) within Defendant Hesse's discretion and control as the policymaking authority for the OBPD; (ii) undertaken with Defendant Hesse's express or implied authority as the policymaking authority for the OBPD; (iii) in furtherance of Defendant Hesse's interest in shifting the discussion of OBPD Corruption from his own criminal indictment to false allegations of misconduct by Plaintiffs; (iv) in the "discharge of" Defendant Hesse's self-determined "duties" to his employer; (v) "in the execution of" Defendant Hesse's own self-"orders"; and (vi) closely connected to Defendant Hesse's work as OBPD Chief. (*See id.*). There is accordingly no basis for Defendants' motion for summary judgment as to liability for Plaintiffs' claims of defamation committed by Defendant Hesse.

## IX. The Ocean Beach Defendants Are Liable for Plaintiffs' Claims of Negligent Hiring And Supervision Of Unfit Employees

"Under New York law an employer is required to exercise such an oversight and supervision of . . . servants, that if they afterwards become habitually or notoriously incompetent or unfit, from carelessness or bad habits, to perform their duties, this incompetency, if long continued, should be discovered and guarded against." *Brink's, Inc. v. New York*, 717 F.2d 700, 705 (2d Cir. N.Y. 1983) (quoting *Whittaker v. Delaware and Hudson Canal Co.*, 126 N.Y. 544, 549 (1891)). "[T]o recover damages for injuries sustained because an employer has hired or retained an incompetent employee, a plaintiff must establish a duty owed by the defendant employer, a breach of that duty by the defendant employer, and damages proximately caused by the defendant employer's breach." *Perry v. Burger King Corp.*, 924 F. Supp. 548, 552 (S.D.N.Y. 1996) (quoting *Vincenzino v. Calvosa*, 572 N.Y.S.2d 611, 612 (N.Y. Sup. Ct. 1991)).

In this case, Plaintiffs were terminated and defamed by Defendant Hesse. It is undisputed that the Ocean Beach Defendants' delegation of supervisory authority to Defendant Hesse was contrary to clear provisions of Civil Service law (Pl. 56.1-OB ¶ 88), which exist for

the specific purpose of ensuring minimum standards of competence among government employees.  *See Wood v. New York*, 274 N.Y. 155, 161 (N.Y. 1937).  Had the Ocean Beach Defendants' refrained from willfully continuing the employment of Defendant Hesse in the proscribed supervisory capacity that enabled him to harm Plaintiffs, Plaintiffs would not have been harmed.

Defendants' motion for summary judgment on Plaintiffs' negligent hiring and supervision claims makes no effort to refute these points, relying instead on the observation that "in New York, negligent hiring/retention claims are usually sustained only where a plaintiff has suffered significant physical injury."  (*See* OB. Mem. at 29) (citing *Util. Metal Research, Inc. v. Coleman*, [No. 03 CV 1463 (SLT)(SMG),] 2008 U.S. Dist. LEXIS 25095, at *28 (E.D.N.Y. Mar. 28, 2008)).  However, neither New York State Courts, nor the Second Circuit have grafted such a "physical injury" requirement onto the tort of negligent hiring or supervision. *See*, *e.g.*, *Brink's, Inc. v. New York*, 717 F.2d 700, 705 (2d Cir. N.Y. 1983) (confirming punitive damages award on failure to supervise claim where evidence indicated that managerial personnel had reason to suspect specific employees of theft and nevertheless failed to adhere to procedures that might have prevented the damage); *Higgins v. Metro-North R.R.*, 318 F.3d 422, 427 (2d Cir. N.Y. 2003) (assuming potentially viable claim for negligent hiring/supervision of employee alleged to have sexually harassed co-worker, notwithstanding absence of any alleged physical injury).  Defendants proffer no argument as to why this Court should impose a new element on a common law negligence claim.  Accordingly, Defendants' motion for summary judgment on Plaintiffs' negligent hiring and supervision claim should be denied.

## CONCLUSION

For all the reasons set forth above, the Ocean Beach Defendants' motion for summary judgment should be denied in its entirety.[9]

Dated:   December 29, 2009          Respectfully submitted,
         New York, NY

                                   **THOMPSON WIGDOR & GILLY LLP**

                                   By: _____
                                        Douglas H. Wigdor
                                        Andrew Goodstadt
                                        Ariel Y. Graff
                                        85 Fifth Avenue
                                        New York, New York 10003
                                        Telephone: (212) 257-6800
                                        Facsimile: (212) 257-6845
                                        dwigdor@twglaw.com
                                        agoodstadt@twglaw.com
                                        agraff@twglaw.com

                                        *COUNSEL FOR PLAINTIFFS*

---

[9]      Plaintiffs, however, voluntarily dismiss from this case the: Seventh Cause of Action (brought under the Equal Protection clause of the 14th Amendment) in light of *Engquist v. Oregan Dept. of Agriculture*, 128 S. Ct. 2146 (2008), which the Supreme Court decided during the pendency of this case; and the Ninth Cause of Action (brought under New York Labor Law § 740).