UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

EDWARD CARTER, FRANK FIORILLO, KEVIN
LAMM, JOSEPH NOFI, and THOMAS SNYDER,

              Plaintiffs,

                                    **OPINION & ORDER**

    -against-                         **CV-07-1215 (SJF)(ETB)**

INCORPORATED VILLAGE OF OCEAN BEACH,
MAYOR JOSEPH C. LOEFFLER, JR., individually
and in his official capacity, FORMER MAYOR
NATALIE K. ROGERS, individually and in her
official capacity, OCEAN BEACH POLICE
DEPARTMENT, GEORGE B. HESSE, acting
deputy police chief, individually and in his official
capacity, SUFFOLK COUNTY, SUFFOLK
COUNTY POLICE DEPARTMENT, SUFFOLK
COUNTY DEPARTMENT OF CIVIL SERVICE,
ALISON SANCHEZ, individually and in her official
capacity and SUFFOLK COUNTY DISTRICT
ATTORNEY'S OFFICE,

              Defendants.
----------------------------------------------------------------X

FEUERSTEIN, J.

On March 21, 2007, plaintiffs Edward Carter, Frank Fiorillo, Kevin Lamm, Joseph Nofi and Thomas Snyder (collectively, "plaintiffs") commenced this action against defendants Incorporated Village of Ocean Beach, Mayor Joseph C. Loeffler, Jr., former Mayor Natalie K. Rogers and Ocean Beach Police Department (collectively, "the Ocean Beach defendants")[1]; George B. Hesse ("Hesse"); Suffolk County, Suffolk County Police Department, Suffolk County Department of Civil Service and Alison Sanchez (collectively, "the County defendants"); and the

---

[1] Plaintiffs subsequently withdrew all claims asserted against defendants Loeffler and Rogers. Accordingly, the complaint is dismissed in its entirety as against those defendants.

Suffolk County District Attorney's Office, pursuant to, *inter alia*, 42 U.S.C. §§ 1983 and 1985, asserting claims for retaliation in violation of the First Amendment and New York Constitution and violation of plaintiffs' due process[2] rights, as well as state law claims for violation of New York Civil Service Law § 75-b; defamation *per se*; negligent retention of an unfit employee; civil conspiracy; and tortious interference with a business relationship.

Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), for summary judgment dismissing the complaint. For the reasons set forth herein, defendants' motions are granted in part and denied in part.

I.   BACKGROUND

   A.   Factual Background[3]

Plaintiffs are former seasonal and/or part-time police officers previously employed by the Ocean Beach defendants.[4] Plaintiffs worked during the summer season, which commenced two (2) weeks prior to Memorial Day and continued until two (2) weeks after Labor Day, as well as part-time throughout the off-season during the years 2002 through 2006.

---

[2] Plaintiffs subsequently withdrew their claims for violations of their equal protection rights (seventh cause of action), for violations of New York Labor Law § 740 (ninth cause of action) and their RICO claims (thirteenth cause of action).

[3] The facts are derived from the pleadings, the parties' Local 56.1 statements and the affidavits and declarations, with exhibits, submitted by the parties in their respective motion papers. The facts are undisputed, unless otherwise indicated.

[4] The Village of Ocean Beach is located on Fire Island in Suffolk County, New York.

Plaintiffs allege that beginning in May 2002, Hesse[5] hired police officers who had not been certified by the Civil Service Department of Suffolk County; hired civilians as police dispatchers; permitted police officers to drink alcoholic beverages while on duty; and instructed other officers to chauffeur intoxicated officers and their civilian friends. According to plaintiffs, they each complained to Hesse on numerous occasions that the Village of Ocean Beach ("the Village") and the Ocean Beach Police Department ("OBPD") were left dangerously short of personnel when officers were permitted to drink on duty and in their vehicles and when other officers were assigned to chauffeur them around, but Hesse ignored their complaints. In addition, plaintiffs allege that they complained to Hesse that the retention of uncertified officers posed a constant threat to the public's and their own safety. Plaintiffs allege that the Suffolk County Police Department (SCPD) endangered public safety by allowing certain of the uncertified officers to obtain firearms certifications without possessing pistol permits and receiving proper training.

On or before January 18, 2006, Hesse was designated as the acting police chief of the OBPD following the withdrawal from active duty of Paradiso.

Plaintiff Edward Carter ("Carter") last worked for the Ocean Beach defendants on February 8, 2006. Plaintiff Frank Fiorillo ("Fiorillo") last worked for the Ocean Beach defendants on October 1, 2006. Plaintiff Kevin Lamm ("Lamm") last worked for the Ocean Beach defendants on October 22, 2005. Plaintiff Joseph Nofi ("Nofi") last worked for the Ocean Beach defendants on January 2, 2006. Plaintiff Thomas Snyder ("Snyder") last worked for the

---

[5] At all relevant times prior to January 26, 2006, Hesse was a sergeant for the OPBD and Edward Paradiso was the chief of police.

Ocean Beach defendants on March 31, 2006. Plaintiffs allege, however, that their employment with the Ocean Beach defendants was not terminated until April 2, 2006, when Hesse informed them prior to the summer 2006 preseason meeting that their employment was being terminated.

Plaintiffs allege that during the April 2, 2006 meeting, Hesse made comments, *inter alia*, that they were "rats" and wore "wires" for the Suffolk County District Attorney investigating corruption and brutality in the OBPD. In addition, plaintiffs allege that Hesse made defamatory entries on an internet blog called The Schwartz Report.

On or about April 2, 2006, defendant Allison Sanchez ("Sanchez") was employed by defendant County of Suffolk ("the County") as a personnel analyst in the County's Civil Service Department. The functions of the Civil Service Department include, *inter alia*, monitoring compliance with the New York Civil Service Law by municipalities located within the geographical boundaries of the County, including the Village; administering written civil service examinations for police officer positions; and arranging for other qualifying examinations to be given to police officer candidates. Sanchez has never been employed by the Ocean Beach defendants.

In April 2006, Sanchez met with plaintiffs Fiorillo, Nofi and Lamm to discuss the Ocean Beach defendants' decision not to hire them for the summer 2006 season. Those plaintiffs informed Sanchez that they believed their employment was terminated by the Ocean Beach defendants in retaliation for their complaints regarding repeated instances of obstruction of justice, abuse of power and other unlawful conduct committed by, or at the direction of, Hesse. According to plaintiffs, Sanchez advised Fiorillo, Nofi and Lamm that Hesse acted lawfully and that they would not have recourse against him, and then she notified Hesse of their conversation

with her, notwithstanding that she had promised to keep the conversation confidential.[6] Sanchez denies ever promising those plaintiffs confidentiality.

In addition, plaintiffs allege that Hesse subsequently interfered with their attempts to obtain new employment by, *inter alia*, providing bad references and forwarding false information to potential employers.

B.  Procedural History

On March 21, 2007, plaintiffs commenced this action against the Ocean Beach defendants, Hesse, the County defendants and the Suffolk County District Attorney's Office pursuant to, *inter alia*, 42 U.S.C. §§ 1983 and 1985, asserting claims for retaliation in violation of the First Amendment and New York Constitution and violation of plaintiffs' due process rights, as well as state law claims for violation of New York Civil Service Law § 75-b; defamation *per se*; negligent retention of an unfit employee; civil conspiracy; and tortious interference with a business relationship.[7] Plaintiffs allege, *inter alia*, that their employment with the Ocean Beach defendants was unlawfully terminated in retaliation for their complaints of misconduct within the OBPD.

Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the complaint.

---

[6] Plaintiffs allege that Sanchez did so because she had a prior sexual relationship with Hesse. However, Sanchez denies ever having had any relationship with Hesse, other than a professional relationship and, in fact, she is a lesbian.

[7] Plaintiffs have withdrawn their claims for violations of their equal protection rights (seventh cause of action) and New York Labor Law § 740 (ninth cause of action), as well as their RICO claim (thirteenth cause of action).

5

## II. DISCUSSION

### A. Standard of Review

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); see Ricci v. DeStefano, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (Emphasis added) (internal quotations and citation omitted)). "A fact is material if it 'might affect the outcome of the suit under governing law.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci, 129 S.Ct. at 2677 (quoting Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

If the district court determines that there is a dispute as to a material fact, the court must then "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment," Spinelli, 579 F.3d at 166 (internal quotations and citation omitted), to determine whether there is a genuine issue for trial. See Ricci, 129 S.Ct.

at 2677. The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to "come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." Spinelli, 579 F.3d at 166 (internal quotations and citation omitted). Thus, the nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. Id. (internal quotations and citations omitted); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B. First Amendment Retaliation Claim

Plaintiffs allege that they repeatedly complained about the corruption and abuse of power by members of the OBPD to their superiors at the OBPD.

In order to establish a First Amendment retaliation claim, a plaintiff must demonstrate: (1) that he or she "engaged in constitutionally protected speech;" (2) that he or she suffered an adverse employment action; and (3) that the constitutionally protected speech was a "motivating factor" in the adverse employment action. Skehan v. Village of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138, 140 (2d Cir. 2008). Two inquiries are used to determine whether a public employee's speech is entitled to constitutional protection: (1) "whether the employee spoke as a citizen on a matter of public concern," Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006); and, if so, (2) "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Id. If the answer to the first

7

inquiry is "no," "the employee has no First Amendment cause of action based upon his or her employer's reaction to the speech." Id.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421, 126 S.Ct. 1951. Thus, a public employee does not have a claim for First Amendment retaliation unless he or she establishes: (1) that he or she was speaking as a citizen for First Amendment purposes; and (2) that he or she was speaking on a matter of public concern. See Garcetti, 547 U.S. at 418, 126 S.Ct. 1951; Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009). If a plaintiff was not speaking as a citizen, i.e., if he or she was speaking pursuant to his of her official duties, then his or her speech was not protected by the First Amendment, regardless of whether his or her speech related to a "matter of public concern." See Weintraub v. Board of Education of the City School District of the City of New York, ___ F.3d ___, 2010 WL 292663, at * 4 (2d Cir. Jan. 27, 2010); see also Davis v. McKinney, 518 F.3d 304, 312 (5th Cir. 2008) (holding that the first task is to determine whether the employee's speech was part of her official duties, i.e., whether she spoke as a citizen or as part of her official duties); Brady v. County of Suffolk, 657 F.Supp.2d 331, 342 (E.D.N.Y. 2009) (holding that the court must first decide whether the plaintiff was speaking as a citizen, or as part of his public job, before ascertaining whether the subject-matter of the speech was a topic of public concern).

"[S]peech made 'pursuant to' a public employee's job duties [is defined] as 'speech that owes its existence to a public employee's professional responsibilities.'" Weintraub, 2010 WL 292663, at * 4 (quoting Garcetti, 547 U.S. at 421). "[S]peech can be 'pursuant to' a public

8

employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." Id. at * 6. Speech that is "'part-and-parcel of [a public employee's] concerns' about his ability to 'properly execute his duties'" is considered speech made "pursuant to" the employee's official job duties. Id. (quoting Williams v. Dallas Independent School District, 480 F.3d 689, 694 (5th Cir. 2007)). "When a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." Davis, 518 F.3d at 313. "If however a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen." Id. Examples of protected speech by public employees include making a public statement, discussing politics with a coworker and writing a letter to a newspaper, legislator or outside agency. See, e.g. Garcetti, 547 U.S. at 423-424; Davis, 518 F.3d at 312.

All of plaintiffs' complaints to their superiors at the OBPD related to their concerns about their ability to properly execute their duties as police officers, as they expressed concern, *inter alia*, that the assignment of officers to chauffeur intoxicated officers left the OBPD short-handed, that the hiring of uncertified officers and the retention of unqualified and/or corrupt officers affected their ability to perform their job assignments safely and that they were told not to issue summonses to certain individuals and businesses. Plaintiffs' speech in challenging the Ocean Beach defendants' alleged cover-ups of officer misconduct, including their complaints to the Suffolk County District Attorney's Office, was undertaken in the course of performing one of their core employment responsibilities of enforcing the law and, thus, was speech made pursuant

9

to their official duties. Moreover, all of the relevant speech reflected plaintiffs' special knowledge about the Ocean Beach defendants which was gained as a result of plaintiffs' position as police officers for those defendants based upon what plaintiffs' observed or learned from their job. See, e.g. Brady, 657 F.Supp.2d at 344. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Garcetti, 547 U.S. 421-422, 126 S.Ct. 1951.

Plaintiffs attempt to distinguish Weintraub is unpersuasive. Plaintiffs conclusorily contend that their speech was not limited to the "chain of command," but also extended outside the "chain of command" "to other officers within the [OBPD]." (Letter of Douglas H. Wigdor, Esq. to Court dated February 16, 2010, p. 2). However, plaintiffs' First Amendment retaliation claims are not based upon any of those alleged conversations with other officers. Indeed, the complaint is silent regarding any such conversations and specifically alleges that plaintiffs' complaints were made "to their superiors at the OBPD."[8] (Compl., ¶ 117). Although plaintiffs allege that they also complained of misconduct within the OBPD to the Village Board of Trustees, that is the entity with the authority to hire and fire police officers of the OBPD, (see Plf. Counter-Stat. to Ocean Beach Defendants' 56.1 Stat., ¶ 213), and, thus, was an upper echelon of plaintiffs' "chain of command."

Plaintiffs also contend that the Weintraub decision "was specifically limited to the question of whether the First Amendment protected the filing of the plaintiff's grievance." However, the filing of a grievance in Weintraub was just one factor considered by the Court in

---

[8] Plaintiffs appear to have abandoned their claim that they complained to the County Civil Service Department prior to their termination.

determining whether the plaintiff's speech was made pursuant to his official duties and was relevant to the issue of whether there was "a citizen analogue" available, which the Second Circuit indicated was not itself dispositive to its determination in that case. Weintraub, 2010 WL 292663, at * 6. No one factor has been found to be dispositive in ascertaining whether a public employee was speaking as a citizen for First Amendment purposes. See, e.g. Brady, 657 F.Supp.2d at 345-346. Rather, the Court must look at the totality of the circumstances before it.

Since the totality of the circumstances in this case indicate that plaintiffs' speech was made "pursuant to" their official duties as police officers, they were not speaking as citizens for purposes of the First Amendment and, thus, their speech was not constitutionally protected. Accordingly, the branches of defendants' motions seeking summary judgment dismissing plaintiffs' First Amendment retaliation claim (first cause of action) are granted and that claim is dismissed with prejudice. Moreover, since free speech claims under Article 1, Section 8 of the New York State Constitution are subject to the same analysis as free speech claims under the First Amendment, see Almontaser v. New York City Dept. of Educ., 07 Civ. 10444, 2009 WL 2762699, at * 2 n. 1 (S.D.N.Y. Sept. 1, 2009); Housing Works, Inc. v. Turner, 179 F.Supp.2d 177, 199 n. 25 (S.D.N.Y. 2001), aff'd sub nom Housing Works, Inc. v. Guiliani, 56 Fed. Appx. 530 (2d Cir. 2003), the branches of defendants' motion seeking summary judgment dismissing plaintiffs' free speech retaliation claim based upon the New York State Constitution (second cause of action) are also granted and that claim is dismissed with prejudice.

C. Due Process Claims

Generally, due process entitles a person to notice and an opportunity to be heard prior to

11

the deprivation of a property or liberty right. <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Procedural due process claims are analyzed in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally significant." <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

1. Property Interest

"Property interests * * * are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law * * *." <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). To state a due process cause of action, a plaintiff must first show that he or she has a property interest in the employment or the benefit that was removed. <u>Bernheim v. Litt</u>, 79 F.3d 318, 322 (2d Cir. 1996). In the context of public employment, "a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause*." <u>S&D Maintenance Co., Inc. v. Goldin</u>, 844 F.2d 962, 967 (2d Cir. 1988) (emphasis in original). "This circuit looks to New York Civil Service Law and the statutes which create a particular position or the authority to appoint or remove an individual to or from the position to determine whether a New York public employee has a property interest in his position requiring that he be afforded a hearing before termination." <u>Catone v. Spielmann</u>, 149 F.3d 156, 160 (2d Cir. 1998) (quoting <u>Todaro v. Norat</u>, 112 F.3d 598, 600 (2d Cir. 1997)).

Plaintiffs assert a property interest in their employment stemming from Section 75(1)(c)

12

of the New York Civil Service Law, which protects employees in the non-competitive class who have been continuously employed for five (5) years.

As seasonal employees, plaintiffs worked from two (2) weeks prior to Memorial Day to two (2) weeks after Labor Day. Seasonal employment, by definition, is temporary in nature. See, e.g. Tavarez v. State of New York Office of Parks, Recreation and Historic Preservation, No. 04 Civ. 9541, 2007 WL 945383, at * 6 (S.D.N.Y. Mar. 28, 2007) "[P]rovisional or temporary employees have no tenure of office and [are] not entitled to any review of [their] discharge under the provisions of section 75 . . . of the [New York] Civil Service Law." Tavarez, 2007 WL 945383, at * 6 (quoting Ause v. Regan, 59 A.D.2d 317, 323, 399 N.Y.S.2d 526 (4th Dept. 1979)).

Plaintiffs' part-time employment commenced after the summer season ended and continued until the summer season began again. (See Sanchez Dep., pp. 247-248; DiStefano Dep., p. 175). Each time plaintiffs' seasonal employment ceased and their part-time employment commenced constituted a "break in service" within the meaning of the New York Civil Service Law. (See Sanchez Dep., pp. 247-248; DiStefano Dep., p. 175). Thus, although plaintiffs' employment with the OBPD between 2002 and 2005 may be characterized as "continual," i.e., periodically recurring at regular or frequent intervals, it may not be characterized as "continuous," i.e., uninterrupted. Accordingly, plaintiffs were never continuously employed for five (5) years by the OBPD within the meaning of Section 75(c) of the New York Civil Service Law.

Moreover, at least one court has found, relying on the New York Department of Civil Service's interpretation of Section 75(1)(c), that the protection afforded by Section 75(1)(c) is

13

limited to permanent employees. See Tavarez, 2007 WL 945383, at * 6. Plaintiffs clearly were not "permanent employees" within the meaning of the New York Civil Service Law.

Since plaintiffs have not identified any other statute or contract which prohibited their discharge, or non-renewal of employment, without cause and without a hearing, they cannot establish a viable property interest in their seasonal and part-time employment with the Ocean Beach defendants as a matter of law. See, e.g. Piesco v. City of New York, Dept. of Personnel, 753 F.Supp. 468, 476-477 (S.D.N.Y. 1990), aff'd in relevant part, 933 F.2d 1149 (2d Cir. 1991).

Plaintiffs also attempt to base their property interest on their "mutually explicit understanding" of continued seasonal employment with the OBPD. See Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). However, "mutually explicit understandings" do not create a property interest where they are contrary to the express provisions of regulations and statutes. See Chu v. Schweiker, 690 F.2d 330, 334 (1982); Baden v. Koch, 638 F.2d 486 (2d Cir. 1980). Since finding a property interest in temporary or seasonal employment, or noncompetitive part-time employment that was not continuous for five (5) years, contravenes New York Civil Service Law, plaintiffs cannot rely on their "mutually explicit understandings" to establish a property interest in their employment.

2. Liberty Interest

Nonetheless, plaintiffs can establish a due process claim based upon a deprivation of their liberty interest if they can establish damage to their reputation, "coupled with the deprivation of a more tangible interest, such a government employment." Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004). Such claims are commonly referred to as "stigma-plus" claims.

In order to prevail on a stigma-plus due process claim based upon termination from government employment, a plaintiff must establish (1) that the defendant made stigmatizing statements about him or her, which impugned his or her "good name, reputation, honor, or integrity;" (2) that the alleged stigmatizing statements were publically disclosed, including being placed in the employee's personnel file; and (3) that the statements "were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." Segal v. City of New York, 459 F.3d 207, 212-213 (2d Cir. 2006) (internal quotations and citations omitted); see also Patterson, 370 F.3d at 330. Further, "[u]nder some circumstances, a state's refusal to rehire an employee implicates the employee's liberty interests." Donato v. Plainview-Old Bethpage Central School District, 96 F.3d 623, 630 (2d Cir. 1996). "The test of whether a state employer's decision not to rehire an employee denied that employee due process is met when it deprives her of the 'freedom to take advantage of other employment opportunities.'" Id. (quoting Roth, 408 U.S. at 573, 92 S.Ct. at 2707).

Plaintiffs allege that defendants have stigmatized them by implying that they are dishonest, "rats" and "rogue law enforcement officers." (Compl., ¶ 138). Specifically, plaintiffs allege, *inter alia*, that at an organizational meeting on April 2, 2006, Hesse referred to them as "rats;" that defamatory entries were made on a blog entitled The Schwartz Report in early 2006; that defendants misrepresented the reasons for the termination of plaintiffs' employment to potential employers; and that a writing falsely claimed that plaintiffs were lucky that they did not get charged with official misconduct and falsely reporting an incident in connection with a Halloween incident.

Assuming, without deciding, that such statements are admissible and sufficient to

15

establish a stigma-plus claim, plaintiffs must still establish that they were deprived of their liberty interest without due process of law. See Zinermon v. Burch, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (holding that the Due Process Clause only protects against deprivations of constitutionally protected interests in life, liberty or property without due process of law); Rivera-Powell v. New York City Board of Elections, 470 F.3d 458, 464 (2d Cir. 2006) (accord). To this end, "the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Hellenic American Neighborhood Action Committee v. City of New York ("HANAC"), 101 F.3d 877, 880 (2d Cir. 1996) (citing Hudson v. Palmer, 468 U.S. 517, 532, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984) and Parratt v. Taylor, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). For claims based on the random and unauthorized acts by state employees, whether alleging a deprivation of a property or liberty interest, a plaintiff's due process rights are not violated "so long as the State provides a meaningful postdeprivation remedy." HANAC, 101 F.3d at 880; see also Rivera-Powell, 470 F.3d at 465 (accord). However, for claims based on established state procedures, "the availability of postdeprivation procedures will not, ipso facto, satisfy due process." HANAC, 101 F.3d at 880.

Contrary to plaintiffs' contention, the alleged deprivation of their liberty interest occurred because of the random and arbitrary acts of defendants. Indeed, plaintiffs allege in their complaint that defendants' acts "were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, wantonly and knowingly * * *." (Compl., ¶ 126). Plaintiffs have not identified any established state procedure followed by

16

defendants during the severance of their employment which deprived them of their liberty interest. Rather, plaintiffs rely on Hesse's position as the acting police chief of the OBPD in an attempt to establish that he was such a high-ranking official that his acts cannot, as a matter of law, be considered "random" and "unauthorized."

In Zinermon, the Supreme Court held that conduct cannot be considered "random" and "unauthorized," even if not "sanctioned by state law," if the state delegated to the actor "the power and authority to effect the very deprivation complained of . . . [and] the concomitant duty to initiate the procedural safeguards set up by state law." 494 U.S. at 138, 110 S.Ct. 975. Accordingly, the Second Circuit has held "that the acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters,' even if those acts are contrary to law, should not be considered 'random and unauthorized' conduct for purposes of a procedural due process analysis." Rivera-Powell, 470 F.3d at 465-466 (quoting Velez v. Levy, 401 F.3d 75, 91-92 & nn. 14 & 15 (2d Cir. 2005)); see also DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) (accord).

Plaintiffs have failed to establish that Hesse, as acting police chief of the OBPD, was delegated the authority to make the kind of liberty deprivation at issue here, i.e., to make stigmatizing comments about plaintiffs regarding the reasons that their employments were discontinued, or the duty to initiate the procedural safeguards set up by state law, i.e., to initiate a name-clearing hearing, either pre-deprivation or postdeprivation.[9] Indeed, other district courts in

---

[9] It is questionable whether Hesse even had the authority to hire and fire plaintiffs, since under New York Civil Service Law, the appointing authority for the Village was the mayor, against whom plaintiffs have withdrawn their complaint. (See DiStefano Dep., pp. 214-215). Plaintiffs even admit that the only individuals with the power to hire and fire employees in the Village during the relevant time period were the mayor, from March 3, 2003 through July 18,

this Circuit have found that the acts of police chiefs were "random and unauthorized" for purposes of procedural due process analysis and dismissed those claims based upon the availability of an Article 78 proceeding, or other postdeprivation remedy. See, e.g. D'Allessandro v. City of Albany, No. 04-CV-0788, 2008 WL 544701, at * 14 (N.D.N.Y. Feb. 26, 2008) (finding that the availability of an Article 78 proceeding precluded the plaintiff's stigma-plus due process claim against the police chief, among others); Birmingham v. Ogden, 70 F.Supp.2d 353, 369-370 (S.D.N.Y. 1999) (dismissing the plaintiff's due process claim, alleging that the chief of police falsely testified at the disciplinary hearing relating to his termination and attempted to cover up his lies, on the basis that the deprivation of the plaintiff's property interest resulting from the loss of his job occurred because of the random and arbitrary acts of the chief of police and certain police commissioners). That Hesse's conduct was random and unauthorized is further evidenced by the following: (1) the alleged deprivation of plaintiffs' liberty interest was intentional and unpredictable, (2) as a result of which pre-deprivation process was impossible in this case; and (3) Hesse did not have any duty to initiate the procedural safeguards set up by state law to guard against the purported wrongful severance of plaintiffs' employment and admittedly did not even have the authority to hire and fire police officers. See, e.g. Zinermon, 494 U.S. at 138, 110 S.Ct. 975.

The Second Circuit has recognized that "an Article 78 proceeding is a perfectly adequate postdeprivation remedy" to redress constitutional issues, HANAC, 101 F.3d at 881, and other

---

2006; the former Village Administrator, from March 2003 to November 2004; and the former Village Clerk, from March through November 2003. (See Plf. 56.1 Counter-Stat. in Response to Ocean Beach Defendants' 56.1 Stat., ¶ 12). Thus, Hesse was clearly not the high-ranking official plaintiffs would have this Court believe.

courts have specifically found that such proceedings are sufficient to function as name-clearing hearings, see, e.g. D'Allessandro, 2008 WL 544701, at * 13 (citing cases). Since Article 78 afforded plaintiffs a meaningful opportunity to challenge the severance of their employment and to clear their names, they were not deprived of due process as a matter of law. See, e.g. HANAC, 101 F.3d at 881. Accordingly, the branches of defendants' motions seeking dismissal of plaintiffs' due process claims (third, fourth, fifth and sixth causes of action) are granted and those claims are dismissed with prejudice.

D. Remaining State Law Claims

Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, see Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 391-92, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); Mauro v. Southern New England Telecommunications, Inc., 208 F.3d 384, 388 (2d Cir. 2000), a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). The court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the pendent claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Generally, where the federal claims are dismissed before trial, the state law claims should also be dismissed. See N.Y. Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109, 118-119 (2d Cir. 2007); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998).

In light of the dismissal of all federal claims in this action before trial, I decline to

exercise supplemental jurisdiction over the remaining pendant state law claims and those claims are therefore dismissed pursuant to 28 U.S.C. § 1367(c). Accordingly, the branches of defendants' motions seeking summary judgment dismissing plaintiffs' state law claims, other than the state law free speech retaliation and due process claims, are denied as moot.[10]

III. CONCLUSION

For the reasons set forth herein, the branches of defendants' motions seeking summary judgment dismissing plaintiffs' federal and state free speech retaliation and due process claims are granted and those claims are dismissed with prejudice. Since I decline to exercise supplemental jurisdiction over the remaining state law claims, those claims are dismissed pursuant to 28 U.S.C. § 1367(c). The Clerk of the Court is directed to enter judgment in accordance with this Order and to close this case.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: February 19, 2010
Central Islip, New York

---

[10] In light of this determination, plaintiffs' application to strike the County defendants' reply memorandum (doc. no. 177) is also denied as moot.